# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
### Atlanta Division

| | |
|---|---|
| WILLIAM T. QUINN AND DAVID CROSS,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia,<br><br>　　　　　Defendant. | C.A. No. _____<br><br>**COMPLAINT FOR *EXPEDITED* DECLARATORY JUDGMENT AND APPLICATION FOR WRIT OF MANDAMUS AND INJUNCTION** |

## COMPLAINT

Plaintiffs William T. Quinn and David Cross ("Plaintiffs") bring this action for emergency declaratory and injunctive or mandamus relief against Brad Raffensperger, in his official capacity as Secretary of State of Georgia ("Defendant") in time for the requested relief to be completed prior to the November 5, 2024 election, as follows:

### NATURE OF THE CASE

1.　This is a lawsuit to enforce laws that protect the right to vote from dilution. Georgia's current voter rolls have thousands of voter registrations that appear to be invalid because the voter in question either (i) permanently moved out of state and is no longer a citizen of Georgia, or (ii) permanently moved to a different county in Georgia from the county in which they are presently registered. Defendant

1

has not provided any indication that the state will look into these registrations or take action to confirm their validity as required by law, and certainly not prior to the 2024 election cycle. To be clear, Plaintiffs do not ask that these registrations be canceled outright. Instead, Plaintiffs simply ask that Defendant direct the counties to follow the statutory procedures to confirm whether these registrations are valid.

2. The requested relief not only serves to protect Georgia's voters from vote dilution, but also serves to protect the people listed in the anomalous registrations. For example, if a voter permanently moved out of state, and another individual uses that voter's information to cast an illegal ballot, this could result in the former Georgia resident being wrongfully accused of having cast the illegal vote. Properly maintaining the voter rolls would protect against such identity theft. Any voters who are active despite anomalies in their registrations can easily confirm their status, either by responding to the requests for confirmation or, if they fail to make this confirmation, by simply reactivating their voter status.

## THE PARTIES

3. Plaintiff William T. Quinn is a resident, taxpayer, and registered voter in Suwanee, Georgia.

4. Plaintiff David Cross is a resident, taxpayer, and registered voter in Suwanee, Georgia.

5. Defendant Brad Raffensperger is the Secretary of State of Georgia, with his office address located at 214 State Capitol, Atlanta, Georgia 30334.

## JURISDICTION AND VENUE

6. This action arises under the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. §§ 20501, *et seq*. Plaintiffs have a private right of action as aggrieved persons under 52 U.S.C. § 20510. As described below, Plaintiffs provided notice to Defendant of Georgia's violation of the NVRA. Georgia has not corrected the violation within 20 days after receipt of this notice on September 4, 2024. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, which provides for federal question jurisdiction over cases arising under federal law and the Constitution of the United States.

7. Plaintiffs also bring state law claims under Ga. Code Ann. § 21-2-210, *et seq*. In relevant part, these statutes implement Georgia's voter list maintenance procedures corresponding to the NVRA. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a). Plaintiffs' state law claims are so related to the federal claims under the NVRA that they form part of the same case or controversy under Article III of the Constitution.

8. Defendant Brad Raffensperger is the Secretary of State of Georgia, and his office is located in this judicial district. A substantial part of the events or omissions giving rise to this action occurred in this judicial district. Accordingly,

this Court has personal jurisdiction over Defendant, and venue is proper in this Court under 28 U.S.C. § 1391 and Local Rules 3.1(B)(1)(a) and 3.1(B)(3).

## FACTUAL BACKGROUND

**A.    The NVRA and State Law Require Georgia to Correct Its Voter Registration Lists When Voters Move Outside the Jurisdiction in Which They Are Currently Registered.**

9.     To uphold the integrity of elections, to prevent voter fraud, and to protect our citizens' trust in the election process, the federal government has enacted multiple laws requiring states to maintain their lists of voters and designate as inactive those registrations that are no longer active.

10.    This is particularly important in the context of absentee voting, where a person could potentially vote multiple times, or third parties could submit votes without the person's knowledge.

11.    Section 8 of the NVRA, 52 U.S.C. § 20507(a)(4)(B), requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to a change of address.

