# EXHIBIT A



David Ludwig
211 Church St. SE
Leesburg, VA 20175
Phone: (703) 777-7319
dludwig@dbllawyers.com

September 3, 2024

**VIA FEDEX**
The Honorable Brad Raffensperger
Secretary of State
Georgia Department of State
214 State Capitol
Atlanta, GA 30334

Mr. John Fervier
Chairman
State Election Board
2 MLK Jr. Drive
Suite 802 Floyd West Tower
Atlanta, GA 30334

    Re:    **Georgia's Failure to Comply with Section 8 of the National Voter Registration Act**

Dear Mr. Raffensperger and Mr. Fervier:

    On behalf of Georgia resident Mr. William T. Quinn, and persons similarly situated ("Aggrieved Persons"), we hereby notify you under 52 U.S.C. § 20510(b) that the State of Georgia is failing to comply with its obligations to perform voter list maintenance under the National Voter Registration Act of 1993 ("NVRA"). Section 8 of the NVRA, 52 U.S.C. § 20507(a)(4)(B), requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to a change of address. As explained below, Georgia has violated (and continues to violate) this statute by failing to timely make inactive the registrations of certain voters who permanently moved outside of the jurisdiction in which they are currently registered. This unreasonably leaves ineligible voters on the active voter list. Unless the issues enumerated in this letter are resolved immediately, the Aggrieved Persons intend to file an action seeking declaratory and injunctive relief before this November's federal election.

    **I.**    **The State of Georgia is in Violation of 52 U.S.C. § 20507(a)(4)(B)**

    Georgia enacted voter list maintenance procedures for changes of address in Ga. Code Ann. § 21-2-233. Subsection 21-2-233(a) provides that the Secretary of State may cause voter addresses to be compared to change of address information from the United States Postal Service ("USPS"):

Mr. Brad Raffensperger and Mr. Fervier
September 3, 2024
Page 2 of 6

> (a) The Secretary of State is authorized to cause at his or her discretion the official list of electors to be compared to the change of address information supplied by the United States Postal Service through its licensees periodically for the purpose of identifying those electors whose addresses have changed.

Ga. Code Ann.§ 21-2-233(c) further provides that a voter who has moved to an address outside of the county or municipality in which the voter is presently registered must be transferred to the inactive list if the voter fails to respond to a notice within 30 days:

> (c) If it appears from the change of address information supplied by the licensees of the United States Postal Service that an elector whose name appears on the official list of electors has moved to a different address outside of the boundaries of the county or municipality in which the elector is presently registered, such elector shall be sent a confirmation notice as provided in Code Section 21-2-234 at the old address of the elector. The registrars may also send a confirmation notice to the elector's new address. If the elector confirms the change of address to an address outside of the State of Georgia, the elector's name shall be removed from the appropriate list of electors. If the elector confirms the change of address to an address outside of the boundaries of the county or municipality in which the elector is presently registered, but still within the State of Georgia, the elector's registration shall be transferred to the new county or municipality. The Secretary of State or the registrars shall forward the confirmation card to the registrars of the county in which the elector's new address is located and the registrars of the county of the new address shall update the voter registration list to reflect the change of address. If the elector responds to the notice and affirms that the elector has not moved, the elector shall remain on the list of electors at the elector's current address. If the elector fails to respond to the notice within 30 days after the date of the notice, the elector shall be transferred to the inactive list provided for in Code Section 21-2-235.

Under Ga. Code Ann. § 21-2-235, voters who are transferred to Georgia's inactive list must be removed from this list if they make "no contact" by the date of the second general election for federal office occurring after being placed on the inactive list:

> (b) An elector placed on the inactive list of electors shall remain on such list until the day after the second November general election held after the elector is placed on the inactive list of electors. If the elector makes no contact, as defined in Code Section 21-2-234, during that period, the elector shall be removed from the inactive list of electors. Not less than 30 nor more than 60 days prior to the date on which the elector is to be removed from the inactive list of electors, the board of registrars shall mail a notice to the address on the elector's registration record.

