# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| WILLIAM T. QUINN and DAVID CROSS,<br><br>*Plaintiffs*,<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia,<br><br>*Defendant*. | Case 1:24-cv-04364-SCJ |

**BRIEF IN SUPPORT OF MOTION TO INTERVENE BY GEORGIA STATE CONFERENCE OF THE NAACP; GEORGIA COALTION FOR THE PEOPLE'S AGENDA, INC.; AND LEAGUE OF WOMEN VOTERS OF GEORGIA**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION AND BACKGROUND ............................................................. 5

ARGUMENT ........................................................................................................... 6

   I.   PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE AS OF RIGHT UNDER RULE 24(A)(2). ................................................................. 6

      A.   The Motion Is Timely. ................................................................................ 7

      B.   Proposed Intervenors Have Significant and Strong Interests in Intervention. ................................................................................................. 8

      C.   Proposed Intervenors and Their Members Will Be Prejudiced if They Are Not Permitted to Intervene. ......................................................................... 13

      D.   Proposed Intervenors' Interests Are Not Adequately Protected by Defendant. .................................................................................................. 14

   II.   IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION. ......................................................................................... 16

CONCLUSION ...................................................................................................... 17

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bellitto v. Snipes*,
  No. 16-61474, 2016 WL 5118568 (S.D. Fla. Sept. 20, 2016) ........................ 5, 10

*Brumfield v. Dodd*,
  749 F.3d 339 (5th Cir. 2014) ................................................................................ 9

*Clark v. Putnam Cnty.*,
  168 F.3d 458 (11th Cir. 1999) ..................................................................... 10, 12

*Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*,
  918 F.3d 1161 (11th Cir. 2019) ........................................................................... 3

*Common Cause v. Raffensperger*,
  No. 1:22-cv-00090-ELB-SCJ-SDG (N.D. Ga.) ................................................. 11

*Ga. Coal. for the People's Agenda v. Deal*,
  No. 4:16-cv-00269-WTM (S.D. Ga.) ................................................................ 11

*Ga. Coal. for the People's Agenda v. Raffensperger*,
  No. 1:18-cv-4727-ELR (N.D. Ga.) .................................................................... 11

*Ga. State Conf. of the NAACP v. Georgia*,
  No. 17-1397, 2017 WL 9435558 (N.D. Ga. May 4, 2017) ............................... 11

*Ga. State Conf. of the NAACP v. Kemp*,
  No. 2:16-cv-219-WCO (N.D. Ga.) .................................................................... 11

*Georgia v. U.S. Army Corps of Eng'rs*,
  302 F.3d 1242 (11th Cir. 2002) ......................................................................... 12

*Huff v. Comm'r of IRS*,
  743 F.3d 790 (11th Cir. 2014) ............................................................................. 4

*Ind. State Conf. of NAACP v. Lawson*,
  326 F. Supp. 3d 646 (S.D. Ind. 2018), *aff'd sub nom*, *Common
  Cause Indiana v. Lawson*, 937 F.3d 944 (7th Cir. 2019) ................................... 10

*Issa v. Newsom*,
   No. 20-01055, 2020 WL 3074351 (E.D. Cal. June 10, 2020) .............................. 8

*Kobach v U.S. Election Assistance Comm'n*,
   No. 13-4095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013) ................................. 7

*Martin v. Crittenden*,
   347 F. Supp. 3d 1302 (N.D. Ga. 2018) .............................................................. 5

*Martin v. Raffensperger*,
   No. 1:18-cv-4776-LMM (N.D. Ga.) ................................................................. 11

*In re Martinez*,
   No. 24-CV-20492, -- F. Supp. 3d --, 2024 WL 2873137 (S.D. Fla.
   June 7, 2024) .................................................................................................... 12

*Meek v. Metro. Dade Cnty., Fla.*,
   985 F.2d 1471 (11th Cir. 1993), *abrogated on other grounds*,
   *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007) ................... 11

*Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*,
   425 F.3d 1308 (11th Cir. 2005) ......................................................................... 4

