# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| WILLIAM T. QUINN and DAVID CROSS, <br><br>     *Plaintiffs*, <br><br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia, <br><br>     *Defendant*. | Case 1:24-cv-04364-SCJ |

**PROPOSED INTERVENOR-DEFENDANTS GEORGIA STATE
CONFERENCE OF THE NAACP; GEORGIA COALITION FOR THE
PEOPLE'S AGENDA, INC.; AND LEAGUE OF WOMEN VOTERS OF
GEORGIA PROPOSED MOTION TO DISMISS**

COMES NOW GEORGIA STATE CONFERENCE OF THE NAACP; GEORGIA COALITION FOR THE PEOPLE'S AGENDA, INC.; and LEAGUE OF WOMEN VOTERS OF GEORGIA ("Proposed Intervenor-Defendants"), by and through their undersigned counsel of record, and file this Proposed Motion to Dismiss pursuant to the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

The basis for this motion is fully set forth in Proposed Intervenor-Defendants' Brief in Support of Proposed Motion to Dismiss.

1

Respectfully submitted, this 2nd day of October, 2024.

*/s/ Gerry Weber*
Gerald Weber (GA Bar No. 744878)
Law Offices of Gerry Weber, LLC
Post Office Box 5391
Atlanta, Georgia 31107
Telephone: 404.522.0507
Email: wgerryweber@gmail.com

Ezra D. Rosenberg*
Julie M. Houk*
Pooja Chaudhuri*
Alexander S. Davis*
Heather Szilagyi*
erosenberg@lawyerscommittee.org
jhouk@lawyerscommittee.org
pchaudhuri@lawyerscommittee.org
adavis@lawyerscommittee.org
hszilagyi@lawyerscommittee.org
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

Caitlin May (Ga. Bar No. 602081)
Cory Isaacson (Ga. Bar No. 983797)
Akiva Freidlin (Ga. Bar No. 692290)
ACLU FOUNDATION OF
GEORGIA, INC.
P.O. Box 570738
Atlanta, Georgia 30357
(678) 310-3699
cisaacson@acluga.org
cmay@acluga.org
afreidlin@acluga.org

Theresa J. Lee*
Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
tlee@aclu.org
slakin@aclu.org

John S. Cusick*
Stuart Naifeh*
NAACP LEGAL DEFENSE
   & EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
jcusick@naacpldf.org
snaifeh@naacpldf.org

Avatara A. Smith-Carrington*
I. Sara Rohani*
NAACP LEGAL DEFENSE
   & EDUCATIONAL FUND, INC.
700 14th Street NW, Ste. 600
Washington, DC 20005
acarrington@naacpldf.org
srohani@naacpldf.org

R. Gary Spencer (Ga. Bar No.
671905)
NAACP LEGAL DEFENSE
   & EDUCATIONAL FUND, INC.
260 Peachtree St. NW, Ste 2300
Atlanta, GA 30303
gspencer@naacpldf.org

*motion for admission *pro hac vice*
forthcoming

2

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1, the undersigned counsel hereby certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1.

Dated this 2nd day of October 2024.

*/s/ Gerald Weber*
Georgia Bar No. 744878
Law Offices of Gerry Weber, LLC
PO Box 5391
Atlanta, Georgia 31107
Tel: (404) 522-0507
Email: wgerryweber@gmail.com

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| WILLIAM T. QUINN and DAVID CROSS, | |
| *Plaintiffs*, | |
| v. | Case 1:24-cv-04364-SCJ |
| BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia, | |
| *Defendant*. | |

**BRIEF IN SUPPORT OF PROPOSED MOTION TO DISMISS BY
GEORGIA STATE CONFERENCE OF THE NAACP; GEORGIA
COALTION FOR THE PEOPLE'S AGENDA, INC.; AND LEAGUE OF
WOMEN VOTERS OF GEORGIA**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................... iii

