# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| WILLIAM T. QUINN and DAVID CROSS,<br><br>*Plaintiffs,*<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia,<br><br>*Defendant,*<br><br>and<br><br>GALEO LATINO COMMUNITY DEVELOPMENT FUND, INC., and COMMON CAUSE GEORGIA,<br><br>*Defendant-Intervenors, Counterclaim Plaintiffs, and Cross-Claimants* | <u>Civil Action Number</u><br><br>1:24-CV-4364-SCJ |

## <u>MEMORANDUM IN SUPPORT OF MOTION OF GALEO LATINO COMMUNITY DEVELOPMENT FUND, INC. AND COMMON CAUSE GEORGIA TO INTERVENE</u>

GALEO LATINO COMMUNITY DEVELOPMENT FUND, INC. ("GALEO") and COMMON CAUSE GEORGIA ("Common Cause") move, pursuant to Rule 24(a)(2) of the Federal Rule of Civil Procedure, to intervene as of right as Defendants in this matter or, in the alternative, for permissive intervention pursuant to Rule 24(b). Pursuant to Rule 24(c), proposed Defendant-Intervenors' Answer, Counterclaim, and Cross-Claim is attached hereto as **Exhibit A**.

# INTRODUCTION AND BACKGROUND

Plaintiffs—two individual Gwinnett County registered voters—bring claims under the NVRA and state election law, alleging that Georgia has failed to conduct reasonable list maintenance activities. *See generally* Compl., ECF No. 1. They seek declaratory and injunctive relief—including a directive for the state to engage in **statewide** systemized list maintenance activity within 90 days of the November 5, 2024, presidential election, by changing registered voters' status on the voter registration rolls from "active" to "inactive," based on a list of names supplied by Plaintiffs, whom Plaintiffs believe to have moved out of state. *Id.* ¶¶ 42-50 & Pr. for Relief. Plaintiffs allege that they compiled their list based on their comparison of voter file data that was purchased from the Secretary of State in July 2024 against National Change of Address (NCOA) data from the U.S. Postal Service. *Id.* ¶¶ 20-25. Plaintiffs also concede that the Secretary of State had publicly announced eight months earlier that his office was undertaking a "comprehensive off-year list maintenance effort" in October 2023. *Id.* ¶ 26.

GALEO is a civil rights organization dedicated to increasing civic participation of the Latino/Hispanic community and developing prominent Latino leaders throughout Georgia. Decl. of Gerardo E. Gonzalez [hereinafter "Gonzalez

Decl."] ¶ 4 (attached as **Exhibit B**). GALEO seeks to intervene on behalf of its members and on behalf of itself. Plaintiffs' requested relief not only threatens the fundamental right to vote of GALEO's members but also would cause GALEO to divert organizational resources from their voter mobilization, education, and election protection efforts to identify, contact, and assist voters affected by the Complaint in time to participate in the upcoming 2024 General Election. *Id.* ¶¶ 9-13.

Similarly, Common Cause is one of the nation's leading nonprofit grassroots democracy-focused organizations and has over 1.2 million members nationwide and chapters in 25 states, including Georgia. Decl. of John W. Young, III [hereinafter "Young Decl."] ¶ 4 (attached as **Exhibit C**). Common Cause seeks to intervene on behalf of its members and on behalf of itself. Plaintiffs' requested relief not only threatens the fundamental right to vote of Common Cause's members but also would cause Common Cause to divert organizational resources from their voter mobilization, education, and election protection efforts to identify, contact, and assist voters affected by the Complaint in time to participate in the upcoming 2024 General Election. *Id.* ¶¶ 10-20.

The existing Defendant, Secretary of State Brad Raffensperger, does not adequately represent Defendant-Intervenors' interests. While the Secretary

represents the interests of the state government, as they relate to the implementation of the NVRA, he is not well positioned to represent the individual interests of Defendant-Intervenors. Because Defendant-Intervenors satisfy each requirement for intervention as a matter of right under Rule 24(a)(2), the Court should grant their motion to intervene. Alternatively, the Court should allow Defendant-Intervenors to intervene permissively under Rule 24(b)(2).

