## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

WILLIAM T. QUINN and DAVID
CROSS,

*Plaintiffs,*

v.

BRAD RAFFENSPERGER, in his
official capacity as Secretary of State
of Georgia,

*Defendant,*

and

GALEO LATINO COMMUNITY
DEVELOPMENT FUND, INC., and
COMMON CAUSE GEORGIA,

*Defendant-Intervenors, Counterclaim
Plaintiffs, and Cross-Claimants*

**Civil Action Number**

**1:24-CV-4364-SCJ**

## COMBINED BRIEF IN SUPPORT OF GALEO LATINO COMMUNITY DEVELOPMENT FUND, INC. AND COMMON CAUSE GEORGIA'S EXPEDITED MOTION FOR JUDGMENT ON THE PLEADINGS AGAINST PLAINTIFFS, AND OF THEIR EXPEDITED MOTION FOR PRELIMINARY INJUNCTION, OR, IN THE ALTERNATIVE, FOR EXPEDITED SUMMARY JUDGMENT AGAINST DEFENDANT

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ......................................................................................2

II. BACKGROUND.......................................................................................4

   A. Statutory Background.......................................................................4

   B. Factual Background…........................................................................6

III.   LEGAL STANDARD.............................................................................8

IV.   ARGUMENT.......................................................................................10

   A. GALEO and Common Cause are Entitled to Declaratory Relief………....…10

   B. GALEO and Common Cause are Entitled to Judgment on the Pleadings......10

   C. GALEO and Common Cause are Entitled to
   Preliminary Injunctive Relief………………………………………………13

      1. GALEO and Common Cause are Likely to
      Succeed on the Merits of Their Claim…………………………………13

      2. GALEO and Common Cause will
      Suffer Irreparable Harm Absent Injunctive Relief.………………………16

      3. The Balance of Equities Favors Granting Injunctive Relief………....…19

      4. A Preliminary Injunction is in the Public's Interest………………………19

   D. GALEO and Common Cause are Entitled to Summary Judgment…………21

V. CONCLUSION....................................................................................21

Defendant-Intervenors GALEO LATINO COMMUNITY DEVELOPMENT FUND, INC. ("GALEO") and COMMON CAUSE GEORGIA ("Common Cause") move for: (1) judgment on the pleadings against Plaintiffs' Complaint, ECF No. 1; (2) a preliminary injunction preventing Plaintiffs' requested relief of having defendant, BRAD RAFFENSPERGER ("Secretary of State") to engage in list maintenance activities within 90 days of a federal election, or, in the alternative, summary judgment against Plaintiffs WILLIAM T. QUINN and DAVID CROSS ("Plaintiffs"), declaring their requested relief would force Defendant Secretary of State Brad Raffensperger to engage in list maintenance activities within 90 days of a federal election in violation of Sections 8(c) of the NVRA and Section 8(d)'s notice-and-waiting requirement; and (3) a preliminary injunction or, in the alternative, summary judgment against the defendant, BRAD RAFFENSPERGER ("Secretary of State") enjoining him from undertaking any systematic list maintenance activity within 90 days of a federal primary or general election and ordering him to instruct local county registrars to refrain from conducting any such activity during that period.[1]

---

[1]To be clear, Plaintiffs requested relief is for the Secretary of State to conduct systematic list maintenance pursuant to Section 8 of the NVRA and O.C.G.A. § 21-2-233, Georgia's state law counterpart. Defendant-Intervenors' references to "mass challenges" requested by Plaintiffs, (e.g., ECF No. 10 at 8, Ex. A at 11, 13, 19), generally refer to Plaintiffs' requested relief under those statutory provisions. Georgia law provides additional means of challenging voters' registration status or

## I.   __INTRODUCTION__

The National Voter Registration Act of 1993, 52 U.S.C. § 20501 et seq. ("NVRA") protects the fundamental right to vote by mandating that a voter may be removed from the registration rolls based on a change in residence under only two circumstances: (1) when the state has received the voter's written confirmation that the voter moved outside the county in which they were registered, or (2) when the state has complied with the NVRA's notice-and-waiting period provisions. 52 U.S.C. § 20507(d). The NVRA further protects the right to vote by prohibiting any systematic program the purpose of which is to remove registered voters from the rolls within 90 days of a federal election. *Id.* § 20507(c)(2)(A).

