## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| WILLIAM T. QUINN AND DAVID CROSS, <br><br> Plaintiffs, <br><br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia, <br><br> Defendant. | C.A. No. 1:24-cv-04364-SCJ |

## PLAINTIFFS' RESPONSE TO GALEO LATINO COMMUNITY DEVELOPMENT FUND, INC. AND COMMON CAUSE GEORGIA'S MOTION TO INTERVENE

## TABLE OF CONTENTS

INTRODUCTION ..............................................................................1

FACTUAL BACKGROUND ...............................................................2

ARGUMENT ....................................................................................3

      I.     Movants Do Not Have the Right to Intervene ......................................3

           A.     Movants' Motion is Untimely Because It is Premature..............4

           B.     Movants Lack a Direct, Substantial, and Legally Protectable Interest Related to the Subject of This Action...........................5

           C.     Ordering Defendant to Comply with Existing Law Does Not Impair or Impede Movants' Ability to Protect Their Interests. 13

           D.     The Existing Defendant Adequately Represents Movants' Interests by Seeking the Same Relief. ......................................14

      II.    The Court Should Exercise Its Discretion to Deny Permissive Intervention .........................................................................17

CONCLUSION ................................................................................19

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Athens Lumber Co, Inc. v. Fed. Election Comm'n*,
690 F.2d 1364 (11th Cir. 1982) .................................................................... passim

*Bellitto v. Snipes*,
No. 16-61474, 2016 U.S. Dist. LEXIS 128840 (S.D. Fla. Sept. 20, 2016).........10

*Bush v. Viterna*,
740 F.2d 350 (5th Cir. 1984).................................................................................18

*Chiles v. Thornburgh*,
865 F.2d 1197 (11th Cir. 1989) ..........................................................................4, 5

*Clark v. Putnam Cnty.*,
168 F.3d 458 (11th Cir. 1999) ...............................................................................5

*Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.*,
51 F. Supp. 972 (D. Mass. 1943) .........................................................................18

*Def. Distributed v. United States Dep't of State*,
No. 1:15-CV-372-RP, 2018 U.S. Dist. LEXIS 126388 (W.D. Tex. July 27, 2018)
..............................................................................................................................11

*Federal Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*,
983 F.2d 211 (11th Cir. 1993) ..............................................................................14

*Int'l Tank Terminals, Ltd. v. M/V Acadia Forest*,
579 F.2d 964 (5th Cir.1978)..................................................................................14

*Issa v. Newsom*,
No. 20-01055, 2020 U.S. Dist. LEXIS 102013 (E. D. Cal. June 10, 2020) ........12

*Jones v. Caddo Parish Sch. Bd.*,
704 F.2d 206 (5th Cir. 1983)......................................................................... 15, 17

*Kobach v. United States Election Assistance Comm'n*,
No. 13-4095, 2013 U.S. Dist. LEXIS 173872 (D. Kan. Dec. 12, 2013) .............12

*Martin v. Crittenden*,
347 F. Supp. 3d 1302 (N.D. Ga. 2018) .......................................................... 9, 10

*Pub. Int. Legal Found. v. Benson*,
  No. 1:21-cv-929, 2022 U.S. Dist. LEXIS 246223 (W.D. Mich. Aug. 25, 2022) ..9

*Pub. Int. Legal Found., Inc. v. Winfrey*,
  463 F. Supp. 3d 795 (E.D. Mich. 2020) ............................................................10

*Sellers v. United States*,
  709 F.2d 1469 (11th Cir. 1983) ........................................................................17

*Sierra Club v. Espy*,
  18 F.3d 1202 (5th Cir. 1994) ..............................................................................4

*South Carolina v. North Carolina*,
  558 U.S. 256 (2010) (Roberts, C.J., dissenting) ...............................................18

*Stansell v. Revolutionary Armed Forces of Colom.*,
  45 F.4th 1340 (11th Cir. 2022) ...........................................................................3

*Sw. Ctr. for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001) ...............................................................................5

*Town of Chester v. Laroe Estates, Inc.*,
  581 U.S. 433 (2017) .............................................................................................5

*United States v. 60 Auto. Grilles*,
  799 Fed. Appx. 693 (11th Cir. 2020) .................................................................15

*United States v. City of Miami*,
  278 F.3d 1174 (11th Cir. 2002) .........................................................................15

