# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| WILLIAM T. QUINN and DAVID CROSS,<br><br>*Plaintiffs*,<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia,<br><br>*Defendant*,<br><br>and<br><br>GALEO LATINO COMMUNITY DEVELOPMENT FUND, INC., and COMMON CAUSE GEORGIA,<br><br>*Defendant-Intervenors, Counterclaim Plaintiffs, and Cross-Claimants* | **Civil Action Number**<br>**1:24-CV-4364-SCJ** |

## REPLY MEMORANDUM IN SUPPORT OF GALEO LATINO COMMUNITY DEVELOPMENT FUND, INC.'S AND COMMON CAUSE GEORGIA'S MOTION TO INTERVENE

Proposed Defendant-Intervenors GALEO LATINO COMMUNITY DEVELOPMENT FUND, INC. ("GALEO") and COMMON CAUSE GEORGIA ("Common Cause") (collectively, "Defendant-Intervenors") submit this Reply Memorandum in further support of their motion to intervene (ECF No. 10; the "Motion").

1

## INTRODUCTION AND BACKGROUND

This motion concerns two civil rights organizations, GALEO and Common Cause, who are seeking to intervene in this matter to protect the voting rights of their members, as well as their own organizational interests. Defendant-Intervenors satisfy all four elements to intervene as of right, and Plaintiffs have not provided any compelling reason to conclude otherwise.

Plaintiffs' Complaint seeks to compel the Secretary of State to conduct statewide list maintenance within 90 days of a federal election and without proper notice, in violation of the NVRA. Specifically, Plaintiffs seek to have thousands of active, registered voters in Georgia removed from the "official list of electors" and placed onto a separately maintained "inactive list of electors." *See* O.C.G.A. § 21-2-235.

For the reasons set forth more fully in the Motion and this Reply Memorandum, GALEO and Common Cause have a right to intervene or, alternatively, should be permitted to intervene, as they have interests directly impacted by the relief that Plaintiffs seek.

## ARGUMENT

I. <u>**GALEO and Common Cause Have the Right to Intervene.**</u>

As set forth in the Motion, intervention as of right is appropriate pursuant to Fed. R. Civ. P. 24(a)(2) where the intervenor satisfies four factors:

> (1) [their] application to intervene is timely; (2) [they have] an interest relating to the property or transaction which is the subject of the action; (3) [they are] so situated that disposition of the action, as a practical matter, may impede or impair [their] ability to protect that interest; and (4) [their] interest is represented inadequately by the existing parties to the suit.

*Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 695-96 (11th Cir. 2017). "In evaluating whether these requirements are met, courts are guided primarily by practical and equitable considerations. Courts construe Rule 24(a) broadly in favor of proposed intervenors." *Callahan v. Brookdale Senior Living Communities, Inc.*, 42 F.4th 1013, 1020 (9th Cir. 2022). As briefed thoroughly below, all four factors weigh in favor of Defendant-Intervenors, GALEO and Common Cause.

### A.     The Motion is Timely

Plaintiffs' only quarrel with the timing of the Motion is that it is allegedly premature. (ECF No. 25 ("Opp.") at 4). The one case they cite in support of their argument, *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994), is unavailing. *Sierra Club* is distinguishable from this case in that it involves a party intervening when the potential ramifications of the lawsuit were unknown, whereas here, the ramifications of this lawsuit are well-known and obvious, i.e. the inactivation of potentially thousands of active, registered voters across the State of Georgia, including members of GALEO and Common Cause. Furthermore, *Sierra Club* makes clear that intervention is proper "when [the would-be intervenor] became

aware that its interests would no longer be protected by the original parties." *Id.* As discussed in their Motion, Defendant Raffensperger, as an elected official, has divergent interests from Defendant-Intervenors, as he represents "all voting citizens and has an interest in remaining a popular and effective leader." Motion at 10-11. Considering this, Defendant-Intervenors filed their Motion to Intervene a mere six days after the Complaint was filed. As such, Defendant-Intervenors timely filed their Motion.

