# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

WILLIAM T. QUINN AND
DAVID CROSS,

     *Plaintiffs,*

  v.

BRAD RAFFENSPERGER, in his
official capacity as Secretary of State
of Georgia,

     *Defendant.*

Civil Action File No.:
1:24-cv-04364-SCJ

## <u>SECRETARY RAFFENSPERGER'S BRIEF IN SUPPORT OF MOTION TO DISMISS</u>

## TABLE OF CONTENTS

INTRODUCTION .................................................................................1

LEGAL STANDARDS ........................................................................3

ARGUMENT ........................................................................................5

I.     The Court does not have jurisdiction over Plaintiffs' claims. ..................5

   A.     Plaintiffs lack Article III standing. ....................................5

   B.     The Court lacks subject matter jurisdiction over
          Plaintiffs' state law claim. ..................................................9

II.    Plaintiffs fail to state a claim under the NVRA or under the
       Georgia Election Code. ............................................................. 10

   A.     The Complaint fails to state a claim under the NVRA. ............... 10

   B.     The Complaint fails to state a claim under O.C.G.A.
          § 21-2-233. ...................................................................... 14

   C.     Plaintiffs' claims are untimely. ....................................... 16

III.   Plaintiffs are not entitled to a writ of mandamus. ............................... 17

   A.     The Court does not have jurisdiction to grant Plaintiffs'
          mandamus relief. ............................................................ 18

   B.     The Secretary has no clear legal duty to undertake Plaintiffs'
          requested action. ............................................................ 19

CONCLUSION.................................................................... 21

# TABLE OF AUTHORITIES

**Cases**                                                               **Page(s)**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..........................................................................4

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..........................................................................4

*Bland Farms, LLC v. Ga. Dep't of Agric.,*
    281 Ga. 192 (2006) ..................................................................... 19, 21

*Bonner v. City of Prichard,*
    661 F.2d 1206 (11th Cir.1981) ........................................................ 20

*Carter v. Seamans,*
    411 F.2d 767 (5th Cir. 1969) .......................................................... 20

*Church of Scientology of Ga., Inc. v. City of Sandy Springs,*
    843 F. Supp. 2d 1328 (N.D. Ga. 2012) ........................................... 18

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398, 401 (2013) ..................................................................9

*Douglas v. United States,*
    814 F.3d 1268 (11th Cir. 2016) .........................................................3

*Edwards v. Prime, Inc.,*
    602 F.3d 1276 (11th Cir. 2010) ........................................................4

*Fair Fight Inc. v. True the Vote,*
    710 F. Supp. 3d 1237 (N.D. Ga. 2024) ........................................... 16

*Ga. Ass'n of Prof'l Process Servers v. Jackson,*
    302 Ga. 309 (2017) ......................................................................... 20

*Govea v. City of Norcross,*
    271 Ga. App. 36 (2004) .................................................................. 15

*Hi-Tech Pharms., Inc. v. HBS Int'l Corp.,*
    910 F.3d 1186 (11th Cir. 2018) ...................................................... 12

*Jacobson v. Fla. Sec'y of State,*
    974 F.3d 1236 (11th Cir. 2020) .................................................... 6, 9

*Kokkonen v. Guardian Life Ins. of Am.*,
   511 U.S. 375 (1994) ....................................................................3

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .............................................................. 5, 6, 7

*Majority Forward v. Ben Hill Cnty. Bd. of Elections*,
   512 F. Supp. 3d 1354 (M.D. Ga. 2021) ...................................... 16

*Palmer v. Hosp. Auth.*,
   22 F.3d 1559 (11th Cir. 1994) ................................................... 10

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984) ................................................................... 10

*Sec. & Exch. Comm'n v. Complete Bus. Sols. Grp., Inc.*,
   44 F.4th 1326 (11th Cir. 2022) ................................................. 18

*Smith v. Gte Corp.*,
   236 F.3d 1292 (11th Cir. 2001) ....................................................3

*Somerville v. White*,
   337 Ga. App. 414 (2016) ........................................................... 15

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ....................................................................6

*State Farm Mut. Auto. Ins. Co. v. Hernandez Auto Painting & Body Works, Inc.*,
   312 Ga. App. 756 (2011) ........................................................... 15

