## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

WILLIAM T. QUINN AND
DAVID CROSS,

               Plaintiffs,

     v.

BRAD RAFFENSPERGER, in his official
capacity as Secretary of State of Georgia,

            Defendant.

C.A. No. 1:24-cv-04364-SCJ

## PLAINTIFFS' RESPONSE TO BLACK VOTERS MATTER FUND'S MOTION TO INTERVENE

## TABLE OF CONTENTS

INTRODUCTION ................................................................................1

FACTUAL BACKGROUND ................................................................2

ARGUMENT ......................................................................................4

     I.    Movant Does Not Have the Right to Intervene....................................4

          A.    Movant Lacks a Direct, Substantial, and Legally Protectable Interest Related to the Subject of This Action............................5

          B.    Ordering Defendant to Comply with Existing Law Does Not Impair or Impede Movant's Ability to Protect Its Interests......16

          C.    The Existing Defendant Adequately Represents Movants' Interests by Seeking the Same Relief. ......................................17

     II.    The Court Should Exercise Its Discretion to Deny Permissive Intervention ........................................................................21

CONCLUSION ..................................................................................23

# TABLE OF AUTHORITIES

## Cases

*Arcia v. Sec'y of Fla.*,
  772 F.3d 1335 (11th Cir. 2014) ..........................................................15

*Athens Lumber Co, Inc. v. Fed. Election Comm'n*,
  690 F.2d 1364 (11th Cir. 1982) ................................................... passim

*Bellitto v. Snipes*,
  No. 16-61474, 2016 U.S. Dist. LEXIS 128840 (S.D. Fla. Sept. 20, 2016).. 11, 12

*Berger v. N.C. State Conf. of the NAACP*,
  597 U.S. 179 (2022) ...................................................................... 19, 20

*Black Voters Matter Fund v. Raffensperger*,
  508 F. Supp. 3d 1283 (N.D. Ga. 2020) ..............................................14

*Burke v. Ocwen Fin. Corp.*,
  833 F. App'x 288 (11th Cir. 2020) ..................................... 5, 10, 17, 22

*Bush v. Viterna*,
  740 F.2d 350 (5th Cir. 1984)............................................................22

*Chiles v. Thornburgh*,
  865 F.2d 1197 (11th Cir. 1989) ..........................................................5

*Clark v. Putnam Cnty.*,
  168 F.3d 458 (11th Cir. 1999) ............................................................6

*Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.*,
  51 F. Supp. 972 (D.Mass.1943) .......................................................22

*Daunt v. Benson*,
  No. 1:20-cv-522 (W.D. Mich. Sept. 28, 2020) ..................................11

*Def. Distributed v. United States Dep't of State*,
  No. 1:15-CV-372-RP, 2018 U.S. Dist. LEXIS 126388 (W.D. Tex. July 27, 2018)
  ................................................................................................13

*Fair Fight Action, Inc. v. Raffensperger*,
  413 F. Supp. 3d 1251 (N.D. Ga. 2019) ..............................................16

*Federal Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*,
    983 F.2d 211 (11th Cir. 1993) ...................................................... 17, 18

*Int'l. Tank Terminals, Ltd. v. M/V Acadia Forest*,
    579 F.2d 964 (5th Cir. 1978)....................................................................17

*Jones v. Caddo Parish Sch. Bd.*,
    704 F.2d 206 (5th Cir. 1983)....................................................................18

*Jud. Watch, Inc. v. Illinois State Bd. of Elections*,
    No. 24 C 1867, 2024 U.S. Dist. LEXIS 126862 (N.D. Ill. July 18, 2024)... 11, 12

*New Ga. Project v. Raffensperger*,
    484 F. Supp. 3d 1265 (N.D. Ga. 2020) ...................................................15

*Pub. Int. Legal Found. v. Benson*,
    No. 1:21-cv-929, 2022 U.S. Dist. LEXIS 246223 (W.D. Mich. Aug. 25, 2022) 10

*Pub. Int. Legal Found., Inc. v. Winfrey*,
    463 F. Supp. 3d 795 (E.D. Mich. 2020)...................................... 11, 12

*Sellers v. United States*,
    709 F.2d 1469 (11th Cir. 1983) ...........................................................22

*South Carolina v. North Carolina*,
    558 U.S. 256 (2010)...............................................................................22

*Stansell v. Revolutionary Armed Forces of Colom.*,
    45 F.4th 1340 (11th Cir. 2022) ...............................................................4

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001)....................................................................6

*Town of Chester v. Laroe Estates, Inc.*,
    581 U.S. 433 (2017) ...............................................................................6

