## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### Atlanta Division

| | |
|---|---|
| WILLIAM T. QUINN AND DAVID CROSS, <br><br> Plaintiffs, <br><br> vs. <br><br> BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia, <br><br> Defendant. | C.A. No. 1:24-cv-04364-SCJ <br><br> **AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTION** |

### AMENDED COMPLAINT

Plaintiffs William T. Quinn and David Cross ("Plaintiffs") bring this action for declaratory and injunctive against Brad Raffensperger, in his official capacity as Secretary of State of Georgia ("Defendant"), as follows:

### NATURE OF THE CASE

1.     This is a lawsuit to enforce laws that, among other things, restore Plaintiffs' confidence in Georgia's elections and protect the right to vote from dilution. Georgia's current voter rolls have thousands of voter registrations that are apparently incorrect. That is because the voter in question either (i) permanently moved out of state and is no longer a citizen of Georgia, or (ii) permanently moved to a different county in Georgia from the county in which they are presently registered. Since filing the original complaint, Plaintiffs have confirmed that many

1

of the voters Plaintiffs identified in the initial dataset sent to Defendant continue to improperly remain active on the state's voter rolls. This is so despite Defendant's claimed list maintenance efforts. Defendant has not provided any indication that the state will investigate these registrations or take action to confirm the voter addresses as required by law. The continuing presence of so many voters marked as active on Georgia's voter rolls, but who have said they have moved, is highly problematic. And it demonstrates that Defendant has not made a reasonable effort to maintain Georgia's voter rolls in accordance with the NVRA.

2.      To be clear, Plaintiffs are not seeking to remove individuals from the voter rolls. Rather, Plaintiffs only seek to correct the registrations of voters who have moved by having them marked inactive, regardless of their race, gender, political affiliation, or any other potentially prejudicial attribute. Voters who are marked as inactive are not barred from voting, as they can still vote in an election.

3.      The requested relief not only serves to restore Plaintiffs' confidence in the state's elections and protect Georgia's voters from vote dilution, but also serves to protect the people listed in the anomalous registrations. For example, if a voter permanently moved out of state, and another individual uses that voter's information to cast an illegal ballot, this could result in the former Georgia resident being wrongfully accused of having cast the illegal vote. Properly maintaining the voter rolls would protect against such identity theft. Any voters who are active despite

anomalies in their registrations can easily confirm their status, either by responding to the requests for confirmation or, if they fail to make this confirmation, by simply reactivating their voter status.

## THE PARTIES

4.     Plaintiff William T. Quinn is a resident, taxpayer, and registered voter in Suwanee, Georgia.

5.     Plaintiff David Cross is a resident, taxpayer, and registered voter in Suwanee, Georgia.

6.     Defendant Brad Raffensperger is the Secretary of State of Georgia, with his office address located at 214 State Capitol, Atlanta, Georgia 30334.

## JURISDICTION AND VENUE

7.     This action arises under the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. §§ 20501, *et seq*. Plaintiffs have a private right of action as aggrieved persons under 52 U.S.C. § 20510. As described below, Plaintiffs provided notice to Defendant of Georgia's violations of the NVRA. Georgia has not corrected the violation within 20 days after receipt of this notice on September 4, 2024. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, which provides for federal question jurisdiction over cases arising under federal law and the Constitution of the United States.

8.     Defendant Brad Raffensperger is the Secretary of State of Georgia, and his office is located in this judicial district. A substantial part of the events or omissions giving rise to this action occurred in this judicial district. Accordingly, this Court has personal jurisdiction over Defendant, and venue is proper in this Court under 28 U.S.C. § 1391 and Local Rules 3.1(B)(1)(a) and 3.1(B)(3).

## FACTUAL BACKGROUND

**A.     The NVRA and State Law Require Georgia to Correct Its Voter Registration Lists When Voters Move Outside the Jurisdiction in Which They Are Currently Registered.**

9.     To uphold the integrity of elections, to prevent voter fraud and voter dilution, and to protect our citizens' trust in the election process, the federal government has enacted multiple laws requiring states to maintain their lists of voters and designate as inactive those registrations that are no longer active.

10.     This is particularly important in the context of absentee voting, where a person could potentially vote multiple times, or third parties could submit votes without the person's knowledge.

11.     Section 8 of the NVRA, 52 U.S.C. § 20507(a)(4)(B), requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to a change of address.

