## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

WILLIAM T. QUINN AND
DAVID CROSS,

               Plaintiffs,

     v.

BRAD RAFFENSPERGER, in his official
capacity as Secretary of State of Georgia,

               Defendant.

C.A. No. 1:24-cv-04364-SCJ

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

## **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................1

II.   FACTS ...........................................................................3

III.  MOTION TO DISMISS UNDER RULE 12(B)(1) ...........................5

   A.   Legal Standard .........................................................5

   B.   Argument .................................................................6

      1.   Congress Intended Violations of the NVRA to be Concrete Injuries. ...............................................................6

      2.   Plaintiffs Have Suffered Particularized Injuries. .......................7

      3.   Plaintiffs Have Suffered Actual Injury and are Suffering Imminent Harm. ..........................................................15

IV.   MOTION TO DISMISS UNDER RULE 12(B)(6) .......................17

   A.   Legal Standard .......................................................17

   B.   Argument ...............................................................18

      1.   Defendant's Interpretation Is Not in Line with the Georgia Code .............................................................19

      2.   Regardless, Defendant's Remissness Violates the NVRA .......22

      3.   Defendant May Not Introduce its own Facts on a 12(b)(6) Motion .....................................................................24

V.    CONCLUSION............................................................25

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Anderson v. United States,*
  417 U.S. 211 (1974) ........................................................................14

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................22

*Baker v. Carr,*
  369 U.S. 186 (1962) .................................................................. 16, 18

*Baughcum v. Jackson,*
  92 F.4th 1024 (11th Cir. 2024) ........................................................18

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................................22

*Bellitto v. Snipes,*
  935 F.3d 1192 (11th Cir. 2019) ...................................... 7, 24, 27, 28

*Buckley v. Valeo,*
  424 U.S. 1 (1976) ............................................................................10

*Calzadilla v. Banco Latino Internacional,*
  413 F.3d 1285 (11th Cir. 2005) .......................................................25

*Chaparro v. Carnival Corp.,*
  693 F.3d 1333 (11th Cir. 2012) .................................................. 21, 22

*Charles H. Wesley Educ. Found., Inc. v. Cox,*
  408 F.3d 1349 (11th Cir. 2005) .......................................................14

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) .................................................................. 18, 19

*Common Cause/Georgia v. Billups,*
  554 F.3d 1340 (11th Cir. 2009) .......................................................13

*Democratic Exec. Comm. of Fla. v. Lee,*
  915 F.3d 1312 (11th Cir. 2019) .........................................................9

*FEC v. Akins*,
524 U.S. 11 (1998) ................................................................9

*Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cty. Bd. of Registration &*
*Elections*,
36 F.4th 1100 (11th Cir. 2022) ..........................................15

*Ga. Muslim Voter Project v. Kemp*,
918 F.3d 1262 (11th Cir. 2019) ..........................................9

*Gill v. Whitford*,
585 U.S. 48 (2018) ......................................... 14, 15, 16, 17

*Green v. Bell*,
No. 3:21-cv-00493-RJC-DCK, 2023 U.S. Dist. LEXIS 45989 (W.D.N.C. Mar.
19, 2023) ...........................................................................10

*Husted v. A. Philip Randolph Inst.*,
584 U.S. 756 (2018) ..........................................................24

*Jacobsen v. Fla. Sec'y of State*,
974 F.3d 1236 (11th Cir. 2020) ..........................................15

*Judicial Watch, Inc. v. Griswold*,
554 F. Supp. 3d 1091 (D. Colo. 2021)................................10

*Judicial Watch, Inc. v. King*,
993 F. Supp. 2d 919 (S.D. Ind. 2012) ................................10

*Lawrence v. Dunbar*,
919 F.2d 1525 (11th Cir. 1990) ......................................2, 6

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ................................................... 6, 7, 8

*Nat'l Coal. on Black Civic Participation v. Wohl*,
512 F. Supp. 3d 500 (S.D.N.Y. 2021)................................10

*Project Vote, Inc. v. Kemp*,
208 F. Supp. 3d 1320 (N.D. Ga. 2016)...............................21

*Purcell v. Gonzales*,
549 U.S. 1 (2006) ......................................................... 11, 14

*Randall v. Scott*,
    610 F.3d 701 (11th Cir. 2010) ............................................................... 2, 22, 30

*Reese v. Ellis, Painter, Ratterree & Adams LLP*,
    678 F.3d 1211 (11th Cir. 2012) .................................................................. 26, 29

*Reynolds v. Sims*,
    377 U.S. 533 (1964) ..................................................................................14

*Salcedo v. Hanna*,
    936 F.3d 1152 (11th Cir. 2019) ...........................................................7

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ................................................................... 7, 8, 18

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ..................................................................................18

*Tsao v. Captiva MVP Rest. Partners, LLC*,
    986 F.3d 1332 (11th Cir. 2021) ........................................... 6, 7, 16, 18

*United States v. Richardson*,
    418 U.S. 166 (1974) ...................................................................................8

*United States v. Ron Pair Enters., Inc.*,
    489 U.S. 235 (1989) ..................................................................................27

*United States v. Students Challenging Reg. Agency Procs.*,
    412 U.S. 669 (1973) ...................................................................................8

*Victor Elias Photography, LLC v. ICE Portal, Inc.*,
    43 F.4th 1313 (11th Cir. 2022) ..............................................................25

*Warth v. Seldin*,
    422 U.S. 490 (1975) ..................................................................................30