12.    Although the NVRA does not require states to follow a specific program to maintain the accuracy of its voter lists, 52 U.S.C. § 20507(c)(1)(B) provides a safe harbor under which states "may meet the requirement of subsection (a)(4) by establishing a program" where:

(A) change-of-address information supplied by the Postal Service through its licensees is used to identify registrants whose addresses may have changed; and

(B) if it appears from information provided by the Postal Service that—

(i) a registrant has moved to a different residence address in the same registrar's jurisdiction in which the registrant is currently registered, the registrar changes the registration records to show the new address and sends the registrant a notice of the change by forwardable mail and a postage prepaid pre-addressed return form by which the registrant may verify or correct the address information; or

(ii) the registrant has moved to a different residence address not in the same registrar's jurisdiction, the registrar uses the notice procedure described in subsection (d)(2) to confirm the change of address.

13. The notice procedure in 52 U.S.C. § 20507(d)(2) allows states to require affirmation or confirmation of a voter's address before voting in an upcoming Federal election and requires states to remove such voters from the list of eligible voters if they fail to respond to the notice and do not vote in the following two general elections for federal office occurring after the date of the notice:

(2) A notice is described in this paragraph if it is a postage prepaid and pre-addressed return card, sent by forwardable mail, on which the registrant may state his or her current address, together with a notice to the following effect:

(A) If the registrant did not change his or her residence, or changed residence but remained in the registrar's jurisdiction, the registrant should return the card not later than the time provided for mail registration under subsection (a)(1)(B). If the card is not returned, affirmation or confirmation of the registrant's address may be required before the registrant is permitted to vote in a Federal election during the period beginning on the date of the notice and

5

ending on the day after the date of the second general election for Federal office that occurs after the date of the notice, and if the registrant does not vote in an election during that period the registrant's name will be removed from the list of eligible voters.

(B) If the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered, information concerning how the registrant can continue to be eligible to vote.

14. Additionally, the Help America Vote Act ("HAVA") requires each state to implement "a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level," in accordance with the NVRA. 52 U.S.C. § 21083(a).

15. In accordance with the NVRA, Georgia implemented voter list maintenance procedures, which are codified in Ga. Code Ann. § 21-2-210, *et seq*.

16. Ga. Code Ann. § 21-2-210 designates Defendant, the Secretary of State, as the "chief state election official to coordinate the responsibilities of this state under the [NVRA]."

17. Ga. Code Ann. § 21-2-233 details the state's voter list maintenance procedures for changes of addresses.

18. Specifically, § 21-2-233(a) provides that the Secretary of State may cause voter addresses to be compared to change of address information from the United States Postal Service ("USPS"):

(a) The Secretary of State is authorized to cause at his or her discretion the official list of electors to be compared to the change of address

6

information supplied by the United States Postal Service through its licensees periodically for the purpose of identifying those electors whose addresses have changed.

19. Section 21-2-233(c) further provides that a voter who has moved to an address outside of the county or municipality in which the voter is presently registered must be transferred to the inactive list if the voter fails to respond to a notice within 30 days:

> (c) If it appears from the change of address information supplied by the licensees of the United States Postal Service that an elector whose name appears on the official list of electors has moved to a different address outside of the boundaries of the county or municipality in which the elector is presently registered, such elector shall be sent a confirmation notice as provided in Code Section 21-2-234 at the old address of the elector. The registrars may also send a confirmation notice to the elector's new address. If the elector confirms the change of address to an address outside of the State of Georgia, the elector's name shall be removed from the appropriate list of electors. If the elector confirms the change of address to an address outside of the boundaries of the county or municipality in which the elector is presently registered, but still within the State of Georgia, the elector's registration shall be transferred to the new county or municipality. The Secretary of State or the registrars shall forward the confirmation card to the registrars of the county in which the elector's new address is located and the registrars of the county of the new address shall update the voter registration list to reflect the change of address. If the elector responds to the notice and affirms that the elector has not moved, the elector shall remain on the list of electors at the elector's current address. If the elector fails to respond to the notice within 30 days after the date of the notice, the elector shall be transferred to the inactive list provided for in Code Section 21-2-235.

**B.     Georgia's Active Voter List Continues to Include Many Voters Who Moved Permanently Outside of the Jurisdiction in Which They Are Currently Registered.**

20.     A list of voter registrations was purchased from the Georgia Secretary of State on Sunday, June 30, 2024.

21.     The names and addresses for each voter were submitted through the USPS Coding Accuracy Support System ("CASS®") and compared to information from the USPS National Change of Address database to determine whether or not they still resided at their address of registration.