Mr. Brad Raffensperger and Mr. Fervier
September 3, 2024
Page 3 of 6

When a voter moves to a different residence address outside of the jurisdiction in which the voter is currently registered, 52 U.S.C. § 20507(d)(2) provides a notice procedure that, if followed, would be sufficient to qualify for the NVRA safe harbor requirements under 52 U.S.C. § 20507(c)(1)(B). Subsection (d)(2) allows states to require affirmation or confirmation of the voter's address before voting in an upcoming Federal election and requires states to remove such voters from the list of eligible voters if they fail to respond to the notice and do not vote in the following two general elections for federal office occurring after the date of the notice:

> (2) A notice is described in this paragraph if it is a postage prepaid and pre-addressed return card, sent by forwardable mail, on which the registrant may state his or her current address, together with a notice to the following effect:
>
> (A) If the registrant did not change his or her residence, or changed residence but remained in the registrar's jurisdiction, the registrant should return the card not later than the time provided for mail registration under subsection (a)(1)(B). If the card is not returned, affirmation or confirmation of the registrant's address may be required before the registrant is permitted to vote in a Federal election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice, and if the registrant does not vote in an election during that period the registrant's name will be removed from the list of eligible voters.
>
> (B) If the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered, information concerning how the registrant can continue to be eligible to vote.

Despite Georgia's enactment of Ga. Code Ann. § 21-2-233, the Aggrieved Persons have recently discovered that Georgia continues to include on the state's active voter list many undisputably ineligible voters who have permanently moved outside of the jurisdiction in which they are currently registered. This violates both federal and state law. Georgia is failing to make a "reasonable effort" to remove ineligible voters from its active voter list and is not complying with the safe harbor provision under the NVRA.

The Aggrieved Persons accessed a list of voter registrations that was purchased from the Georgia Secretary of State on Sunday, June 30, 2024. The names and addresses for each voter were submitted through the USPS Coding Accuracy Support System ("CASS®")[1] and compared to information from the USPS Change of Address database to identify voters who moved out of state or within the state but outside of the county or municipality in which the voter is registered.[2] The voters were limited to those who affirmatively checked on the USPS Official Mail Forwarding Change of Address form that their move was permanent.[3] No voters were omitted on the basis of race, gender, age, jurisdiction, political affiliation, or any other potentially prejudicial attribute.

---

[1] CASS® is a certification tool created and used by the USPS to ensure the accuracy of validation and standardization software that corrects and matches street addresses. https://postalpro.usps.com/certifications/cass
[2] https://postalpro.usps.com/mailing-and-shipping-services/NCOALink
[3] https://faq.usps.com/s/article/What-does-PS-Form-3575-Mail-Forwarding-Change-of-Address-Order-Look-Like ("2. Is this Move Temporary?," with checkboxes for Yes and No)

Mr. Brad Raffensperger and Mr. Fervier
September 3, 2024
Page 4 of 6

A folder containing spreadsheets listing all the identified ineligible voters for each county who moved out of the state is included herewith on a flash drive as **Exhibit A**. A folder containing spreadsheets listing all the identified ineligible voters for each county who moved within the state but outside of the county or municipality in which they are registered is included herewith on the flash drive as **Exhibit B**. As shown in these spreadsheets, all of these voters have indicated that they permanently moved outside of the jurisdiction in which they are currently registered, but many of them are nonetheless included on the state's active voter list despite it being longer than six months (and in many cases substantially longer than six months) since they moved. The column headings indicate the voter's name, registration status, registration address, date of departure, and new address.[4]

Although neither the NVRA nor Ga. Code Ann. § 21-2-233 specify exactly how often the state must perform maintenance on its voter lists based on change of address information, the fact alone that so many ineligible voters are included on Georgia's voter lists, and have been for such a long time, demonstrates that Georgia is not reasonably adhering to its statutory procedures. This issue is made more unreasonable because this change of address information is, and has been, readily available to Georgia. *See Voter Integrity Project NC, Inc. v. Wake Cty. Bd. of Elections*, 301 F. Supp. 3d 612, 620 (E.D.N.C. 2017) (holding that "a reasonable inference can be drawn that [a county board of elections] is not making a reasonable effort to conduct a voter list maintenance program in accordance with the NVRA" where a plaintiff has made an allegation, "supported by reliable data," that the county is failing to remove ineligible voters and the county board failed to use available information to remove such ineligible voters).

## II.   The Aggrieved Persons Have Been and Are Currently Suffering Injury

The Aggrieved Persons are each an "aggrieved person" within the meaning of the NVRA. The continuing presence of the identified ineligible voters on Georgia's voter registration lists allows such ineligible individuals to vote in the state. These illegitimate votes dilute the votes of the Aggrieved Persons and undermines their confidence in the state's elections, which further burden's their right to vote. *See Green v. Bell*, No. 3:21-cv-00493-RJC-DCK, 2023 U.S. Dist. LEXIS 45989, at *9 (W.D.N.C. Mar. 19, 2023) (finding vote dilution an injury in fact).