*Pub. Int. Legal Found., Inc.* v. *Winfrey*,
   463 F. Supp. 3d 795 (E.D. Mich. 2020) ......................................................... 5, 8

*Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*,
   874 F.3d 692 (11th Cir. 2017) ........................................................................ 2, 9

*Worlds v. Dep't of Health & Rehab. Servs.*,
   929 F.2d 591 (11th Cir. 1991) .......................................................................... 12

*Zone 4, Inc. v. Brown*,
   No. 19-00676, 2019 WL 7833901 (N.D. Ga. Aug. 6, 2019) .............................. 2

## INTRODUCTION AND BACKGROUND

Proposed Intervenors Georgia State Conference of the NAACP ("Georgia NAACP"), Georgia Coalition for the People's Agenda, Inc. ("GCPA" or "People's Agenda"), and the League of Women Voters of Georgia ("LWVGA") (together the "Proposed Intervenors") move, under Federal Rule of Civil Procedure ("Rule") 24(a)(2), to intervene as of right as Defendants in this matter, or in the alternative, move for permissive intervention under Rule 24(b). Pursuant to Rule 24(c), Proposed Intervenors' Motion to Dismiss and Brief in Support is attached hereto as Exhibit 1.

Plaintiffs ask this Court to order the Defendant, Secretary of State Brad Raffensperger, to upend election preparations mere weeks before Election Day and urgently undertake a massive and untimely list maintenance program based on faulty data analysis supplied by Plaintiffs. As explained in Proposed Intervenors' proposed Motion to Dismiss, the Complaint seeks a remedy that is unsupported by fact or law and indeed would violate the important voting rights protections set forth in the National Voter Registration Act of 1993 ("NVRA").

Proposed Intervenors are civil rights organizations dedicated to protecting the voting rights of their members and all Georgians—particularly those of Black voters and other voters of color. They seek to intervene on behalf of their members and on behalf of themselves. Plaintiffs' requested relief would not only threaten these

members' fundamental right to vote but would impair Proposed Intervenors' ability to carry out their voter registration, mobilization, education, and election protection efforts, and force them to identify, contact, and assist voters affected by the Complaint in time to participate in the upcoming 2024 General Election.

Proposed Intervenors satisfy each requirement for intervention as a matter of right under Rule 24(a)(2), and the Court should grant their motion to intervene. Alternatively, the motion should be granted on a permissive basis under Rule 24(b)(1).

## ARGUMENT

### I. PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE AS OF RIGHT UNDER RULE 24(A)(2).

Proposed Intervenors are entitled to intervene as of right. Under Rule 24(a)(2):

> Parties seeking to intervene [as of right] must show that: (1) [their] application to intervene is timely; (2) [they have] an interest relating to the property or transaction which is the subject of the action; (3) [they are] so situated that disposition of the action, as a practical matter, may impede or impair [their] ability to protect that interest; and (4) [their] interest is represented inadequately by the existing parties to the suit.

*Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 695-96 (11th Cir. 2017) (alterations in original) (internal quotations omitted). "[C]ourts should resolve 'doubt[s] concerning the propriety of allowing intervention . . . in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action.'" *Zone 4, Inc. v. Brown*, No. 19-00676, 2019 WL 7833901, at *5

(N.D. Ga. Aug. 6, 2019) (quoting *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993)). Proposed Intervenors meet the requirements for intervention as of right.

### A. The Motion Is Timely.

When courts examine timeliness, they consider four factors: (1) "the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before petitioning for leave to intervene;" (2) "the extent of the prejudice that existing parties may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest;" (3) "the extent of the prejudice that the would-be intervenor may suffer if denied the opportunity to intervene"; and (4) "the existence of unusual circumstances weighing for or against a determination of timeliness." *Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1171 (11th Cir. 2019) (internal quotations omitted).

Each timeliness factor weighs in favor of Proposed Intervenors. Proposed Intervenors have moved very quickly in seeking to intervene here. They are submitting this motion only days after learning of this litigation and the filing of the Complaint on September 26, 2024, *see* Compl., ECF No. 1, and before any responsive pleading would be due. As such, no existing party to the litigation is

harmed or prejudiced, and there are no unusual circumstances in this matter that bear on timeliness of intervention. Proposed Intervenors' motion is timely.