INTRODUCTION ...................................................................................6

  I.   APPLICABLE LEGAL STANDARDS ..........................................7

    A.  RULE 12(B)(1) ....................................................................7

    B.  RULE 12(B)(6) ....................................................................8

  II.     ARGUMENT ...............................................................................9

    A.  THE COURT LACKS SUBJECT MATTER JURISDICTION OVER EACH OF PLAINTIFFS' CLAIMS ..........................................9

      1.  Plaintiffs Fail to Establish Constitutional Standing as Required Under Article III ................................................................9

      2.  Because No Original Jurisdiction Exists, the Court Has No Basis for Exercising Supplemental Jurisdiction Over Plaintiffs' State Law Claim in Count II................................................................13

    B.  THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED. ..................................................13

      1.  Plaintiffs Offer No Factual Allegations to State a Plausible Claim to Relief Under Count I or Count II ............................................14

      2.  Plaintiffs are Not Entitled to Mandamus Relief .....................19

CONCLUSION ......................................................................................21

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arcia v. Fla. Sec'y of State*,
    772 F.3d 1335 (11th Cir. 2014) ...........................................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...........................................................................................3

*Bellitto v. Snipes*,
    935 F.3d 1192 (11th Cir. 2019) ...........................................................................12

*Bost v. Ill. State Bd. of Elections*,
    684 F. Supp. 3d 720 (N.D. Ill. 2023), *aff'd*, No. 23-2644, 2024 WL
    3882901 (7th Cir. Aug. 21, 2024) ........................................................................6

*Cash v. Banhart*,
    327 F.3d 1252 (11th Cir. 2003) ...........................................................................15

*Charles H. Wesley Educ. Found., Inc. v. Cox*,
    408 F.3d 1349 (11th Cir. 2005) ...........................................................................7

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .......................................................................................4, 7

*Cone Corp. v. Fla. Dep't of Transp.*,
    921 F.2d 1190 (11th Cir. 1991) ...........................................................................2

*Eaton v. Dorchester Dev., Inc.*,
    692 F.2d 727 (11th Cir. 1982) ............................................................................2

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
    545 U.S. 546 (2005) ...........................................................................................8

*Flat Creek Transp., LLC v. Fed. Motor Carrier Safety Admin.*,
    923 F.3d 1295 (11th Cir. 2019) ...........................................................................3

*Lowery v. Deal,*
    850 F. Supp. 2d 1326 (N.D. Ga. 2012)....................................................................3

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992)...............................................................................4, 5, 7

*Majority Forward v. Ben Hill Cnty. Bd. of Elections,*
    512 F. Supp. 3d 1354 (M.D. Ga. 2021) ............................................................11

*Moore v. Circosta*,
    494 F. Supp. 3d 289 (M.D.N.C. 2020) ...............................................................6

*Nat'l Coal. for Students with Disabilities Educ., Legal Def. Fund v.*
    *Bush*,
    170 F. Supp. 2d 1205 (N.D. Fla. 2001)...........................................................11

*Powell v. Thomas,*
    643 F.3d 1300 (11th Cir. 2011)........................................................................3

*Soloski v. Adams,,*
    600 F. Supp. 2d 1276 (N.D. Ga. 2009).............................................................15

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ......................................................................................5

*Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections,*
    301 F. Supp. 3d 612 (E.D.N.C. 2017).............................................................10

*Wilding v. DNC Servs. Corp.*,
    941 F.3d 1116 (11th Cir. 2019).........................................................................4

*Wood v. Raffensperger.,*
    981 F.3d 1307 (11th Cir. 2020) .................................................................5, 6, 7