## ARGUMENT

### I. DEFENDANT-INTERVENORS ARE ENTITLED TO INTERVENE AS OF RIGHT UNDER RULE 24(A)(2).

Defendant-Intervenors are entitled to intervene as of right here. Under Rule 24(a)(2):

> Parties seeking to intervene [as of right] must show that: (1) [their] application to intervene is timely; (2) [they have] an interest relating to the property or transaction which is the subject of the action; (3) [they are] so situated that disposition of the action, as a practical matter, may impede or impair [their] ability to protect that interest; and (4) [their] interest is represented inadequately by the existing parties to the suit.

*Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 695-96 (11th Cir. 2017) (alterations in original) (internal quotations omitted). "[C]ourts should resolve 'doubt[s] concerning the propriety of allowing intervention ... in favor

of the proposed intervenors because it allows the court to resolve all related disputes in a single action.'" *Zone 4, Inc. v. Brown*, No. 19-00676, 2019 WL 7833901, at *5 (N.D. Ga. Aug. 6, 2019) (quoting *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993)). Defendant-Intervenors meet the requirements of interventions as of right here.

**A. The Motion is Timely.**

When courts examine timeliness, they consider four factors: (1) "the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before petitioning for leave to intervene;" (2) "the extent of the prejudice that existing parties may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest;" (3) "the extent of the prejudice that the would-be intervenor may suffer if denied the opportunity to intervene"; and (4) "the existence of unusual circumstances weighing for or against a determination of timeliness." *Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1171 (11th Cir. 2019) (internal quotations omitted).

Each of the timeliness factors weighs in favor of Defendant-Intervenors. Defendant-Intervenors have not delayed in filing—they learned of this litigation

shortly after its filing and are submitting this motion shortly after the filing of the Complaint on September 26, 2024, *see* Compl., ECF No. 1, and before any Answer would be due. As such, no existing party to the litigation is harmed or prejudiced here, and there are no unusual circumstances in this matter that bear on timeliness of intervention. Defendant-Intervenors' motion is timely.

### B. Defendant-Intervenors Have Significant and Strong Interests in Intervention.

"Under Rule 24(a)(2), a party is entitled to intervene as a matter of right if the party's interest in the subject matter of the litigation is direct, substantial and legally protectable." *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc*., 425 F.3d 1308, 1311 (11th Cir. 2005) (internal quotations omitted). "In deciding whether a party has a protectable interest . . . courts must be 'flexible' and must 'focus[ ] on the particular facts and circumstances' of the case." *Huff v. Comm'r of IRS*, 743 F.3d 790, 796 (11th Cir. 2014) (second alteration in original).

Defendant-Intervenors have significant interests at stake in this litigation both on behalf of their members and as to their organizational mission. Many of their members are registered to vote in Georgia and intend to vote on November 5, 2024. *See* Gonzalez Decl. ¶ 6; Young Decl. ¶ 12. The disposition of this suit will directly

impact the members and constituents of Defendant-Intervenors whose voting rights risk impairment if the state is ordered to conduct immediate list maintenance during the NVRA 90-day quiet period. *See Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1307 (N.D. Ga. 2018) (finding intervention as of right to be appropriate where voter intervenors would be potentially disenfranchised by the requested relief); *Bellitto v. Snipes*, No. 16-61474, 2016 WL 5118568, at *2 (S.D. Fla. Sept. 20, 2016) (granting intervention where organization "asserts that its interest and the interests of its members would be threatened by the court-ordered 'voter list maintenance' sought by Plaintiffs"); *Pub. Int. Legal Found., Inc.* v. *Winfrey* ("*PILF*"), 463 F. Supp. 3d 795, 798-802 (E.D. Mich. 2020) (permitting League intervention in NVRA suit to purge voters in order to protect interests of its members and "assure that no overzealous measures going beyond the reasonable list maintenance program required by the statute are employed, which could increase the risk of properly registered voters being removed by mistake").