In this case, Plaintiffs are seeking to have the Secretary of State conduct statewide list maintenance within 90 days of a federal election and without proper notice. Specifically, Plaintiffs seek to have thousands of active, registered voters in Georgia removed from the "official list of electors" and placed onto a separately maintained "inactive list of electors." *See* O.C.G.A. § 21-2-235.[2]

---

eligibility within 90 days of a federal election. *See, e.g.*, O.C.G.A. §§ 21-2-229, 29-2-230. Many of the requests local county registrars receive from individuals like Plaintiffs are brought under these state "challenge" procedures. All of these state-law-based methods of contesting the status of active, registered voters in Georgia, if used in a systematic manner, are prohibited by the NVRA.

[2] Voters on the inactive list of electors are not counted in computing the number of ballots required for an election, the number of voting devices needed for a precinct, or the number of electors required to divide or constitute a precinct.

This case is part of a pattern, as anti-democracy activists and election deniers have filed multiple frivolous lawsuits throughout Georgia asking courts for relief that directly contravenes the NVRA. S*ee, e.g.*, *Frazier v. Fulton Cnty. Dep't of Registration & Elections*, No. 1:24-CV-03819-SCJ (N.D. Ga. 2024) (voluntarily dismissed for lack of statutory standing), *Henderson et al. v. Abhiraman et al.*, No. 24CV8564 (DeKalb Cnty. Sup. Ct.), *Heimel v. Gregg*, SUSR2024000058-LL (Oconee Cnty. Sup. Ct.). Their baseless attempts violate federal and state law; cause confusion for voters, including for GALEO's and Common Cause's members and constituents; and purposely sow doubt in our electoral process. Furthermore, the relief Plaintiffs and other like-minded individuals seek, if granted, would create unnecessary work for hard-working elections officials who are already overburdened in the lead up to the election with early voting beginning next week.

By bringing this declaratory judgment action, Defendant-Intervenors seek to clarify the respective rights and responsibilities of Plaintiffs, the Secretary of State, and Defendant-Intervenors. Specifically, GALEO and Common Cause seek a declaration that Plaintiffs' request to the Secretary of State to inactivate thousands of voters is unlawful under the NVRA. They also seek to enjoin the Secretary of State from complying with Plaintiffs' requested relief and violating the NVRA mere

---

O.C.G.A. § 21-2-235(a). Inactive voters may still vote in elections under certain circumstances, *id.* § 21-2-235(c), but are nevertheless not deemed to be on the state's official list of electors.

3

weeks before the 2024 election. Finally, Defendant-Intervenors seek an order directing the Secretary of State to provide appropriate instruction and guidance to local county registrars by directing them not to conduct—and not entertain or act on requests by private parties for them to conduct—systematic list maintenance activities within 90 days of an election for federal office.

## II.    BACKGROUND

### A.    Statutory Background

Enacted in 1993, the NVRA establishes uniform procedures and practices for voter registration and voter registration list maintenance for federal elections. *See* 52 U.S.C. §§ 20501-11. The purposes of the Act are:

(1) to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office;

(2) to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of eligible citizens as voters in elections for Federal office;

(3) to protect the integrity of the electoral process; and

(4) to ensure that accurate and current voter registration rolls are maintained.

*Id*. § 20501(b). Passage of the NVRA followed extensive hearings, which grounded Congress's findings that:

(1) the right of citizens of the United States to vote is a fundamental right;

(2) it is the duty of the Federal, State, and local governments to promote the exercise of that right; and

(3) discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities.

*Id.* § 20501(a); *see also* S. Rep. No. 103-6, at 2-4 (1993) (Senate Report); H.R. Rep. No. 103-9, at 2-5 (1993) (House Report).

Section 8 of the NVRA sets out requirements for the administration of voter registration for elections for federal office. *See* 52 U.S.C § 20507. Section 8(c)(2), the Quiet Period Provision, specifically directs that a "State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." *Id.* § 20507(c)(2). "It is intended by this requirement that the State outreach activity, such as the mailing of list verification notices or conducting a canvas, must be concluded not later than 90 days before an election." Senate Report at 18-19; *see also* House Report at 16 ("This requirement applies to the State outreach activity such as a mailing or a door-to-door canvas and requires that such activity be completed by the 90-day deadline."). This general prohibition does not preclude removal of names from official lists of voters at the request of the registrant, by reason of criminal conviction or mental incapacity, or by reason of the death of the registrant or the correction of registration records pursuant to the NVRA. *See id.* § 20507(c)(2)(B); *see also* Senate Report at 19; House Report at 16. But the Quiet Period Provision does govern removals based on failure to meet initial eligibility criteria. *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1343-48 (11th Cir. 2014).