*United States v. Coffee Cnty. Bd. of Educ.*,
  134 F.R.D. 304 (S.D. Ga. 1990) ................................................................. 15, 16

*United States v. United States Steel Corp.*,
  548 F.2d 1232 (5th Cir.1977) ............................................................................14

## **Statutes**

Ga. Code Ann. § 21-2-210 .....................................................................................2

Ga. Code Ann. § 21-2-235 .....................................................................................8

NVRA, 52 U.S.C. § 20507 .....................................................................................2

**Rules**

Fed. R. Civ. P. 24 .............................................................................. passim

**Other Authorities**

*Frequently Asked Questions on Voter Status*, ACLU GA.,
    https://www.acluga.org/en/frequently-asked-questions-voter-status ...................8

## INTRODUCTION

Plaintiffs William T. Quinn and David Cross ("Plaintiffs") filed the present action on September 26, 2024, requesting that the Secretary of State, Brad Raffensperger, comply with Georgia and Federal law to: (1) identify actively registered voters who have permanently moved out of state or within state but outside of the jurisdiction in which they are registered, and (2) send those voters notices to confirm residence. GALEO Latino Community Development Fund, Inc. ("GALEO"), and Common Cause Georgia ("CCG") (collectively, "Movants") filed a motion to intervene on October 2, 2024, claiming that ordering government agencies to comply with existing state and federal election laws puts Movants "at risk of losing their ability to protect their interests and those of their members." (Dkt. No. 10 at 9.) Specifically, Movants contend that requiring the state to comply with the National Voter Registration Act ("NVRA") and corresponding Georgia law "threatens the fundamental right to vote of" Movants' members and would cause Movants "to divert organizational resources" from other efforts. (*Id.* at 3.) This position only highlights Movants' lack of a sufficient basis to intervene.

As detailed below, Movants have failed to establish that they are entitled to either (1) intervention as a matter of right, or (2) permissive intervention. Movants have no legitimate interest that is not adequately represented by Defendant. No fewer than six parties have filed three motions to intervene, all of which echo each other

and contain predominantly the same arguments. This is the epitome of judicial inefficiency. The parties and the Court would be better served by allowing Movants to file *amicus* briefs, to which Plaintiffs do not object. Adding additional parties to the litigation will only add needless complexity. Accordingly, the Court should deny Movants' Motion to Intervene.

## FACTUAL BACKGROUND

To uphold the integrity of elections, to prevent voter fraud, and to protect our citizens' trust in the election process, the federal government has enacted multiple laws requiring states to maintain their lists of voters and designate as inactive those registrations that are no longer active. *See* NVRA, 52 U.S.C. § 20507(a)(4)(B) (requiring states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to a change of address). In accordance with the NVRA, Georgia implemented voter list maintenance procedures, which are codified in Ga. Code Ann. § 21-2-210, *et seq*.

A list of voter registrations was purchased from the Georgia Secretary of State on Sunday, June 30, 2024. (Compl., Dkt. No. 1 ¶ 20.) Plaintiffs found that this data showed voters who were marked as active but who had permanently moved out of the state or permanently moved within the state but outside of the jurisdiction in which they are registered. (*Id.* ¶¶ 21–27.)

On September 3, 2024, Plaintiffs provided the data to Defendant and reminded Defendant of its obligations to correct this under the NVRA and Georgia law by sending the appropriate notices to the identified voters and, if any voter failed to respond to this notice, correcting the voter registration status to inactive. (*Id.* ¶¶ 29–34.) Defendant never responded to Plaintiffs' notice. (*Id.* ¶ 38.) Plaintiffs filed the instant lawsuit on September 26, 2024.

On October 2, 2024, the Georgia State Conference of the NAACP, the Georgia Coalition for the People's Agenda, and the League of Women Voters of Georgia filed a motion to intervene. (Dkt. No. 8.) Later that day, GALEO and CCG filed a memorandum in support of a motion to intervene. (Dkt. No. 10.) On October 10, 2024, the Black Voters Matter Fund filed a motion to intervene. (Dkt. No. 12.)