Further, Plaintiffs argue that "Defendant has also not yet answered the complaint." (Opp. at 4). But that is insufficient cause to deny the Motion. In fact, this Court recently ruled in another election-related case that intervention was not untimely where the case "ha[d] been pending for a few short weeks [with] some Defendants [] yet to be served." *See Frazier et al. v. Fulton Cnty. Dep't of Registration & Elections, et al.*, No. 1:24-CV-03819-SCJ (N.D. Ga. Sept. 12, 2024), ECF No. 28 at 3. Moreover, the fact that the Defendant has not yet filed a responsive pleading further supports the timeliness of Defendant-Intervenors' Motion, as this case is still in its infancy and no parties would be prejudiced by intervention. In fact, intervention at this early stage would conserve judicial resources.

### B. GALEO and Common Cause Have Direct, Substantial, and Legally Protectable Interests.

GALEO and Common Cause have significant protectable interests that stand to be impaired by Plaintiffs' suit, satisfying the intertwined second and third elements of Rule 24(a)(2).

To satisfy these elements, a movant must show that it "is so situated that disposing of [this] action may as a practical matter impair or impede [its] ability to protect [an] interest." Fed. R. Civ. P. 24(a)(2). The movant "do[es] not need to establish that [its] interests *will* be impaired . . . only that the disposition of the action 'may' impair or impede [its] ability to protect [its] interests." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (emphasis in original). This inquiry is "flexible" and depends on the circumstances surrounding the action. *Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989). The "impairment of interests" language of Rule 24(a) is "obviously designed to liberalize the right to intervene in federal actions." *Nuesse v. Camp*, 385 F.2d 694, 701 (D.C. Cir. 1967); *accord Chiles*, 865 F.2d at 1214.

Plaintiffs' other arguments regarding Defendant-Intervenors' legally protectable interests center around their claim that they are not seeking to disenfranchise voters and, instead, are only asking that the Secretary of State send confirmation notices to verify voter addresses. Not only is this statement misleading (Plaintiffs actually seek to deactivate voters' status), but it also wrongly assumes at

5

the intervention stage that Plaintiffs are correct on the merits. Here, Plaintiffs also wrongly assume that requiring the Defendant to conduct voter roll maintenance at this time would contribute to the integrity of the election when, in fact, such actions would likely result in eligible voters receiving mail questioning their eligibility as well as cause confusion and uncertainty shortly before the General Election. Plaintiffs' argument is akin to saying, in a contract case, that a third-party beneficiary has no right to intervene to defend a contract's enforceability because he has no rights under an unenforceable contract. Plaintiffs will *always* say that they are only seeking relief to which they are lawfully entitled. However, the entire purpose of intervention is to allow proposed intervenors to defend their own interests and present their own arguments, so that the Court can consider all perspectives and arguments before deciding the case on the merits.

Further, Plaintiffs assert that Defendant-Intervenors' disenfranchisement concerns are speculative and unrelated to the relief sought here. (Opp. at 8.) However, Defendant-Intervenors need not show that it is an "absolute certainty that [their] interests will be impaired." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011). Rule 24(a) requires only that the disposition of a case "may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a). And here, it is entirely foreseeable that the relief Plaintiffs seek will inactivate eligible voters, including Defendant-

6

Intervenors' members and constituents, thereby imposing additional burdens on them in the exercise of their voting rights and creating mass confusion in the runup to an election. As Defendant-Intervenors explained, intervention as a matter of right is appropriate where voter intervenors would be potentially disenfranchised by the requested relief. *See Martin v.* Crittenden, 347 F. Supp. 3d 1302, 1307 (N.D. Ga. 2018).

Finally, Plaintiffs' suggestion that Defendant-Intervenors' assertion that their diversion of staff and resources is not a recognizable protectable interest, and that Defendant-Intervenors failed to allege a specific organizational harm is belied by the record. *See* Opp. at 11. In fact, Defendant-Intervenors have explained in detail how such a diversion in response to an unexpected election-eve voter purge would impair their other mission-critical and election-related activities. *See* Gonzales Decl. ¶ 11; Young Decl. ¶¶ 15-17. Such harm satisfies the "more stringent" hurdle imposed by "Article III standing requirements," and thus readily meets the more lenient Rule 24(a) standard. *Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991) (explaining that satisfying Article III "compels the conclusion that [intervenors] have an adequate interest"); *see also E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021) (en banc) (holding that "an organization has direct standing . . . where it establishes that the defendant's behavior has frustrated its mission and caused it to

divert resources in response to that frustration of purpose"). Therefore, Defendant-Intervenors satisfy the second and third elements of Rule 24(a)(2).