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ......................................................................3

*Sun v. Forrester*,
   939 F.2d 924 (11th Cir. 1991) ................................................... 19

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) .................................................................4, 9

*Trichell v. Midland Credit Mgmt., Inc.*,
   964 F.3d 990 (11th Cir. 2020) ......................................................6

*Voter Intergrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*,
   301 F. Supp. 3d 612 (E.D.N.C. 2017) ........................................ 13

*Wood v. Raffensperger*,
  981 F.3d 1307 (11th Cir. 2020)............................................................ 6, 7, 8

**Statutes**

U.S. Const. Art. III, § 2, cl. 1 .................................................................5

28 U.S.C. § 1361 .......................................................................... 18, 20

28 U.S.C. § 1367 ...............................................................................9

52 U.S.C. § 20507 ................................................................. 10, 11, 20

O.C.G.A. §§ 21-2-210 *et seq.*........................................................... 11

O.C.G.A. § 21-2-230 ...............................................................passim

O.C.G.A. § 21-2-233 ...............................................................passim

**Other Authorities**

*Raffensperger Continues Comprehensive Off-Year List Maintenance Effort*,
  Ga. Sec'y of State (Oct. 2, 2023) .................................................. 12

**Rules**

Fed. R. Civ. P. 12(b)(1)........................................................................3

Fed. R. Civ. P. 12(b)(6)........................................................................4

# INTRODUCTION

Only 40 days before the November 5, 2024 General Election, 19 days before the start of early voting, and 11 days before the deadline for voter registration in Georgia, Plaintiffs filed the Complaint in the hopes of moving potentially thousands of Georgia voters to inactive status. According to Plaintiffs, the Secretary is in violation of the National Voter Registration Act ("NVRA") and the Georgia Election Code because he did not respond to a letter sent by Plaintiffs, alleging that Plaintiffs had identified Georgians in the United States Postal Service National Change of Address ("NCOA") database who were still registered to vote in their original counties in Georgia. In fact, the face of the Complaint reveals that the Secretary's voter list maintenance procedures are in compliance with state and federal election law.

The Complaint requests a declaration that the Secretary has violated the NVRA and the Georgia Election Code, as well as injunctive or mandamus relief ordering the Secretary to direct Georgia counties to send notices to the individuals that Plaintiffs have identified and move any individuals who do not respond in 30 days to the inactive voter list. Despite the purported urgency, Plaintiffs did not move for a temporary restraining order, *see* ECF Doc. 4, despite this Court's instruction on how to do so, *see* ECF Doc. 5.

The Court should dismiss Plaintiffs' Complaint in its entirety. Plaintiffs lack standing under Article III of the United States Constitution to bring such

a mass voter challenge, and therefore this Court does not have jurisdiction to hear Plaintiffs claims. Without a source of original jurisdiction, there is no basis for this Court to exercise supplemental jurisdiction over Plaintiffs' state law claim. To the extent that Plaintiffs' state law claim seeks injunctive or mandamus relief ordering compliance with Georgia law, it is barred by the Eleventh Amendment. Moreover, Plaintiffs have failed to state a claim under either the NVRA or O.C.G.A. § 21-2-233. Plaintiffs do not contend that the Secretary has failed to conduct list maintenance activities in compliance with the NVRA and Georgia Election Code—in fact, Plaintiffs' Complaint admits that the Secretary has indeed conducted list maintenance activities, including based upon the NCOA list as provided for in O.C.G.A. § 21-2-233. Plaintiffs simply do not think that the Secretary has done enough. Plaintiffs rely entirely on NCOA data to support the presumption that the voter rolls contain ineligible voters, which is insufficient to state a claim under the NVRA. And the Complaint alleges no basis for a claim under O.C.G.A. § 21-2-233, which provides the Secretary with discretion to conduct periodic voter list maintenance and provides no independent cause of action. Plaintiffs' request for mandamus relief should also be denied. Plaintiffs lack a clear legal right to the relief sought and have an alternative legal remedy; namely, they could pursue voter challenges under O.C.G.A. § 21-2-230.

2

Finally, Plaintiffs' challenge simply comes too late. Early voting has already begun. The General Election is only 15 days away, and there is insufficient time for the Secretary to send out notices prior to the General Election even if such were warranted. If Plaintiffs wished to challenge the residency status of certain voters, they had the opportunity to submit timely voter challenges under O.C.G.A. § 21-2-230 but elected not to do so.