*Trbovich v. UMW*,
    404 U.S. 528 (1972) ........................................................................ 19, 20

*United States v. 60 Auto. Grilles*,
    799 Fed. Appx. 693 (11th Cir. 2020)......................................................18

*United States v. City of Miami,*
   278 F.3d 1174 (11th Cir. 2002) ..........................................................18

*United States v. Coffee Cnty. Bd. of Educ.,*
   134 F.R.D. 304 (S.D. Ga. 1990) ........................................................18

*United States v. United States Steel Corp.,*
   548 F.2d 1232 (5th Cir. 1977) ..........................................................18

*Voter Integrity Proj. NC, Inc. v. Wake Cnty. Bd. of Elections*,
   No. 5:16-cv-683 (E.D.N.C. Dec. 1, 2016) .......................................11

## <u>Statutes</u>

52 U.S.C. § 20507 ...................................................................... 2, 8, 12

Ga. Code Ann. § 21-2-210 ................................................................3

Ga. Code Ann. § 21-2-233 ........................................................ 3, 7, 8

Ga. Code Ann. § 21-2-235 .............................................................8, 9

## <u>Rules</u>

Fed. R. Civ. P. 24 ............................................................... passim

## <u>Other Authorities</u>

*Frequently Asked Questions on Voter Status*, ACLU GA.,
   https://www.acluga.org/en/frequently-asked-questions-voter-status ...................9

Press Release, *DeKalb Voter Registration and Elections Urges Residents to Verify
   Voter Status and Plan for Upcoming Election*, DEKALB. CO. (Sept. 5, 2024),
   https://www.dekalbcountyga.gov/news/dekalb-voter-registration-and-elections-
   urges-residents-verify-voter-status-and-plan-upcoming........................................9

## INTRODUCTION

Plaintiffs William T. Quinn and David Cross ("Plaintiffs") filed the present action, requesting that the Secretary of State, Brad Raffensperger, comply with Georgia and federal law to: (1) identify actively registered voters who have permanently moved out of state or within state but outside of the jurisdiction in which they are registered, (2) send those voters notices to confirm residence, and (3) only if a voter does not respond, change that voter's registration status to "inactive."

To be clear, Plaintiffs are not seeking to remove individuals from the voter rolls. Rather, Plaintiffs only seek to correct the registrations of voters who have moved, regardless of their race, gender, political affiliation, or any other potentially prejudicial attribute. Voters who are marked as inactive are not barred from voting.

Black Voters Matter Fund ("Movant") filed a motion to intervene on October 10, 2024, claiming that ordering government agencies to comply with existing state and federal election laws would "weaponize" the law and constitutes "extraordinary" relief (Dkt. No. 12-1 at 1-2.) Specifically, Movant contends that requiring the state to comply with the National Voter Registration Act ("NVRA") and corresponding Georgia law threatens "the fundamental voting rights of its constituents" and impairs their ability to conduct "voter registration, education, and assistance activities." (*Id.* at 2-3.) This position makes no sense, and serves to highlight Movant's lack of a sufficient basis to intervene.

As detailed below, Movant has failed to establish that it is entitled either to (1) intervention as a matter of right, or (2) permissive intervention. Movant has no legitimate interest that is not already amply represented by Defendant. Nor does Movant have any legitimate interest that would not be adequately represented by any of the earlier-filed proposed intervenors in this case, should the Court deem it necessary to add any. No fewer than six parties have filed three motions to intervene, all of which echo each other and contain predominantly the same arguments. This brief is Plaintiffs' third response to essentially the same motion. This is the epitome of judicial inefficiency. The parties and the Court would be better served by allowing Movant to file *amicus* briefs, to which Plaintiffs do not object. Adding additional parties to the litigation will only add needless complexity. Accordingly, the Court should deny Movant's Motion to Intervene.

## FACTUAL BACKGROUND

To uphold the integrity of elections, to prevent voter fraud, and to protect our citizens' trust in the election process, the federal government has enacted multiple laws requiring states to maintain their lists of voters and designate as inactive those registrations that are no longer active. *See* NVRA, 52 U.S.C. § 20507(a)(4)(B) (requiring states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to a change of address). In accordance with the NVRA, Georgia implemented voter

list maintenance procedures, which are codified in Ga. Code Ann. § 21-2-210, *et seq.*

Ga. Code Ann. § 21-2-233 details the state's voter list maintenance procedures for changes of addresses. Specifically, § 21-2-233(a) provides that the Secretary of State may cause voter addresses to be compared to change of address information from the United States Postal Service ("USPS") for the purpose of identifying voters whose addresses have changed. § 21-2-233(c) further provides that a voter who has moved to an address outside of the county or municipality in which the voter is presently registered shall be sent a confirmation notice. If the voter fails to respond to the notice within 30 days, the voter's registration status is merely corrected to inactive. The voter is not removed.