12.     The NVRA does not require states to follow a specific program to maintain the accuracy of its voter lists. However, 52 U.S.C. § 20507(c)(1)(B) of the

4

NVRA provides a safe harbor under which states "may meet the requirement of subsection (a)(4) by establishing a program" where:

> (A) change-of-address information supplied by the Postal Service through its licensees is used to identify registrants whose addresses may have changed; and
>
> (B) if it appears from information provided by the Postal Service that—
>
>> (i) a registrant has moved to a different residence address in the same registrar's jurisdiction in which the registrant is currently registered, the registrar changes the registration records to show the new address and sends the registrant a notice of the change by forwardable mail and a postage prepaid pre-addressed return form by which the registrant may verify or correct the address information; or
>>
>> (ii) the registrant has moved to a different residence address not in the same registrar's jurisdiction, the registrar uses the notice procedure described in subsection (d)(2) to confirm the change of address.

13.   The notice procedure in 52 U.S.C. § 20507(d)(2) allows states to require affirmation or confirmation of a voter's address before voting in an upcoming federal election. It further requires states to remove such voters from the list of eligible voters if they fail to respond to the notice and do not vote in the following two general elections for federal office occurring after the date of the notice:

> (2) A notice is described in this paragraph if it is a postage prepaid and pre-addressed return card, sent by forwardable mail, on which the registrant may state his or her current address, together with a notice to the following effect:

(A) If the registrant did not change his or her residence, or changed residence but remained in the registrar's jurisdiction, the registrant should return the card not later than the time provided for mail registration under subsection (a)(1)(B). If the card is not returned, affirmation or confirmation of the registrant's address may be required before the registrant is permitted to vote in a Federal election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice, and if the registrant does not vote in an election during that period the registrant's name will be removed from the list of eligible voters.

(B) If the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered, information concerning how the registrant can continue to be eligible to vote.

14.     Additionally, the Help America Vote Act ("HAVA") requires each state to implement "a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level," in accordance with the NVRA. 52 U.S.C. § 21083(a).

15.     In accordance with the NVRA, Georgia implemented voter list maintenance procedures, which are codified in O.C.G.A. § 21-2-210, *et seq*.

16.     O.C.G.A. § 21-2-210 designates Defendant, the Secretary of State, as the "chief state election official to coordinate the responsibilities of this state under the [NVRA]."

17.     O.C.G.A. § 21-2-233 details the state's voter list maintenance procedures for changes of addresses.

18.     Specifically, § 21-2-233(a) provides that the Secretary of State may compare voter addresses to change of address information from the United States Postal Service ("USPS"):

> (a) The Secretary of State is authorized to cause at his or her discretion the official list of electors to be compared to the change of address information supplied by the United States Postal Service through its licensees periodically for the purpose of identifying those electors whose addresses have changed.

19.     Section 21-2-233(c) further provides that a voter who has moved to an address outside of the county or municipality in which the voter is presently registered must be transferred to the inactive list if the voter fails to respond to a notice within 30 days:

> (c) If it appears from the change of address information supplied by the licensees of the United States Postal Service that an elector whose name appears on the official list of electors has moved to a different address outside of the boundaries of the county or municipality in which the elector is presently registered, such elector shall be sent a confirmation notice as provided in Code Section 21-2-234 at the old address of the elector. The registrars may also send a confirmation notice to the elector's new address. If the elector confirms the change of address to an address outside of the State of Georgia, the elector's name shall be removed from the appropriate list of electors. If the elector confirms the change of address to an address outside of the boundaries of the county or municipality in which the elector is presently registered, but still within the State of Georgia, the elector's registration shall be transferred to the new county or municipality. The Secretary of State or the registrars shall forward the confirmation card to the registrars of the county in which the elector's new address is located and the registrars of the county of the new address shall update the voter registration list to reflect the change of address. If the elector responds to the notice and affirms that the elector has not moved, the elector shall remain on the list of electors at the elector's current address. If the elector fails to

respond to the notice within 30 days after the date of the notice, the elector shall be transferred to the inactive list provided for in Code Section 21-2-235.