*Wesberry v. Sanders*,
    376 U.S. 1 (1964) ......................................................................................13

*Wis. Voter All. v. Millis*,
    720 F. Supp. 3d 703 (E.D. Wis. 2024)..................................................10

*Wood v. Raffensperger*,
  981 F.3d 1307 (11th Cir. 2020) .................................................................. passim

## Statutes

52 U.S.C. § 20507 ............................................................................................... passim

52 U.S.C. § 20510 ........................................................................................................7

O.C.G.A. § 21-2-210 ...................................................................................................3

O.C.G.A. § 21-2-216 ...................................................................................................1

O.C.G.A. § 21-2-231 .................................................................................................23

O.C.G.A. § 21-2-233 ........................................................................................... passim

## Rules

Fed. R. Civ. P. 8 .........................................................................................................17

Fed. R. Evid. 201(b) ..................................................................................................14

Rule 12(b)(6) ........................................................................................................ passim

## Other Authorities

*Dave Leip's Atlas of U.S. Presidential Elections,*  https://uselectionatlas.org (last
  accessed Nov. 22, 2024) .....................................................................................13

Deidra Dukes, *Georgia's Secretary of State announces 20 noncitizens found to be
  registered voters*,
  FOX 5 ATLANTA (Oct. 23, 2024), https://www.fox5atlanta.com/news/georgias-
  secretary-state-announces-20-noncitizens-found-be-registered-voters ..............16

*Double registration and strategic voting across state lines*,
  CENTRE FOR ECONOMIC POLICY RESEARCH (Oct. 29, 2024),
  https://cepr.org/voxeu/columns/double-registration-and-strategic-voting-across-
  state-lines.............................................................................................................16

*Election Fraud Map,* https://electionfraud.heritage.org/search?state=ga................15

## I.    <u>INTRODUCTION</u>

As the Court is no doubt aware, voters must reside in the jurisdiction where they vote. O.C.G.A. § 21-2-216(a)(4). Plaintiffs William T. Quinn and David Cross previously provided Defendant with evidence that Georgia's voter rolls included numerous people who have told the U.S. Postal Service that they have permanently moved out of the jurisdiction, and thus were no longer citizens of that jurisdiction. Defendant, however, ignored this information. Instead, Defendant claims it has absolute discretion regarding "whether and when to perform a comparison of the voter rolls" with U.S. Postal Service change-of-address data. This position fails to satisfy the NVRA. That is because the NVRA does not give state authorities discretion on whether to act—it requires them to act. Because Plaintiffs' experiences have shaken their faith in the electoral process and all but guarantee that their votes will be diluted by improper votes, Plaintiffs brought the present action to ensure that Defendant performs the required investigation.

Although Plaintiffs notified Defendant of tens of thousands of voter registration anomalies, Defendant's own brief expresses agnosticism as to whether these registrations are correct. (*See* Dkt. No. 48-1 at 22, 24.) This implies that Defendant *still* has not investigated these issues. Moreover, Defendant blithely asks this Court to assume there are no problems and dismiss the case. (*See, e.g.*, *id.* at 24 (speculating that some of the anomalous registrations may be valid).) But the fact

that Defendant's motion is dependent on such assumptions is fatal to this motion. That is because at the pleadings stage, the courts "accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor." *See, e.g.*, *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (reciting this standard for motions under Rule 12(b)(6)); *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (holding that where, as here, a defendant mounts a facial attack on standing, "a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion").

Applying the *correct* standard, it is clear that both parts of Defendant's motion to dismiss are meritless. Defendant's motion to dismiss under Rule 12(b)(1) fails because well-established law shows that the particular harms Mr. Quinn and Mr. Cross suffered here are sufficient to give them standing. For example, Plaintiffs have alleged in great detail how learning of the many anomalies in the voter rolls and Defendant's apathy to these defects has caused them to completely lose faith in Georgia's election process. This is exactly the type of harm that courts across the country have found is sufficient to provide standing. Indeed, the reasoning in Defendant's motion would render meaningless Congress's decision to create a private right of action under the NVRA. That is because under Defendant's theory that individuals lack standing to enforce election laws, no one would ever have standing to bring a lawsuit under the NVRA, making its private right of action

unusable. Accordingly, Defendant's motion to dismiss under Rule 12(b)(1) should be denied.

Defendant's motion to dismiss under Rule 12(b)(6) fares no better. Plaintiffs' allegations clearly show that Defendant has failed to put forth the effort required by the NVRA to maintain the voter lists. Defendant appears to concede as much, as its motion relies heavily on (incorrect) factual assertions that improperly go beyond the allegations of the Amended Complaint. This concession dooms Defendant's motion, as a motion to dismiss for failure to state a claim must be decided based on the allegations of the operative complaint. Any factual disputes must be resolved later, after the parties have had an adequate opportunity for discovery. For all of these reasons, the Court should deny Defendant's Motion to Dismiss.

## II.    FACTS

To uphold the integrity of elections, prevent voter fraud, and protect our citizens' trust in the election process, the federal government has enacted multiple laws requiring states to maintain their lists of voters and designate as inactive those registrations that are no longer active. *See* 52 U.S.C. § 20507(a)(4)(B) (requiring states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to a change of address). (Dkt. No. 45 ¶ 11.) Accordingly, Georgia has implemented procedures for maintaining the voter lists. O.C.G.A. § 21-2-210, *et seq*. (Dkt. No. 45 ¶ 15.) The

procedures include instructions for what Defendant *must* do when presented with data from the U.S. Postal Service showing that electors have permanently left the jurisdiction where they are registered. O.C.G.A. § 21-2-233(c). (Dkt. No. 45 ¶ 19.)