22.     The voters were limited to those who affirmatively checked on the USPS Official Mail Forwarding Change of Address form that their move was permanent.

23.     The USPS CASS evaluation is run against several progressively deeper-leveled databases, such as by state, city, five-digit zip code, a check on those three columns together, then a check against the street name with in them, then a street number range check, then a check against the actual street number in the "Zip_4" database, and then a check on the apartment unit at that specific building, then a check if that address is unoccupied, as well as other specialty checks.

24.     Notably, no voters were omitted from this process on the basis of race, gender, age, jurisdiction, political affiliation, or any other potentially prejudicial attribute.

25. This process identified many voters who appear to have moved out of the jurisdiction in which they are registered but are nonetheless included on Georgia's active voter lists—despite it being a substantial length of time since they moved.

26. On October 2, 2023, Defendant published a press release describing list maintenance activities performed by county election offices that week. Defendant asserted that the county offices mailed notices to Georgia voters who filed a National Change of Address form with the U.S. Post Office.[1]

27. Despite these asserted activities, Georgia continues to include on its active voter list many voters who moved before October 2023. For example, as shown in the data provided to Defendant, Fulton County alone includes over three thousand voters on its active voter list who appear to have moved out of state before October 2023.

## C. Georgia's Inaccurate Voter List Undermines Plaintiffs' Confidence in the Election and Burdens Plaintiffs' Right to Vote.

28. Georgia's improperly maintained voter rolls have undermined (and will continue to undermine) Plaintiffs' confidence in the electoral process and burdened Plaintiffs' right to vote. This constitutes an actionable injury in fact. *See, e.g.*, *Green*

---

[1] *Raffensperger Continues Comprehensive Off-Year List Maintenance Effort*, GEORGIA SECRETARY OF STATE (Oct. 2, 2023), https://sos.ga.gov/news/raffensperger-continues-comprehensive-year-list-maintenance-effort (last accessed Sept. 25, 2024).

9

*v. Bell*, No. 3:21-cv-00493-RJC-DCK, 2023 U.S. Dist. LEXIS 45989, *9, 2023 WL 2572210 (W.D.N.C. Mar. 19, 2023) (holding that such harm constitutes an injury in fact); *Judicial Watch, Inc. v. King*, 993 F. Supp. 2d 919, 924 (S.D. Ind. 2012) (same); *Judicial Watch, Inc. v. Griswold*, No. 20-cv-02992-PAB-KMT, 2022 U.S. Dist. LEXIS 153290, *5–6, 2022 WL 3681986 (D. Colo. Aug. 25, 2022) (same); *see also Wis. Voter All. v. Millis*, __ F. Supp. 3d __, No. 23-C-1416, 2024 U.S. Dist. LEXIS 44025, *12 (E.D. Wis. Mar. 13, 2024) ("[V]oter disenfranchisement through dilution caused by illegal votes might constitute the kind of harm required [to seek judicial review.]").

**D.     Plaintiffs Provided Proper Notice of this Action Under the NVRA.**

29.     On September 3, 2024, counsel for Plaintiffs mailed a notice letter via Federal Express to Defendant pursuant to the NVRA, 52 U.S.C. § 20510(b). A copy of the notice letter is included as **Exhibit A** to this Complaint. The Georgia Secretary of State's office signed for delivery of this letter the next day on September 4, 2024. A picture showing signed proof of delivery is included as **Exhibit B** to this Complaint.

30.     In their September 3 letter, Plaintiffs advised Defendant that Georgia was violating its duty under 52 U.S.C. § 20507(a)(4)(B) to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to a change of address. Plaintiffs detailed

Georgia's obligations under Ga. Code Ann. § 21-2-233 and further advised Defendant that Georgia's failure to timely make inactive the registrations of certain voters who permanently moved outside of the jurisdiction in which they are currently registered unreasonably left ineligible voters on the active voter list. Plaintiffs noted that they intended to file an action seeking declaratory and injunctive relief before this November's federal election unless these issues were corrected.