---

[4] For the state's convenience, the relevant column headings are as follows: the "LAST NAME," "FIRST NAME," "MIDDLE NAME," AND "SUFFIX" columns are for the voter's name from the state's voter registration list; the "STATUS" column is the voter's registration status; the columns with the "RESIDENCE" prefix show the voter's registered address; the "COA_NAME" is the voter's name from the USPS NCOA data; the "COA_MOVDAT" field is the date of departure from the USPS NCOA data indicating the date when the voter permanently moved, in YYYYMM format (4-digit year followed by 2-digit month); and the "PRIMARY ADDRESS," "CITY," "STATE," "ZIPCODE," and "POSTALCODE" fields show the voter's new address.

### III. A Lawsuit Before the November Election Would be Timely

On information and belief, the identified ineligible voters are still included on Georgia's active voting roll. Georgia's failure to remove these voters is an ongoing and continuous violation of the NVRA. As the next election for federal office is within 120 days, we understand that the Aggrieved Persons may bring a civil action in district court if these violations are not corrected within 20 days after receipt of this notice under 52 U.S.C. § 20510(b)(2). *See Judicial Watch, Inc. v. Griswold*, 554 F. Supp. 3d 1091, 1106 (D. Colo. 2021) ("[W]hile plaintiffs likely could have alerted the Secretary to their concerns earlier and given the Secretary the benefit of attempting remediation or showing compliance before litigation, notice was excused in this case because plaintiffs alleged [a] violation that is ongoing, systemic, and occurring at the time the complaint was filed, which was within 30 days of the November 2020 federal election."); *Voter Integrity Project NC, Inc. v. Wake Cty. Bd. of Elections*, 301 F. Supp. 3d 612, 618 (E.D.N.C. 2017) ("Because VIP-NC alleges an ongoing violation at the time of the notice letter, its filing of suit 46 days after the 2 June 2016 letter complied with the notice requirement of § 20510(b)(2)."); *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1036-38 (9th Cir. 2015) ("A plaintiff can satisfy the NVRA's notice provision by plausibly alleging that an ongoing, systematic violation is occurring at the time the notice is sent or, if no notice is sent, when the complaint is filed within 30 days of a federal election."); *Scott v. Schedler*, 771 F.3d 831, 834, 840 (5th Cir. 2014) (leaving "intact the district court's determination that the NAACP has complied with the notice requirement" where the plaintiff alleged "systematic and ongoing violations" of the NVRA).

Additionally, the requested relief (detailed below) is to correct the identified individual voter registrations based on individualized information. Importantly, this is not a request to systematically remove ineligible voters, which must be completed no later than 90 days prior to the date of the election under 52 U.S.C. § 20507(c)(2)(A). *See Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1348 (11th Cir. 2014) (noting that a state may remove ineligible voters "on the basis of individualized information, even within the 90-day window").

### IV. Immediate Steps are Needed to Correct these Violations of the NVRA

In light of the upcoming November election, time is of the essence here. To address these violations, we respectfully request that the State of Georgia immediately take the following actions:

(A) For each ineligible voter identified in Exhibits A and B who is included on Georgia's active voter registration list, send notices to all of these voters under Ga. Code Ann. § 21-2-233(c), and if any voter fails to respond to the notice within 30 days after the date of the notice, immediately transfer that voter to Georgia's inactive voter registration list (and do so prior to the November 2024 election).

(B) Do not send absentee ballots to any of the ineligible voters identified in Exhibits A and B, as Ga. Code Ann. § 21-2-381 requires an election official to verify that a voter is eligible before mailing or issuing an absentee ballot.

Mr. Brad Raffensperger and Mr. Fervier
September 3, 2024
Page 6 of 6

* * *

  Again, this letter serves as notice pursuant to 52 U.S.C. § 20510(b) that Georgia is in violation of Section 8 of the National Voter Registration Act. On behalf of the Aggrieved Persons, we request that the State of Georgia take immediate action to rectify this situation. If these issues are not resolved within 20 days, the Aggrieved Persons intend to file an action seeking declaratory and injunctive relief before this November's federal election. Please contact me for further discussion. Thank you for your attention to this matter.

                Sincerely,

                */s/ David Ludwig*

                David Ludwig