### B. Proposed Intervenors Have Significant and Strong Interests in Intervention.

"Under Rule 24(a)(2), a party is entitled to intervention as a matter of right if the party's interest in the subject matter of the litigation is direct, substantial and legally protectable." *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005) (internal quotations omitted). "In deciding whether a party has a protectable interest . . . courts must be 'flexible' and must 'focus[ ] on the particular facts and circumstances' of the case." *Huff v. Comm'r of IRS*, 743 F.3d 790, 796 (11th Cir. 2014) (second alteration in original).

Proposed Intervenors have at least two significant interests at stake in this litigation: (1) ensuring that eligible members and constituents they serve remain registered to vote and can successfully participate in the upcoming November 5, 2024 election, and (2) continuing to engage in critical election-year activities and other organizational priorities without the added effort of needing to identify, educate, and potentially re-register voters whose registrations would be affected as a result of Plaintiffs' requested relief.

As to their members, many are eligible voters who are registered to vote in Georgia and intend to vote on November 5, 2024. *See* Decl. of Gerald Griggs ("Griggs Decl."), attached hereto as Exhibit 2, at ¶ 11; Decl. of Helen Butler ("Butler

8

Decl."), attached hereto as Exhibit 3, at ¶ 11; Decl. of Nichola ("Hines Decl."), attached hereto as Exhibit 4, at ¶¶ 1, 4. The disposition of this suit risks directly impacting the members and constituents of Proposed Intervenors—eligible voters who at the very least stand to be subject to mass uncertainty and confusion, and who could be disenfranchised, if the Secretary is ordered to conduct immediate list maintenance during the NVRA quiet period. *See Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1307 (N.D. Ga. 2018) (finding intervention as of right to be appropriate where voter intervenors would be potentially disenfranchised by the requested relief); *Bellitto v. Snipes*, No. 16-61474, 2016 WL 5118568, at *2 (S.D. Fla. Sept. 20, 2016) (granting intervention where organization "asserts that its interest and the interests of its members would be threatened by the court-ordered 'voter list maintenance' sought by Plaintiffs"); *Pub. Int. Legal Found., Inc.* v. *Winfrey* ("*PILF*"), 463 F. Supp. 3d 795, 798-802 (E.D. Mich. 2020) (permitting League of Women Voters to intervene in NVRA suit demanding voter purge in order to protect interests of its members and "assure that no overzealous measures going beyond the reasonable list maintenance program required by the statute are employed, which could increase the risk of properly registered voters being removed by mistake").

Sending change-of-address notice mailings to voters identified by Plaintiffs' outdated and untested analysis—which has apparently not been provided to the Court—would not be a mere inconvenience for affected voters, but rather would

cause confusion and uncertainty as to the registration status and eligibility of Proposed Intervenors' members in the weeks immediately preceding an election. Plaintiffs filed their Complaint 19 days before the start of advance voting and 38 days *after* voters were able to begin requesting absentee ballots. Many voters, including members of Proposed Intervenor organizations, may have updated their voter registration information after Plaintiffs conducted their analysis and before Georgia's October 7 voter registration deadline. All Georgia voters, regardless of registration date, but particularly those who may have recently updated their registration, will face confusion and uncertainty as to their eligibility if Plaintiffs' request for relief is granted.

Proposed Intervenors also have an interest in protecting a critical component of their election-year programs and other organizational priorities—ensuring that their members, and all Georgians, are given a full and equal opportunity to exercise their fundamental right to vote. Griggs Decl., at ¶¶ 3-5; 11-12, 15-17; Butler Decl., at ¶¶ 4, 6, 9-10, 12-14; Hines Decl., at ¶¶ 4-8. To that end, Proposed Intervenors have been assisting their members and other prospective voters in registering to vote; educating them about voting in the November 5 General Election; and planning activities to mobilize these voters to the polls. Griggs Decl., at ¶¶ 10, 17; Butler Decl., at ¶¶ 4, 10, 14; Hines Decl., at ¶¶ 7-8. But their work is at risk of being undermined if this Court orders the Secretary of State to conduct mass voter roll