**Statutes**

28 U.S.C. § 1651 ....................................................................................................15

52 U.S.C. § 20507(a)(4)(B) ....................................................................................9

52 U.S.C. § 20507(C)(2) ...............................................................................12, 14

O.C.G.A. § 2-2-224(a)...........................................................................................13

iv

O.C.G.A. § 21-2-14 .................................................................................13

O.C.G.A. § 21-2-218 ...............................................................................13

O.C.G.A. § 21-2-230 ...............................................................................12

O.C.G.A. § 21-2-233 ...............................................................................11

O.C.G.A. § 21-2-381(a)(1)(A) ..................................................................13

O.C.G.A. § 21-2-381(a)(1)(G) ..................................................................13

O.C.G.A. § 21-2-385(d)(1) .......................................................................13

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) .............................................................................2

U.S. Department of Justice, *Voter Registration List Maintenance:*
  *Guidance under Section 8 of the National Voter Registration Act,*
  *52 U.S.C. § 20507*, Sept. 2024 ...........................................................12

## INTRODUCTION

Only 19 days before the start of advance voting in Georgia, and long after voters were able to begin requesting absentee ballots on August 19, Plaintiffs filed a Complaint requesting that this Court order the Georgia Secretary of State to urgently undertake a program designed to move voters identified by Plaintiffs into "inactive" status on the voter rolls before November 5, 2024. ECF No. 1 ("Compl."). The next day, Plaintiffs filed an *ex parte* Motion to Expedite, reaffirming their request for relief to be "completed" before the November General Election. ECF No. 4 at 1.

Not only is the 2024 General Election already underway, but Plaintiffs seek to have the Defendant review an unknown number of voter registrations from a months-old list in less than a week before the October 7, 2024 voter registration deadline. Also, Plaintiffs ignore that in the time since they purportedly conducted their analysis, voters have been, and continue to be, submitting new applications and updating their voter registration information prior to the October 7 deadline. Sending address confirmation notices to voters based on, at best, outdated evidence of their residence and voter registration address risks unleashing untold confusion in the final weeks of the General Election.

Both counts of Plaintiffs' Complaint must be dismissed. First, Plaintiffs do not have Article III standing to bring either of their claims. Additionally, because this Court does not have original jurisdiction over the action, it may not exercise

supplemental jurisdiction over Plaintiffs' state law claim. Second, Plaintiffs have not stated a claim upon which relief may be granted. Their request for relief has no basis in law, and Plaintiffs have not pleaded facts sufficient to provide a plausible basis for the drastic relief they seek.

Granting Plaintiffs' requested relief based on their admittedly unreliable data—which apparently has not even been disclosed to this Court—would risk confusing and disenfranchising voters and would undermine the integrity of Georgia's elections. Plaintiffs' Complaint should be dismissed in its entirety.

## I.      APPLICABLE LEGAL STANDARDS

### A. RULE 12(B)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a party to challenge the Court's subject-matter jurisdiction, meaning that parties may challenge plaintiffs' standing to assert their claims. Fed. R. Civ. P. 12(b)(1); *see Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991). Unlike Rule 12(b)(6), Rule 12(b)(1) does not require a court to view plaintiffs' allegations in a favorable light and permits a court to consider evidence refuting those allegations. *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 732 n.9 (11th Cir. 1982). Because Rule 12(b)(1) questions the court's jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations" and "the trial court is free to weigh the evidence and satisfy itself as to

the existence of its power to hear the case." *Flat Creek Transp., LLC v. Fed. Motor Carrier Safety Admin.*, 923 F.3d 1295, 1299 n.1 (11th Cir. 2019).

### B. RULE 12(B)(6)

Under Federal Rule of Civil Procedure Rule 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Lowery v. Deal*, 850 F. Supp. 2d 1326, 1330 (N.D. Ga. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although the allegations of a complaint must be accepted as true and construed in the light most favorable to the plaintiff, *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011), the court need not accept the plaintiff's legal conclusions or for that matter, legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678–79. The evaluation of a motion to dismiss requires two steps: the court must (1) eliminate any allegations in the complaint that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, "assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

## II.    ARGUMENT

### A. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER EACH OF PLAINTIFFS' CLAIMS.

Plaintiffs fail to allege bases for constitutional standing. Because Plaintiffs ultimately cannot maintain a case or controversy under the federal statutes, this Court does not have original jurisdiction and cannot exercise supplemental jurisdiction over Plaintiffs' state law claims in Count II. For these reasons, Plaintiffs' Complaint must be dismissed under Rule 12(b)(1) in its entirety.