Defendant-Intervenors also have an interest in protecting a critical component of their core mission—ensuring that their members and their broader constituency of Black and Brown people (among others) are given a full and equal opportunity to exercise their fundamental right to vote. Gonzalez Decl. ¶¶ 9-14.; Young Decl. ¶¶

7

10-15. They have had to divert staff time away from planning for voter registration activities in the final days before the October 7, 2024, voter registration deadline in Georgia and instead pivot to combatting Plaintiffs' efforts to lodge mass voter challenges across the state. Gonzalez Decl. ¶ 11; Young Decl. ¶¶ 15-17. Courts routinely find that public interest organizations, like Defendant-Intervenors, should be granted intervention in voting cases when they demonstrate harm to their core missions. *Kobach v U.S. Election Assistance Comm'n*, No. 13-4095, 2013 WL 6511874, at *4 (D. Kan. Dec. 12, 2013) (allowing advocacy groups to intervene where interests broadly articulated as "either increasing participation in the democratic process, or protecting voting rights, or both, particularly amongst minority and underprivileged communities").

Defendant-Intervenors also have interests related to resource expenditure—in furtherance of their core mission to protect the right to vote of their constituents—that support intervention. Gonzalez Decl. ¶ 11; Young Decl. ¶¶ 7, 15-16; *see also PILF*, 463 F. Supp. 3d 795, 798-802; *Issa v. Newsom*, No. 20-01055, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (permitting intervention by civil rights organizations on grounds that if plaintiffs won, then proposed intervenors would "have to devote their limited resources to educating their members on California's

current voting-by-mail system and assisting those members with the preparation of applications to vote by mail").

Defendant-Intervenors, thus, articulate a significant protectible interest in intervention.

### C. Defendant-Intervenors and Their Members Will Be Prejudiced If They Are Not Permitted to Intervene.

When weighing Rule 25(a)(2)'s prejudice prong, courts examine whether "[t]he disposition of the action, as a practical matter, may impede or impair [a GALEO's] ability to protect" their interests. *Tech. Training Assocs., Inc.*, 874 F.3d at 695-96 (internal quotations omitted). Importantly, Defendant-Intervenors need not "establish that their interests *will* be impaired." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014). "It would indeed be a questionable rule that would require prospective intervenors to wait on the sidelines until after a court has already decided enough issues contrary to their interests. The very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions. *Id*. at 344-45.

As discussed in detail above, Defendant-Intervenors are at risk of losing their ability to protect their interests and those of their members, and thus will be

9

prejudiced if intervention is denied. *Supra* pp. 5-8. "Historically. . . throughout the country, voter registration and election practices have interfered with the ability of minority, low-income, and other traditionally disenfranchised communities to participate in democracy." *Ind. State Conf. of NAACP v. Lawson*, 326 F. Supp. 3d 646, 650 (S.D. Ind. 2018), *aff'd sub nom*, *Common Cause Indiana v. Lawson*, 937 F.3d 944 (7th Cir. 2019). If Defendant-Intervenors are denied the ability to intervene in this case, it risks potential disenfranchisement of its members and injury to their core organizational interests and programs, *see supra* pp. 5-8, particularly because Defendant is not situated to adequately protect those interests. *Infra* Section I(D).

### D. Defendant-Intervenors' Interests Are Not Adequately Protected by Defendant.

Defendant-Intervenors can easily demonstrate that the existing parties in the litigation may not protect their interests. The Eleventh Circuit has recognized that defendants who are elected officials and administer elections have divergent interests from intervening voters and voting rights organizations because they represent the interests of all voting citizens and have an interest in "remain[ing] popular and effective leaders." *Clark v. Putnam Cnty.*, 168 F.3d 458, 461-62 (11th Cir. 1999) (alteration in original) (internal quotations omitted). This principle

squarely applies here: Secretary Raffensperger has unique responsibilities related to the administration of elections that do not necessarily further the interests of Defendant-Intervenors.