**B.      Factual Background**

Plaintiffs—two individual Gwinnett County registered voters—bring claims under the NVRA and state election law, alleging that Georgia has failed to conduct reasonable list maintenance activities. *See generally* Compl., ECF No. 1. They seek declaratory and injunctive relief—including a directive for the state to engage in a **statewide** systemized list maintenance activity within 90 days of the November 5, 2024, presidential election, by changing registered voters' status on voter registration rolls from "active" to "inactive," based on a list of names supplied by Plaintiffs, whom Plaintiffs believe to have moved out of state. *Id.* ¶¶ 42-50 & Pr. For Relief.

Plaintiffs allege that they compiled their list based on their comparison of voter file data that was purchased from the Secretary of State in June 2024 against National Change of Address (NCOA) data from the U.S. Postal Service. *Id.* ¶¶ 20-25. As an initial matter, Plaintiffs' September 2024 list of supposedly ineligible voters was admittedly based on NCOA data that was at least three months out of date. *See id.* Ex. A at 3-4. This lag in time itself creates inaccuracies in the data matching process. For example, given that the voter registration deadline was October 7, 2024, even assuming Plaintiffs correctly identified some voters that changed addresses, many could have submitted new applications and updated their registration address by the deadline.

6

Moreover, courts across the country have recognized that NCOA data alone cannot deem someone immediately ineligible to vote in a specific jurisdiction. "If the NCOA data is the only evidence of a change of residence, the voter is presumptively eligible to vote," *Majority Forward v. Ben Hill Cnty. Bd. of Elections*, 512 F. Supp. 3d 1354, 1361 (M.D. Ga. 2021) (citing and agreeing with election official that "if the NCOA data is the only evidence of a change of residence, the voter is presumptively eligible to vote"), because determining voter ineligibility by NCOA data is "substantially overinclusive." *Common Cause/New York v. Brehm*, 432 F. Supp. 3d 285, 297–98 (S.D.N.Y. 2020) (stating that using the NCOA as a "prox[y] . . . to determine voter movement [is] substantially overinclusive" and that errors can occur "in matching registration records to the NCOA registry" because the NCOA's "'primary purpose . . . is to support the U.S. Post Office' and it therefore 'does not collect certain data, like date of birth, that would help election officials to link the NCOA data to registration records.'"). This is precisely why the notice-and-waiting period provided by Section 8(d) of the NVRA and the 90-day Quiet Period mandated by Section 8(c) of the NVRA are important: NCOA data is at once an incomplete and overinclusive tool for adjudging voter qualifications.

Here, Plaintiffs sent a letter to the Secretary of State on September 3, 2024. (ECF No. 1 Compl., Ex. A). This letter provides no details of the methodology used to compare the county voter registration lists against the NCOA registry. Plaintiffs

78319759;1

simply provide: "the Aggrieved Persons accessed a list of voter registrations that was purchased from the Georgia Secretary of State . . . the names and addresses for each voter were submitted through the USPS Coding Accuracy Support System and compared to information from the USPS Change of Address database . . . ." *Id.*, Exhibit 1, pg. 3. This provides no information about how Plaintiffs' list of alleged ineligible voters was derived. Without a detailed explanation, it is impossible to determine the reliability or accuracy of the proposed list of ineligible voters. In fact, this Court has previously recognized that Georgia's reliance on NCOA data to remove individuals from the voter rolls likely resulted in mistaken cancellations of lawful, eligible voters. *See Black Voters Matter Fund v. Raffensperger*, 508 F. Supp. 3d 1283, 1298 (N.D. Ga. 2020).

## III.   <u>LEGAL STANDARD</u>

For purposes of declaratory relief, "for a controversy to exist, the facts alleged, under all the circumstances, must show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995).