## ARGUMENT

### I.    <u>Movants Do Not Have the Right to Intervene</u>

Absent an unconditional statutory right, a party may only intervene as a matter of right under Fed. R. Civ. P. 24(a)(2) if all four of the following requirements are met: (1) the motion must be timely, (2) the party must "claim[] an interest relating to the . . . subject of the action," (3) the party must be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," and (4) no "existing parties adequately represent that interest." *Stansell v. Revolutionary Armed Forces of Colom., 45 F.4th 1340, 1362 (11th Cir. 2022)*. If

one requirement is missing, intervention is properly denied. *See Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (requiring the movant to "establish[] each of the four requirements" to allow intervention by right).

Here, Movants have failed to establish that they are entitled to intervene as a matter of right. Movants do not claim to have an unconditional right to intervene by federal statute and fail to meet any of the requirements for intervention under Rule 24(a)(2). First, Movants' Motion to Intervene is untimely because it is premature. Second, Movants lack a legitimate interest in the subject of this action. Third, Movants are not impaired or impeded in their ability to protect what interests they have. Fourth, Defendant adequately represents Movants' interests to the extent they have any. Therefore, Movants are not entitled to intervene as a matter of right.

## A.    Movants' Motion is Untimely Because It is Premature

Plaintiffs do not dispute that Movants filed their Motion to Intervene shortly after Plaintiffs filed the complaint. However, quickly filing the motion is not the only consideration under the timeliness requirement. Movants' Motion is untimely because it is premature. *See, e.g.*, *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994) ("Courts should discourage premature intervention that wastes judicial resources."). Much of Movants' argument is based on Plaintiffs' request for relief before the November 5 election, but the Court denied Plaintiffs Motion to Expedite Proceedings. (Dkt. No. 5.) Defendant has also not yet answered the complaint. This

requires both Movants and Plaintiffs to speculate on positions that Defendant may take in this action. Even if Movants were to have legitimate, protectable interests in this case, there would be no point in intervening if Defendant adequately represents Movants' interests. Intervention at this early stage of the case will only waste significant judicial resources. The Court should find Movants' Motion untimely for being premature.

**B.    Movants Lack a Direct, Substantial, and Legally Protectable Interest Related to the Subject of This Action.**

The Eleventh Circuit has consistently held that an intervenor must be a "real party in interest" in a matter and their "intervention must be supported by a 'direct, substantial, legally protectable interest in the proceeding.'" *Chiles*, 865 F.2d at 1213-1214 (citing *Athens Lumber Co, Inc. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982)). An intervenor must "be substantially affected in a practical sense by the determination made in an action." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (quoting Fed. R. Civ. P. 24 advisory committee's notes). Further, the intervenor must allege a particular interest and not a generalized grievance common to other organizations or persons. *See Athens Lumber*, 690 F.2d at 1366; *Clark v. Putnam Cnty.*, 168 F.3d 458, 463 (11th Cir. 1999) ("A lack of Article III standing could suggest that the [intervenor-defendant] also lacks the particularized interest that an intervener must have in the litigation."); *see also Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) ("[A]n intervenor of right

must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests.").

Movants claim to have (1) an interest in protecting their members' voting rights, and (2) an organizational interest under a diversion of resources theory. However, neither of these purported interests is in any way related to Plaintiffs' requested relief. Plaintiffs only seek compliance with existing state and federal law. (Compl. ¶ 1) ("To be clear, Plaintiffs do not ask that these registrations be canceled outright. Instead, Plaintiffs simply ask that Defendant direct the counties to follow the statutory procedures to confirm whether these registrations are valid.").

## 1. Movants Have Not Shown a Particularized Interest on Behalf of Their Individual Members.

Movants argue that they have a substantial interest in protecting their members' voting rights because many of their members are registered to vote and their members' voting rights would be impaired if the State is ordered to conduct immediate list maintenance. (Dkt. No. 10 at 6–7.) This argument fails. Plaintiffs' requested relief would not impair any of Movants' members' right to vote. Movants merely allege a generalized grievance and identify no particularized harm. On this point, Movants rely on non-binding and inapplicable law where intervention of right was not considered.

### a.   Plaintiffs' Requested Relief Would Not Impair Movants' Members' Voting Rights.

Movants' argument—that some of their members are registered to vote and their voting rights would be impaired—is premised on a fundamental misstatement of the relief Plaintiffs seek.