### C. The Interests of the Defendant-Intervenors and Their Members May Be Impaired Absent Intervention.

Defendant-Intervenors have shown that impairment of their interests is *possible*, which is all they must do to satisfy the third element. *See Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 695-96 (11th Cir. 2017) ("when weighing Rule 25(a)(2) prejudice prong, courts examine whether the disposition of the action, as a practical matter may impede or impair an intervenor's ability to protect their interests.) Defendant-Intervenors serve communities that are most likely to be disenfranchised by voter roll purges—both because they are more likely to be removed and because they are less likely to overcome the hurdles of re-registering (or reactivating their status as Plaintiffs assert any mislabeled voter can do).[1] Because these groups are among Defendant- Intervenors' members and

---

[1] *See, e.g.*, Gregory A. Huber et al., *The racial burden of voter list maintenance errors: Evidence from Wisconsin's supplemental movers poll books*, 7 SCIENCE ADVANCES 1 (Feb. 17, 2021) (finding minority registrants were "more than twice as likely as white registrants" to be flagged for removal under voter purge program and concluding that "the burden of incorrect removal falls more heavily on minority registrants"); Lydia Hardy, *Voter Suppression Post-Shelby: Impacts and Issues of Voter Purge and Voter ID Laws*, 71 MERCER L. REV. 857, 866 (2020) ("[V]oter purges have often had the effect of clearing eligible voters from state registration lists and in a manner that tends to discriminate by race and nationality."); Jeffrey A. Bloomberg, *Protecting the Right Not to Vote from Voter Purge Statutes*, 64 FORDHAM L. REV. 1021 n.40 (1995) (noting that "minorities and uneducated individuals often have difficulty registering to vote").

constituents, Defendant-Intervenors have more than adequately shown a possible impairment of their interests. *Cf. Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1342 (11th Cir. 2014) (finding organizational plaintiffs met Article III standing requirements because they represented "a large number of people" who faced "realistic danger" of being purged from voter rolls).

### D. Secretary Raffensperger Does Not Adequately Represent GALEO and Common Cause's Interests.

For the reasons stated in the Motion, it is apparent that Secretary Raffensperger does not adequately represent GALEO and Common Cause's interests. (ECF No. 10 at 10–12). The Supreme Court has held that the inadequate representation requirement "is satisfied if the [proposed intervenor] shows that representation of his interest 'may be' inadequate" and that "the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972); *WildEarth Guardians v. U.S. Forest Service*, 573 F.3d 992, 995 (10th Cir. 2009) ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.")

Plaintiffs cannot deny that Secretary Raffensperger is bound to adhere to the "twin objectives" of the NVRA, which requires balancing the competing goals of "easing barriers to registration and voting, while at the same time protecting electoral integrity and the maintenance of accurate voter rolls." *Bellitto v. Snipes*, 935 F.3d

1192, 1198 (11th Cir. 2019)). Because the Secretary must strike a balance in administering the NVRA's twin goals of expanding access to voter registration and maintaining accurate voter rolls, his interests may well diverge from those of Defendant-Intervenors, who might strike that balance differently, favoring expanded access to voting and registration. These divergent interests would support intervention standing alone; but here, Defendant-Intervenors have also asserted a cross-claim against the Secretary and seek declaratory and permanent injunctive relief against him—thereby making them *per se* adverse to the Secretary. Therefore, intervention of right should be granted by this Court.