For these reasons, the Secretary respectfully requests that the Court dismiss the Complaint in its entirety.

## LEGAL STANDARDS

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) where the district court lacks subject-matter jurisdiction over a claim. Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). Subject-matter jurisdiction must be established before a case can proceed on the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–95, 118 (1998). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case[.]" *Smith v. Gte Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) (citations omitted). A defendant may challenge subject-matter jurisdiction facially or factually. *See Douglas v. United States*, 814 F.3d 1268, 1274–75 (11th Cir. 2016). A facial attack requires the court to examine the complaint,

3

taking its allegations as true, to determine whether the plaintiff has to establish subject-matter jurisdiction, a plaintiff must allege he has standing. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021).

A defendant may also move to dismiss a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive such a motion, "a complaint must contain specific factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if the complaint alleges sufficient facts to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A complaint must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. The Court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs," but the Court is not required to accept allegations that are merely legal conclusions. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). A pleading that offers mere labels and conclusions or a formulaic recitation of the elements of a cause of action is subject to dismissal. *Ashcroft*, 556 U.S. at 678.

## ARGUMENT

## I.    The Court does not have jurisdiction over Plaintiffs' claims.

Plaintiffs fail to establish that they can meet the requirements for standing under Article III of the United States Constitution. Plaintiffs allege only generalized grievances that are common not only to all Georgia voters but all Americans. Moreover, Plaintiffs' purported injuries are speculative. Plaintiffs cannot show that they have suffered a particularized, concrete injury or imminent risk of such an injury. This Court therefore lacks jurisdiction over Plaintiffs' claims. Because the Court does not have original jurisdiction over Plaintiffs' NVRA claim, the Court cannot exercise supplemental jurisdiction over Plaintiffs' state law claim. Even if the Court did have original jurisdiction, the Eleventh Amendment bars federal courts from using supplemental jurisdiction to compel a state officer to perform duties under state law. Accordingly, the Complaint should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

### A. Plaintiffs lack Article III standing.

Article III limits federal courts to the consideration of "Cases" and "Controversies." U.S. Const. Art. III, § 2, cl. 1. The standing doctrine "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy the standing inquiry, the plaintiff "must prove (1) an injury in fact that (2) is fairly

traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (citing *Lujan*, 504 U.S. at 561).

Plaintiffs cannot establish that they have standing because they cannot show that they do not allege the "first and foremost of standing's three elements": an injury in fact. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (alterations adopted and quotations omitted). An injury in fact is "an invasion of a legally protected interest that is both concrete and particularized and actual or imminent, not conjectural or hypothetical." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (quotation omitted). A particularized injury is one that "affect[s] the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339 (citation omitted).

Plaintiffs do not allege any facts that would suggest that they have suffered a particularized injury. The Complaint alleges that "Georgia's improperly maintained voter rolls have undermined . . . Plaintiffs' confidence in the electoral process and burdened Plaintiffs' right to vote[,]" Complaint ("Compl.") ¶ 28, and that Plaintiffs have suffered vote dilution as a result of the possibility that ineligible voters are included on the rolls, *see id.* ¶¶ 2, 36. But the Eleventh Circuit has been clear that these exact sorts of generalized grievances are insufficient to confer standing on a plaintiff. *See Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020). "A generalized grievance

is 'undifferentiated and common to all members of the public.'" *Id.* (quoting *Lujan*, 504 U.S. at 575). Plaintiffs' allegations that they have suffered injured confidence in the electoral process, *see* Compl. ¶ 28, or diluted votes, *see id.* ¶¶ 2, 36; *id.*, Ex. 1 at 4, are common not only to all Georgia voters but all indeed all *Americans*, who share an interest in promoting public confidence in the electoral process of federal elections, *cf. Wood*, 981 F.3d at 1314. As the Eleventh Circuit explained:

> Wood cannot explain how his interest in compliance with state election laws is different from that of any other person. Indeed, he admits that any Georgia voter could bring an identical suit. But the logic of his argument sweeps past even that boundary. All Americans, whether they voted in this election or whether they reside in Georgia, could be said to share Wood's interest in ensuring that a presidential election is properly administered.