A list of voter registrations was purchased from the Georgia Secretary of State on Sunday, June 30, 2024. (Compl., Dkt. No. 1 ¶ 20.) Plaintiffs found that this data showed voters who were marked as active, but that had permanently moved out of the state or permanently moved within the state but outside of the jurisdiction in which they are registered. (*Id*. ¶¶ 21–27.)

On September 3, 2024, Plaintiffs provided the data to Defendant and reminded Defendant of its obligations to rectify this situation under the NVRA and Georgia law. Specifically, in their September 3 letter, Plaintiffs requested that Defendant send the appropriate notices to the identified voters and, if any voter failed to respond

to this notice, correct that voter registration status by noting the voter was inactive. (*Id*. ¶¶ 29–34.) Defendant never responded to Plaintiffs' notice. (*Id*. ¶ 38.) Plaintiffs thus filed the instant lawsuit on September 26, 2024.

On October 2, 2024, the NAACP, the Georgia Coalition for the People's Agenda, and the League of Women Voters of Georgia filed a motion to intervene. (Dkt. No. 8.) Later that same day, GALEO Latino Community Development Fund, Inc. and Common Cause Georgia also moved to intervene. (Dkt. No. 10.) Then, on October 10, 2024, Black Voters Matter Fund filed a motion to intervene. (Dkt. No. 12.) Thus, to date, six parties are all seeking to intervene on almost all the same grounds.

## ARGUMENT

### I.  <u>Movant Does Not Have the Right to Intervene</u>

This Court should deny Movant's attempt to intervene in this lawsuit. Absent an unconditional statutory right, a party may only intervene as a matter of right under Fed. R. Civ. P. 24(a)(2) if all four of the following requirements are met: (1) the motion must be timely, (2) the party must "claim[] an interest relating to the . . . subject of the action," (3) the party must be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," and (4) no "existing parties adequately represent that interest." *Stansell v. Revolutionary Armed Forces of Colom.*, 45 F.4th 1340, 1362 (11th Cir. 2022).

Notably, if one requirement is missing, the court should deny intervention. *See Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (requiring the movant to "establish[] each of the four requirements" to allow intervention by right). Movant has the burden of proof to establish all of the requirements. *See Burke v. Ocwen Fin. Corp.*, 833 F. App'x 288, 291 (11th Cir. 2020) (describing that "intervenors . . . bear the burden of proof to establish all four bases for intervention as a matter of right").

Here, Movant does not claim to have an unconditional right to intervene by federal statute and fails to meet three of the four requirements for intervention under Rule 24(a)(2). First, Movant lacks a legitimate interest in the subject of this action. Second, Movant is not impaired or impeded in its ability to protect what interests it has. Third, Defendant adequately represents Movant's interests to the extent it has any. Consequently, Movant is not entitled to intervene as a matter of right.

A.    **<u>Movant Lacks a Direct, Substantial, and Legally Protectable Interest Related to the Subject of This Action.</u>**

The Eleventh Circuit has consistently held that an intervenor must be a "real party in interest" in a matter and their "intervention must be supported by a 'direct, substantial, legally protectible interest in the proceeding.'" *Chiles*, 865 F.2d at 1213-1214 (citing *Athens Lumber Co, Inc. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982)). An intervenor must "be substantially affected in a practical sense

by the determination made in an action." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (quoting Fed. R. Civ. P. 24 advisory committee's notes). Further, the intervenor must allege a particular interest and not a generalized grievance common to other organizations or persons. *See Athens Lumber*, 690 F.2d at 1366; *Clark v. Putnam Cnty.*, 168 F.3d 458, 463 (11th Cir. 1999) ("A lack of Article III standing could suggest that the [intervenor-defendant] also lacks the particularized interest that an intervener must have in the litigation."); *see also Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) ("[A]n intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests.").

Movant claims to have (1) an interest in protecting its members' voting rights, and (2) an organizational interest under a diversion of resources theory. (Dkt. No. 12-1 at 8.) However, neither of these purported interests is in any way related to Plaintiffs' requested relief. Plaintiffs only seek compliance with existing state and federal law. (Compl. ¶ 1) ("To be clear, Plaintiffs do not ask that these registrations be canceled outright. Instead, Plaintiffs simply ask that Defendant direct the counties to follow the statutory procedures to confirm whether these registrations are valid.").