**B.    Plaintiffs Discovered That Georgia Includes as Active on Its Voter Lists Many Voters Who Have Moved Permanently Outside of the Jurisdiction in Which They Are Currently Registered.**

20.    A list of voter registrations was purchased from the Georgia Secretary of State on Sunday, June 30, 2024.

21.    The names and addresses for each voter were submitted through the USPS Coding Accuracy Support System ("CASS®") and compared to information from the USPS National Change of Address database to determine whether they still resided at their address of registration.[1]

22.    The voters were limited to those who affirmatively checked on the USPS Official Mail Forwarding Change of Address form that their move was permanent.

23.    The USPS CASS evaluation is run against several progressively deeper-leveled databases, such as by state, city, five-digit zip code, a check on those three columns together, then a check against the street name with in them, then a street number range check, then a check against the actual street number in the

---

[1] The NVRA specifically allows for analysis based on the "change-of-address information supplied by the Postal Service through its licensees [to be] used to identify registrants whose addresses may have changed." 52 U.S.C. § 20507(c)(1)

"Zip_4" database, and then a check on the apartment unit at that specific building, then a check if that address is unoccupied, as well as other specialty checks.

24.    Notably, no voters were omitted from this process on the basis of race, gender, age, jurisdiction, political affiliation, or any other potentially prejudicial attribute.

25.    This process identified many voters who apparently have moved out of the jurisdiction in which they are registered but are nonetheless included on Georgia's active voter lists—despite it being a substantial length of time since they moved.

**C.    Plaintiffs Provided Proper Notice of this Action Under the NVRA.**

26.    On September 3, 2024, Plaintiffs' counsel mailed a notice letter via Federal Express to Defendant pursuant to the NVRA, 52 U.S.C. § 20510(b). A copy of the notice letter is attached as **Exhibit A** to this Amended Complaint. The Georgia Secretary of State's office signed for delivery of this letter the next day on September 4, 2024. A picture showing signed proof of delivery is included as **Exhibit B** to this Amended Complaint.

27.    In their September 3, 2024 letter, Plaintiffs advised Defendant that Georgia was violating its duty under 52 U.S.C. § 20507(a)(4)(B) to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to a change of address. Plaintiffs

detailed Georgia's obligations under O.C.G.A. § 21-2-233. Plaintiffs also advised that Georgia's failure to timely make inactive the registrations of certain voters who had permanently moved outside of the jurisdiction in which they are currently registered unreasonably left ineligible voters on the active voter list. Plaintiffs noted that they intended to file an action seeking declaratory and injunctive relief before this November's federal election unless these issues were corrected.

28.     Plaintiffs enclosed with their September 3 notice letter a flash drive with folders containing spreadsheets listing all the identified ineligible voters for each county based on the screening process, described above. Spreadsheets listing all the identified ineligible voters for each county who moved out of the state were included on the flash drive in a folder titled "Ex. A – Moved out of State." Spreadsheets listing all the identified ineligible voters for each county who moved within the state but outside of the county or municipality in which they are registered were included on the flash drive in a folder titled "Ex. B – Moved Within State Out of County." The column headings indicated the voter's name, registration status, registration address, date of departure, and new address.

29.     In the September 3 notice letter, Plaintiffs explained that all the voters listed in these spreadsheets indicated that they had permanently moved outside of the jurisdiction in which they are currently registered, but many of them are nonetheless included on Georgia's active voter lists—despite it being a substantial

length of time since they moved. Plaintiffs further explained that Georgia's failure to correct these registrations violated the NVRA under 52 U.S.C. § 20507(A)(4)(B) and Georgia's state law under O.C.G.A. § 21-2-233.

30.   In key part, Plaintiffs requested that Defendant send notices to these voters under O.C.G.A. § 21-2-233(c), and if any voter failed to respond to the notice within 30 days after the date of the notice, immediately transfer that voter to Georgia's inactive voter registration list.

31.   Importantly, such relief would not harm any active voters. That is because an active voter associated with the identified registrations can simply respond to the notices from Defendant, and even those who fail to respond are not barred from voting. *See* O.C.G.A. § 21-2-235(c) (specifying ways in which a voter marked inactive can still vote).

32.   Plaintiffs' requested relief would partially protect former Georgia residents from having their identities stolen and used to vote illegally in their names. Moreover, this relief would protect Plaintiffs' and all Georgia voters' right to vote by safeguarding them from improper vote dilution. *E.g.*, *Reynolds v. Sims*, 377 U.S. 533, 555 (1964).

33.   Critically, in their September 3, 2024 letter to Defendant, Plaintiffs did not ask Defendant to remove any voter's registration from Georgia's voter lists.