A list of voter registrations was purchased from the Georgia Secretary of State on June 30, 2024. (Dkt. No. 45 ¶ 20.) This data was then compared to U.S. Postal Service data. (*Id*. at ¶¶ 21–24.) From this analysis, Mr. Quinn and Mr. Cross discovered tens of thousands of registrations where the voters had permanently moved out of the state or jurisdiction where they were registered—yet their registrations were marked as "active" at their former address. (*Id*. at ¶ 25.) This discovery shook their faith in the electoral process. (*Id*. at ¶ 46.)

On September 3, 2024, Mr. Quinn and Mr. Cross provided the data to Defendant and reminded it of its obligations to correct these problematic registrations under the NVRA and Georgia law. (*Id*. at ¶¶ 26–30.) Defendant, however, never responded to this information, further increasing Plaintiffs' concerns. (*Id*. at ¶ 35.) Worse, Defendant has since argued that he is within his rights to ignore these anomalies entirely, thereby giving Mr. Quinn and Mr. Cross no reason to trust the integrity of the voter rolls.

On September 26, 2024, Plaintiffs filed the instant lawsuit. (*Id*. at ¶ 36.) Defendant moved to dismiss on October 21, 2024, arguing in part that Plaintiffs' data was supposedly outdated. (Dkt. No. 30-1.) In early October (before the recent

presidential election), Plaintiffs obtained new data. (Dkt. No 45 ¶ 39.) Using this

data, Mr. Quinn and Mr. Cross discovered that up to 35% of the prior anomalies had

not been remedied, further eroding what little confidence they had left in the

electoral process. (*Id.* at ¶¶ 40–44.)

Based on this data, Plaintiffs filed their Amended Complaint on Oct. 25, 2024.

(*Id.* at ¶ 1.) Defendant filed the present motion to dismiss on November 8, 2024,

claiming lack of standing and failure to state a claim. (Dkt. No. 48.) Mr. Quinn and

Mr. Cross now ask the Court to deny this motion, as it is without merit.

### III.   MOTION TO DISMISS UNDER RULE 12(b)(1)

### A.   Legal Standard

Because Defendant's motion presents a facial attack on standing,[1] the Court

assumes all allegations in the Amended Complaint as true, as "a plaintiff is afforded

safeguards similar to those provided in opposing a Rule 12(b)(6) motion." *Lawrence*,

919 F.2d at 1529; *see also Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332,

1337 (11th Cir. 2021) (same).

---

[1] This is a facial attack and not a factual attack. Defendant claims that Plaintiffs did
not allege an injury in fact, and relies solely on the pleadings. (Dkt. No. 48-1, at 3, 9
(citing only the standard for a facial attack and arguing that "Plaintiffs . . . cannot
show that they have . . . an injury in fact.").)

To establish standing, a plaintiff must show three things: an "injury in fact," a "causal connection between the injury and conduct complained of," and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Here, Defendant only challenges the first of these elements—injury in fact. (*See* Dkt. No. 48-1 at 9–15.) An injury in fact has three elements: it must be (1) concrete, (2) particularized, and (3) actual or imminent. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Plaintiffs have easily satisfied all three elements.

## B.    Argument

### 1.    Congress Intended Violations of the NVRA to be Concrete Injuries.

The United States Supreme Court has defined a "concrete injury" as one that "actually exist[s]" as opposed to one that is "abstract." *Id.* at 340. The Eleventh Circuit "has adhered to that definition," holding that "a concrete injury need be only an 'identifiable trifle.'" *Tsao*, 986 F.3d at 1338 (quoting *Salcedo v. Hanna*, 936 F.3d 1152, 1167 (11th Cir. 2019)). The Supreme Court has further held that Congress may elevate intangible injuries, previously inadequate, to "concrete, de facto injuries" "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Spokeo*, 578 U.S. at 341 (quoting *Lujan*, 504 U.S. at 578); *see also Salcedo*, 936 F.3d at 1170 (same).

Here, Congress made a violation of Section 8 of the NVRA a concrete injury when it expressly created a private cause of action for violation of that section. *See*

*Bellitto v. Snipes*, 935 F.3d 1192, 1199 (11th Cir. 2019) (citing 52 U.S.C. § 20510) ("Congress made these and the other provisions of the NVRA enforceable by expressly creating a private cause of action."). Because Plaintiffs have alleged a violation of the NVRA, and because, at this stage, allegations are assumed to be true and inferences drawn in favor of Plaintiffs, Plaintiffs have suffered a concrete injury.

### 2.    Plaintiffs Have Suffered Particularized Injuries.

Plaintiffs have satisfied the second requirement of standing—that is, they have suffered a particularized injury. A particularized injury is one that "affect[s] the plaintiff in a personal and individual way." *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020) (citing *Spokeo*, 578 U.S. at 339). This is in contrast to injuries that are "common to all members of the public." *Lujan*, 504 U.S. at 575 (quoting *United States v. Richardson*, 418 U.S. 166, 176–77 (1974)) (internal quotation marks omitted). Importantly, even a trivial injury is sufficient to satisfy this requirement. *United States v. Students Challenging Reg. Agency Procs.*, 412 U.S. 669, 689 n.14 (1973) (collecting cases).