31. Plaintiffs enclosed with their notice letter a flash drive with folders containing spreadsheets listing all the identified ineligible voters for each county based on the screening process, described above. Spreadsheets listing all the identified ineligible voters for each county who moved out of the state were included on the flash drive in a folder titled "Ex. A – Moved out of State." Spreadsheets listing all the identified ineligible voters for each county who moved within the state but outside of the county or municipality in which they are registered were included on the flash drive in a folder titled "Ex. B – Moved Within State Out of County." The column headings indicated the voter's name, registration status, registration address, date of departure, and new address.

32. In the September 3 notice letter, Plaintiffs explained that all the voters listed in these spreadsheets indicated that they had permanently moved outside of the jurisdiction in which they are currently registered, but many of them are nonetheless included on Georgia's active voter lists—despite it being a substantial

length of time since they moved. Plaintiffs further explained that Georgia's failure to correct these registrations violated the NVRA under 52 U.S.C. § 20507(A)(4)(B) and Georgia's state law under Ga. Code Ann. § 21-2-233.

33. In key part, Plaintiffs requested that Georgia send notices to these voters under Ga. Code Ann. § 21-2-233(c), and if any voter fails to respond to the notice within 30 days after the date of the notice, immediately transfer that voter to Georgia's inactive voter registration list.

34. Plaintiffs did not request the removal or cancellation of any voter's registration from Georgia's voter lists.

35. Importantly, such relief would not harm any active voters. That is because an active voter associated with the identified registrations can simply respond to the notices from Defendant, and even those who fail to respond can readily contact the election authorities to reactivate their registrations.

36. This relief will partially protect former Georgia residents from having their identities stolen and used to vote illegally in their names. Moreover, this relief would protect Plaintiffs' and all Georgia voters' right to vote by safeguarding them from improper vote dilution. *E.g.*, *Reynolds v. Sims*, 377 U.S. 533, 555 (1964).

37. As the next election for federal office is within 120 days, 52 U.S.C. § 20510(b)(2) provides that a 20-day notice period applies from the date Plaintiffs put Defendant on notice.

38. Defendant, however, never responded to Plaintiffs' September 3, 2024 notice letter.

39. It is possible that the State of Georgia may have corrected some of these registrations in the time since the subject voter registration data was purchased from Georgia on June 30, 2024. Georgia may have also sent notices to some or all of the voters identified in Plaintiffs' September 3, 2024 notice letter—and further, such voters may have indicated to Georgia that the address listed on the voter's registration form is still correct.

40. However, neither the Secretary of State nor anyone else from the Elections Division has ever confirmed this fact or advised that this is indeed the case. Consequently, upon information and reasonable belief, Georgia's present list of voters contains numerous anomalies and errors.

41. Georgia's failure to correct these registrations is an ongoing, systemic violation of the NVRA and Georgia law.

### COUNT I – VIOLATION OF 52 U.S.C. § 20507(A)(4)(B)

42. Plaintiffs incorporate each of the foregoing paragraphs as though fully set forth herein.

43. Georgia continues to include on the state's active voter list many voters (identified in Exhibits A and B of the September 3 notice letter sent to Defendant) who have permanently moved outside of the jurisdiction in which they are currently

registered. As such, Georgia is violating 52 U.S.C. § 20507(A)(4)(B) by failing to make a "reasonable effort" to remove these ineligible voters from its active voter list and is not complying with the safe harbor provision under 52 U.S.C. § 20507(c)(1)(B). *See Voter Integrity Project NC, Inc. v. Wake Cty. Bd. of Elections*, 301 F. Supp. 3d 612, 620 (E.D.N.C. 2017) (holding that "a reasonable inference can be drawn that [a county board of elections] is not making a reasonable effort to conduct a voter list maintenance program in accordance with the NVRA" where a plaintiff has made an allegation, "supported by reliable data," that the county is failing to remove ineligible voters and the county board failed to use available information to remove such ineligible voters).

44. Under Ga. Code Ann. § 21-2-210, Georgia's violation of 52 U.S.C. § 20507(A)(4)(B) is ultimately the responsibility of Defendant. As the state's chief election official, Defendant is required to coordinate the state's responsibilities under the NVRA. *See* Ga. Code Ann. § 21-2-210 (designating Defendant, the Secretary of State, as the "chief state election official to coordinate the responsibilities of this state under the [NVRA]").