maintenance ahead of the General Election. This risk is particularly heightened here, where Proposed Intervenors would have to add to their ordinary work during the 90-day NVRA quiet period with additional voter education and voter registration work to deal with this change before the fast-approaching close of voter registration. Even after the close of voter registration on October 7, Proposed Intervenors will be forced to deal with the fallout from mailings sent to an unknown number of voters who will likely remain eligible to vote at their current address, or have already updated their registration since Plaintiffs conducted their purported analysis, but will receive mailings questioning their eligibility.

Courts routinely find that public interest organizations, like Proposed Intervenors, should be granted intervention in voting cases when they demonstrate harm to their core missions and activities. *See, e.g.*, *Kobach v U.S. Election Assistance Comm'n*, No. 13-4095, 2013 WL 6511874, at *4 (D. Kan. Dec. 12, 2013) (allowing advocacy groups to intervene where interests broadly articulated as "either increasing participation in the democratic process, or protecting voting rights, or both, particularly amongst minority and underprivileged communities").

Proposed Intervenors also have an interest in avoiding the need to expend resources responding to mass voter confusion resulting from voters receiving erroneous change of address notices or being wrongfully informed that they are no longer active voters, particularly during the pre-election time that is extraordinarily

11

busy for organizations such as Proposed Intervenors. As discussed above, consistent with their missions, Proposed Intervenors are already extraordinarily busy with a full slate of planned activities ahead of the General Election, including voter registration, voter education, and voter mobilization. Griggs Decl., at ¶¶ 10, 17; Butler Decl., at ¶¶ 4, 10, 14; Hines Decl., at ¶¶ 7-8. The Proposed Intervenors also have commitments to furthering their work in other areas such as criminal and economic justice reform. Griggs Decl., at ¶ 20; Butler Decl., at ¶ 15; *see also* Hines Decl., at ¶¶ 5. Their staff are already stretched thin, and an outcome in this case that requires Defendant to initiate improper list maintenance would further drain the Proposed Intervenors' limited resources. Griggs Decl., at ¶¶ 17-20; Butler Decl., at ¶¶ 6, 14-16; Hines Decl., at ¶ 12. In such a scenario, the Proposed Intervenors would be called on to assist voters who are confused or alarmed by an official election mailing questioning their eligibility to vote in the midst of an election, to conduct voter education and outreach to explain the impact of being placed into "inactive" status, and to follow-up with any members facing ongoing challenges prior to Election Day—all of which would require inordinate staff and volunteer time and resources these organizations cannot afford to lose. *Id. See also PILF*, 463 F. Supp. 3d 795, 798-802; *Issa v. Newsom*, No. 20-01055, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (permitting intervention by civil rights organizations on grounds that if plaintiffs won, then proposed intervenors would "have to devote their limited

resources to educating their members on California's current voting-by-mail system and assisting those members with the preparation of applications to vote by mail"). Proposed Intervenors have a significant protectable interest in the subject matter of this litigation.

### C. Proposed Intervenors and Their Members Will Be Prejudiced if They Are Not Permitted to Intervene.

When weighing Rule 24(a)(2)'s prejudice prong, courts examine whether "[t]he disposition of the action, as a practical matter, may impede or impair [a proposed intervenors'] ability to protect" their interests. *Tech. Training Assocs., Inc.*, 874 F.3d at 695-96 (internal quotations omitted). Importantly, Proposed Intervenors need not "establish that their interests *will* be impaired." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014). Prospective Intervenors are not required "to wait on the sidelines until after a court has already decided enough issues contrary to their interests." *Id*. at 345. This is because "[t]he very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions." *Id*.