#### 1. Plaintiffs Fail to Establish Constitutional Standing as Required Under Article III.

Federal courts are courts of limited jurisdiction, meaning they may hear only "cases" and "controversies" under Article III of the Constitution. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Standing to sue is one component of Article III's case or controversy requirement. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). This requirement extends not only to federal claims, but also to supplemental state law claims pleaded in federal court. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1130 (11th Cir. 2019). Furthermore, Plaintiffs must demonstrate standing for each form of relief sought. *Id.* at 1124–25.

To establish standing, Plaintiffs must demonstrate (1) an injury-in-fact, (2) that is fairly traceable to the challenged action of the defendant, and (3) is likely to be redressed by a favorable court decision. *Wood v. Raffensperger*, 981 F.3d 1307, 1313 (11th Cir. 2020); *Lujan*, 504 U.S. at 560–61. An injury in fact is "an invasion of a legally protected interest that is both concrete and particularized and actual or imminent, not conjectural or hypothetical." *Wood*, 981 F.3d at 1314. In other words, the injury must "affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). A "generalized grievance" that is "undifferentiated and common to all members of the public" does not confer standing. *Wood*, 981 F.3d at 1314 (quoting *Lujan*, 504 U.S. at 575).

Plaintiffs fail the first prong of this test. Neither of their claims contain allegations supporting a concrete and particularized injury. Indeed, Plaintiffs' theory of standing rests entirely on the "dilution" of Plaintiffs' right to vote by the presence of supposedly ineligible voters on the rolls. *See* Compl. ¶¶ 1, 2, 36. However, Plaintiffs fail to acknowledge that the Eleventh Circuit does not recognize this form of vote dilution as a cognizable injury.

Plaintiffs' injury of supposed "vote dilution" is not cognizable under Article III. Plaintiffs cite a handful of out-of-circuit district court cases in an effort to support an allegation that Plaintiffs' loss of "confidence in the electoral process" and burden on the right to vote in the form of vote dilution is "an actionable injury in fact."

Compl. ¶ 28. Unfortunately for Plaintiffs, the Eleventh Circuit plainly forecloses this theory. Under clear Eleventh Circuit precedent, mere speculation of vote dilution where "no single voter is specifically disadvantaged" is a "paradigmatic generalized grievance." *Wood*, 981 F.3d at 1314–15 (distinguishing from redistricting claims where voters in challenged district directly harmed compared to voters in other districts); *see also Bost v. Ill. State Bd. of Elections*, 684 F. Supp. 3d 720, 731 (N.D. Ill. 2023), *aff'd*, No. 23-2644, 2024 WL 3882901 (7th Cir. Aug. 21, 2024) (collecting cases where courts have "agreed that claims of vote dilution based on the existence of unlawful ballots fail to establish standing"); *Moore v. Circosta*, 494 F. Supp. 3d 289, 312 (M.D.N.C. 2020) (collecting cases).

Just like the voter in *Wood*, Plaintiffs here "cannot explain how [their] interest in compliance with state election laws is different from that of any other person." *Wood*, 981 F.3d at 1314; *see* Compl. ¶ 36 ("[T]his relief would protect Plaintiffs' and *all Georgia voters' right to vote* by safeguarding them from improper vote dilution.") (emphasis added). As such, vote dilution in the form of "the inclusion of unlawfully processed [] ballots" is not an injury-in-fact because "'no single voter is specifically disadvantaged' if a vote is counted improperly, even if the error might have a 'mathematical impact on the final tally and thus on the proportional effect of every vote.'" *Wood*, 981 F.3d at 1314.