For example, as an elected official, the Secretary's "interests and interpretation of the NVRA may not be aligned and its reasons for seeking dismissal" may very well be different from those of Defendant-Intervenors. *Bellitto*, 2016 WL 5118568, at *2. Indeed, here, Defendant-Intervenors are nominally adverse to the Secretary, against whom they seek declaratory and permanent injunctive relief as a part of their Counterclaim/Crossclaim. *See* Proposed Answer, Counterclaim, and Cross-Claim (attached as **Exhibit D**). As such, a divergence of interests is to be entirely expected.

Additionally, Defendant does not have a direct interest in protecting individual voting rights of Defendant-Intervenors' members. Nor does Defendant's interest in ensuring broad voter access necessarily mirror the missions of Defendant-Intervenors. *See, e.g.*, *Meek v. Metro. Dade Cnty., Fla.*, 985 F.2d 1471, 1478 (11th Cir. 1993) ("The intervenors sought to advance their own interests in achieving the greatest possible participation in the political process. Dade County, on the other hand, was required to balance a range of interests likely to diverge from those of the

intervenors."), *abrogated on other grounds*, *Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007). Defendant-Intervenors' interests therefore sufficiently diverge from the existing parties to satisfy Rule 24(a)(2).

## II. IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION.

Even if the Court determines that Defendant-Intervenors are not entitled to intervene as a matter of right, the Court should exercise its broad discretion to grant permissive intervention. "Permissive intervention under Fed. R. Civ. Proc. 24(b) is appropriate where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties." *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1250 (11th Cir. 2002).

Defendant-Intervenors meet the requirements for permissive intervention here. First, Defendant-Intervenors will assert defenses that squarely address the factual and legal premises of Plaintiffs' claims, including whether the relief Plaintiffs seek are legal under the National Voter Registration Act of 1993.

Second, granting Defendant-Intervenors' Motion at this early stage of the case will not delay or prejudice the adjudication of the original parties' rights, as

explained above. *Supra* Section I(A). By contrast, refusing to permit intervention will deprive Defendant-Intervenors of the chance to defend their significant and protectable interests in the litigation. *Supra* Sections I(B) and I(C).

## **CONCLUSION**

For the reasons stated above, the Court should grant Defendant-Intervenors' Motion to Intervene.

Respectfully submitted this 2nd day of October, 2024.

| | |
|---|---|
| **/s/ Bradley E. Heard**<br>Bradley E. Heard<br>(GA Bar No. 342209)<br>Avner M. Shapiro*<br>Jack Genberg<br>(GA Bar No. 144076)<br>SOUTHERN POVERTY LAW CENTER<br>1101 17th St NW Ste 550<br>Washington, DC 20036<br>Telephone: (888) 414-7752 | Courtney O'Donnell<br>(GA Bar No. 164720)<br>Pichaya Poy Winichakul<br>(GA Bar 246858)<br>SOUTHERN POVERTY LAW CENTER<br>150 E Ponce de Leon Ave Ste 340<br>Decatur, GA 30030<br>Telephone: (404) 521-6700<br><br>*Counsel for GALEO Latino Community Development Fund, Inc., and Common Cause Georgia*<br><br>* *Pro hac vice* application to be filed |

## CERTIFICATION OF FONT AND POINT SIZE

Pursuant to Local Rule 7.1(D), this will certify that the within and foregoing document was prepared with one of the font and point selections approved by the Court in Local Rule 5.1(B), specifically Times New Roman, 14 point.

This 2nd day of October, 2024.

*/s/ Bradley E. Heard*
Bradley E. Heard (GA Bar # 342209)

## CERTIFICATE OF SERVICE

This will certify that I have this day filed the within and foregoing **Notice of Appeal** electronically using the CM/ECF filing system, which automatically sends notice and a copy of the filing to all counsel of record via electronic mail.

This 2nd day of October, 2024.

*/s/ Bradley E. Heard*
Bradley E. Heard (GA Bar # 342209)