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. In determining whether a party is entitled to judgment on the pleadings, we accept as

78319759;1

true all material facts alleged in the non-moving party's pleading, and we view those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (citations omitted). The standard mirrors that of a dismissal motion under Rule 12(b)(6). *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1297 (11th Cir. 2024) ("For both 12(b)(6) and 12(c) motions we accept the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff.")

For a preliminary injunction to be granted, the party requesting relief must show: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities favors the moving party; and (4) that the public interest would be served by granting the injunction. *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Hitt v. CSX Transp., Inc.*, --- F.4th ---, 2024 WL 4112568, at *5 (11th Cir. Sept. 9, 2024). "[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). Because the material facts are undisputed, this case is ripe for summary judgment.

# IV.   **ARGUMENT**

## A.    **GALEO and Common Cause are Entitled to Declaratory Relief**

As discussed above, Plaintiffs' requested relief to conduct statewide systematic list maintenance in the weeks before a general federal election, and similar requests from other individuals to local registrars across Georgia, have created a substantial controversy as among GALEO, Common Cause, and their members and constituents; the Secretary of State and local registrars; and Plaintiffs and their allies—all of whom have "adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Atlanta Gas Light Co.*, 68 F.3d at 414. Without a declaration from this Court to clarify whether Plaintiffs' requested relief would violate the NVRA, Defendant-Intervenors are left without guidance as to their respective rights, as well as those of the Secretary of State and Plaintiffs.

## B.    **GALEO and Common Cause are Entitled to Judgment on the Pleadings[3]**

The pleadings clearly demonstrate that even in taking the vague and insufficient facts alleged in Plaintiffs' Complaint, as true, Plaintiffs have failed to state an appropriate claim for relief that can survive GALEO's and Common Cause's

---

[3] GALEO and Common Cause likewise concur with the arguments of proposed intervenors Georgia NAACP, Georgia Coalition for the People's Agenda, and League of Women Voters of Georgia in support of dismissal of the Complaint under Rule 12(b)(6) for failure to state a claim. *See* ECF No. 8-2 at 13-21.

challenge. As such, GALEO and Common Cause are entitled to judgment on the pleadings. *Johnson*, 107 F.4th at 1297.

Plaintiff alleges that Defendant violated Section 8(a) of the NVRA by failing to "conduct a general program that makes a reasonable effort to remove the names of ineligible votes from the official lists of eligible votes" due to a change in address. ECF No. 1. Additionally, Plaintiffs allege that Defendant violated O.C.G.A. § 21-2-233, by failing to "(i) adequately compare the state's voter lists to the change of address information supplied by the United States Postal Service, (ii) send notices to voters who appear to have moved to a different jurisdiction, and (iii) mark inactive those voters who fail to respond to the notice within 30 days." *Id*. at ¶¶ 7, 15, 48. However, in support of this allegation Plaintiffs failed to articulate to any reasonable degree of specificity how the Secretary's list maintenance program violates the NVRA or state law. In fact, Plaintiffs provide evidence to the contrary, by alleging that the Secretary of State "on October 2, 2023, published a press release *describing* list maintenance activities performed by county election officials that week." *Id*. at ¶ 26.

Moreover, the lack of factual allegations to support Plaintiffs' Complaint is further demonstrated by Plaintiffs' own admission that "the NVRA does not require states to follow a specific program to maintain the accuracy of voter lists …" *Id*. ¶ 12. Similarly, Plaintiffs admit that the Secretary of State has explicit discretion to

78319759;1

compare the list of voters to the change of address information supplied by the U.S. Postal Office to maintain the accuracy of voter lists pursuant to O.C.G.A. § 21-2-233. Notably, Plaintiffs do not dispute that the Secretary of State complied with O.C.G.A. § 21-2-233 by sending out the requisite notices to registered Georgia voters who filed a change of address with the U.S. Post Office, nor do they allege that the Secretary of State has not removed voters who failed to respond as permitted by the NVRA. This is fatal to Plaintiffs' Complaint and a basis for GALEO's and Common Cause's request for judgment on the pleadings. It is simple: the NVRA and Georgia state law requires no more of the Secretary of State than what Plaintiffs allege he has done. *See Bellitto v. Snipes,* 935 F.3d 1192, 1203-05 (11th Cir. 2019). Most importantly, if Plaintiffs' requested relief were granted, it would undoubtedly violate federal law as it would occur within 90 days of a federal election. 52 U.S.C. § 20507(C)(2) (banning systemic list maintenance within 90 days of a federal election).