Plaintiffs' requested relief would not disenfranchise voters. Plaintiffs are only asking that the State send confirmation notices to verify voter addresses, as authorized by both federal and Georgia law. Far from harming voters, this is the process expressly authorized and sanctioned by the U.S. Congress and Georgia Legislature for confirming voter residency and correcting irregularities. *See* Ga. Code Ann. § 21-2-233(c); 52 U.S.C. § 20507(d)(2). As the Complaint explicitly states:

> To be clear, Plaintiffs do not ask that these registrations be canceled . . . . Any voters who are active despite anomalies in their registrations can easily confirm their status, either by responding to the requests for confirmation or, if they fail to make this confirmation, by simply reactivating their voter status.

(Compl. ¶¶ 1-2.) An organization with similar interests involved with the motion to intervene filed by the Georgia State Conference of the NAACP, the Georgia Coalition for the People's Agenda, and the League of Women Voters of Georgia confirms this: "Voters labeled as 'inactive' retain the same rights as active voters. They can still vote. Any participation in elections will restore their voting status to 'active.'" *Frequently Asked Questions on Voter Status*, ACLU GA.,

https://www.acluga.org/en/frequently-asked-questions-voter-status (last accessed Oct. 16, 2024).

Movants never explain how sending voters confirmation-of-residency cards would cause any injury to their members. Such relief would ultimately result in certain voters, who may not even be members of Movants, having their registration status changed to inactive only if they have moved out of state or to a different jurisdiction within the state. Even if a voter is marked as inactive, that voter can still vote by showing proof of residency. *See* Ga. Code Ann. § 21-2-235 (providing three different ways that "[a]n elector whose name is on the inactive list of electors may vote," including when the elector has changed residencies).

The harm Movants assert to their members' voting rights is entirely speculative and unrelated to the relief sought in this action. Movants improperly assume that (i) their members would be incorrectly sent a notice when they did not change address, (ii) their members would fail to respond to that notice, and (iii) their members would not otherwise be able to correct their voter registration. Movants' interest is too far removed from Plaintiffs' requested relief to constitute a sufficient interest. *See Burke v. Ocwen Fin. Corp.*, 833 F. App'x 288, 292 (11th Cir. 2020) (noting that interests "cannot be speculative"); *Pub. Int. Legal Found. v. Benson*, No. 1:21-cv-929, 2022 U.S. Dist. LEXIS 246223, at *32 (W.D. Mich. Aug. 25,

2022) (unpublished) (rejecting "increased risk of future disenfranchisement" as a sufficient interest and noting "interests cannot be speculative").

### b. Movants Allege Only Generalized Grievances.

The generalized harm alleged by Movants also does not warrant intervention. In *Athens Lumber*, a proposed intervenor claimed that it had an interest in a case because its organizational resources would be stretched too thin and it would be "financially overwhelmed in federal elections" if FECA restrictions were lifted. *Athens Lumber*, 690 F.2d at 1366. The Eleventh Circuit affirmed that this was not a sufficient interest because that interest "is shared with all unions and citizens." *Id.*

Movants' alleged interest is based on the same type of generalized harm. Movants claim that because many of their members are registered voters and plan to vote, the disenfranchisement of some citizens may also affect their members. (Dkt. No. 10 at 6–7.) Notwithstanding the fact that Plaintiffs do not seek to cancel the voter registration of any person, Movants have not alleged any particularized harm or differentiated their interest from that of any other citizens or organizations in general. This is the exact type of generalized harm that the Eleventh Circuit has held to be insufficient to support intervention.

### c. Movants Rely on Inapplicable Law.

Movants cite three cases, none of which applies to this case—*Martin v. Crittenden*, 347 F. Supp. 3d 1302 (N.D. Ga. 2018), *Bellitto v. Snipes*, No. 16-61474,

2016 U.S. Dist. LEXIS 128840 (S.D. Fla. Sept. 20, 2016) (unpublished), and *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795 (E.D. Mich. 2020).

- In *Martin v. Crittenden*, the defendants *did not oppose a motion to intervene* by a plaintiff-intervenor, and the Court considered only the "timeliness" factor of intervention as a matter of right, and that "out of an abundance of caution." 347 F. Supp. 3d at 1307. Here, the motion is opposed.