## II.   Permissive Intervention is Warranted

Alternatively, permissive intervention is appropriate under Rule 24(b) because Defendant-Intervenors' Motion is timely and shares common questions of law and fact with the main action. The Court has discretion to grant a motion for permissive intervention when: (1) the proposed intervenor's claim or defense and the main action have a question of law or fact in common, and (2) the intervention will not unduly delay or prejudice the adjudication of the original parties' rights. *See* Fed. R. Civ. P. 24(b); *Chiles*, 865 F.2d at 1213; *Ga. Aquarium, Inc. v. Pritzker,* 309 F.R.D. 680, 690 (N.D. Ga. 2014). "[T]he claim or defense clause of Rule 24(b)(2) is generally given a liberal construction." *Ga. Aquarium,* 309 F.R.D. at 690.

First, GALEO and Common Cause will inevitably raise common questions of law and fact because they seek to oppose the very purges that Plaintiffs seek to compel in this lawsuit. Second, for the reasons already explained, the motion to intervene is timely, and given the early stage of this litigation, intervention will not delay or prejudice the adjudication of the rights of the original parties. GALEO and Common Cause are prepared to proceed in accordance with any schedule this Court determines (*see, e.g.*, ECF No. 19), and its intervention will only serve to contribute to the complete development of the factual and legal issues before the Court.

## CONCLUSION

For the reason stated above, GALEO and Common Cause respectfully request that the Court grant their motion to intervene as a matter of right under Rule 24(a)(2) or, in the alternative, permit them to intervene under Rule 24(b).

Respectfully submitted, this 18th day of October 2024.

| | |
|---|---|
| Bradley E. Heard<br>Ga. Bar No. 342209<br>Avner M. Shapiro*<br>Jack Genberg<br>Ga. Bar No. 144076<br>**SOUTHERN POVERTY LAW CENTER**<br>1101 17th St NW, Suite 550<br>Washington, DC 20036<br>Phone: (888) 414-7752<br>bradley.heard@splcenter.org<br>avner.shapiro@splcenter.org<br>jack.genberg@splcenter.org | */s/ Montoya M. Ho-Sang*<br>Montoya M. Ho-Sang<br>Ga. Bar No. 572105<br>**AKERMAN LLP**<br>999 Peachtree Street, NE Suite 1700<br>Atlanta, Georgia 30309<br>Phone: (404) 733-9812<br>Fax: (404) 733-733-9912<br>montoya.ho-sang@akerman.com<br><br>Scott E. Allbright, Jr.*<br>**AKERMAN LLP**<br>98 Southeast Seventh Street, Suite 1100<br>Miami, FL 33131 |

11

*/s/ Courtney O'Donnell*
Courtney O'Donnell
Ga. Bar No. 164720
Pichaya Poy Winichakul
Ga. Bar No. 246858
**SOUTHERN POVERTY LAW CENTER**
150 E Ponce de Leon Ave, Suite 340
Decatur, GA 30030
Phone: (404) 521-6700
courtney.odonnell@splcenter.org
poy.winichakul@splcenter.org

*Co-Counsel for Defendant-Intervenors
GALEO Latino Community
Development Fund and Common
Cause Georgia*

\**Pro hac vice* application to be filed

Phone: (305) 374-5600
Fax: (305) 374-5095
scott.allbright@akerman.com

*Co-Counsel for Defendant-Intervenors
GALEO Latino Community
Development Fund and Common
Cause Georgia*

\**Pro hac vice* application to be filed

## **CERTIFICATION OF FONT AND POINT SIZE**

Pursuant to Local Rule 7.1(D), this will certify that the within and foregoing document was prepared with one of the font and point selections approved by the Court in Local Rule 5.1(B), specifically Times New Roman, 14 point.

This 18th day of October 2024.

*/s/ Courtney O'Donnell*
Courtney O'Donnell (Ga. Bar No. 164720)

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF filing system, which automatically sends notice and a copy of the filing to all counsel of record via electronic mail; and that I also served copies of the following documents upon counsel for Defendant Brad Raffensperger, Charlene S. McGowan, Esq., by electronic mail to cmcgowan@sos.ga.gov.

This 18th day of October 2024.

                                                         */s/ Courtney O'Donnell*
                                                         Courtney O'Donnell
                                                         Georgia Bar No. 164720

                                                         *Co-Counsel for Defendant-Intervenors*
                                                         *GALEO Latino Community*
                                                         *Development Fund and Common*
                                                         *Cause Georgia*