*Id.* (quotations omitted and alternations adopted). As in *Wood*, any member of the public could bring the same suit, making this precisely the type of generalized grievance rejected by the Eleventh Circuit.

Accordingly, to the extent that Plaintiffs' "confidence" in the electoral process has been harmed or Plaintiffs' votes have been diluted, the Eleventh Circuit does not recognize these allegations as an injury sufficient to satisfy Article III standing requirements. Plaintiffs attempts to point to district court rulings from other circuits are unavailing. *See* Compl. ¶ 28. That is because the Eleventh Circuit has been clear that generalized grievances like lost confidence or vote dilution cannot constitute an injury-in-fact because "no

single voter is specifically disadvantaged if a vote is counted improperly, even if the error might have a mathematical impact on the final tally and thus on the proportional effect of every vote." *Wood*, 981 F.3d at 1314 (quotation omitted).

But even if Plaintiffs could satisfy the injury-in-fact requirement by alleging lost confidence in the electoral process or vote dilution, Plaintiffs have another problem—they concede that any injury caused by vote dilution is merely speculative. *See* Compl. ¶ 2 ("[*I*]*f* a voter permanently moved out of state, and another individual uses that voter's information to cast an illegal ballot, this *could* result in the former Georgia resident being wrongfully accused of having cast the illegal vote." (emphasis added)); *id.* ¶ 10 ("This is particularly important in the context of absentee voting, where a person *could potentiall*y vote multiple times, or third parties *could* submit votes without the person's knowledge."(emphasis added)). Plaintiffs even concede that they do not know whether any ineligible voters are included on the rolls. *See id.* ¶ 39 ("It is possible that the State of Georgia may have corrected some of these registrations in the time since the subject voter registration data was purchased from Georgia on June 30, 2024. Georgia may have also sent notices to some or all of the voters identified in Plaintiffs' September 3, 2024 notice letter—and further, such voters may have indicated to Georgia that the address listed on the voter's registration form is still correct."). "[W]hen

8

plaintiffs seek prospective relief to prevent future injuries, they must prove that their threatened injuries are 'certainly impending.'" *Jacobson*, 974 F.3d at 1245–46 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013)). That the upcoming or future elections might be negatively impacted, potentially injuring Plaintiffs confidence in the electoral system or causing Plaintiffs to potentially suffer vote dilution, is certainly too speculative to satisfy the standing requirements of Article III.

Nor can Plaintiffs' allegations that the Secretary has violated the NVRA save their claims. The Supreme Court has explained statutory standing to sue based on a defendant's violation of federal law is distinct from Article III's requirement that the plaintiff must have suffered a concrete harm caused by defendant's alleged statutory violation. *See TransUnion*, 594 U.S. at 427. The mere existence of a private right of action under the NVRA therefore does not satisfy Plaintiffs' standing requirements.

### B. The Court lacks subject matter jurisdiction over Plaintiffs' state law claim.

Plaintiffs also bring a state law claim for violation of O.C.G.A. § 21-2-233, alleging that this Court has supplemental jurisdiction over this claim. *See* Compl. ¶¶ 7, 47–50. Supplemental jurisdiction pursuant to 28 U.S.C. § 1367 "is, by its very nature, not original but additional; that is, it relies on the existence of some other original basis of jurisdiction." *Palmer v. Hosp. Auth.*,

22 F.3d 1559, 1565 (11th Cir. 1994) ("A case may not be brought in federal court on the grounds of supplemental jurisdiction alone."). As explained, this Court does not have original jurisdiction over Plaintiffs' NVRA claim and therefore cannot exercise supplemental jurisdiction over its state law claim.

Moreover, the Eleventh Amendment bars federal courts from using supplemental jurisdiction to enjoin state officials from violating state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120–21 (1984). To the extent that Count II seeks a "writ of mandamus or an injunction directing Secretary Raffensperger to direct all county registrars to send notices under Ga. Code Ann. § 21-2-233(c)," Compl. at 17 (Prayer for Relief), that claim is barred by the Eleventh Amendment, and this Court lacks jurisdiction to hear it, *see Pennhurst*, 465 U.S. at 98–100 (Eleventh Amendment is a jurisdictional bar).