### 1.    Movant Has Not Shown a Particularized Interest on Behalf of Its Individual Members.

Movant argues that it has a substantial interest in protecting its members' voting rights because many of its members are registered voters who are likely to be

"disenfranchised or forced to navigate additional, unnecessary steps to exercise their right to vote" due to Plaintiff's requested relief (Dkt. No. 12-1 at 13-14.) This argument fails. Plaintiffs' requested relief would not impair any of Movant's members' right to vote. Movant merely alleges a generalized grievance and identifies no particularized harm. On this point, Movant relies on non-binding and inapplicable law.

### a.    Plaintiffs' Requested Relief Would Not Impair Movant's Members' Voting Rights.

Movant's argument—that some of their members are registered to vote and their voting rights would be impaired—is premised on a fundamental misunderstanding of the relief Plaintiffs seek. Movant refers to this relief as removing voters from Georgia's active voter list. (*See* Dkt. No. 12-1 at 3, 9-10, 13.) Movant also claims that this would disenfranchise its members. (Dkt. No. 12-1 at 10, 14.)  But this is not what Plaintiffs are seeking at all.

Plaintiffs' requested relief would not cause any voters to be removed outright from Georgia's voting rolls. Plaintiffs are merely asking that the State send notices to verify voter addresses, as authorized and required by both federal and Georgia law. A voter would merely be marked "inactive" under Ga. Code Ann. § 21-2-233(c) if they fail to respond to the notice. As the Complaint explicitly states:

> To be clear, Plaintiffs do not ask that these registrations be canceled . . . . Any voters who are active despite anomalies in their registrations can easily confirm their status, either by responding to the

requests for confirmation or, if they fail to make this confirmation, by simply reactivating their voter status.

(Compl. ¶¶ 1-2.)

There is a significant difference between having a voter marked "inactive" versus having them removed from the voter rolls entirely. As described in the NVRA under 52 U.S.C § 20507(d)(1), the wholesale removal of a voter from the rolls due to a change of address may only occur without written confirmation from the voter after an additional condition is met (*i.e.*, if the voter does not make contact with the state by the date of the second general election for federal office occurring after the voter is placed on the inactive list, as specified in Ga. Code Ann. § 21-2-235). But again, Plaintiffs are not seeking removal here.

Plaintiffs' requested relief would also not disenfranchise voters. Far from harming voters, this is the notice process expressly authorized, required, and sanctioned by the U.S. Congress and Georgia Legislature for confirming voter residency and correcting irregularities. *See* Ga. Code Ann. § 21-2-233(c); 52 U.S.C. § 20507(d)(2).[1] Even the ACLU, an organization long known for protecting voters,

---

[1] Although Movant faults the reliability of change of address data from the United States Postal Service, (Dkt. No. 12-1 at 3-4), this Court held in *Black Voters Matter Fund v. Raffensperger* that Movant failed to meet its burden to show a likelihood of success that Defendant Raffensperger cancelled voter registrations in error based on this data. 508 F. Supp. 3d at 1298. Plaintiffs reasonably rely on this same data source in identifying voters who appear to have moved outside the jurisdiction in which they are currently registered. (Compl., Dkt. No. 1 ¶ 21.)

confirms this fact on its website: "Voters labeled as 'inactive' retain the same rights as active voters. They can still vote. Any participation in elections will restore their voting status to 'active.'" *Frequently Asked Questions on Voter Status*, ACLU GA., https://www.acluga.org/en/frequently-asked-questions-voter-status (last accessed Oct. 16, 2024).

In fact, the DeKalb County press release that Movant relies on actually supports Plaintiffs' position here. (Dkt. No. 12-1 at 10.) That press release explicitly states that "'inactive' status does not mean [voters] are ineligible to vote in this election." Press Release, *DeKalb Voter Registration and Elections Urges Residents to Verify Voter Status and Plan for Upcoming Election*, DEKALB. CO. (Sept. 5, 2024), [https://www.dekalbcountyga.gov/news/dekalb-voter-registration-and-elections-urges-residents-verify-voter-status-and-plan-upcoming](https://www.dekalbcountyga.gov/news/dekalb-voter-registration-and-elections-urges-residents-verify-voter-status-and-plan-upcoming) (last accessed Oct. 22, 2024). The press release further explains that voters in DeKalb County "can return to an active voter status by visiting the Secretary of State's My Voter Page, contacting DeKalb VRE directly . . . or casting a ballot in the upcoming election." *Id.; see also* Ga. Code Ann. § 21-2-235 (providing three different ways that "[a]n elector whose name is on the inactive list of electors may vote", including when the elector has changed residencies).