34.     As the next election for federal office is within 120 days, 52 U.S.C. § 20510(b)(2) provides that a 20-day notice period began running from the date Plaintiffs put Defendant on notice.

35.     Defendant, however, never responded to Plaintiffs' September 3, 2024 notice letter.

## D.     After Receiving No Response from Defendant, Plaintiffs Filed Their Original Complaint.

36.     On September 26, 2024, Plaintiffs filed their original complaint in this case, requesting relief before the general election in November. This relief was effectively denied when the Court denied Plaintiffs' request to expedite proceedings. (Dkt. 5.)

37.     On October 21, 2024, Defendant filed a Motion to Dismiss the complaint. (Dkt. 30.) Defendant argued in part that O.C.G.A. § 21-2-233 "vests the decision as to whether and when to perform a comparison of the voter rolls to the NCOA database with the Secretary and within his discretion."

38.     In contrast to O.C.G.A. § 21-2-233, other states' statutory implementations of the NVRA require states to conduct periodic (not discretionary) list maintenance based on change of address data from the USPS. For example, Pennsylvania requires such a program to be conducted at least once every calendar year under 25 Pa.C.S. § 1901(b)(1)(i). For further example, Colorado requires such a program to be conducted monthly under Col. Rev. Stat. § 1-2-302.5.

**E.** **Plaintiffs Recently Confirmed That Georgia Failed to Correct the Registration Status of Many of the Earlier-Identified Voters.**

39.    Plaintiffs recently obtained new voter registration data from the State of Georgia on October 1, 2024. This data was submitted to the same rigorous procedures as the previously obtained data.

40.    Notably, Plaintiffs discovered that numerous voters contained in the June 2024 data are still listed as active in the more recent October data—even though these voters had told the USPS that they had permanently moved. This is so despite Defendant's purported list maintenance efforts.

41.    By way of example, for Cherokee County, the June 2024 data identified 2,029 voters who had permanently moved out of state.  However, in the October 2024 data, 698 of those voters remain with "Active" status on the state's voter rolls—even though these voters advised the U.S. Postal Service that they had permanently moved and no longer reside at the old address contained on the voter rolls. Georgia failed to correct 34.1% of Cherokee County voters who moved out of state from the June data.



42.     By way of further example, for Forsyth County, the June data identified 1,722 voters who had permanently moved out of state.  In the October data, 588 of those voters remain with "Active" status on the state's voter rolls—even though these voters advised the U.S. Postal Service that they had permanently moved and no longer reside at the old address contained on the voter rolls. Georgia failed to correct 34.4% of Forsyth County voters who moved out of state from the June data.



43.     Data for other counties show similar numbers, and in some counties, these numbers are particularly high (*i.e.*, roughly 3,358 in Fulton County).

44.     The continuing presence of so many voters marked as active on Georgia's voter rolls who apparently have moved—as shown in the Cherokee County and Forsyth County examples above—demonstrates that Defendant has not made a reasonable effort to maintain Georgia's voter rolls in accordance with the NVRA. Defendant's purported list maintenance efforts have failed to correct an unreasonably large number of voter registrations.

45.     Georgia's failure to correct these registrations is an ongoing, systemic violation of the NVRA and Georgia law.

**F.     Georgia's Inaccurate Voter Rolls Undermine Plaintiffs' Confidence in the Election and Burdens Plaintiffs' Right to Vote.**

46.     Georgia's improperly maintained voter rolls have undermined (and will continue to undermine) Plaintiffs' confidence and trust in the electoral process and also burdened Plaintiffs' right to vote. This disenfranchisement is current, ongoing, and not speculative, regardless of whether any vote dilution occurred or will occur. This constitutes an actionable injury in fact. *See, e.g.*, *Green v. Bell*, No. 3:21-cv-00493-RJC-DCK, 2023 U.S. Dist. LEXIS 45989, *9, 2023 WL 2572210 (W.D.N.C. Mar. 19, 2023) (holding that such harm constitutes an injury in fact); *Judicial Watch, Inc. v. King*, 993 F. Supp. 2d 919, 924 (S.D. Ind. 2012) (same); *Judicial Watch, Inc. v. Griswold*, No. 20-cv-02992-PAB-KMT, 2022 U.S. Dist. LEXIS 153290, *5–6, 2022 WL 3681986 (D. Colo. Aug. 25, 2022) (same); *see also Wis. Voter All. v. Millis*, __ F. Supp. 3d __, No. 23-C-1416, 2024 U.S. Dist. LEXIS 44025, *12 (E.D. Wis. Mar. 13, 2024) ("[V]oter disenfranchisement through dilution caused by illegal votes might constitute the kind of harm required [to seek judicial review.]").