"The fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance. The victims' injuries from a mass tort, for example, are widely shared, to be sure, but each individual suffers a particularized harm." *Spokeo*, 578 U.S. at 339 n.7. "Where large

numbers of voters suffer interference with voting rights conferred by law," that interference constitutes a particularized harm. *FEC v. Akins*, 524 U.S. 11, 24 (1998).

Here, Plaintiffs have suffered two types of injuries: (a) Defendant has undermined Mr. Quinn's and Mr. Cross's confidence and trust in the electoral process; and (b) Plaintiffs have suffered vote dilution. (Dkt. No. 45 ¶ 3.) Both of these injuries are ones that have uniquely affected Plaintiffs in a deeply "personal and individual way." *Wood*, 981 F.3d at 1314.

### a. Plaintiffs have suffered particularized injuries from undermined confidence in the electoral process.

"It is beyond dispute that 'protecting public confidence in elections is deeply important—indeed, critical—to democracy.'" *Ga. Muslim Voter Project v. Kemp*, 918 F.3d 1262, 1274 (11th Cir. 2019) (quoting *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1327 (11th Cir. 2019)); *see also Buckley v. Valeo*, 424 U.S. 1, 265 (1976) ("It is also important to restore and maintain public confidence in federal elections."). Courts across the United States have recognized that when a plaintiff's confidence in an electoral process has eroded, that fact constitutes a satisfactory injury for purposes of Article III standing. *Wis. Voter All. v. Millis*, 720 F. Supp. 3d 703, 709 (E.D. Wis. 2024); *Green v. Bell*, No. 3:21-cv-00493-RJC-DCK, 2023 U.S. Dist. LEXIS 45989, *9 (W.D.N.C. Mar. 19, 2023); *Judicial Watch, Inc. v. Griswold*, 554 F. Supp. 3d 1091, 1103–04 (D. Colo. 2021); *Nat'l Coal. on Black Civic Participation v. Wohl*, 512 F. Supp. 3d 500, 515–16 (S.D.N.Y. 2021); *Judicial*

*Watch, Inc. v. King*, 993 F. Supp. 2d 919, 924 (S.D. Ind. 2012); *cf. Purcell v. Gonzales*, 549 U.S. 1, 4 (2006) (per curiam) ("Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy.").

Here, Plaintiffs have alleged in multiple places in the Amended Complaint that their confidence and trust in the electoral process has been burdened and undermined. (Dkt. No. 45 ¶¶ 1, 3, 46, 51, 63.) In their complaint, Mr. Quinn and Mr. Cross explicitly identified several events and acts by Defendant that severely eroded Plaintiffs' confidence in the electoral process:

- Mr. Quinn and Mr. Cross learned of numerous anomalies in the voter rolls, e.g., that the voter rolls listed many voters who had told the U.S. Postal Service they had left the jurisdiction. (*Id.* at ¶¶ 20–24.) But yet, these voters were still listed as "active" on the voter rolls at addresses where they no longer resided, which is improper under established law.

- When Mr. Quinn and Mr. Cross informed Defendant of these issues and provided him with proof, Defendant ignored them. (*Id.* at ¶¶ 25–29, 35.)

- Even after Mr. Quinn and Mr. Cross filed this lawsuit, Defendant still took no action to correct the voter rolls. Instead, Defendant moved to dismiss, claiming that Plaintiffs' data was supposedly outdated.

- Mr. Quinn and Mr. Cross therefore examined updated data from shortly before the election, and they found that over a third of the anomalies had not been remedied. (*Id.* at ¶¶ 39–45.)

- After advising Defendant of this troubling fact by way of Plaintiffs' Amended Complaint, Defendant continued to ignore Plaintiffs. Instead, Defendant has taken the untenable position that he has absolutely no obligation to remedy these issues and is effectively free to do whatever he wants. While that is not the law, the fact that Defendant believes this further undermines Mr. Quinn's and Mr. Cross's confidence in the electoral process.

Notably, these disturbing facts are not known by the general public. The general public has not seen the anomalies in the voter rolls that Mr. Quinn and Mr. Cross have themselves observed. Nor has the general public had the same interactions with Defendant that Mr. Quinn and Mr. Cross have had—interactions that have left Plaintiffs with almost no confidence whatsoever in the electoral process. Consequently, Plaintiffs' complete loss of confidence in the electoral process is an injury that is particular and unique to Mr. Quinn and Mr. Cross (as opposed to one that is shared by the entire general public). Such a particularized injury is more than sufficient to confer standing on the Plaintiffs here.

In its motion, Defendant relies on *Wood v. Raffensperger* for its holding that a voter lacked standing to demand a recount and new election rules. 981 F.3d at 1307. While both cases involved voters bringing election-related lawsuits, the similarity ends there. Among other differences, the plaintiff in *Wood* did not allege a loss of confidence in the electoral process. Thus, *Wood* provides no basis for the Court to find a lack of standing here. Likewise, any cases dealing with a loss of confidence by the public in general—as opposed to Plaintiffs' loss of confidence due to their data and personal interactions with Defendant—are wholly inapposite here.

For all of these reasons, Plaintiffs' allegations of the facts that have caused them *in particular* to lose faith in the electoral process plead a particularized injury.

### b. Plaintiffs have suffered particularized injuries from vote dilution.

Plaintiffs have also alleged a second particularized injury that confers standing to file suit: vote dilution. The right to vote is one of the most fundamental civil rights. *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1345 (11th Cir. 2009); *see also Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("Other rights, even the most basic, are illusory if the right to vote is undermined."). This right "can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Purcell*, 549 U.S. at 4 (quoting *Reynolds v. Sims*, 377 U.S. 533, 561 (1964)); *accord Anderson v. United States,* 417

U.S. 211, 227 (1974) (holding that the right to vote includes the right "to have [one]'s vote fairly counted, without its being distorted by fraudulently cast votes").