45. As a direct and proximate consequence of Georgia's failure to maintain accurate voter lists, Plaintiffs' confidence in the electoral process has been, is being, and will continue to be undermined and Plaintiffs' right to vote has been, is being, and will continue to be burdened, unless this Court enjoins or mandates Defendant

to direct county registrars to send notices under Ga. Code Ann. § 21-2-233(c) to all identified voters who permanently moved outside of the jurisdiction in which they are currently registered, and if any voter fails to respond to the notice within 30 days after the date of the notice, immediately transfer that voter to Georgia's inactive voter registration list (and do so prior to the November 2024 election).

46. Defendant received notice under 52 U.S.C. § 20510(b) of this ongoing and systemic violation of the NVRA more than 20 days before the filing of this complaint.

## COUNT II – VIOLATION OF GA. CODE ANN. § 21-2-233

47. Plaintiffs incorporate each of the foregoing paragraphs as though fully set forth herein.

48. Georgia continues to include on the state's active voter list many voters (identified in Exhibits A and B of the September 3 notice letter sent to Defendant) who have permanently moved outside of the jurisdiction in which they are currently registered. As such, Georgia is violating Ga. Code Ann. § 21-2-233 by failing (i) to adequately compare the state's voter lists to the change of address information supplied by the United States Postal Service, (ii) to send notices to voters who appear to have moved to a different jurisdiction, and (iii) to mark inactive those voters who fail to respond to the notice within 30 days.

49. Under Ga. Code Ann. § 21-2-210, Georgia's violation of Ga. Code Ann. § 21-2-233 is ultimately the responsibility of Defendant. As the state's chief election official, Defendant is required to coordinate the state's responsibilities under the NVRA, including Georgia's list maintenance procedures for changes of addresses under Ga. Code Ann. § 21-2-233.

50. As a direct and proximate consequence of Georgia's failure to maintain accurate voter lists, Plaintiffs' confidence in the electoral process has been, is being, and will continue to be undermined and Plaintiffs' right to vote has been, is being, and will continue to be burdened, unless this Court enjoins or mandates Defendant to direct county registrars to send notices under Ga. Code Ann. § 21-2-233(c) to all identified voters who permanently moved outside of the jurisdiction in which they are currently registered, and if any voter fails to respond to the notice within 30 days after the date of the notice, immediately transfer that voter to Georgia's inactive voter registration list (and do so prior to the November 2024 election).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs William T. Quinn and David Cross ask this Court to enter judgment against Defendant and all persons in active concert or participation with them in sufficient time to allow compliance in full prior to the November 5, 2024 election, granting the following relief:

A. Declaratory judgment that Georgia has violated, and continues to violate, the NVRA under 52 U.S.C. § 20507(A)(4)(B) by failing to conduct a general program that makes a reasonable effort to maintain its voter rolls, where Georgia has failed to timely make inactive the registrations of the identified voters who permanently moved outside of the jurisdiction in which they are currently registered.

B. Declaratory judgment that Georgia has violated, and continues to violate, Ga. Code. Ann. § 21-2-233 by failing to timely make inactive the registrations of the identified voters who permanently moved outside of the jurisdiction in which they are currently registered.

C. A writ of mandamus or an injunction directing Secretary Raffensperger to direct all county registrars to send notices under Ga. Code Ann. § 21-2-233(c) to all identified voters who permanently moved outside of the jurisdiction in which they are currently registered, and if any voter fails to respond to the notice within 30 days after the date of the notice, immediately transfer that voter to Georgia's inactive voter registration list (and do so prior to the November 2024 election).

Reasonable attorneys' fees, including litigation expenses, and costs under 52 U.S.C § 20510(c).

Dated: September 26, 2024

Respectfully submitted,

*/s/ David Ludwig*
David Ludwig (Bar No. 425787)
DUNLAP BENNETT & LUDWIG PLLC
211 Church St. SE
Leesburg, VA 20175
Tel: (703) 777-7319
dludwig@dbllawyers.com

Cortland C. Putbrese (*pro hac vice* application pending)
DUNLAP BENNETT & LUDWIG PLLC
6802 Paragon Place, Suite 410
Richmond, VA 23230
Tel: (804) 977-2688
cputbrese@dbllawyers.com

*Counsel for Plaintiffs William T. Quinn and David Cross*