As discussed in detail above, Proposed Intervenors are at risk of losing their ability to protect their interests and those of their members, and thus will be prejudiced if intervention is denied. *Supra* pp. 4-9. "Historically. . . throughout the country, voter registration and election practices have interfered with the ability of minority, low-income, and other traditionally disenfranchised communities to

participate in democracy." *Ind. State Conf. of NAACP v. Lawson*, 326 F. Supp. 3d 646, 650 (S.D. Ind. 2018), *aff'd sub nom*, *Common Cause Indiana v. Lawson*, 937 F.3d 944 (7th Cir. 2019). If Proposed Intervenors are denied the ability to intervene in this case, they risk disenfranchisement of their members and injury to their core organizational interests and programs, *see supra* pp. 4-9, particularly because Defendant is not situated to adequately protect those interests. *Infra* Section I(D).

### D. Proposed Intervenors' Interests Are Not Adequately Protected by Defendant.

The existing parties in this litigation do not adequately protect Proposed Intervenors' interests. The Eleventh Circuit has recognized that defendants who are elected officials and/or administer elections have divergent interests from intervening voters and voting rights organizations because those officials represent the interests of all voting citizens and have an interest in "remain[ing] popular and effective leaders." *Clark v. Putnam Cnty.*, 168 F.3d 458, 461-62 (11th Cir. 1999) (alteration in original) (internal quotations omitted). This principle squarely applies here: Secretary Raffensperger has responsibilities related to the administration of elections that are not necessarily aligned with the interests of Proposed Intervenors and may be adverse to them.

For example, as an elected official, Defendant's "interests and interpretation of the NVRA may not be aligned and its reasons for seeking dismissal" may very well be different from those of Proposed Intervenors. *Bellitto*, 2016 WL 5118568, at

*2. Proposed Intervenors have repeatedly sued this Defendant or his predecessors in office on various violations of voting laws, including the NVRA. *See, e.g.*, *Ga. State Conf. of the NAACP v. Georgia*, No. 17-1397, 2017 WL 9435558 (N.D. Ga. May 4, 2017) (successful National Voter Registration Act lawsuit brought against the Georgia Secretary of State); *see generally Ga. Coal. for the People's Agenda v. Deal*, No. 4:16-cv-00269-WTM (S.D. Ga.) (Moore, J.); *Ga. State Conf. of the NAACP v. Kemp*, No. 2:16-cv-219-WCO (N.D. Ga.) (O'Kelley, J.); *Ga. Coal. for the People's Agenda v. Raffensperger*, No. 1:18-cv-4727-ELR (N.D. Ga.) (Ross, J.); *Martin v. Raffensperger*, No. 1:18-cv-4776-LMM (N.D. Ga.) (May, J.); and *Common Cause v. Raffensperger,* No. 1:22-cv-00090-ELB-SCJ-SDG (N.D. Ga.) (Branch, J.; Jones, J.; Grimberg, J.). As such, a divergence of interests is to be expected. Additionally, the Defendant does not have an interest in ensuring the broad voter access that is fundamental to the mission of the Proposed Intervenors, but must balance the interests of Proposed Intervenors and other constituents, including those of the Plaintiffs. *See, e.g.*, *Meek v. Metro. Dade Cnty., Fla.*, 985 F.2d 1471, 1478 (11th Cir. 1993) ("The intervenors sought to advance their own interests in achieving the greatest possible participation in the political process. Dade County, on the other hand, was required to balance a range of interests likely to diverge from those of the intervenors."), *abrogated on other grounds*, *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007). Proposed Intervenors' interests therefore sufficiently

15

diverge from the existing parties to satisfy Rule 24(a)(2), and they meet the "minimal" burden of showing that their interests may be inadequately represented. *Clark*, 168 F.3d at 461.

Because Proposed Intervenors satisfy all four requirements for intervention as of right under Rule 24(a), the Court should grant their motion to intervene.

## II.  IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION.

"Permissive intervention under Fed. R. Civ. Proc. 24(b) is appropriate where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties." *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1250 (11th Cir. 2002). Even if the Court determines that Proposed Intervenors are not entitled to intervene as of right, the Court should exercise its broad discretion to grant permissive intervention.