11

Here, there is no concrete allegation that any ineligible voters will actually vote or are even included on the rolls. *See* Compl. ¶ 39. At best, Plaintiffs present hypotheticals that unlawful voting could take place, but provide no concrete factual allegations beyond this mere speculation that Georgia's elections have been or will be plagued by unlawful ballots. *See* Compl. ¶ 10 ("This is particularly important in the context of absentee voting, where a person could potentially vote multiple times, or third parties could submit votes without the person's knowledge."); *Clapper*, 568 U.S. at 401 (future injury must be "certainly impending" to satisfy Article III).

Plaintiffs' conclusory references to vote dilution, unlike the concrete allegations of specific vote dilution harms to specific voters in many vote-dilution cases, are therefore generalized grievances that do not support Article III standing.[1] Furthermore, because Plaintiffs cannot establish an injury-in-fact under the first prong, the Court need not consider causation and redressability. *See Wood*, 981 F.3d at 1314 (quoting *Lujan*, 504 U.S. at 575).

---

[1] That Count I alleges a violation of the NVRA does not change this analysis. Even if Plaintiffs could meet the NVRA's statutory prerequisites to suit, they still cannot satisfy Article III by alleging a "bare procedural violation" and must demonstrate a constitutional injury-in-fact. *See Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005) (state's rejection of plaintiff's federal registration form conferred standing under NVRA); *Nat'l Coal. for Students with Disabilities Educ., Legal Def. Fund v. Bush*, 170 F. Supp. 2d 1205, 1209–10 (N.D. Fla. 2001) (injury flowing from challenged statute's direct impact on disabled voters' ability to vote conferred standing under NVRA).

### 2. Because No Original Jurisdiction Exists, the Court Has No Basis for Exercising Supplemental Jurisdiction Over Plaintiffs' State Law Claim in Count II.

Plaintiffs allege a violation of state law, Georgia Code Section 21-2-233, in Count II of their Complaint, Compl. ¶¶ 47–50, and assert that the Court may exercise supplemental jurisdiction over this claim under 28 U.S.C. § 1367, Compl. ¶ 7. "[F]or a federal court to invoke supplemental jurisdiction . . . it must first have original jurisdiction over at least one claim in the action." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 554 (2005). As demonstrated in detail above, Plaintiffs have failed to establish the existence of a case and controversy for any claim, including their federal NVRA claim, under Article III. Therefore, they cannot maintain their state law claim in Count II in this Court.

Even assuming that Plaintiffs have established an Article III case or controversy, because, as explained below, the only federal cause of action in the Complaint must be dismissed for failure to state a claim, Plaintiffs cannot assert violations of state law in this litigation.

### B. THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Both Counts I and II complain of the same alleged violation: Georgia's inclusion of voters who have allegedly moved on the active voter list. Compl. at 13–16. Plaintiffs fail to specify the relief they seek or the source of that relief. *See* Compl. at 1, 17 (Plaintiffs request injunctive *or* mandamus relief). However,

13

Plaintiffs' Complaint fails to state a claim for any form of relief because it does not include any factual allegations about Defendant's list maintenance practices, nor does it so much as gesture at facts supporting an allegation that Defendant has violated the law in any way. This is fatal to Plaintiffs' claims, and the Complaint should be dismissed pursuant to Rule 12(b)(6).

### 1. Plaintiffs Offer No Factual Allegations to State a Plausible Claim to Relief Under Count I or Count II.

Count I alleges that Defendant has violated Section 8(a) of the NVRA by failing to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to a change in address. Compl. ¶¶ 11, 43; 52 U.S.C. § 20507(a)(4)(B). Similarly, Count II alleges that Defendant has violated Section 21-2-233 of the Georgia Code, which implements certain list maintenance provisions of the NVRA, by failing "(i) to adequately compare the state's voter lists to the change of address information supplied by the United States Postal Service, (ii) to send notices to voters who appear to have moved to a different jurisdiction, and (iii) to mark inactive those voters who fail to respond to the notice within 30 days." Compl. ¶¶ 7, 15, 48. Each of Plaintiffs' counts therefore alleges a violation of list maintenance law, but Plaintiffs allege no facts regarding the State's list maintenance process or lack thereof, nor the timing of its list maintenance activities. This deficiency is fatal to their claim.