Therefore, based on the foregoing, GALEO and Common Cause are entitled to judgment on the pleadings.

**C.      GALEO and Common Cause are Entitled to Preliminary Injunctive Relief**

**1.      GALEO and Common Cause are Likely to Succeed on the Merits of Their Claim.**

GALEO and Common Cause are likely to succeed on the merits on their claim for declaratory judgment and accompanying injunctive relief because Plaintiffs' requested relief would require the Secretary of State to violate the NVRA by performing systematic list activities within 90 days of a federal election and placing them onto the "inactive" list of electors. It is undisputed that for more than 20 years, the NVRA has prohibited systematic list maintenance activities within 90 days of a federal election. 52 U.S.C. § 20507(c)(2)(A). The text of Section 8(c) of the NVRA is crystal clear: "A State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the office list of eligible voters." 52 U.S.C. § 20507(c)(2)(A). This 90-day "Quiet Period" is designed to prevent the exact types of frenzied purge activities that voter suppressors had traditionally engaged in prior to the enactment of the NVRA, the results of which tended to impact citizens of color negatively and disproportionally.

The NVRA provides for limited and specific exceptions to the 90-day period established by Section 8(c)(2)(A), but none of these exceptions are alleged or apply in this case. Section 8(c)(2)(B) makes clear that the only exceptions to the 90-day

period are (1) if the voter requests removal; (2) if the registrant is disqualified under state law for criminal convictions or mental incapacity; or (3) if the voter has died. *See* 52 U.S.C. § 20507(c)(2)(B). There is no exception in the statute to provide the relief requested by Plaintiffs – for the Secretary of State to remove voters from the list of eligible voters based on the Plaintiffs' claim that they claim have permanently moved outside of the jurisdiction in which they are currently registered.

It is undisputed that the time to conduct and complete non-excepted systematic removal programs is *before* the 90-day Quiet Period. Any attempts to do so *within* that timeframe violate the plain text of Section 8(c) of the NVRA. *See N.C. State Conf. of NAACP v. Bipartisan Bd. of Elections & Ethics Enforcement*, No. 1:16-CV-1274, 2018 WL 3748172, at *6-7 (M.D.N.C. Aug. 7, 2018) (where a county's removal of voters "lack[s] individualized inquiry," rests on "generic evidence" such as mass mailings, and occurs within 90 days of a federal election, it violates Section 8(c) of the NVRA.) In *N.C. State Conf. of NAACP*, the court relied heavily on the Eleventh Circuit's NVRA analysis in *Arcia*, 772 F.3d at 1346, which held that "the NVRA's prohibition on systematically removing voters within 90 days of the general election 'is designed to carefully balance these four competing purposes in the NVRA . . . by limiting its reach to programs that 'systematically' remove voters from the voter rolls' but allowing removals 'based on individualized information at any time.'" *N.C. State Conf. of NAACP*, 2018 WL 3748172, at *6 (quoting *Arcia*, 772 F.3d at 1346).

Not only does Plaintiffs' requested relief violate Section 8(c) of the NVRA, but the statute's legislative history also supports the very relief that GALEO and Common Cause seek. The Senate Committee made clear that the 90-day Quiet Period "applies to the State outreach activity such as a mailing or a door-to-door canvas and requires that such activity be completed by the 90-day deadline." S. Rep. No. 103-6, at *32. "This section does not prohibit a State during that 90-day pre-election day period from removing names from the official list of eligible voters on the basis of the request of the registrant, as provided by State law for criminal conviction or mental incapacity, death, or any other correction of registration records pursuant to the Act." *Id*. By providing a quiet period during which states are prohibited, with limited exceptions, from conducting list maintenance programs within 90 days of an election for Federal office, the NVRA protects against legitimate voters being dropped from the rolls right before the election, and it ensures voters have adequate notice and a fair opportunity to respond to registration issues long before the election.

Section 8(d) of the NVRA also prohibits—*at all times*—the removal of registered voters from the rolls based on an alleged change of address until after the voter has received written notice from an election official and then either failed to respond to that notice or failed to vote for two consecutive federal general election cycles after the notice was sent. *Id*. § 20507(d). Here again, Congress sought through

the NVRA to counteract "discriminatory and unfair registration laws and procedures [that] can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities." *Id.* § 20501(a)(3).