- In *Belitto v. Snipes*, an unpublished case from South Florida, plaintiffs and defendant *did not oppose the motion to intervene*. 2016 U.S. Dist. LEXIS 128840 at *1–2. Again, here, the motion is opposed.

- In *Pub. Int. Legal Found., Inc. v. Winfrey*, a case from Michigan, while the court granted leave to intervene only on a permissive basis, 463 F. Supp. 3d at 797, the court explicitly stated that it did not consider intervention by right. *Id.* at 799. As explained below, permissible intervention is not appropriate here.

Movants' reliance on inapposite case law from other jurisdictions does not support its intervention as of right in this matter. The cases it cites are factually distinguishable and non-binding.

## 2.    Movants Do Not Allege a Specific Organizational Harm.

Movants claim that they also have organizational interests under a diversion of resources theory. Specifically, Movants claim that "[t]hey have had to divert staff time away from planning for voter registration activities in the final days before the October 7, 2024, voter registration deadline in Georgia," and that they have "interests related to resource expenditure." (Dkt. No. 10 at 7-8.) As an initial matter, a diversion of resources by virtue of voluntarily joining a lawsuit cannot *ipso facto* be the basis for a finding of interest because it would then logically follow that every attempt to intervene would convey an interest in the lawsuit—defeating the purpose of requiring the moving party to show this element.

A valid interest may be shown if an organization is forced to "divert resources to activities outside of its typical business activities." *Def. Distributed v. United States Dep't of State*, No. 1:15-CV-372-RP, 2018 U.S. Dist. LEXIS 126388, *10-11 (W.D. Tex. July 27, 2018) (unpublished). An organization must also identify specific activities that they would have to put on hold or otherwise curtail. *See id.* at *11 (finding averment that movant "would have been able to use more resources to work on 'strengthening gun laws,' 'fighting in the courts to defend gun laws,' and 'providing direct legal advocacy on behalf of victims and communities affected by gun violence' not sufficiently specific and denying motion to intervene).

Here, Movants admit that their typical business activities include "voter mobilization, education, and election protection efforts." (Dkt. No. 10 at 3.) Movants complained of activities of having to "identify, contact, and assist voters" with registration in response to the complaint fits squarely within Movants' typical business activities. (*See id.*) Movants fail to identify any specific activities that they would have to put on hold or otherwise curtail. This is insufficient to support a diversion of resources interest.

Additionally, none of the cases Movants cite should hold weight here. *Kobach v. United States Election Assistance Comm'n* is an unpublished Kansas case that did not analyze intervention as a matter of right under Rule 24(a), but merely as a matter of permissive intervention. No. 13-4095, 2013 U.S. Dist. LEXIS 173872, at *5, *8 (D. Kan. Dec. 12, 2013) (unpublished) ("the Court finds it unnecessary to consider whether applicants are entitled to intervene as of right pursuant to Rule 24(a)."). And, again, as explained below, the Court should not grant permissive intervention.

*Issa v. Newsom* is an unpublished California case that concerned an executive order requiring counties to implement all-mail elections. No. 20-01055, 2020 U.S. Dist. LEXIS 102013, at *4–5 (E. D. Cal. June 10, 2020) (unpublished). Although the court allowed intervention as a matter of right based on an organizational interest of a party, this was only because the new executive order, if upheld, would require significant training on mailing ballots and preparation of those mail ballots. *Id.* In

contrast to *Issa*, no new law or standard is being challenged, nor is any change to the law being proposed in this matter.

For these reasons, Movants lack a direct, substantial, and legally protected interest related to this case, both on behalf of their members and on behalf of their organizations.

## C.   Ordering Defendant to Comply with Existing Law Does Not Impair or Impede Movants' Ability to Protect Their Interests.

Even assuming *arguendo* that Movants have sufficient interests related to this action, requiring state election agencies to follow the law will not impair Movants' ability to protect their interests. As described above, any voters whose registrations are corrected to inactive status can still vote by showing proof of residency. Movants also have not alleged any specific new training or efforts that Movants would need to take if the Court grants Plaintiffs' requested relief. Movants only offer a threadbare, conclusory assertion in support of their position, arguing that they "will be prejudiced if intervention is denied" simply because they claim to have interests that are at risk of being harmed. (Dkt. No. 10 at 9–10.) As the party with the burden of proof to establish all of the requirements for intervention as of right, this is insufficient. *See Burke*, 833 F. App'x at 291 (describing that "intervenors . . . bear the burden of proof to establish all four bases for intervention as a matter of right").