## II. Plaintiffs fail to state a claim under the NVRA or under the Georgia Election Code.

### A. The Complaint fails to state a claim under the NVRA.

The Complaint alleges that the Secretary "is violating 52 U.S.C. § 20507(a)(4)(B) by failing to make a 'reasonable effort' to remove [] ineligible voters from its active voter list and is not complying with the safe harbor provision under 52 U.S.C. § 20507(c)(1)(B)." Compl. ¶ 43. But the Complaint fails to allege sufficient facts to support this claim.

First, Plaintiffs allege that the Secretary "has not provided any indication that the state will look into these registrations or take action to confirm their validity as required by law . . . ." Compl. ¶ 1. But the Complaint does not identify any provision of the NVRA that requires the Secretary to provide assurances that it will act in response to a data set submitted by a private citizen. The Complaint does not allege that Georgia's list maintenance procedures, *see* O.C.G.A. §§ 21-2-210 *et seq.*, fail to satisfy the State's obligation to make a "reasonable effort" under the NVRA's safe harbor provision. None of the State's procedures require the Secretary to act in response to requests from private citizens. And there is no basis to infer from the Secretary's decision not to respond to Plaintiffs' letter that the Secretary is failing to conduct list maintenance as required under Section 8 of the NVRA. Plaintiffs even acknowledge that they do not know whether the Secretary took any action in response to their letter or not. *See* Compl. ¶ 39. In fact, just as the NVRA requires that the Secretary make a reasonable effort to remove ineligible voters, it also restricts the circumstances under which Georgia can remove a voter in a federal election. *See, e.g.*, 52 U.S.C. § 20507(d)–(e). The Secretary is not free to simply respond to requests from electors to investigate or remove other electors.

Second, Plaintiffs fail to allege any facts concerning the Secretary's failure to follow Georgia's list maintenance practices. For example, they do not

11

allege that the Secretary has failed to send any notices required by the NVRA or under Georgia law. In fact, the Complaint acknowledges that the Secretary publishes updates on election officials' efforts to maintain its voter rolls, including by mailing notices to Georgia voters based on NCOA, and does not allege that any of these claims are untrue. *See id.* ¶ 26 & n.1. As Plaintiffs concede, the Secretary performs comprehensive off-year maintenance in addition to continuing maintenance that goes beyond notices based on NCOA data. *See Raffensperger Continues Comprehensive Off-Year List Maintenance Effort*, Ga. Sec'y of State (Oct. 2, 2023), https://sos.ga.gov/news/raffensperger-continues-comprehensive-year-list-maintenance-effort (last visited Oct. 21, 2024).[1] In 2023, the Secretary mailed 185,208 notices based on NCOA forms and another 37,285 postcards to individuals who did not file a change of address form based on data provided by the Department of Driver Services. *Id.* They also do not allege that the Secretary has failed to move to inactive any

---

[1] The Court may consider on a motion to dismiss any documents that have been incorporated by reference in the Complaint. "Under the doctrine of incorporation by reference, we may also consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018). Plaintiffs link to the October 2023 press release in the Complaint, *see* Compl. ¶ 26 n.1, and the Secretary's list maintenance procedures and activities are clearly central here, where the Plaintiffs allege that the Secretary has failed to conduct a list maintenance program as required by Section 8 of the NVRA. There is no dispute that the link to the press release is authentic.

voters who did not timely respond to a notice as provided in the NVRA. The sole basis for their claim that the Secretary is in violation of the NVRA is an analysis performed by Plaintiffs on data gathered from the NCOA database and a list of voter registrations purchased from the Secretary on June 30, 2024. *See* Compl. ¶¶ 20–24. Plaintiffs contend that their analysis "identified many voters who *appear* to have moved out of the jurisdiction in which they are registered . . . ." *Id.* ¶ 25 (emphasis added). Plaintiffs further contend that the active voter list as of June 30, 2024 included individuals who "moved before October 2023." *Id.* ¶ 27. From this, Plaintiffs suggest that the Court can reasonably infer that the Secretary has not made a reasonable effort to maintain Georgia's voter rolls in accordance with the NVRA. *See id.* ¶¶ 42–45.