Moreover, the alleged harm Movant asserts to its members' voting rights is entirely speculative and unrelated to the relief sought in this action, and thus

intervention is not proper. *See Burke*, 833 F. App'x at 292 (noting that interests "cannot be speculative"); *Pub. Int. Legal Found. v. Benson*, No. 1:21-cv-929, 2022 U.S. Dist. LEXIS 246223, at *32 (W.D. Mich. Aug. 25, 2022) (rejecting "increased risk of future disenfranchisement" as a sufficient interest and noting "interests cannot be speculative").

Here, Movant improperly assumes (i) that its members would be incorrectly sent a notice when those members never moved or changed address, (ii) that even if they were incorrectly sent a notice, Movant's members would fail to respond to that notice, and (iii) that even if the members failed to respond to such notices and were designated as "inactive," those members could not and would not otherwise be able to correct their voter registration. But there is absolutely no evidence that such a far-fetched and extremely unlikely scenario would occur, thereby leading to disenfranchisement, if this Court were to grant Plaintiffs' requested relief—relief that merely seeks to have Georgia comply with federal and state law. Consequently, Movant's interest is too far removed from Plaintiffs' requested relief to constitute a sufficient interest required for intervention.

### b.   Movants Allege Only Generalized Grievances.

The generalized harm alleged by Movant also does not warrant intervention. In *Athens Lumber*, a proposed intervenor claimed that it had an interest in a case because its organizational resources would be stretched too thin and it would be

"financially overwhelmed in federal elections" if FECA restrictions were lifted. 690 F.2d at 1366. The Eleventh Circuit affirmed that this was not a sufficient interest because that interest "is shared with all unions and citizens." *Id.*

Movant's alleged interest is likewise based on the same type of generalized harm. Movant claims that because many of its members are registered voters and plan to vote, the disenfranchisement of some citizens may also affect their members. (Dkt. No. 12-1 at 13-14.) Critically, Movant admits that the requested relief applies to "Georgia voters" in general. (*Id.* at 13.) Movant has not alleged any particularized harm or differentiated its interest from that of any other citizens or organizations in general. This is the exact type of generalized grievance that the Eleventh Circuit has held to be insufficient to support intervention.

### c.   <u>Movant Relies on Inapplicable Law.</u>

Movant cites to five cases, none of which apply to the instant lawsuit—*Bellitto v. Snipes*, No. 16-61474, 2016 U.S. Dist. LEXIS 128840 (S.D. Fla. Sept. 20, 2016) (unpublished), *Jud. Watch, Inc. v. Illinois State Bd. of Elections*, No. 24 C 1867, 2024 U.S. Dist. LEXIS 126862 (N.D. Ill. July 18, 2024) (unpublished); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795 (E.D. Mich. 2020); Order, *Daunt v. Benson*, No. 1:20-cv-522 (W.D. Mich. Sept. 28, 2020), ECF No. 30 (unpublished); and Order, *Voter Integrity Proj. NC, Inc. v. Wake Cnty. Bd. of Elections*, No. 5:16-cv-683 (E.D.N.C. Dec. 1, 2016), ECF No. 26 (unpublished).

- In *Bellitto v. Snipes*, an unpublished non-binding case from Florida, the plaintiffs and the defendant did not oppose the motion to intervene. 2016 U.S. Dist. LEXIS 128840 at *1–2. But here, the motion is opposed.

- In *Jud. Watch, Inc. v. Illinois State Bd. of Elections*, another unpublished non-binding case from Illinois, the plaintiffs were seeking the outright removal of voters in accordance with 52 U.S.C. § 20507(d)(1). No. 24 C 1867, 2024 U.S. Dist. LEXIS 126862, at *2. But here, Plaintiffs do not seek to have any voter registrations removed outright. Rather, as discussed, Plaintiffs merely request that the State correct certain voter registrations to accurately reflect their inactive status.

- *Pub. Int. Legal Found., Inc. v. Winfrey* and *Daunt v. Benson*, two non-binding cases from Michigan, and *Voter Integrity Proj. NC, Inc. v. Wake Cnty. Bd. of Elections*, a case from North Carolina, are likewise distinguishable. While the courts granted leave to intervene on a permissive basis in those cases, the courts explicitly stated that they did not consider intervention as a matter of right. *Winfrey*, 463 F. Supp. 3d at 799; Order, *Daunt*, 1:20-cv-522, (W.D. Mich. Sept. 28, 2020), ECF No. 30 at 2; *Voter Integrity Proj. NC*, No. 5:16-cv-683 (E.D.N.C. Dec.

1, 2016), ECF No. 26 at 5. As explained below, permissive intervention is not appropriate here either.