**COUNT I – GEORGIA'S FAILURE TO CORRECT REGISTRATIONS OF VOTERS WHO HAVE MOVED VIOLATES 52 U.S.C. § 20507(A)(4)(B)**

47.     Plaintiffs incorporate each of the foregoing paragraphs as though fully set forth herein.

48.     Georgia continues to include on the state's active voter list many voters who have permanently moved outside of the jurisdiction in which they are currently

registered. As such, Georgia is violating 52 U.S.C. § 20507(A)(4)(B) by failing to make a "reasonable effort" to maintain its voter lists. *See Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, 301 F. Supp. 3d 612, 620 (E.D.N.C. 2017) (holding that "a reasonable inference can be drawn that [a county board of elections] is not making a reasonable effort to conduct a voter list maintenance program in accordance with the NVRA" where a plaintiff has made an allegation, "supported by reliable data," that the county is failing to remove ineligible voters and the county board failed to use available information to remove such ineligible voters).

49.     Specifically, Defendant has violated 52 U.S.C. § 20507(a)(4) by failing to (i) adequately compare the state's voter lists to the change of address information supplied by the USPS, (ii) send notices to voters who apparently have moved to a different jurisdiction, and (iii) mark inactive those voters who fail to respond to the notice within 30 days. Defendant is failing to meet the provisions of the safe harbor provision of the NVRA. *See* 52 U.S.C. § 20507(c)(1).

50.     Under O.C.G.A. § 21-2-210, Georgia's violation of 52 U.S.C. § 20507(A)(4)(B) is ultimately the responsibility of Defendant. As the state's chief election official, Defendant is required to coordinate the state's responsibilities under the NVRA, including Georgia's list maintenance procedures for changes of addresses under O.C.G.A. § 21-2-233. *See* O.C.G.A. § 21-2-210 (designating

Defendant, the Secretary of State, as the "chief state election official to coordinate the responsibilities of this state under the [NVRA]").

51.     Plaintiffs have been injured as a direct and proximate consequence of Georgia's failure to maintain accurate voter lists. Plaintiffs' confidence in the electoral process has been, is being, and will continue to be undermined. Additionally, Plaintiffs' right to vote has been, is being, and will continue to be burdened. Plaintiffs will continue to be injured unless this Court enjoins or mandates Defendant to investigate the data provided by Plaintiffs, direct county registrars to send notices under O.C.G.A. § 21-2-233(c) to the applicable voters who permanently moved outside of the jurisdiction in which they are currently registered, and if any voter fails to respond to the notice within 30 days after the date of the notice, promptly transfer that voter to Georgia's inactive voter registration list.

52.     Defendant received notice under 52 U.S.C. § 20510(b) of this ongoing and systemic violation of the NVRA more than 20 days before the filing of the original complaint.

**COUNT II - O.C.G.A. § 21-2-233 DOES NOT SATISFY DEFENDANT'S LIST MAINTENANCE OBLIGATIONS UNDER 52 U.S.C. § 20507(A)(4)(B)**

53.     Plaintiffs incorporate each of the foregoing paragraphs as though fully set forth herein.

54.    The NVRA requires Georgia to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(a)(4).

55.    "A State may meet the requirement of subsection (a)(4) by establishing a program under which—(A) change-of-address information supplied by the Postal Service through its licensees is used to identify registrants whose addresses may have changed . . ." and sending notices consistent with Plaintiff's request in Count I. *Id.* § 20507(c)(1).

56.    Importantly, the NVRA requirements in this regard are mandatory: "Each State *shall* . . . conduct a general program that makes a reasonable effort to remove the names of ineligible voters . . . .". *Id.* § 20507(a)(4)) (emphasis added).

57.    Defendant has taken the position that he is not required to do that, but merely may do so at his own discretion. *See* Dkt. No. 30-1 ("O.C.G.A. § 21-2-233 vests the decision as to whether and when to perform a comparison of the voter rolls to the NCOA database with the Secretary and within his discretion").