The United States Supreme Court has "long recognized" that "a person's right to vote is individual and personal in nature'" for purposes of standing. *Gill v. Whitford*, 585 U.S. 48, 66 (2018) (quoting *Reynolds*, 377 U.S. at 561). Plaintiffs "need not have the franchise wholly denied to suffer injury" for purposes of standing. *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005). Voter dilution counts as a particularized injury "when an election practice . . . devalues one citizen's vote as compared to others." *Gill*, 585 U.S. at 75.

Standing based on voter dilution exists when the plaintiff "allege[s] facts showing disadvantage to themselves as individuals." *Jacobsen v. Fla. Sec'y of State*, 974 F.3d 1236, 1246 (11th Cir. 2020) (quoting *Gill*, 585 U.S. at 66-67). An injury that "giv[es] diminished weight to each particular vote, even if millions were so touched," results in "a voter . . . [who] suffer[s] disadvantage to herself as an individual." *Gill*, 585 U.S. at 75 (Kagan, J., concurring) (changes adopted) (noting that this is the case even though "such practices invariably affect more than one citizen at a time"); *see also Jacobsen*, 974 F.3d at 1246. ("[Voters] have an interest in their ability to vote and in their vote being given the same weight as any other."). And critically, "at the pleading stage, general factual allegations of injury are enough." *Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cty. Bd. of Registration*

& *Elections*, 36 F.4th 1100, 1117 (11th Cir. 2022) (quoting *Tsao*, 986 F.3d at 1337) (brackets and internal quotation marks omitted).[2]

Both the Supreme Court and the Eleventh Circuit have held that an injury was particularized when the appellants asserted their votes were disfavored vis-à-vis voters in other counties. *Baker v. Carr*, 369 U.S. 186, 207–08 (1962); *Wood*, 981 F.3d at 1314 (holding that "vote dilution can be a basis for standing" as long as there is "a point of comparison"). Here, the potential for vote dilution that Plaintiffs suffered in the instant case stems from the effect that their vote is worth less than those of voters in other counties. (*See* Dkt. No. 45 ¶¶ 20-46.) In particular, individuals registered in multiple places can selectively choose where to vote, choosing jurisdictions with closer races, thereby reducing the number of "wasted" votes. Swing counties like Gwinnett County, where Mr. Quinn and Mr. Cross reside,[3] are more likely to be targeted by such selective voters. Because the issues of

---

[2] At trial, allegations of vote dilution must be supported by evidence and proven more conclusively. However, that is not required to establish standing at the pleading stage. *See Gill*, 585 U.S. at 50–51, 54 (remanding judgment so that plaintiffs could present evidence demonstrating injury at trial because some of the plaintiffs "pleaded such a particularized burden[,] [b]ut as their case progressed to trial, they failed to pursue their allegations of individual harm").

[3] The Court can take judicial notice of the fact that Plaintiffs' hometown of Suwanee, Georgia (Dkt. No. 45 ¶¶ 4–5) is in Gwinnett County, as well as the fact that Gwinnett County has been a swing county in recent years, *see, e.g.*, *Dave Leip's Atlas of U.S. Presidential Elections*, https://uselectionatlas.org (last accessed Nov. 22, 2024)

which Plaintiffs complain affect Plaintiffs' home county more than they affect voters in other, non-swing counties in the state of Georgia, these issues create a particularized injury. *See Gill*, 585 U.S. at 74–77 (Kagan, J., concurring).

In contrast to this clear authority, Defendant attempts to analogize this case to *Wood v. Raffensperger*. (Dkt. No. 48-1 at 10.) In *Wood*, the plaintiff alleged that Georgia's absentee-ballot and recount procedures violated his constitutional rights and sought to enjoin the certification of the 2020 election. 981 F.3d at 1310. But critically, the court in *Wood* recognized that vote dilution is a particularized injury, and rejected Mr. Wood's claim because he was affected by the alleged violations in the same way as every other Georgia voter. *Id.* at 1314-15. In contrast, Mr. Quinn and Mr. Cross are disproportionately affected by the defects they identify because voters who are improperly registered in the wrong jurisdiction are more likely to use such a registration to improperly vote in a swing county like Gwinnett County than in other, non-swing counties. Because Plaintiffs' votes have been devalued compared to those of voters in other counties, Plaintiffs have suffered a particularized injury. *See Baker*, 369 U.S. at 207–08.

_____

(showing that Gwinnett County has voted for a Democrat in three of the last six presidential elections and for a Republican in the other three). *See generally* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

**3.     Plaintiffs Have Suffered Actual Injury and are Suffering Imminent Harm.**

Finally, Plaintiffs have standing because they have satisfied the third requirement of an injury-in-fact by demonstrating their harm is "actual or imminent." *Spokeo*, 578 U.S. at 339. In elaborating upon this element, the Eleventh Circuit has held that a plaintiff must suffer either an actual harm or "threatened injury must be certainly impending." *Tsao*, 986 F.3d at 1338 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013)). "An actual or imminent injury, unlike a conjectural or hypothetical one, is one which has occurred, is certainly impending, or has substantial risk of occurring." *Baughcum v. Jackson*, 92 F.4th 1024, 1031 (11th Cir. 2024) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Notably, a plaintiff need not prove "it is 'literally certain that the harms they identify will come about,'" but merely that there is a "'substantial risk' that the harm will occur." *Tsao*, 986 F.3d at 1338-39 (quoting *Clapper*, 568 U.S at 414 n.5).