Indeed, "it is wholly discretionary with the court whether to allow intervention under Rule 24(b). . . ." *Worlds v. Dep't of Health & Rehab. Servs.*, 929 F.2d 591, 595 (11th Cir. 1991). Proposed Intervenors represent a large number of Georgians whose votes are at risk if the relief sought is granted. Protecting the interests of these voters is a critical perspective that would serve the interests of the Court. Indeed, "a district court 'can consider almost any factor rationally relevant but enjoys very broad discretion in granting or denying the motion [to intervene].'" *In re Martinez*,

16

No. 24-CV-20492, -- F. Supp. 3d --, 2024 WL 2873137, at *6 (S.D. Fla. June 7, 2024). As such, this is an ideal instance for the Court to exercise its discretion and grant permissive intervention for several reasons.

First, Proposed Intervenors will assert defenses that squarely address the factual and legal premises of Plaintiffs' claims, including but not limited to: (1) whether the Defendant's actions challenged by Plaintiffs are legal under the NVRA; (2) whether Plaintiffs' proposed relief poses an unconstitutional burden on Georgia voters' fundamental right to vote; (3) the impact Plaintiffs' proposed relief would have on the Proposed Intervenors and their members, and (4) whether any of Plaintiffs' allegations, even if proven, would require the drastic remedy they seek.

Second, granting Proposed Intervenors' Motion at this early stage of the case will not delay or prejudice the adjudication of the original parties' rights, as explained above. *Supra* Section I(A). By contrast, refusing to permit intervention will deprive Proposed Intervenors of the chance to defend their significant and protectable interests in the litigation and could lead to unnecessary and duplicative litigation. *Supra* Sections I(B) and I(C).

## CONCLUSION

For the reasons stated above, the Court should grant Proposed Intervenors' Motion to Intervene, and upon the granting of this Motion, deem filed the Motion to Dismiss and accompanying Brief in Support attached to this Motion as Exhibit 1.

17

Respectfully submitted, this 2nd day of October, 2024.

*/s/ Gerry Weber*
Gerald Weber (GA Bar No. 744878)
Law Offices of Gerry Weber, LLC
Post Office Box 5391
Atlanta, Georgia 31107
Telephone: 404.522.0507
Email: wgerryweber@gmail.com

Ezra D. Rosenberg*
Julie M. Houk*
Pooja Chaudhuri*
Alexander S. Davis*
Heather Szilagyi*
erosenberg@lawyerscommittee.org
jhouk@lawyerscommittee.org
pchaudhuri@lawyerscommittee.org
adavis@lawyerscommittee.org
hszilagyi@lawyerscommittee.org
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

Caitlin May (Ga. Bar No. 602081)
Cory Isaacson (Ga. Bar No. 983797)
Akiva Freidlin (Ga. Bar No. 692290)
ACLU FOUNDATION OF
GEORGIA, INC.
P.O. Box 570738
Atlanta, Georgia 30357
(678) 310-3699
cisaacson@acluga.org
cmay@acluga.org
afreidlin@acluga.org

Theresa J. Lee*
Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
tlee@aclu.org
slakin@aclu.org

John S. Cusick*
Stuart Naifeh*
NAACP LEGAL DEFENSE
  & EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
jcusick@naacpldf.org
snaifeh@naacpldf.org

Avatara A. Smith-Carrington*
I. Sara Rohani*
NAACP LEGAL DEFENSE
  & EDUCATIONAL FUND, INC.
700 14th Street NW, Ste. 600
Washington, DC 20005
acarrington@naacpldf.org
srohani@naacpldf.org

R. Gary Spencer (Ga. Bar No. 671905)
NAACP LEGAL DEFENSE
  & EDUCATIONAL FUND, INC.
260 Peachtree St. NW, Ste 2300
Atlanta, GA 30303
gspencer@naacpldf.org

*motion for admission *pro hac vice* forthcoming

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1, the undersigned counsel hereby certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1.

Dated this 2nd day of October 2024.

                                          */s/ Gerald Weber*
                                        Georgia Bar No. 744878
                                        Law Offices of Gerry Weber, LLC
                                        PO Box 5391
                                        Atlanta, Georgia 31107
                                        Tel: (404) 522-0507
                                        Email: wgerryweber@gmail.com