First, Plaintiffs' fundamental allegation is that the Secretary of State "has not provided any indication that the state will look into" the registrations identified by Plaintiffs "or take action to confirm their validity as required by law." Compl. ¶ 1. But an allegation that, at worst, the Secretary chose not to act on the admittedly outdated research submitted by a private citizen does not come close to alleging a violation of law. Plaintiffs do not allege any facts outlining the Secretary's list maintenance program or otherwise allege how it violates the NVRA or state law.

Instead, Plaintiffs rely on one North Carolina district court case for the proposition that "reliable data" can support an inference of improper list maintenance, even without allegations pertaining to the defendant's actual list maintenance practices. Compl. ¶ 33 (citing *Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, 301 F. Supp. 3d 612, 619 (E.D.N.C. 2017)). Plaintiffs' problem here is that the "reliable data" used in North Carolina was U.S. Census data, which courts have previously found to be reliable, *Voter Integrity Project*, 301 F. Supp. 3d at 619–20, not outdated analysis of dubious origin like that included without citation or attribution in Plaintiffs' Complaint. Plaintiffs themselves allege that they do not have a factual basis to support the reliability of their analysis. *See* Compl. ¶ 39. In fact, there is a high likelihood that their analysis is inaccurate. *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1346 (11th Cir. 2014) (noting systematic programs undertaken on eve of election increase risk that voters may be

misidentified due to unintentional mistakes in Secretary's data-matching process); *Majority Forward v. Ben Hill Cnty. Bd. of Elections*, 512 F. Supp. 3d 1354, 1369 (M.D. Ga. 2021) (noting inaccuracies in the thousands of residency challenges brought based on database matching between the voter list and the voter's name in the U.S. Postal Service's National Change of Address ("NCOA") database). A single out-of-circuit district court case is not a blank check to throw "data" at the wall to see what sticks. As Plaintiffs themselves admit that they cannot attest to the accuracy of the analysis undergirding their Complaint, it cannot plausibly be used to support a reasonable inference that Defendant has violated the law.

Second, even assuming the plausibility of the reliability of Plaintiffs' voter roll analysis, their claims must be dismissed because their requested relief has no basis in either the NVRA or state law. As Plaintiffs themselves allege, "the NVRA does not require states to follow a specific program to maintain the accuracy of its voter lists . . . ." Compl. ¶ 12. Similarly, Georgia law grants explicit "discretion" to the Secretary of State under the code provision cited by Plaintiffs. O.C.G.A. § 21-2-233. Plaintiffs recognize the Secretary's explanation that "the county offices mailed notices to Georgia voters who filed a National Change of Address form with the U.S. Post Office," Compl. ¶ 26, and they do not dispute that these notices have in fact been sent, nor do they allege that the Secretary has not removed voters who have failed to respond to the notices as permitted by the NVRA. That failure is fatal to

Plaintiffs claim: The NVRA requires no more of the Secretary or county offices than what Plaintiffs concede they have done. *See Bellitto v. Snipes*, 935 F.3d 1192, 1203–05 (11th Cir. 2019). That Plaintiffs are dissatisfied with the results of that program does not give rise to a claim that the program fails to satisfy the NVRA.