Here, Plaintiffs are seeking to induce the Secretary of State into removing thousands of active, registered Georgia voters from the official list of eligible electors by placing them onto the "inactive" list of voters within the 90-day Quiet Period, which began on August 7, 2024. Plaintiffs' questionable, haphazard, and unproven "matching" of Georgia's voter file data with National Change of Address ("NCOA") data from the U.S. Postal Service is unquestionably "systematic" in nature and seeks to pressure the Secretary of State into unlawfully changing the registration status of thousands of registered Georgia voters. Transferring thousands of active, registered voters to inactive status would interfere with those voters' ability to cast a regular ballot on or prior to Election Day. Based on the aforementioned, it is clear that GALEO and Common Cause are likely to succeed on the merits of their claim for declaratory judgment and accompanying injunctive relief that Plaintiffs' requested relief would violate the NVRA.

### 2. GALEO and Common Cause will Suffer Irreparable Harm Absent Injunctive Relief.

Without a declaratory judgment and accompanying injunctive relief that Plaintiffs' requested relief violates the NVRA, and if the Secretary of State is

78319759;1

persuaded or induced by Plaintiffs to conduct immediate list maintenance during the NVRA 90-day quiet period, it would cause irreparable harm to GALEO, Common Cause, and their members and constituents.

In terms of GALEO and Common Cause as organizations, it would frustrate and impede their core missions, including efforts to increase civic engagement, leadership development, and political participation of Latino/Hispanic communities across Georgia (Gonzalez Decl. [ECF No. 10-3] ¶¶ 4 & 8), combat voter suppression (Young Decl. [ECF No. 10-4] ¶ 14), and strengthen democracy and public accountability. (Young Decl. [ECF No. 10-4] ¶ 5) *See Ga. Coalition for People's Agenda, Inc. v. Kemp*, 347 F. Supp. 3d 1251, 1268 (N.D. Ga. 2018) ("Moreover, the Court finds that Plaintiffs, as organizations, will also suffer irreparable injury distinct from the injuries of eligible voters. Without an injunction . . . , Plaintiffs' organizational missions, including registration and mobilization efforts, will continue to be frustrated and organization resources will be diverted to assist with the citizenship mismatch issue. Such mobilization opportunities cannot be remedied once lost.")

In terms of GALEO and Common Cause's members' ability to vote in the November 5th election, as this Court has previously observed, "a restriction on an individual's right to vote often constitutes an irreparable injury." *Black Voters Matter*, 508 F. Supp. 3d at 1301 (citing *League of Women Voters of Fla. v. Browning*,

863 F. Supp. 2d 1155, 1167 (N.D. Fla. 2012)). If "constitutional rights are threatened or impaired, irreparable injury is presumed." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012); *Democratic Party of Ga., Inc. v. Crittenden*, 347 F. Supp. 3d 1324, 1346 (N.D. Ga. 2018) ("[T]the disenfranchisement of the right to vote is an irreparable injury and one that cannot easily be redressed."). GALEO and Common Cause have "alleged that their members would suffer this irreparable harm," (*see* Gonzalez Decl. [ECF No. 10-3] ¶ 6; Young Decl. [ECF No. 10-4] ¶ 12) and so "may [be] able to show that they too would suffer irreparable harm." *Id.* (citing *U.S. Student Ass'n Found. v. Land*, 585 F. Supp. 2d 925, 944 (E.D. Mich. 2008)). Once the election occurs, "there can be no do-over and no redress." *League of Women Voters of N.C. v. N.C.*, 769 F.3d 224, 247 (4th Cir. 2014). These actions also restrict GALEO's and Common Cause's ability to mobilize and turn out voters for subsequent elections—the type of injury to election-related activities that courts routinely recognize as irreparable harm, *see Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1350 (N.D. Ga. 2016); *League of Women Voters of Fla.*, 863 F. Supp. 2d at 1167. Accordingly, if GALEO and Common Cause are not granted declaratory judgment or injunctive relief to prevent systematic list maintenance from occurring, the organizations and their members will suffer irreparable harm.