**D.     The Existing Defendant Adequately Represents Movants' Interests by Seeking the Same Relief.**

Movants' ultimate objective in this case is to deny Plaintiffs' requested relief of ordering the State send notices to voters U.S. Postal Service data shows permanently moved outside of the jurisdiction in which they registered. Defendant's actions suggest the same ultimate objective.

The Eleventh Circuit Court of Appeals "presume[s] that a proposed intervenor's interest is adequately represented when an existing party pursues the same ultimate objective as the party seeking intervention." *Federal Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 215 (11th Cir. 1993) (citing first *Athens Lumber*, 690 F.2d 1364 at 1366, *cert. denied*, 465 U.S. 1092 (1984), then citing *Int'l Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir.1978)). That "representation is 'adequate if no collusion is shown between the representative and an opposing party, if the representative does not have or represent an interest adverse to the proposed intervenor, and if the representative does not fail in fulfillment of his duty.'" *Id.* (quoting *United States v. United States Steel Corp.*, 548 F.2d 1232, 1236 (5th Cir.1977)); *see also Int'l Tank Terminals*, 579 F.2d at 967 (holding that a moving party with the same ultimate objective as the original party "must demonstrate adversity of interest, collusion, or nonfeasance" to overcome the presumption).

- 14 -

While it is generally true that this inadequate representation burden is minimal, that is not the case when the government is a party: "when the government is a party, the moving party must make a very compelling showing of inadequacy of representation." *United States v. Coffee Cnty Bd. of Educ.*, 134 F.R.D. 304, 310 (S.D. Ga. 1990) (citing *Jones v. Caddo Parish Sch. Bd.*, 704 F.2d 206, 221 n. 25 (5th Cir. 1983)). A "very compelling showing" may be found where the Government's asserted interest and the intervenor's related interest are mutually exclusive. *See United States v. City of Miami,* 278 F.3d 1174, 1179 (11th Cir. 2002) (affirming a denial of a motion to intervene as a right for adequate representation because the intervenor never alleged that its objective and that of the government were mutually exclusive). *See also United States v. 60 Auto. Grilles*, 799 Fed. Appx. 693, 697 (11th Cir. 2020) (unpublished) (same). Here, Movants have made no such showing.

In *Athens Lumber*, a proposed intervenor argued that it had different interests from a government agency and that "a public agency charged with protecting the public interest cannot represent adequately private interests." *Athens Lumber*, 690 F.2d at 1366. The Court held that this difference in interests does not defeat the presumption that the government agency adequately represented the interests of the proposed intervenor when they had the same objective. *Id.* at 1367. The Eleventh Circuit further pointed out that the government agency successfully defended the

- 15 -

law on numerous occasions in the past. *Id.* Therefore, the Eleventh Circuit held that the intervenors did not satisfy the requirements for intervention of right. *Id.*

Movants claim to have "nominally" adverse interests from Defendant, but they are adverse in name only. (Dkt. No. 10 at 11.) Movants' only "adverse interest" to Defendant is that it brought a counterclaim against Defendant. *Id.* However, this counterclaim does nothing more than seek to deny the relief sought by Plaintiffs. (Dkt. No. 10-2 at 20) (requesting the Court declare "Plaintiffs' requests to Defendant . . . unlawful under the NVRA" and requesting an injunction of a straw man of Plaintiffs' requests). It is not truly adverse to Defendant. It is, rather, adverse to Plaintiffs.

Movants further argue that their interests may diverge from those of Defendant because Movants represents their members, whereas Defendant represents all Georgia voters. (Dkt. No. 10 at 11–12.) However, Movants have neither argued that any of their members in particular face any harm, nor that they face any harm different from all voters. Movants do not have adverse or diverging interests to Defendant.

In any event, "nominally adverse interests" is not the requirement under the law. The Eleventh Circuit requires an intervenor to make "a very compelling showing of inadequacy of representation." *United States v. Coffee Cnty. Bd. of Educ.*, 134 F.R.D. 304, 310 (S.D. Ga. 1990) (citing *Jones v. Caddo Parish Sch. Bd.*,

704 F.2d 206, 221 n. 25 (5th Cir. 1983)). Movants have failed to "make a very compelling showing of inadequacy of representation" by Defendant. Nor have Movants alleged any collusion or nonfeasance.