That inference is not reasonable. Plaintiffs point to a North Carolina federal district court case that relied on an analysis of "reliable data" in refusing to dismiss an NVRA list-maintenance claim. *Id.* ¶ 43. In that case, the plaintiffs used data from the United States Election Assistance Commission and the United States Census Bureau to show that registration rates in one county exceeded 100% of eligible electors in that county. *See Voter Intergrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, 301 F. Supp. 3d 612, 618–20 (E.D.N.C. 2017). From that analysis, the court held that a reasonable inference could be drawn that list maintenance was not being conducted in accordance with the NVRA. *See id.* at 620. That is not analogous to what Plaintiffs have

done. Plaintiffs' "analysis" is based on outdated voter registration data and outdated data from the NCOA database. Plaintiffs freely acknowledge the potential unreliability of their data and acknowledge the fact that there is nothing to suggest these individuals have not changed their address for permissible reasons without changing their residence. *See id.* ¶ 39 ("[S]uch voters may have indicated to Georgia that the address listed on the voter's registration form is still correct.").

There is no basis to support a reasonable inference that, because these individuals appeared on the NCOA database as of June 30, 2024, ineligible voters remain on the roles today, let alone that the Secretary has failed to conduct proper list maintenance. Accordingly, Plaintiffs' NVRA claim must be dismissed.

## B. The Complaint fails to state a claim under O.C.G.A. § 21-2-233.

The Complaint alleges that the Secretary has violated O.C.G.A. § 21-2-233 by allegedly failing to compare Georgia's official voter roll to the NCOA database, send notices to those who indicate a change of address, and move those who do not respond in 30 days to the inactive list. *See* Compl. ¶¶ 48–49. Although Plaintiffs cast this as a "require[ment]," O.C.G.A. § 21-2-233 vests the decision as to whether and when to perform a comparison of the voter rolls to the NCOA database with the Secretary and within his discretion: "The Secretary of State is authorized to cause at his or her discretion the official list

14

of electors to be compared to the change of address information supplied by [USPS] through its licensees periodically for the purpose of identifying those electors whose addresses have changed." O.C.G.A. § 21-2-233(a). As the Plaintiffs concede, the Secretary has conducted list maintenance activities under this code provision. *See* Compl. ¶ 26 & n.1. Nothing in O.C.G.A. § 21-2-233 requires the Secretary to exercise his discretion in response to a request from a private party.

In any event, there is no private right of action to enforce O.C.G.A. § 21-2-233. Under Georgia law, "it is well settled that violating statutes and regulations does not automatically give rise to a civil cause of action by an individual claiming to have been injured from a violation thereof." *Govea v. City of Norcross*, 271 Ga. App. 36, 41 (2004). Georgia law recognizes a presumption against implied rights of action. *See Somerville v. White*, 337 Ga. App. 414, 417 (2016) (recognizing Georgia's "longstanding precedential authority rejecting the creation of implied private rights of action"); *State Farm Mut. Auto. Ins. Co. v. Hernandez Auto Painting & Body Works, Inc.*, 312 Ga. App. 756, 761 (2011). Plaintiffs have not pointed to any language suggesting that the General Assembly provided for a private right of action under O.C.G.A. § 21-2-233.

That does not mean that citizens are without recourse. Under O.C.G.A. § 21-2-230, any elector may challenge the eligibility of any other elector,

provided that they submit the challenge "in writing and specify distinctly the grounds of such challenge[.]" *Id.* § 21-2-230(a). There is no limit to the number of electors that an elector may challenge. *See id.* However, it is the board of registrars for the relevant county, not the Secretary, that would be responsible for investigating that challenge. The Complaint does not plead that Plaintiffs have filed any such challenges, but even if it did, a challenged elector's inclusion in the NCOA database without additional evidence is insufficient cause to sustain the challenge. *See id.* § 21-2-230(b). Courts have noted unreliability of NCOA data and questioned the use of such data, standing alone, to disqualify voters. *See Fair Fight Inc. v. True the Vote*, 710 F. Supp. 3d 1237, 1266 (N.D. Ga. 2024); *Majority Forward v. Ben Hill Cnty. Bd. of Elections*, 512 F. Supp. 3d 1354, 1369–70 (M.D. Ga. 2021). The Complaint does not plead that Plaintiffs have any evidence beyond NCOA data to support a challenge. And in any event, Georgia law postpones challenges to voting rights within 45 days of an election until after certification. *See id.* § 21-2-230(b)(1).