In short, Movant's reliance on inapposite case law from other jurisdictions does not support its intervention as of right in this matter. The cases it cites are factually distinguishable and non-binding.

## 2.    Movant Does Not Allege a Specific Organizational Harm.

Movant claims it also has an organizational interest under a diversion of resources theory, which justifies intervention as a matter of right here. This argument too is without merit.

A valid interest may be shown if an organization is forced to "divert resources to activities outside of its typical business activities." *Def. Distributed v. United States Dep't of State*, No. 1:15-CV-372-RP, 2018 U.S. Dist. LEXIS 126388, *10-11 (W.D. Tex. July 27, 2018). An organization must also identify specific activities that they would have to put on hold or otherwise curtail. *See id.* at *11 (finding averment that movant "would have been able to use more resources to work on 'strengthening gun laws,' 'fighting in the courts to defend gun laws,' and 'providing direct legal advocacy on behalf of victims and communities affected by gun violence' not sufficiently specific and denying motion to intervene).

Here, Movant admits that their typical business activities include "conducting its voter registration, education, and assistance activities." (Dkt. No. 12-1 at 3.)

Movant's complained-of activities of "identifying, contacting, educating, and assisting affected voters" in response to the complaint fits squarely within Movant's typical business activities. (*See id*.) Movants fail to identify any specific activities that they would have to put on hold or otherwise curtail. This is insufficient to support a diversion of resources interest. Movant has not supplied any affidavits to support its positions.

Additionally, none of the cases Movant cites should hold weight here:

- In *Black Voters Matter Fund v. Raffensperger*, thousands of voter registrations were allegedly removed (not simply made in "inactive") in error. 508 F. Supp. 3d 1283, 1291 (N.D. Ga. 2020). The movant in that case specifically identified how it had to divert resources by spending thousands of dollars to send postcards to individuals erroneously cancelled from Georgia voter rolls. *Id.* But here, Plaintiffs do not seek to have any voter registrations removed. Movant has also not identified any specific resources that it has or will have to divert. And unlike the facts present in *Black Voters Matters Fund v. Raffensperger*, Movant has not offered any evidence here that it has spent thousands of dollars in connection with Plaintiffs' present complaint. Rather, Movant merely speculates that it might have to

divert resources from some generalized election activities that are already part of its typical business.

- In *Arcia v. Sec'y of Fla.*, Florida implemented a new program to identify and remove (again not simply made "inactive") non-citizens from its voter rolls. 772 F.3d 1335, 1339 (11th Cir. 2014). The organizational plaintiffs in that case showed that they had in fact diverted resources to ensure that their members who were mistakenly identified as non-citizens were able to vote. *Id.* at 1341. Here, again, Plaintiffs do not seek to have any voter registrations removed. Plaintiffs merely request that the state follow existing law. Movant also has not identified any specific resources that it has or will have to divert.

- In *New Ga. Project v. Raffensperger*, the plaintiffs filed suit over absentee ballot procedures in light of the COVID-19 pandemic. 484 F. Supp. 3d 1265, 1279 (N.D. Ga. 2020). The court held that an organizational plaintiff had standing because it provided declarations that "specifically" explained how its resources would be diverted. *Id.* at 1286-87. Here, Movant has not provided any declarations specifically identifying any resources it has or will have to divert.

- In *Fair Fight Action, Inc. v. Raffensperger*, plaintiff organizations filed suit over alleged unconstitutional and unlawful legislation and policies,

as well as gross election mismanagement. 413 F. Supp. 3d 1251, 1262 (N.D. Ga. 2019). Several of the organizations alleged that they in fact diverted resources to counter voter suppression efforts. *Id.* at 1263-64. Several of the plaintiff organizations were religious organizations whose core activities were well outside of educational programs designed to address voter suppression. *Id.* But here, the complained-of activities are reasonably within the scope of Movant's core activities, and Movant has not specifically identified any resources it has or will have to divert.

For these reasons, Movant lacks a direct, substantial, and legally protected interest related to this case, both on behalf of its members and on behalf of its organization.

## B. Ordering Defendant to Comply with Existing Law Does Not Impair or Impede Movant's Ability to Protect Its Interests.

Even assuming *arguendo* that Movant has sufficient interests related to this action (Movant does not), requiring state election agencies to follow the law will not impair Movant's ability to protect its interests. As described above, any voters whose registrations are corrected to inactive status can still vote by showing proof of residency. Movants also have not alleged any specific new training or efforts that Movants would need to take if the Court grants Plaintiffs' requested relief. Movants only offer a threadbare, conclusory assertion in support of their position, arguing that

their interests will be impaired simply because they claim to have interests that are at risk of being harmed. (Dkt. No. 12-1 at 14.) As the party with the burden of proof to establish all of the requirements for intervention as of right, this is insufficient. *See Burke*, 833 F. App'x at 291 (describing that "intervenors . . . bear the burden of proof to establish all four bases for intervention as a matter of right").