58.    Defendant's interpretation and implementation of O.C.G.A. § 21-2-233 does not comply with the NVRA.

59.    Specifically, this claim of absolute discretion by Defendant on "whether and when to perform a comparison of the voter rolls . . . within

[Defendant's] discretion" does not satisfy the safe harbor provision of the NVRA, and it fails to meet the "reasonable effort" standard under the NVRA.

60.     Under the NVRA, the Defendant is not afforded absolute discretion on "whether and when to perform a comparison of voter rolls." Such unfettered discretion would effectively allow Defendant to take no action with respect to voter list maintenance. But that is not the law. Rather, the NVRA clearly provides that "[e]ach State *shall* . . . conduct a general program that makes a reasonable effort to remove the names of ineligible voters . . . .". *Id.* § 20507(a)(4)) (emphasis added)

61.     Alternatively, if Defendant's aforementioned interpretation of O.C.G.A. § 21-2-233 is correct, then this Georgia statute itself, as it is written, does not satisfy the requirements of the NVRA.

62.     For these reasons, an actual controversy exists, and Plaintiffs have an interest in the resolution of this controversy.

63.     An adjudication of this matter would be useful because it would help the legislature redraft O.C.G.A. § 21-2-233 to comply with the requirements of the NVRA, help Defendant better understand his responsibilities and that he does not have absolute discretion under the NVRA, and restore Plaintiffs' faith in the election system.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs William T. Quinn and David Cross ask this Court to enter judgment against Defendant and all persons in active concert or participation with them, granting the following relief:

A.     Declaratory judgment that Georgia has violated, and continues to violate, the NVRA under 52 U.S.C. § 20507(A)(4)(B) by failing to conduct a general program that makes a reasonable effort to maintain its voter rolls, where Georgia has failed to timely make inactive the registrations of the identified voters who permanently moved outside of the jurisdiction in which they are currently registered.

B.     Declaratory judgment that Georgia has violated, and continues to violate, the NVRA under 52 U.S.C. § 20507(A)(4)(B) by failing to conduct a general program that makes a reasonable effort to maintain its voter rolls, where Defendant asserts that it has complete discretion as to whether to perform list maintenance under Ga. Code. Ann. § 21-2-233.

C.     An injunction directing Secretary Raffensperger to investigate Plaintiff's data by directing all county registrars to send notices under O.C.G.A. § 21-2-233(c) to all identified voters who have permanently moved outside of the jurisdiction in which they are currently registered, and if any voter fails to respond to the notice within 30 days after the date of the notice, promptly transfer that voter to Georgia's inactive voter registration list.

D.    Reasonable attorneys' fees, including litigation expenses, and costs under 52 U.S.C § 20510(c).

Dated: October 25, 2024                    Respectfully submitted,

                                           */s/ David Ludwig*
                                           David Ludwig (Bar No. 425787)
                                           DUNLAP BENNETT & LUDWIG
                                           PLLC
                                           211 Church St. SE
                                           Leesburg, VA 20175
                                           Tel: (703) 777-7319
                                           dludwig@dbllawyers.com

                                           *Counsel for Plaintiffs William T. Quinn
                                           and David Cross*

## <u>CERTIFICATE OF FONT AND POINT SELECTION</u>

I hereby certify that the foregoing Amended Complaint for Declaratory Judgment and Injunction was prepared in Times New Roman, 14-point font, which is one of the fonts and point selections approved in Local Rule 5.1.


Dated: October 25, 2024               Respectfully submitted,

                                      */s/ David Ludwig*
                                      David Ludwig (Bar No. 425787)
                                      DUNLAP BENNETT & LUDWIG PLLC
                                      211 Church St. SE
                                      Leesburg, VA 20175
                                      Tel: (703) 777-7319
                                      dludwig@dbllawyers.com

                                      *Counsel for Plaintiffs William T. Quinn*
                                      *and David Cross*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day caused to be served copies of this Amended Complaint for Declaratory Judgment and Injunction upon counsel of record in this case by filing a copy using the Court's electronic CM/EDF filing system, which will automatically cause copies of the same to be delivered.

Dated: October 25, 2024                    Respectfully submitted,

_/s/ David Ludwig_____
David Ludwig (Bar No. 425787)
DUNLAP BENNETT & LUDWIG PLLC
211 Church St. SE
Leesburg, VA 20175
Tel: (703) 777-7319
dludwig@dbllawyers.com

*Counsel for Plaintiffs William T. Quinn and David Cross*