However small, election fraud—when a voter votes multiple times—does occur. *See, e.g., Election Fraud Map*, https:// electionfraud.heritage.org/search?state=ga (last visited Nov. 22, 2024) (noting dozens of instances where people were found to have committed election fraud in

Georgia, including in 2024).[4] The number of instances in which voters are registered to multiple addresses is significantly higher, between 2.2% and 8% of registered voters. Gordon Dahl et al., *Double registration and strategic voting across state lines*, CENTRE FOR ECONOMIC POLICY RESEARCH (Oct. 29, 2024) https://cepr.org/voxeu/columns/double-registration-and-strategic-voting-across-state-lines (last visited Nov. 22, 2024).[5] Such voters can choose where to vote, diluting the vote in the jurisdictions where they vote improperly, especially in swing counties like Gwinnett County where Mr. Quinn and Mr. Cross live.

Although general allegations suffice under the notice pleading standard, Plaintiffs' Amended Complaint included a few examples of data summaries showing thousands of double registrations in each of two Georgia counties. (Dkt. No. 45 ¶¶ 4–

---

[4] Again, the Court can take judicial notice of these facts, which come from public records. *See* Fed. R. Evid. 201(b); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277 (11th Cir. 1999) (holding that the district court properly took judicial notice of publicly-available government records at the motion to dismiss stage).

[5] Likewise, Defendant himself has admitted that voter fraud is occurring. Deidra Dukes, *Georgia's Secretary of State announces 20 noncitizens found to be registered voters*, FOX 5 ATLANTA (Oct. 23, 2024) https://www.fox5atlanta.com/news/georgias-secretary-state-announces-20-noncitizens-found-be-registered-voters (last visited Nov. 22, 2024). And while Defendant managed to catch the individuals at issue in the above-cited article, the fact that a type of crime has been detected in a jurisdiction is invariably a sign that many similar crimes have succeeded without being detected (*e.g.*, if a city has a large number of people being arrested for drug dealing, this is a sign that it has many other drug dealers who have not been caught).

5, 41–43.) That means there is a substantial risk that Plaintiffs' votes are being devalued vis-à-vis those of other voters. This is yet another reason why Mr. Quinn and Mr. Cross have almost no confidence in Georgia's election process. (*E.g.*, *id*. at ¶¶ 46, 51.) Plaintiffs have alleged Defendant's mistakes have been ongoing and continue to occur. (*Id*. at ¶¶ 41-46.) Plaintiffs' highly diminished confidence in the system is further compounded by Defendant's unwillingness to even respond to Plaintiffs' concerns. (*Id*. at ¶ 35.) In this regard, the NVRA "allow[s] those who violate [it] the opportunity to attempt compliance with its mandates before facing litigation." *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1347 (N.D. Ga. 2016). Because Defendant ignored Plaintiffs' request to investigate the situation, this Court can reasonably infer that Defendant either did not care to comply with the NVRA or would rather face litigation than quell Plaintiffs' concerns. *See id.*

Plaintiffs have clearly alleged not just one but two justiciable injuries. That is more than enough to establish standing at the pleadings stage. Accordingly, this Court should deny Defendant's Rule 12(b)(1) motion.

## IV.    MOTION TO DISMISS UNDER RULE 12(b)(6)

### A. Legal Standard

A complaint must simply be "a short and plain statement of the claim showing that the pleader is entitled to relief." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (citing Fed. R. Civ. P. 8(a)(2)). This "does not require detailed

factual allegations," but merely requires allegations of "facts that are more than merely possible." *Chaparro*, 693 F.3d at 1337 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When analyzing the complaint, the Court is to "accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor." *Randall*, 610 F.3d at 705. A motion to dismiss must be denied if those allegations "'raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Chaparro*, 693 F.3d at 1337 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

### B. Argument

Defendant's self-serving interpretation of Georgia law is unavailing. Moreover, even if Defendant were correct about Georgia law (he is incorrect), that would not exempt him from complying with the requirements of the NVRA.

But Defendant is incorrect about Georgia law. Georgia's law authorizes Defendant "to cause at his or her discretion the official list of electors to be compared to the change of address information supplied by the United States Postal Service . . . periodically for the purpose of identifying those electors [(voters)] whose addresses have changed." O.C.G.A. § 21-2-233(a). Georgia law also provides that:

> If it appears from the change of address information supplied by the licensees of the United States Postal Service that an elector whose name appears on the official list of electors has moved to a different address outside of the boundaries of the county or municipality in which the elector is presently registered, *such elector shall be sent* a confirmation notice . . . . [and] [i]f the elector confirms the change of

address to an address outside of the State of Georgia, *the elector's name <u>shall</u> be removed* from the appropriate list of electors.

*Id*. at § 21-2-233(c) (emphasis added).

Likewise, the NVRA states, "each State <u>*shall*</u> conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . a change in the residence of the registrant . . . ." 52 U.S.C. § 20507(a)(4) (emphasis added).

Despite the plain an unambiguous language of these statutes, Defendant argues he has complete discretion to decide "whether and when to perform a comparison of the voter rolls to the NCOA database." (Dkt. No. 30-1 at 14; *see also* Dkt. No. 45 ¶ 41–43.) But Defendant has misread the Georgia Code. And even if Defendant has correctly interpreted the Georgia Code (he has not), he would still have to perform his duties under the NVRA.