Moreover, where the Secretary has implemented a list maintenance program using the National Change of Address system, neither the NVRA nor Georgia Code Section 21-2-233 requires the Secretary of State to take the action demanded by Plaintiffs. More important, neither statute requires—nor do they even contemplate—the Secretary of State bypassing the process of comparing the voter list to NCOA data himself and instead relying on information supplied by private individuals to circumvent statutory list maintenance processes.[2] In fact, taking such action within 90 days of the General Election would violate federal law. 52 U.S.C. § 20507(C)(2) (banning certain systematic list maintenance within 90 days of a federal election); U.S. Department of Justice, *Voter Registration List Maintenance: Guidance under Section 8 of the National Voter Registration Act, 52 U.S.C. § 20507*, Sept. 2024, at

---

[2] By submitting a list of voter registrations to the Secretary of State, Plaintiffs appear to be attempting to bypass existing state law on voter challenges. *See* O.C.G.A. § 21-2-230 (postponing challenges within 45 days of an election until after certification and explaining "[i]f a challenged elector's name appears on the National Change of Address data base, as maintained by the United States Postal Service, as having changed such elector's residence to a different jurisdiction, the presence of such elector's name on such data base shall be insufficient cause to sustain the challenge against the elector unless additional evidence would indicate that the elector has lost his or her residency . . .").

4, https://www.justice.gov/crt/media/1366561/dl ("This 90-day deadline applies to State list maintenance verification activities such as general mailings and door-to-door canvasses. **This deadline also applies to list maintenance programs based on third-party challenges derived from any large, computerized data-matching process.**").

Third, even assuming they had a meritorious claim—and they do not— Plaintiffs' request for equitable relief is too little, too late. Plaintiffs are seeking highly disruptive federal court intervention into Georgia election administration after ballots have already been requested. Indeed, Plaintiffs fail to acknowledge that the relief they seek is impossible to implement on their requested timeline. Even if this Court did require the Secretary of State to send out mailings to all voters flagged by Plaintiffs' dubious analysis by this Friday, October 4, this relief would be ineffective as voters have been able to request absentee ballots for the General Election since August and will begin advance voting on October 15. *See* O.C.G.A. §§ 21-2-381(a)(1)(A); 21-2-381(a)(1)(G); 21-2-385(d)(1); 21-2-14.

Moreover, the voter registration deadline is Monday, October 7. O.C.G.A. §§ 2-2-224(a), 21-2-218. Even assuming Plaintiffs correctly identified some voters as having changed their residence, many may have submitted new applications and updated their registration addresses by the deadline. Timely received applications will not all be processed by October 7 due to the volume of new registrations and

18

updates that counties typically receive ahead of major elections. Additionally, if these voters have moved within the same jurisdiction, they can update their current address when they request a ballot. In short, granting the relief Plaintiffs seek on the timeline they identified would be ineffective and unleash widespread confusion on both voters and election officials.

Finally, even if the relief Plaintiffs seek was appropriate as a remedy for failure to carry out a list maintenance program, granting it now would violate the NVRA'S 90-day bar, and nothing in the NVRA suggests that one violation can be remedied by committing another. *See* 52 U.S.C. § 20507(C)(2). If Plaintiffs thought the state was failing to carry out the required general program, they should have brought the claim prior to the 90-day period, not weeks before a presidential election. As the relief Plaintiffs seek pertains only to the November 2024 election, *see* Compl. ¶¶ 45, 50, their Complaint does not request any equitable relief that this Court has the power to give.

Because Plaintiffs' claims are not supported by adequate factual allegations and fail as a matter of law, their Complaint fails to state a claim for which relief can be granted and should be dismissed.

### 2. Plaintiffs are Not Entitled to Mandamus Relief.

Plaintiffs seek either "[a] writ of mandamus or an injunction" directing the Georgia Secretary of State to send notices to all voters who Plaintiffs allege have

moved outside of the jurisdiction. Compl. at 17. As described above, Plaintiffs are not entitled to declaratory relief or an injunction because they have failed to plead factual allegations amounting to a violation of the NVRA or Georgia law. To the extent they seek mandamus relief, their demand also fails.[3]

Mandamus "is an extraordinary" and "equitable remedy" "which should be utilized only in the clearest and most compelling of cases." *Cash v. Banhart*, 327 F.3d 1252, 1257 (11th Cir. 2003). Mandamus relief is appropriate only when: (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear, non-discretionary duty to act; and (3) "no other adequate remedy [is] available." *Id.*