### 3.    The Balance of Equities Favors Granting Injunctive Relief.

The harm to GALEO and Common Cause and the public far outweighs any burden on the Secretary of State—in fact, there is *no* harm or burden. The requested injunction seeks to restrain the Secretary of State from acting and would actually alleviate the administrative burden of resolving the Plaintiffs' frivolous request to change thousands of voters to inactive status. Courts have held that injunctions requiring minimal effort by the non-movant pass muster. *See Charles H. Wesley Educ. Found., Inc. v. Cox*, 324 F. Supp. 2d 1358, 1368 (N.D. Ga. 2004) ("If issued, the injunction would simply require the State of Georgia to process the sixty-four applications received on June 14 and any others received in a similar fashion in the future."); *Fish v. Kobach*, 189 F. Supp. 3d 1107, 1148 (D. Kan. 2016) ("As an initial matter, the Court finds no distinct burden associated with the Department of Revenue's compliance with the proposed injunction. The injunction appears to require nothing more than the status quo enforcement efforts by DMV employees[.]")

### 4.    A Preliminary Injunction is in the Public's Interest.

The public interest strongly favors the protection of voting rights, which are fundamental to the democratic process. Ensuring that all eligible voters have an opportunity to participate in elections without interference aligns with the purposes of the NVRA. *See Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349,

1355 (11th Cir. 2005) ("[C]autious protection of [] franchise-related rights is without question in the public interest.") Defendant "labor[s] under a duty of accountability to the public in ensuring that voter lists include eligible voters and exclude ineligible ones in the most accurate manner possible." *Id.* And, "[b]y definition, the public interest favors permitting as many qualified voters to vote as possible," and "upholding constitutional rights serves the public interest." *Ga. State Conf. of NAACP v. Georgia*, No. 1:17-CV-1397-TCB, 2017 WL 9435558, at *5 (N.D. Ga. May 4, 2017) (quoting *League of Women Voters of N.C.*, 769 F.3d at 247); *see Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1310–11 (N.D. Ga. 2018) ("[T]he public interest is best served by allowing qualified absentee voters to vote and have their votes counted.")

Here, preliminary relief that declares Plaintiffs' requested relief violates the NVRA and enjoins the Secretary of State from undertaking any such systematic activities within 90 days of the federal general election will benefit the public. The unlawful inactivation of thousands of eligible, active, and registered voters creates an unacceptable risk that voters will be unable to exercise their fundamental rights, and that they may not know this until it is too late, *i.e.*, when they arrive at the polling place. *Arcia*, 772 F.3d at 1346 ("Eligible voters removed days or weeks before Election Day will likely not be able to correct the State's errors in time to vote.") Indeed, the right to vote without "interference and harassment" is crucial in a

democratic society. *Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1221 (11th Cir. 2009) ("[V]oting is about the most important thing there is."). Where, as here, there is a "substantial likelihood of success on the merits," ensuring that more voters have a chance to vote serves the public interest. *Ga. State Conf. of the NAACP v. Fayette Cnty. Bd. of Comm'rs*, 118 F. Supp. 3d 1338, 1348–49 (N.D. Ga. 2015) (citing *Charles H. Wesley Educ. Found.*, 408 F.3d at 1355).

### D.    GALEO and Common Cause are Entitled to Summary Judgment

As discussed extensively above, GALEO and Common Cause are entitled to summary judgment as there are no disputed facts at issue (*see* Statement of Undisputed Facts submitted contemporaneously with the motion for summary judgment) and they have sufficiently demonstrated that they are entitled to judgment as a matter of law. Therefore, GALEO and Common Cause respectfully request that this Court grant summary judgment on their behalf.

## V.    CONCLUSION

GALEO and Common Cause have shown that they are entitled to a judgment on the Pleadings with respect to Plaintiffs' complaint, which fails to state a claim upon which relief can be granted. Defendant-Intervenors have also met their burden for a preliminary injunction, or in the alternative for immediate summary judgment, to be entered on their behalf with respect to their Counterclaim/Cross-claim. Accordingly, for the reasons outlined above, GALEO and Common Cause

78319759;1

respectfully request that the Court GRANT Defendant-Intervenors' motions and issue an Order:

- Entering judgment in Defendant-Intervenors' favor on Plaintiffs' Complaint, which fails to state a claim upon which relief can be granted.
- Declaring Plaintiffs' requested relief to require Defendant Secretary of State Raffensperger to change the voter registration status of thousands of identified Georgia voters from "active" to "inactive" within 90 days of a federal election violates Sections 8(c) and (d) of the NVRA, notwithstanding any state law to the contrary.
- Enjoining the Secretary of State from undertaking any systematic activities within 90 days of a federal primary or general election to identify, remove, declare "inactive," or otherwise change the "active" status of registered voters who are suspected of having become ineligible to vote based on a change of their residence to a place outside of their registered jurisdiction;
- Enjoining the Secretary of State to instruct all county registrars of the NVRA's prohibition, within 90 days of a federal election, from conducting any systematic activities—either voluntarily or pursuant to a privately initiated mass challenge—to identify, remove, declare "inactive," or otherwise change the "active" status of registered voters who are suspected of having become ineligible to vote based on a change of their residence to a place outside of their registered jurisdiction; and
- Granting such additional and further relief as this Court deems just and proper.

Respectfully submitted this 11th day of October, 2024.

| | |
|---|---|
| Bradley E. Heard | ***/s/ Montoya M. Ho-Sang*** |
| (GA Bar No. 342209) | Montoya M. Ho-Sang |
| bradley.heard@splcenter.org | Georgia Bar No: 572105 |
| Avner M. Shapiro* | montoya.ho-sang@akerman.com |
| avner.shapiro@splcenter.org | **AKERMAN LLP** |
| Jack Genberg | 999 Peachtree Street, NE Suite 1700 |
| (GA Bar No. 144076) | Atlanta, Georgia 30309 |
| jack.genberg@splcenter.org | (404) 733-9812 – Telephone |
| **SOUTHERN POVERTY LAW CENTER** | (404) 733-733-9912 – Facsimile |
| 1101 17th St NW Ste 550 | |
| Washington, DC 20036 | Scott E. Allbright, Jr.* |
| Telephone: (888) 414-7752 | scott.allbright@akerman.com |
| | **AKERMAN LLP** |

| | |
|---|---|
| Courtney O'Donnell<br>(GA Bar No. 164720)<br>courtney.odonnell@splcenter.org<br>Pichaya Poy Winichakul<br>(GA Bar 246858)<br>poy.winichakul@splcenter.org<br>**SOUTHERN POVERTY LAW CENTER**<br>150 E Ponce de Leon Ave Ste 340<br>Decatur, GA 30030<br>Telephone: (404) 521-6700<br><br>*Co-Counsel for Defendant-Intervenors*<br>*GALEO Latino Community*<br>*Development Fund and Common*<br>*Cause Georgia*<br><br>\**Pro hac vice* application to be filed | 98 Southeast Seventh Street, Suite 1100<br>Miami, FL 33131<br>(305) 374-5600 – Telephone<br>(305) 374-5095 – Facsimile<br><br>*Co-Counsel for Defendant-Intervenors*<br>*GALEO Latino Community*<br>*Development Fund and Common*<br>*Cause Georgia*<br><br>\**Pro hac vice* application to be filed |

## <u>CERTIFICATION OF FONT AND POINT SIZE</u>

Pursuant to Local Rule 7.1(D), this will certify that the within and foregoing document was prepared with one of the font and point selections approved by the Court in Local Rule 5.1(B), specifically Times New Roman, 14 point.

This 11th day of October, 2024.

***/s/ Montoya M. Ho-Sang***
Montoya M. Ho-Sang (GA Bar # 572105)

78319759;1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing **COMBINED BRIEF IN SUPPORT OF GALEO LATINO COMMUNITY DEVELOPMENT FUND, INC. AND COMMON CAUSE GEORGIA'S EXPEDITED MOTION FOR JUDGMENT ON THE PLEADINGS AGAINST PLAINTIFFS, AND OF THEIR EXPEDITED MOTION FOR PRELIMINARY INJUNCTION, OR, IN THE ALTERNATIVE, FOR EXPEDITED SUMMARY JUDGMENT AGAINST DEFENDANT** with the Clerk of Court using the CM/ECF filing system, which automatically sends notice and a copy of the filing to all counsel of record via electronic mail.

This 11th day of October, 2024.

*/s/ Montoya M. Ho-Sang*
Montoya M. Ho-Sang
Georgia Bar No. 572105

*Co-Counsel for Defendant-Intervenors*
*GALEO Latino Community*
*Development Fund and Common*
*Cause Georgia*

78319759;1