In contrast, Defendant Raffensperger, as the Secretary of State of Georgia, is more than capable of defending the lawsuit as he has defended dozens of election cases since first elected in 2018. As Movants have not demonstrated any legitimate interest that is not adequately represented by Defendant, Movants are not entitled to intervention as a matter of right.

## II.    The Court Should Exercise Its Discretion to Deny Permissive Intervention

There is no value in adding Movants to this case and instead considerable harm. A party seeking to intervene under Rule 24(b) must show that: (1) its application to intervene is timely; and (2) its claim or defense and the main action have a question of law or fact in common. Fed. R. Civ. P. 24(b). The district court has the discretion to deny intervention even if both of those requirements are met. *See Sellers v. United States*, 709 F.2d 1469, 1471 (11th Cir. 1983).

In *Athens Lumber*, the Eleventh Circuit affirmed a denial of permissive intervention on the basis that "the introduction of additional parties inevitably delays proceedings" and because of the "remoteness and general claims" of the intervenor's claims. *Athens Lumber*, 690 F.2d at 1367.

"When he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention." *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984) (citing *Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.*, 51 F. Supp. 972, 973 (D. Mass. 1943)); *South Carolina v. North Carolina*, 558 U.S. 256, 288 (2010) (Roberts, C.J., dissenting) (same).

Movants' argument that the Court should use its discretion to allow permissive intervention is that (1) Movants assert defenses that address the factual and legal premises of Plaintiffs' claims, (2) granting the motion will not delay or prejudice the adjudication of rights, and (3) denying intervention would deprive Movants of their chance to defend their interests in the litigation.

However, both their first and third argument can easily be addressed by the filing of amicus curiae briefs. To the extent that Movants argue they will use significant resources on this lawsuit that would otherwise prevent it from other tasks, the filing of amicus briefs would accomplish the same goal while freeing up resources. Plaintiffs do not object to such a filing. The first argument also highlights the prematurity of Movants' motion.

Allowing Movants to intervene would only serve to complicate this litigation, increase costs, and prejudice or delay this case, which is effectively a denial of timely relief to Plaintiffs.

- 18 -

## CONCLUSION

Movants have not demonstrated that they meet any of the requirements for intervention as a matter of right under Rule 24(a)(2). Movants' interests, as well as those of the court and the parties, are best served by denying Movants permissive intervention and instead allowing amicus briefing.

Dated: October 16, 2024

Respectfully submitted,

*/s/ David Ludwig*

David Ludwig (Bar No. 425787)
DUNLAP BENNETT & LUDWIG
PLLC
211 Church St. SE
Leesburg, VA 20175
Tel: (703) 777-7319
dludwig@dbllawyers.com

*Counsel for Plaintiffs William T. Quinn and David Cross*

## <u>CERTIFICATE OF FONT AND POINT SELECTION</u>

I hereby certify, under Local Rule 7.1(D), that the foregoing Response was prepared in Times New Roman, 14-point font, which is one of the font and point selections approved in Local Rule 5.1.

Dated: October 16, 2024

*/s/ David Ludwig*
David Ludwig (Bar No. 425787)
DUNLAP BENNETT & LUDWIG PLLC
211 Church St. SE
Leesburg, VA 20175
Tel: (703) 777-7319
dludwig@dbllawyers.com

*Counsel for Plaintiffs William T. Quinn and David Cross*

- 20 -

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have this day caused to be served copies of this response upon counsel of record in this case by filing a copy using the Court's electronic CM/EDF filing system, which will automatically cause copies of the same to be delivered.

I further certify that I have this day caused to be served copies of this response upon Defendant Brad Raffensperger and Charlene S. McGowan, Esq., by electronic mail to soscontact@sos.ga.gov and cmcgowan@sos.ga.gov.


Dated: October 16, 2024

*/s/ David Ludwig*
David Ludwig (Bar No. 425787)
DUNLAP BENNETT & LUDWIG PLLC
211 Church St. SE
Leesburg, VA 20175
Tel: (703) 777-7319
dludwig@dbllawyers.com

*Counsel for Plaintiffs William T. Quinn and David Cross*