### C. Plaintiffs' claims are untimely.

The voter registration deadline passed on October 7, 2024. Early voting began on October 15, 2024. And the General Election is now just 15 days away. Even if the Court were to grant Plaintiffs' request and order the Secretary to order the counties to send notices to those voters that Plaintiffs have identified,

those voters would have 30 days to respond to such a notice, at which point the election and certification dates would have passed.

Moreover, Plaintiffs had time to submit voter challenges under O.C.G.A. § 21-2-230. Plaintiffs could have attempted to collect "additional evidence" that the challenged individuals lost their residency and filed challenges after receiving the voter registration data on June 30, 2024. *See id.* § 21-2-230(b). They did not do so. Instead, they chose to wait until September 3, 2024 to contact the office of the Secretary, rather than the board of registrars. At this point, any challenge would come too late. Challenges within 45 days of an election are suspended until after certification. *See id.* § 21-2-230(b)(1).

## III. Plaintiffs are not entitled to a writ of mandamus.

In addition to its requests for declaratory and injunctive relief, the Complaint makes two general references to Plaintiffs' request for mandamus relief. However, the Complaint does not state a claim petitioning for a writ of mandamus. The Court need not address the merits of Plaintiffs' request for mandamus relief because this Court does not have jurisdiction to issue a writ of mandamus to the Secretary. Even if the Court had jurisdiction, Plaintiffs have not demonstrated that they are entitled to mandamus relief.

**A. The Court does not have jurisdiction to grant Plaintiffs' mandamus relief.**

Plaintiffs purport to seek either "[a] writ of mandamus or an injunction". Compl. at 17 (Prayer for Relief). The Complaint makes only two references to this request for mandamus relief, *see id.* at 1, 17, and does not explain the basis for such a request. But to the extent that the Complaint properly pleads a claim for mandamus relief, this Court does not have jurisdiction over such a claim.

Plaintiffs cannot seek a writ of mandamus against the Secretary under the federal mandamus statute, which applies only to federal officers. *See* 28 U.S.C. § 1361; *see also Church of Scientology of Ga., Inc. v. City of Sandy Springs*, 843 F. Supp. 2d 1328, 1380 (N.D. Ga. 2012) ("Federal district courts do not have the authority to issue writs of mandamus to direct state officials in the performance of their duties."). Nor can Plaintiffs request a writ of mandamus under the All Writs Act. For the reasons explained, *see supra* Sec. I, this Court lacks jurisdiction over Plaintiffs' claims for declaratory and injunctive relief. The All Writs Act only allows courts "to protect the jurisdiction they already have, derived from some other source, but it does not create any substantive federal jurisdiction." *Sec. & Exch. Comm'n v. Complete Bus. Sols. Grp., Inc.*, 44 F.4th 1326, 1334 (11th Cir. 2022) (quotations and citations omitted)). Accordingly, this Court does not have jurisdiction to issue a writ of mandamus under the All Writs Act. Finally, to the extent that

Plaintiffs are attempting to bring a mandamus claim under Georgia state law, only supplemental jurisdiction could give this Court jurisdiction over that claim. Because the Court does not have original jurisdiction, supplemental jurisdiction does not apply. *See supra*, Sec. I.B.

### B. The Secretary has no clear legal duty to undertake Plaintiffs' requested action.

Plaintiffs' mandamus claim also fails because Plaintiffs have not pleaded facts that, if true, would entitle them to mandamus relief. Mandamus is an extraordinary remedy to compel a public officer to perform a required duty when there is no other adequate legal remedy. *Bland Farms, LLC v. Ga. Dep't of Agric.*, 281 Ga. 192, 193 (2006); *see also Sun v. Forrester*, 939 F.2d 924, 926 (11th Cir. 1991) (Mandamus is a "drastic" remedy that is "appropriate specifically to remedy a clear usurpation of power or abuse of discretion, when no other adequate means of obtaining relief is available." (quotation omitted)). The standards for mandamus are largely similar under federal and Georgia law. If a petitioner fails to make a showing that "(1) no other adequate legal remedy is available to effectuate the relief sought; and (2) the applicant has a clear legal right to such relief," it is proper for the trial court to deny a petition for mandamus. *Ga. Ass'n of Prof'l Process Servers v. Jackson*, 302 Ga. 309, 312