## C.   <u>The Existing Defendant Adequately Represents Movants' Interests by Seeking the Same Relief.</u>

This Court should deny intervention because the present Defendant already more than adequately represents the Movants' interest. Movants' ultimate objective here is to have the Court deny Plaintiffs' requested relief of ordering the State to send notices to voters who specifically told the U.S. Postal Service that they have permanently moved outside of the jurisdiction in which they registered. Defendant recently confirmed in its motion to dismiss that it seeks the same ultimate objective. (Dkt. No. 30.) For this reason, Movants' arguments are unavailing.

The Eleventh Circuit Court of Appeals "presume[s] that a proposed intervenor's interest is adequately represented when an existing party pursues the same ultimate objective as the party seeking intervention." *Federal Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 215 (11th Cir. 1993) (citing first *Athens Lumber*, 690 F.2d at 1366, *cert. denied*, 465 U.S. 1092 (1984), then citing *Int'l. Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir. 1978)).

That "representation is 'adequate if no collusion is shown between the representative and an opposing party, if the representative does not have or represent an interest adverse to the proposed intervenor, and if the representative does not fail in fulfillment of his duty.'" *Id.* (quoting *United States v. United States Steel Corp.*, 548 F.2d 1232, 1236 (5th Cir. 1977)); *see also Int'l Tank Terminals*, 579 F.2d at 967 (holding that a moving party with the same ultimate objective as the original party "must demonstrate adversity of interest, collusion, or nonfeasance" to overcome the presumption).

While it is generally true that this inadequate representation burden is minimal, that is not so when, as is the case here, the government is a party: "when the government is a party, the moving party must make a very compelling showing of inadequacy of representation." *United States v. Coffee Cnty. Bd. of Educ.*, 134 F.R.D. 304, 310 (S.D. Ga. 1990) (citing *Jones v. Caddo Parish Sch. Bd.*, 704 F.2d 206, 221 n. 25 (5th Cir. 1983)). A "very compelling showing" may be found where the government's asserted interest and the intervenor's related interest are mutually exclusive. *See United States v. City of Miami,* 278 F.3d 1174, 1179 (11th Cir. 2002) (affirming a denial of a motion to intervene as a right for adequate representation because the intervenor never alleged that its objective and that of the government were mutually exclusive). *See also United States v. 60 Auto. Grilles*, 799 Fed. Appx. 693, 697 (11th Cir. 2020) (unpublished) (same).

Here, Movant's and Defendant's ultimate objective are the same. Consequently, intervention is proper.

*Athens Lumber* distinguishes the line of cases Movant cites for the proposition that only a minimal burden should apply because government parties' views are influenced by public policy. (Dkt. No. 12-1 at 16.) In *Athens Lumber*, a proposed intervenor argued that it had different interests from a government agency and that "a public agency charged with protecting the public interest cannot represent adequately private interests." 690 F.2d 1364 at 1366. The *Athens Lumber* court held that this difference in interests does not defeat the presumption that the government agency adequately represented the interests of the proposed intervenor when they had the same objective. *Id.* at 1367. The Eleventh Circuit further pointed out that the government agency successfully defended the law on numerous occasions in the past. *Id.* Therefore, the Eleventh Circuit held that the intervenors did not satisfy the requirements for intervention of right. *Id.*

Movant's citations to *Trbovich v. UMW*, 404 U.S. 528 (1972) and *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179 (2022), are likewise unavailing. (Dkt. No. 12-1 at 15.) *Trbovich* involved a situation where a union member seeking to intervene in a government enforcement proceeding against the union was the one who initiated the enforcement proceeding. 404 U.S. at 538-39. The union member had a different ultimate objective in seeking "specific safeguards with respect to any

- 19 -

new election that may be ordered," while the government only sought to order a new election. *Id.* at 529-30.

But here, Movant did not initiate the instant lawsuit. And unlike the facts present in *Trobovich*, both the Movant and Defendant share the same objective in dismissing the present case.

In *Berger*, the U.S. Supreme Court explicitly stated that it "need not decide whether a presumption of adequate representation might sometimes be appropriate when a private litigant seeks to defend a law alongside the government." *Berger*, 597 U.S. at 197. The Supreme Court only "acknowledge[d] that a presumption of adequate representation is inappropriate when a duly authorized state agent seeks to intervene to defend a state law." *Id.*

*Berger* is clearly inapplicable. That is because Movant is not an authorized state agent seeking to intervene to defend a state law.