### 1. Defendant's Interpretation Is Not in Line with the Georgia Code

For many years, Congress gave States like Georgia wide discretion on when, whether, and how to maintain accurate voter lists. *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also Bellitto*, 935 F.3d at 1198 ("The United States Constitution vests in the states the authority to regulate federal elections but reserves to Congress the prerogative to alter a state's procedures."). That ended in 1993 when Congress enacted the NVRA. *Husted*, 584 U.S. at 761. The NVRA requires such programs to be "uniform, nondiscretionary, and in compliance with the Voting

Rights Act of 1965." *Id.* at 764 (citing 52 U.S.C. § 20507(b)(1)). Further, the NVRA

*requires* states to send notices to voters based on change-of-address data showing

that they changed residency and to remove voters who have indeed left the

jurisdiction.[6] *Husted*, 584 U.S. at 767; 52 U.S.C. § 20507(a)(4)(B).

Defendant's duties under O.C.G.A. § 21-2-233 must be read in the context of

this mandate. Under Defendant's interpretation of this statute, he can avoid having

to perform his mandatory duties under § 21-2-233(c) by simply never performing a

comparison under § 21-2-233(a). Such an interpretation not only contradicts the

NVRA's statements that such maintenance is mandatory, but renders the mandatory

language of § 21-2-233(c) meaningless by giving Defendant an easy way to evade

it. Whatever discretion Defendant may have under § 21-2-233(a), it cannot be so

broad as to render the mandatory language of § 21-2-233(c) meaningless. *See, e.g.*,

*Victor Elias Photography, LLC v. ICE Portal, Inc.*, 43 F.4th 1313, 1319 (11th Cir.

2022) (quoting *Calzadilla v. Banco Latino Internacional*, 413 F.3d 1285, 1287 (11th

Cir. 2005)) ("A statute should be construed to give effect to all its provisions, 'so

that no part of it will be inoperative or superfluous, void or insignificant.'").

---

[6] Voters may also be removed for other reasons, such as voluntary cancellation, criminal conviction, mental incapacity, or death. *See* 52 U.S.C. § 20507(a)(3)–(4).

Moreover, Subsection (c) does not specify who must cause the comparison to be done. As such, Defendant should have taken the data received from Plaintiffs into account as triggering its duties under Subsection (c).

Plaintiffs have alleged that Defendant is abusing the discretion by not causing sufficient comparisons of the voter list with NCOA data to be made, as supported by the data analysis. (Dkt. No. 45 ¶¶ 39–49.) Plaintiffs found that, among other things, Defendant is "failing to (i) adequately compare the state's voter lists to the change of address information supplied by the USPS, (ii) send notices to voters who apparently have moved to a different jurisdiction, and (iii) mark inactive those voters who fail to respond to the notice within 30 days." (*Id.* at ¶ 49.) Plaintiffs support that by using thousands of incorrect registrations to identify systemic flaws in Defendant's list maintenance processes. (*Id.* at ¶¶ 22–25, 39–43.) Plaintiffs allege:

> The continuing presence of so many voters marked as active on Georgia's voter rolls who apparently have moved—as shown in the Cherokee County and Forsyth County examples above—demonstrates that Defendant has not made a reasonable effort to maintain Georgia's voter rolls in accordance with the NVRA. Defendant's purported list maintenance efforts have failed to correct an unreasonably large number of voter registrations.

(*Id.* at ¶ 44.) Plaintiffs further allege—and the facts confirm—that Defendant failed to adequately compare voter lists. (*Id.* at ¶¶ 44, 46, 48–50, 57–59.) On a motion to dismiss, Plaintiffs need do no more. To the extent Defendant claims he doesn't know enough information or whether the complaint is accurate, (Dkt. No. 48-1 at 22), the

proper remedy for this is discovery, not dismissal. *Reese v. Ellis, Painter, Ratterree & Adams LLP*, 678 F.3d 1211, 1215 (11th Cir. 2012) ("[A] motion to dismiss under Rule 12(b)(6) [requires] 'accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff.'"). To the extent Defendant argues that NCOA data cannot support a challenge under state law, (Dkt. No. 48-1 at 23), the NVRA expressly provides otherwise. *See* 52 U.S.C. § 20507(c)(1) (allowing states to use NCOA data to compare address changes, send notices, and ultimately remove registrations).

### 2.     Regardless, Defendant's Remissness Violates the NVRA

Even if Georgia law somehow allowed Defendant unfettered and absolute discretion whether and when to perform list maintenance, the NVRA does not. Instead, the NVRA requires Defendant to conduct a general program that makes a reasonable effort to remove the ineligible voters from the official lists of eligible voters for changes of address. 52 U.S.C. § 20507(a)(4)(B).

Interpretation of the NVRA starts "where all such inquires begin: with the language of the statute itself." *Bellitto*, 935 F.3d at 1200 (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). If the statutory text is unambiguous, that is the end of the inquiry. *Bellitto*, 935 F.3d at 1200.

The Eleventh Circuit has held that Section 8 of the NVRA "unambiguously mandates" that state officials like Defendant "conduct a general program that makes

a reasonable effort to remove the names of voters who have become ineligible on account of . . . change of address." *Id*. (citing 52 U.S.C. § 20507(a)(4)). As such, the NVRA does not allow state officials to decide whether they will perform such maintenance or not, as Defendant tries to claim—but rather, the NVRA imposes on Defendant "an affirmative obligation" to do so. *Bellitto*, 935 F.3d at 1200.