Plaintiffs fail on all factors. The Secretary of State does not owe any legal duty to Plaintiffs and cannot be compelled by a writ of mandamus to carry out a discretionary function. Section 8(a)(4) requires only a "reasonable" program of list maintenance. Use of the word "reasonable" demonstrates that there inherently is

---

[3] As Plaintiffs filed their claim in federal court, their request for mandamus relief can be best interpreted as an invocation of the All Writs Act, which provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law," and further provides that "[a]n alternative writ or rule nisi may be issued by a justice or judge of a court [with jurisdiction.]" 28 U.S.C. § 1651. However, assuming Plaintiffs seek additional mandamus relief under state law, their claims fail for the same reasons described above, namely that Plaintiffs have not adequately pleaded any allegations entitling them to this extraordinary relief. *See Soloski v. Adams*, 600 F. Supp. 2d 1276, 1289 (N.D. Ga. 2009) (mandamus is "extraordinary relief" that "will issue against a public officer: (1) when there is a clear legal right to the relief sought; or (2) when there has been a gross abuse of discretion").

discretion afforded under that provision, and thus mandamus is inappropriate. And Section 21-2-223(a) explicitly grants the Secretary of State "discretion" to compare the voter rolls to USPS NCOA data. Nor do Plaintiffs allege—because they cannot— that they have a legal right to compel the Secretary to conduct list maintenance merely because they believe more could be done. For the foregoing reasons, there is no basis for the Court to draw a reasonable inference that mandamus is appropriate here.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint in its entirety.

Respectfully submitted, this 2nd day of October, 2024.

*/s/ Gerry Weber*
Gerald Weber (GA Bar No. 744878)
Law Offices of Gerry Weber, LLC
Post Office Box 5391
Atlanta, Georgia 31107
Telephone: 404.522.0507
Email: wgerryweber@gmail.com

Ezra D. Rosenberg*
Julie M. Houk*
Pooja Chaudhuri*
Alexander S. Davis*
Heather Szilagyi*
erosenberg@lawyerscommittee.org
jhouk@lawyerscommittee.org
pchaudhuri@lawyerscommittee.org
adavis@lawyerscommittee.org
hszilagyi@lawyerscommittee.org
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

Caitlin May (Ga. Bar No. 602081)
Cory Isaacson (Ga. Bar No. 983797)
Akiva Freidlin (Ga. Bar No. 692290)
ACLU FOUNDATION OF
GEORGIA, INC.
P.O. Box 570738
Atlanta, Georgia 30357
(678) 310-3699
cisaacson@acluga.org
cmay@acluga.org
afreidlin@acluga.org

Theresa J. Lee*
Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
tlee@aclu.org
slakin@aclu.org

John S. Cusick*
Stuart Naifeh*
NAACP LEGAL DEFENSE
   & EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
jcusick@naacpldf.org
snaifeh@naacpldf.org

Avatara A. Smith-Carrington*
I. Sara Rohani*
NAACP LEGAL DEFENSE
   & EDUCATIONAL FUND, INC.
700 14th Street NW, Ste. 600
Washington, DC 20005
acarrington@naacpldf.org
srohani@naacpldf.org

R. Gary Spencer (Ga. Bar No.
671905)
NAACP LEGAL DEFENSE
   & EDUCATIONAL FUND, INC.
260 Peachtree St. NW, Ste 2300
Atlanta, GA 30303
gspencer@naacpldf.org

*motion for admission *pro hac vice*
forthcoming

22

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1, the undersigned counsel hereby certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1.

Dated this 2nd day of October 2024.

*/s/ Gerald Weber*
Georgia Bar No. 744878
Law Offices of Gerry Weber, LLC
PO Box 5391
Atlanta, Georgia 31107
Tel: (404) 522-0507
Email: wgerryweber@gmail.com

23