(2017) (citation omitted); *see also Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir. 1969) (similar test for mandamus under 28 U.S.C. § 1361).[2]

First, Plaintiffs are not entitled to mandamus relief because they have not pleaded a clear legal right to the relief sought. Plaintiffs seek:

> A writ of mandamus or an injunction directing Secretary Raffensperger to direct all county registrars to send notices under Ga. Code Ann. § 21-2-233(c) to all identified voters who permanently moved outside of the jurisdiction in which they are currently registered, and if any voter fails to respond to the notice within 30 days after the date of the notice, immediately transfer that voter to Georgia's inactive voter registration list (and do so prior to the November 2024 election).

Compl. at 17 (Prayer for Relief). But Plaintiffs themselves acknowledge that they are not clearly entitled to this relief: "[N]either the NVRA nor Ga. Code Ann. § 21-2-233 specify exactly how often the state must perform maintenance on its voter lists based on change of address information." Compl., Ex. 1 at 5. The NVRA requires only that the State "conduct a general program that makes a *reasonable effort* to remove the names of ineligible voters from the official lists of eligible voters . . . ." 52 U.S.C.A. § 20507(a)(4) (emphasis added). The use of "reasonable" inherently gives the Secretary and other election officials discretion in conducting a list-maintenance program, and Plaintiffs admit that the Secretary conducts list maintenance. *See* Compl. ¶ 26 n.1. And nothing in

---

[2] Decisions of the former Fifth Circuit filed prior to October 1, 1981 constitute binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

the Complaint explains why it would be unreasonable for the Secretary not to respond to a mass voter challenge submitted by letter by private citizens 63 days before the election. O.C.G.A. § 21-2-233 explicitly provides that the Secretary is "*authorized* to cause at his *discretion*" the NCOA database to be compared to the official voter roll. O.C.G.A. § 21-2-233(a) (emphasis added). Neither imposes a "clear and well defined" obligation on the part of the Secretary where "*no element of discretion is involved*" to undertake Plaintiffs' requested action. *Bland Farms,* 281 Ga. at 193 (emphasis added) (citation omitted).

Second, mandamus is not appropriate in this case because Plaintiffs have an alternative legal remedy—they may pursue a challenge to an individual's voter registration through the process laid out in O.C.G.A. § 21-2-230. Plaintiffs allegedly collected the data to conduct their analysis on June 30, 2024, *see* Compl. ¶ 20, 128 days before the election. Plaintiffs had ample time to pursue relief via a complaint to the county registrars. Instead, Plaintiffs chose to avoid this statutory process and attempt an eleventh-hour mass voter challenge. That Plaintiffs cannot now get this relief prior to the November 5, 2024 General Election is a problem of their own making.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint for lack of jurisdiction or failure to state a claim.

This 21st day of October, 2024.

Respectfully submitted,

CHRISTOPHER M. CARR                     112505
Attorney General

BRYAN K. WEBB                           743580
Deputy Attorney General

*/s/ Elizabeth T. Young*
ELIZABETH T. YOUNG                      707725
Senior Assistant Attorney General

*/s/ Alexandra M. Noonan*
ALEXANDRA M. NOONAN                     733236
Assistant Attorney General

*Attorneys for Secretary of State Brad
Raffensperger*

Please address all
communications to:
Elizabeth T. Young
Georgia Department of Law
40 Capitol Square, SW
Atlanta, Georgia 30334
Telephone: (404) 458-3425
Email: eyoung@law.ga.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(C).

*/s/ Alexandra M. Noonan*
ALEXANDRA M. NOONAN    733236
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically filed the foregoing

**BRIEF IN SUPPORT OF SECRETARY RAFFENSPERGER'S MOTION**

**TO DISMISS** with the Clerk of Court using the CM/ECF e-filing system,

which will send notification of such filing to the parties of record via electronic

notification.

Dated: October 21, 2024.

*/s/ Alexandra M. Noonan*
ALEXANDRA M. NOONAN    733236
Assistant Attorney General