Movant argues it has a right to intervene because its interests may diverge from those of Defendant, given that Defendant is "charged with facilitating" list maintenance practices that Movant opposes. (Dkt. No. 12-1 at 16-17.) This argument too is wholly without merit.

As an initial matter, just because Movant does not agree with the law as it is written does not provide Movant with the right to intervene here. This is not the

forum or case for that. If Movant has a problem with the law, Movant has other venues in which it can seek to correct what it believes is allegedly unjust.

Regardless, the fact that Movant previously sued Defendant over the state's list maintenance practices does not have any bearing whatsoever on whether Movant's interests are adequately represented in this case—as this is a case in which Movant and Defendant both seek the identical ultimate objective. In short, Movant has failed to demonstrate that its interests are not adequately represented by Defendant, regardless of whether a "minimal" burden or "very compelling showing" standard is followed.

Additionally, to the extent the Court decides to add any of the proposed intervenors to this case, Movant has not offered any reason why any of the other earlier-filed proposed intervenors would not adequately represent its interests.

As Movant has not demonstrated any legitimate interest that is not already adequately represented by Defendant (or any earlier-filed intervenor), Movant is not entitled to intervention as a matter of right.

## II.    The Court Should Exercise Its Discretion to Deny Permissive Intervention

There is no value in adding Movant as a party to this case, and instead, considerable harm will result. A party seeking to intervene under Rule 24(b) must show that: (1) its application to intervene is timely; and (2) its claim or defense and the main action have a question of law or fact in common. Fed. R. Civ. P. 24(b). The

district court has the discretion to deny intervention even if both of those requirements are met. *See Sellers v. United States*, 709 F.2d 1469, 1471 (11th Cir. 1983).

In *Athens Lumber*, the Eleventh Circuit affirmed a denial of permissive intervention on the basis that "the introduction of additional parties inevitably delays proceedings" and because of the "remoteness and general claims" of the intervenor's claims. 690 F.2d at 1367.

"When he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention." *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984) (citing *Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.*, 51 F. Supp. 972, 973 (D. Mass. 1943)); *South Carolina v. North Carolina*, 558 U.S. 256, 288 (2010) (Roberts, C.J., dissenting) (same).

Allowing Movant to intervene here would only serve to complicate this litigation, increase costs, and prejudice or delay this case, which is effectively a denial of timely relief to Plaintiffs. There is no need to add additional parties and complicate the matter, particular where, as is the case here, Movant's interests are already appropriately and adequately represented by the Defendant. Filing amicus briefs would accomplish Movant's goals while freeing up resources. Plaintiffs do not object to such a filing.

## CONCLUSION

Movant has not demonstrated that it meets any of the requirements for intervention as a matter of right under Rule 24(a)(2). Movant's interests, as well as those of the Court and the parties, are best served by denying Movant permissive intervention and instead allowing amicus briefing.

Dated: October 24, 2024

Respectfully submitted,

*/s/ David Ludwig*
David Ludwig (Bar No. 425787)
DUNLAP BENNETT & LUDWIG PLLC
211 Church St. SE
Leesburg, VA 20175
Tel: (703) 777-7319
dludwig@dbllawyers.com

*Counsel for Plaintiffs William T. Quinn and David Cross*

## <u>CERTIFICATE OF FONT AND POINT SELECTION</u>

I hereby certify, under Local Rule 7.1(D), that the foregoing Response was prepared in Times New Roman, 14-point font, which is one of the font and point selections approved in Local Rule 5.1.

Dated: October 24, 2024

*/s/ David Ludwig*
David Ludwig (Bar No. 425787)
DUNLAP BENNETT & LUDWIG
PLLC
211 Church St. SE
Leesburg, VA 20175
Tel: (703) 777-7319
dludwig@dbllawyers.com

*Counsel for Plaintiffs William T. Quinn and David Cross*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day caused to be served copies of this Response upon counsel of record in this case by filing a copy using the Court's electronic CM/EDF filing system, which will automatically cause copies of the same to be delivered.


Dated: October 24, 2024                   */s/ David Ludwig*
                                          David Ludwig (Bar No. 425787)
                                          DUNLAP BENNETT & LUDWIG
                                          PLLC
                                          211 Church St. SE
                                          Leesburg, VA 20175
                                          Tel: (703) 777-7319
                                          dludwig@dbllawyers.com

                                          *Counsel for Plaintiffs William T. Quinn*
                                          *and David Cross*

- 25 -