By analogy, it is well-established that Defendant has no discretion as to whether to enforce list maintenance when dealing with registered electors' deaths—another mandated grounds for removal under the NVRA. At least once per month Defendant receives from each county "a complete list of all persons, including addresses, ages, and other identifying information as prescribed by the Secretary of State, who died during the preceding calendar month in the county." O.C.G.A. § 21-2-231(d). Upon receipt of that information, Defendant "shall remove all such names of deceased persons from the list of electors and shall notify" the county registrar about the elector's death. *Id*. § 21-2-231(e).

Even if the NVRA did not specifically require Defendant to act with respect to electors who have moved away from the jurisdiction (the law does), this would not give Defendant carte blanche to ignore this reason for removal at will. *See* 52 U.S.C. § 20507(a)(4)(B) (requiring Defendant to "make[] a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . a change in the residence of the registrant"). But that is exactly what

- 23 -

Defendant is doing, as evidenced by the large number of anomalous registrations that remain even after Plaintiffs provided Defendant with proof of these anomalies.

### 3. Defendant May Not Introduce its own Facts on a 12(b)(6) Motion

Finally, Plaintiffs note that Defendant's motion relies heavily on disputing the facts alleged by Plaintiffs. (*See, e.g.*, Dkt. No. 48-1 at 24 (speculating that some of the anomalous registrations may be valid).) While Plaintiffs firmly believe the facts alleged in the Amended Complaint are correct—and are prepared to defend those allegations through discovery and trial—the Court need not and should not reach that issue at this time. That is because the Court must decide a 12(b)(6) motion based on the allegations in the complaint, construed in the light most favorable to the plaintiff. *E.g.*, *Reese*, 678 F.3d at 1215.

Defendant asserts that he is conducting list maintenance. (Dkt. No. 48-1 at 17.) This vague assertion is both inadmissible on a Rule 12(b)(6) motion and incorrect. Plaintiff alleged continuing errors of up to 35% due to Defendant's failure to properly conduct list maintenance. (Dkt. No 45 ¶¶ 40–44.) On a Rule 12(b)(6) motion, these allegations are assumed true and reasonable inferences are drawn in favor of Plaintiffs. *E.g.*, *Randall*, 610 F.3d at 705 (holding that on a 12(b)(6) motion, courts "accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor"). The NVRA requires that Defendant make a

reasonable effort to remove all ineligible voters, not to simply remove less than two-thirds of them. *See* 52 U.S.C. § 20507(a)(4).

Defendant also speculates that some of the anomalous registrations may be valid. (*See* Dkt. No. 48-1 at 24.) Again, Plaintiffs' allegation that these registrations are incorrect is assumed true at this stage of the case, rendering Defendant's speculation premature. *E.g.*, *Randall*, 610 F.3d at 705.

For all of these reasons, Defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6) should be denied.

## V.    CONCLUSION

For all of these reasons, Defendant's motion should be denied. Alternatively, to the extent the Court finds that additional allegations are required, Plaintiffs request leave to amend the Amended Complaint and to submit affidavits in support of standing. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 501–502 (1975) ("[I]t is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing.").

Dated: November 22, 2024       Respectfully submitted,

*/s/ David Ludwig*

David Ludwig (Bar No. 425787)
Cortland C. Putbrese
DUNLAP BENNETT & LUDWIG PLLC
211 Church St. SE
Leesburg, VA 20175
Tel: (703) 777-7319
dludwig@dbllawyers.com

Cortland C. Putbrese (*pro hac vice*)
DUNLAP BENNETT & LUDWIG PLLC
6802 Paragon Place Ste. 410
Richmond, VA 23230
Tel: 804-977-2688
cputbrese@dbllawyers.com

William W. Flachsbart (*pro hac vice*)
Mark A. Magas (*pro hac vice*)
DUNLAP BENNETT & LUDWIG PLLC
333 N Michigan Ave. 27th Floor
Chicago, IL 60601
Tel: 312-551-9500
wflachsbart@dbllawyers.com
mmagas@dbllawyers.com

*Counsel for Plaintiffs William T. Quinn
and David Cross*

## <u>CERTIFICATE OF FONT AND POINT SELECTION</u>

I hereby certify, under Local Rule 7.1(D), that the foregoing Response was prepared in Times New Roman, 14-point font, which is one of the font and point selections approved in Local Rule 5.1.


Dated: November 22, 2024          */s/ David Ludwig*
_____

David Ludwig (Bar No. 425787)
DUNLAP BENNETT & LUDWIG PLLC
211 Church St. SE
Leesburg, VA 20175
Tel: (703) 777-7319
dludwig@dbllawyers.com

*Counsel for Plaintiffs William T. Quinn*
*and David Cross*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day caused to be served copies of this response upon counsel of record in this case by filing a copy using the Court's electronic CM/ECF filing system, which will automatically cause copies of the same to be delivered.


Dated: November 22, 2024          */s/ David Ludwig*
                                  David Ludwig (Bar No. 425787)
                                  DUNLAP BENNETT & LUDWIG PLLC
                                  211 Church St. SE
                                  Leesburg, VA 20175
                                  Tel: (703) 777-7319
                                  dludwig@dbllawyers.com

                                  *Counsel for Plaintiffs William T. Quinn
                                  and David Cross*