## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

WILLIAM T. QUINN and DAVID CROSS,

     Plaintiffs,

v.

BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia,

     Defendant.

Civil Action No.
1:24-cv-04364-SCJ

---

## PROPOSED INTERVENOR BLACK VOTERS MATTER FUND'S PROPOSED ANSWER AND DEFENSES TO PLAINTIFFS' AMENDED COMPLAINT

Proposed Intervenor Black Voters Matter Fund ("Intervenor" or "BVMF"), by and through its undersigned counsel of record and in connection with its contemporaneously filed Renewed Motion to Intervene, submits the following Answer to Plaintiffs' Amended Complaint for Declaratory Judgment and Injunction (ECF No. 45). Intervenor responds to the allegations in the Amended Complaint as follows:

### NATURE OF THE CASE

1.    This is a lawsuit to enforce laws that, among other things, restore Plaintiffs' confidence in Georgia's elections and protect the right to vote from dilution. Georgia's current voter rolls have thousands of voter registrations that are

**Exhibit 1 to BVMF's Renewed Motion to Intervene as Defendant**

apparently incorrect. That is because the voter in question either (i) permanently moved out of state and is no longer a citizen of Georgia, or (ii) permanently moved to a different county in Georgia from the county in which they are presently registered. Since filing the original complaint, Plaintiffs have confirmed that many of the voters Plaintiffs identified in the initial dataset sent to Defendant continue to improperly remain active on the state's voter rolls. This is so despite Defendant's claimed list maintenance efforts. Defendant has not provided any indication that the state will investigate these registrations or take action to confirm the voter addresses as required by law. The continuing presence of so many voters marked as active on Georgia's voter rolls, but who have said they have moved, is highly problematic. And it demonstrates that Defendant has not made a reasonable effort to maintain Georgia's voter rolls in accordance with the NVRA.

> **RESPONSE:** Paragraph 1 contains mere characterizations, legal contentions, and conclusions to which no response is required. Intervenor is without sufficient information or knowledge with which to form a belief as to the truth or falsity of the allegation that Defendant has provided no indication of intent to investigate the voter registrations referenced in Paragraph 1 and therefore denies the allegations. To the extent that a response is required to the remaining allegations in this paragraph, Intervenor denies the allegations.

2.     To be clear, Plaintiffs are not seeking to remove individuals from the voter rolls. Rather, Plaintiffs only seek to correct the registrations of voters who have moved by having them marked inactive, regardless of their race, gender, political affiliation, or any other potentially prejudicial attribute. Voters who are marked as inactive are not barred from voting, as they can still vote in an election.

**RESPONSE:** Intervenor denies the allegations in Paragraph 2.

3.     The requested relief not only serves to restore Plaintiffs' confidence in the state's elections and protect Georgia's voters from vote dilution, but also serves to protect the people listed in the anomalous registrations. For example, if a voter permanently moved out of state, and another individual uses that voter's information to cast an illegal ballot, this could result in the former Georgia resident being wrongfully accused of having cast the illegal vote. Properly maintaining the voter rolls would protect against such identity theft. Any voters who are active despite anomalies in their registrations can easily confirm their status, either by responding to the requests for confirmation or, if they fail to make this confirmation, by simply reactivating their voter status.

**RESPONSE:** Paragraph 3 contains mere characterizations, legal contentions, and conclusions to which no response is required. To the extent that a response is required, Intervenor denies the allegations.

## THE PARTIES

4.     Plaintiff William T. Quinn is a resident, taxpayer, and registered voter in Suwanee, Georgia.

**RESPONSE:** Intervenor is without sufficient information or knowledge with which to form a belief as to the truth or falsity of the allegations in Paragraph 4 and therefore denies the allegations.

5.     Plaintiff David Cross is a resident, taxpayer, and registered voter in Suwanee, Georgia.

**RESPONSE:** Intervenor is without sufficient information or knowledge with which to form a belief as to the truth or falsity of the allegations in Paragraph 5 and therefore denies the allegations.

6.     Defendant Brad Raffensperger is the Secretary of State of Georgia, with his office address located at 214 State Capitol, Atlanta, Georgia 30334.

**RESPONSE:** Admitted.

## JURISDICTION & VENUE

7.     This action arises under the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. §§ 20501, *et seq*. Plaintiffs have a private right of action as aggrieved persons under 52 U.S.C. § 20510. As described below, Plaintiffs provided notice to Defendant of Georgia's violations of the NVRA. Georgia has not corrected the violation within 20 days after receipt of this notice on September 4, 2024. This

Court has subject matter jurisdiction under 28 U.S.C. § 1331, which provides for federal question jurisdiction over cases arising under federal law and the Constitution of the United States.

> **RESPONSE:** Paragraph 7 contains mere characterizations, legal contentions, and conclusions to which no response is required. To the extent that a response is required, Intervenor denies the allegations.

8.     Defendant Brad Raffensperger is the Secretary of State of Georgia, and his office is located in this judicial district. A substantial part of the events or omissions giving rise to this action occurred in this judicial district. Accordingly, this Court has personal jurisdiction over Defendant, and venue is proper in this Court under 28 U.S.C. § 1391 and Local Rules 3.1(B)(1)(a) and 3.1(B)(3).

> **RESPONSE:** Intervenor admits that Brad Raffensperger is Georgia's Secretary of State, and that the office of the Secretary of State is located in this judicial district. The remaining allegations in Paragraph 8 contain mere characterizations, legal contentions, and conclusions to which no response is required. To the extent that a response is required to the remaining allegations in this paragraph, Intervenor denies the allegations.

## FACTUAL BACKGROUND

9.     To uphold the integrity of elections, to prevent voter fraud and voter dilution, and to protect our citizens' trust in the election process, the federal

government has enacted multiple laws requiring states to maintain their lists of voters and designate as inactive those registrations that are no longer active.

>**RESPONSE:** Paragraph 9 contains mere characterizations, legal contentions, and conclusions to which no response is required. To the extent that a response is required, Intervenor denies the allegations.

10.     This is particularly important in the context of absentee voting, where a person could potentially vote multiple times, or third parties could submit votes without the person's knowledge.

>**RESPONSE:** Intervenor denies the allegations in Paragraph 10.

11.     Section 8 of the NVRA, 52 U.S.C. § 20507(a)(4)(B), requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to a change of address.

>**RESPONSE:** Paragraph 11 purports to quote from a statute, which speaks for itself. All other assertions in the paragraph are legal conclusions to which no response is required. To the extent that a response is required, Intervenor denies the allegations.

12.     The NVRA does not require states to follow a specific program to maintain the accuracy of its voter lists. However, 52 U.S.C. § 20507(c)(1)(B) of the NVRA provides a safe harbor under which states "may meet the requirement of subsection (a)(4) by establishing a program" where:

(A) change-of-address information supplied by the Postal Service through its licensees is used to identify registrants whose addresses may have changed; and

(B) if it appears from information provided by the Postal Service that—

> (i) a registrant has moved to a different residence address in the same registrar's jurisdiction in which the registrant is currently registered, the registrar changes the registration records to show the new address and sends the registrant a notice of the change by forwardable mail and a postage prepaid pre-addressed return form by which the registrant may verify or correct the address information; or

> (ii) the registrant has moved to a different residence address not in the same registrar's jurisdiction, the registrar uses the notice procedure described in subsection (d)(2) to confirm the change of address.

**RESPONSE:** Paragraph 12 purports to quote from a statute, which speaks for itself. All other assertions in the paragraph are legal conclusions to which no response is required. To the extent that a response is required, Intervenor admits that the NVRA does not require a state to establish any "specific program to maintain the accuracy of its voter lists," and that states can satisfy the minimum requirement of the statute by establishing a program under the "safe harbor" provision referenced by Plaintiffs, but otherwise denies the allegations.

13.     The notice procedure in 52 U.S.C. § 20507(d)(2) allows states to require affirmation or confirmation of a voter's address before voting in an upcoming federal election. It further requires states to remove such voters from the list of eligible voters if they fail to respond to the notice and do not vote in the

following two general elections for federal office occurring after the date of the notice:

> (2) A notice is described in this paragraph if it is a postage prepaid and pre-addressed return card, sent by forwardable mail, on which the registrant may state his or her current address, together with a notice to the following effect:

>> (A) If the registrant did not change his or her residence, or changed residence but remained in the registrar's jurisdiction, the registrant should return the card not later than the time provided for mail registration under subsection (a)(1)(B). If the card is not returned, affirmation or confirmation of the registrant's address may be required before the registrant is permitted to vote in a Federal election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice, and if the registrant does not vote in an election during that period the registrant's name will be removed from the list of eligible voters.

>> (B) If the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered, information concerning how the registrant can continue to be eligible to vote.

**RESPONSE:** Paragraph 13 purports to quote from a statute, which speaks for itself. All other assertions in the paragraph are legal contentions to which no response is required. To the extent that a response is required, Intervenor admits that 52 U.S.C. § 20507(d)(2) contains the quoted language, but otherwise denies the allegations.

14.    Additionally, the Help America Vote Act ("HAVA") requires each state to implement "a single, uniform, official, centralized, interactive computerized

statewide voter registration list defined, maintained, and administered at the State level," in accordance with the NVRA. 52 U.S.C. § 21083(a).

> **RESPONSE:** Paragraph 14 purports to quote from a statute, which speaks for itself. All other assertions in the paragraph are legal contentions to which no response is required. To the extent that a response is required, Intervenor admits that the NVRA generally requires states to implement "a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level," but otherwise denies that the requirement applies to "each" state.

15.     In accordance with the NVRA, Georgia implemented voter list maintenance procedures, which are codified in O.C.G.A. § 21-2-210, *et seq*.

> **RESPONSE:** Paragraph 15 contains mere characterizations, legal contentions, and conclusions to which no response is required. To the extent that a response is required, Intervenor admits that Georgia has enacted procedures for list maintenance that are codified at O.C.G.A. § 21-2-210 *et seq.*, but otherwise denies the allegations.

16.     O.C.G.A. § 21-2-210 designates Defendant, the Secretary of State, as the "chief state election official to coordinate the responsibilities of this state under the [NVRA]."

**RESPONSE:** Paragraph 16 purports to quote from a statute, which speaks for itself. All other assertions in the paragraph are legal contentions to which no response is required. To the extent that a response is required, Intervenor admits that Secretary Raffensperger is the chief election official of Georgia with responsibilities under the NVRA.

17.     O.C.G.A. § 21-2-233 details the state's voter list maintenance procedures for changes of addresses.

**RESPONSE:** Paragraph 17 contains mere characterizations, legal contentions, and conclusions to which no response is required. To the extent that a response is required, Intervenor admits that O.C.G.A. § 21-2-233(a) sets forth a process for voter list maintenance related to changes of addresses, but otherwise denies the allegations.

18.     Specifically, § 21-2-233(a) provides that the Secretary of State may compare voter addresses to change of address information from the United States Postal Service ("USPS"):

> (a) The Secretary of State is authorized to cause at his or her discretion the official list of electors to be compared to the change of address information supplied by the United States Postal Service through its licensees periodically for the purpose of identifying those electors whose addresses have changed.

**RESPONSE:** Paragraph 18 purports to quote from a statute, which speaks for itself. All other assertions in the paragraph are legal contentions to which no response is required. To the extent that a response is required, Intervenor

admits that O.C.G.A. § 21-2-233(a) states that the "Secretary of State is authorized to cause at his or her discretion the official list of electors to be compared to the change of address information supplied by the United States Postal Service through its licensees periodically for the purpose of identifying those electors whose addresses have changed."

19.     Section 21-2-233(c) further provides that a voter who has moved to an address outside of the county or municipality in which the voter is presently registered must be transferred to the inactive list if the voter fails to respond to a notice within 30 days:

> (c) If it appears from the change of address information supplied by the licensees of the United States Postal Service that an elector whose name appears on the official list of electors has moved to a different address outside of the boundaries of the county or municipality in which the elector is presently registered, such elector shall be sent a confirmation notice as provided in Code Section 21-2-234 at the old address of the elector. The registrars may also send a confirmation notice to the elector's new address. If the elector confirms the change of address to an address outside of the State of Georgia, the elector's name shall be removed from the appropriate list of electors. If the elector confirms the change of address to an address outside of the boundaries of the county or municipality in which the elector is presently registered, but still within the State of Georgia, the elector's registration shall be transferred to the new county or municipality. The Secretary of State or the registrars shall forward the confirmation card to the registrars of the county in which the elector's new address is located and the registrars of the county of the new address shall update the voter registration list to reflect the change of address. If the elector responds to the notice and affirms that the elector has not moved, the elector shall remain on the list of electors at the elector's current address. If the elector fails to respond to the notice within 30 days after the date of the notice, the elector shall be transferred to the inactive list provided for in Code Section 21-2-235.

**RESPONSE:** Paragraph 19 purports to quote from a statute, which speaks for itself. All other assertions in the paragraph are legal contentions to which no response is required. To the extent that a response is required, Intervenor admits that Section 21-2-233(c) contains the quoted language, but otherwise denies the allegations.

20.     A list of voter registrations was purchased from the Georgia Secretary of State on Sunday, June 30, 2024.

**RESPONSE:** Intervenor is without sufficient information or knowledge with which to form a belief as to the truth or falsity of the allegations in Paragraph 20 and therefore denies the allegations.

21.     The names and addresses for each voter were submitted through the USPS Coding Accuracy Support System ("CASS®") and compared to information from the USPS National Change of Address database to determine whether they still resided at their address of registration.[1]

---

[1] The NVRA specifically allows for analysis based on the "change-of-address information supplied by the Postal Service through its licensees [to be] used to identify registrants whose addresses may have changed." 52 U.S.C. § 20507(c)(1).

**RESPONSE:** Footnote 1 purports to quote from a statute, which speaks for itself. All other assertions in the footnote are legal contentions to which no response is required. To the extent that a response is required, Intervenor denies the allegations.

**RESPONSE:** Intervenor is without sufficient information or knowledge with which to form a belief as to the truth or falsity of the allegations in Paragraph 21 and therefore denies the allegations.

22.     The voters were limited to those who affirmatively checked on the USPS Official Mail Forwarding Change of Address form that their move was permanent.

**RESPONSE:** Intervenor is without sufficient information or knowledge with which to form a belief as to the truth or falsity of the allegations in Paragraph 22 and therefore denies the allegations.

23.     The USPS CASS® evaluation is run against several progressively deeper-leveled databases, such as by state, city, five-digit zip code, a check on those three columns together, then a check against the street name with in them, then a street number range check, then a check against the actual street number in the "Zip_4" database, and then a check on the apartment unit at that specific building, then a check if that address is unoccupied, as well as other specialty checks.

**RESPONSE:** Intervenor is without sufficient information or knowledge with which to form a belief as to the truth or falsity of the allegations in Paragraph 23 and therefore denies the allegations.

24.     Notably, no voters were omitted from this process on the basis of race,

gender, age, jurisdiction, political affiliation, or any other potentially prejudicial attribute.

>**RESPONSE:** Intervenor is without sufficient information or knowledge with which to form a belief as to the truth or falsity of the allegations in Paragraph 24 and therefore denies the allegations.

25.     This process identified many voters who apparently have moved out of the jurisdiction in which they are registered but are nonetheless included on Georgia's active voter lists—despite it being a substantial length of time since they moved.

>**RESPONSE:** Intervenor is without sufficient information or knowledge with which to form a belief as to the truth or falsity of the allegations in Paragraph 25 and therefore denies the allegations.

26.     On September 3, 2024, Plaintiffs' counsel mailed a notice letter via Federal Express to Defendant pursuant to the NVRA, 52 U.S.C. § 20510(b). A copy of the notice letter is attached as Exhibit A to this Amended Complaint. The Georgia Secretary of State's office signed for delivery of this letter the next day on September 4, 2024. A picture showing signed proof of delivery is included as Exhibit B to this Amended Complaint.

**RESPONSE:** Intervenor is without sufficient information or knowledge with which to form a belief as to the truth or falsity of the allegations in Paragraph 26 and therefore denies the allegations.

27.     In their September 3, 2024 letter, Plaintiffs advised Defendant that Georgia was violating its duty under 52 U.S.C. § 20507(a)(4)(B) to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to a change of address. Plaintiffs detailed Georgia's obligations under O.C.G.A. § 21-2-233. Plaintiffs also advised that Georgia's failure to timely make inactive the registrations of certain voters who had permanently moved outside of the jurisdiction in which they are currently registered unreasonably left ineligible voters on the active voter list. Plaintiffs noted that they intended to file an action seeking declaratory and injunctive relief before this November's federal election unless these issues were corrected.

**RESPONSE:** Paragraph 27 purports to quote from and characterize Plaintiffs' Exhibit A (ECF No. 45-1), which speaks for itself. To the extent a response is required, Intervenor admits that Exhibit A contains the quoted language; cites statutory obligations under O.C.G.A. § 21-2-233; and states that "[i]f these issues are not resolved within 20 days, the Aggrieved Persons intend to file an action seeking declaratory and injunctive relief before this November's federal election." Intervenor otherwise denies the allegations.

28.    Plaintiffs enclosed with their September 3 notice letter a flash drive with folders containing spreadsheets listing all the identified ineligible voters for each county based on the screening process, described above. Spreadsheets listing all the identified ineligible voters for each county who moved out of the state were included on the flash drive in a folder titled "Ex. A – Moved out of State." Spreadsheets listing all the identified ineligible voters for each county who moved within the state but outside of the county or municipality in which they are registered were included on the flash drive in a folder titled "Ex. B – Moved Within State Out of County." The column headings indicated the voter's name, registration status, registration address, date of departure, and new address.

> **RESPONSE:** Intervenor is without sufficient information or knowledge with which to form a belief as to the truth or falsity of the allegations in Paragraph 28 and therefore denies the allegations.

29.    In the September 3 notice letter, Plaintiffs explained that all the voters listed in these spreadsheets indicated that they had permanently moved outside of the jurisdiction in which they are currently registered, but many of them are nonetheless included on Georgia's active voter lists—despite it being a substantial length of time since they moved. Plaintiffs further explained that Georgia's failure to correct these registrations violated the NVRA under 52 U.S.C. § 20507(A)(4)(B) and Georgia's state law under O.C.G.A. § 21-2-233.

**RESPONSE:** Paragraph 29 purports to characterize Plaintiffs' Exhibit A (ECF No. 45-1), which speaks for itself. To the extent a response is required, Intervenor admits that Exhibit A alleges that certain voters "have indicated that they permanently moved outside of the jurisdiction in which they are currently registered, but many of them are nonetheless included on the state's active voter list despite it being longer than six months (and in many cases substantially longer than six months) since they moved," but otherwise denies the allegations.

30.     In key part, Plaintiffs requested that Defendant send notices to these voters under O.C.G.A. § 21-2-233(c), and if any voter failed to respond to the notice within 30 days after the date of the notice, immediately transfer that voter to Georgia's inactive voter registration list.

**RESPONSE:** Paragraph 30 purports to characterize Plaintiffs' Exhibit A (ECF No. 45-1), which speaks for itself. To the extent a response is required, Plaintiffs admit that Exhibit A purports to request that the Secretary of State, "[f]or each ineligible voter identified in Exhibits A and B who is included on Georgia's active voter registration list, send notices to all of these voters under Ga. Code Ann. § 21-2-233(c), and if any voter fails to respond to the notice within 30 days after the date of the notice, immediately transfer that voter to

Georgia's inactive voter registration list (and do so prior to the November 2024 election)," but otherwise denies the allegations.

31.     Importantly, such relief would not harm any active voters. That is because an active voter associated with the identified registrations can simply respond to the notices from Defendant, and even those who fail to respond are not barred from voting. *See* O.C.G.A. § 21-2-235(c) (specifying ways in which a voter marked inactive can still vote).

**RESPONSE:** Intervenor denies the allegations in Paragraph 31.

32.     Plaintiffs' requested relief would partially protect former Georgia residents from having their identities stolen and used to vote illegally in their names. Moreover, this relief would protect Plaintiffs' and all Georgia voters' right to vote by safeguarding them from improper vote dilution. *E.g.*, *Reynolds v. Sims*, 377 U.S. 533, 555 (1964).

**RESPONSE:** Intervenor denies the allegations in Paragraph 32.

33.     Critically, in their September 3, 2024 letter to Defendant, Plaintiffs did not ask Defendant to remove any voter's registration from Georgia's voter lists.

**RESPONSE:** Intervenor denies the allegations in Paragraph 33.

34.     As the next election for federal office is within 120 days, 52 U.S.C. § 20510(b)(2) provides that a 20-day notice period began running from the date Plaintiffs put Defendant on notice.

**RESPONSE:** Paragraph 34 contains mere characterizations, legal contentions, and conclusions to which no response is required. To the extent that a response is required, Intervenor denies the allegations.

35.     Defendant, however, never responded to Plaintiffs' September 3, 2024 notice letter.

**RESPONSE:** Intervenor is without sufficient information or knowledge with which to form a belief as to the truth or falsity of the allegations in Paragraph 35 and therefore denies the allegations.

36.     On September 26, 2024, Plaintiffs filed their original complaint in this case, requesting relief before the general election in November. This relief was effectively denied when the Court denied Plaintiffs' request to expedite proceedings. (Dkt. 5.)

**RESPONSE:** Paragraph 36 contains mere characterizations, legal contentions, and conclusions to which no response is required. To the extent that a response is required, Intervenor admits that this Court denied Plaintiffs' requested relief associated with the 2024 election but otherwise denies the allegations.

37.     On October 21, 2024, Defendant filed a Motion to Dismiss the complaint. (Dkt. 30.) Defendant argued in part that O.C.G.A. § 21-2-233 "vests the

decision as to whether and when to perform a comparison of the voter rolls to the NCOA database with the Secretary and within his discretion."

> **RESPONSE:** Paragraph 37 purports to quote from the Secretary's Motion to Dismiss (ECF No. 30), which speaks for itself. To the extent a response is required, Intervenor admits that the Secretary filed a Motion Dismiss that contains the quoted language.

38.     In contrast to O.C.G.A. § 21-2-233, other states' statutory implementations of the NVRA require states to conduct periodic (not discretionary) list maintenance based on change of address data from the USPS. For example, Pennsylvania requires such a program to be conducted at least once every calendar year under 25 Pa.C.S. § 1901(b)(1)(i). For further example, Colorado requires such a program to be conducted monthly under Col. Rev. Stat. § 1-2-302.5.

> **RESPONSE:** Paragraph 38 contains mere characterizations, legal contentions, and conclusions to which no response is required. To the extent a response is required, Intervenor denies the allegations.

39.     Plaintiffs recently obtained new voter registration data from the State of Georgia on October 1, 2024. This data was submitted to the same rigorous procedures as the previously obtained data.

**RESPONSE:** Intervenor is without sufficient information or knowledge with which to form a belief as to the truth or falsity of the allegations in Paragraph 39 and therefore denies the allegations.

40. Notably, Plaintiffs discovered that numerous voters contained in the June 2024 data are still listed as active in the more recent October data—even though these voters had told the USPS that they had permanently moved. This is so despite Defendant's purported list maintenance efforts.

**RESPONSE:** Intervenor is without sufficient information or knowledge with which to form a belief as to the truth or falsity of the allegations in Paragraph 40 and therefore denies the allegations.

41. By way of example, for Cherokee County, the June 2024 data identified 2,029 voters who had permanently moved out of state. However, in the October 2024 data, 698 of those voters remain with "Active" status on the state's voter rolls—even though these voters advised the U.S. Postal Service that they had permanently moved and no longer reside at the old address contained on the voter rolls. Georgia failed to correct 34.1% of Cherokee County voters who moved out of state from the June data.

**RESPONSE:** Intervenor is without sufficient information or knowledge with which to form a belief as to the truth or falsity of the allegations in Paragraph 41 and therefore denies the allegations. Paragraph 41 also contains a chart of

unknown origin and Intervenor is without sufficient information or knowledge with which to form a belief as to the truth or falsity of the information reflected in the chart.

42.     By way of further example, for Forsyth County, the June data identified 1,722 voters who had permanently moved out of state. In the October data, 588 of those voters remain with "Active" status on the state's voter rolls—even though these voters advised the U.S. Postal Service that they had permanently moved and no longer reside at the old address contained on the voter rolls. Georgia failed to correct 34.4% of Forsyth County voters who moved out of state from the June data.

> **RESPONSE:** Intervenor is without sufficient information or knowledge with which to form a belief as to the truth or falsity of the allegations in Paragraph 42 and therefore denies the allegations. Paragraph 42 also contains a chart of unknown origin and Intervenor is without sufficient information or knowledge with which to form a belief as to the truth or falsity of the information reflected in the chart.

43.     Data for other counties show similar numbers, and in some counties, these numbers are particularly high (*i.e.*, roughly 3,358 in Fulton County).

**RESPONSE:** Intervenor is without sufficient information or knowledge with which to form a belief as to the truth or falsity of the allegations in Paragraph 43 and therefore denies the allegations.

44.     The continuing presence of so many voters marked as active on Georgia's voter rolls who apparently have moved—as shown in the Cherokee County and Forsyth County examples above—demonstrates that Defendant has not made a reasonable effort to maintain Georgia's voter rolls in accordance with the NVRA. Defendant's purported list maintenance efforts have failed to correct an unreasonably large number of voter registrations.

**RESPONSE:** Intervenor denies the allegations in Paragraph 44.

45.     Georgia's failure to correct these registrations is an ongoing, systemic violation of the NVRA and Georgia law.

**RESPONSE:** Intervenor denies the allegations in Paragraph 45.

46.     Georgia's improperly maintained voter rolls have undermined (and will continue to undermine) Plaintiffs' confidence and trust in the electoral process and also burdened Plaintiffs' right to vote. This disenfranchisement is current, ongoing, and not speculative, regardless of whether any vote dilution occurred or will occur. This constitutes an actionable injury in fact. *See, e.g.*, *Green v. Bell*, No. 3:21-cv-00493-RJC-DCK, 2023 U.S. Dist. LEXIS 45989, *9, 2023 WL 2572210 (W.D.N.C. Mar. 19, 2023) (holding that such harm constitutes an injury in fact);

*Judicial Watch, Inc. v. King*, 993 F. Supp. 2d 919, 924 (S.D. Ind. 2012) (same);

*Judicial Watch, Inc. v. Griswold*, No. 20-cv-02992-PAB-KMT, 2022 U.S. Dist.

LEXIS 153290, *5–6, 2022 WL 3681986 (D. Colo. Aug. 25, 2022) (same); *see also*

*Wis. Voter All. v. Millis*, __ F. Supp. 3d __, No. 23-C-1416, 2024 U.S. Dist. LEXIS

44025, *12 (E.D. Wis. Mar. 13, 2024) ("[V]oter disenfranchisement through dilution

caused by illegal votes might constitute the kind of harm required [to seek judicial

review.]").

> **RESPONSE:** Paragraph 46 contains mere characterizations, legal
>
> contentions, and conclusions to which no response is required. To the extent
>
> a response is required, Intervenor denies the allegations in Paragraph 46.

## COUNT I – GEORGIA'S FAILURE TO CORRECT REGISTRATIONS OF VOTERS WHO HAVE MOVED VIOLATES 52 U.S.C. § 20507(a)(4)(B)

47.     Plaintiffs incorporate each of the foregoing paragraphs as though fully

set forth herein.

> **RESPONSE:** Paragraph 47 is an incorporation of the preceding paragraphs,
>
> and no response is required. To the extent that a response is required,
>
> Intervenor incorporates its responses to Paragraphs 1–46.

48.     Georgia continues to include on the state's active voter list many voters

who have permanently moved outside of the jurisdiction in which they are currently

registered. As such, Georgia is violating 52 U.S.C. § 20507(A)(4)(B) by failing to

make a "reasonable effort" to maintain its voter lists. *See Voter Integrity Project NC,*

*Inc. v. Wake Cnty. Bd. of Elections*, 301 F. Supp. 3d 612, 620 (E.D.N.C. 2017)

(holding that "a reasonable inference can be drawn that [a county board of elections]

is not making a reasonable effort to conduct a voter list maintenance program in

accordance with the NVRA" where a plaintiff has made an allegation, "supported

by reliable data," that the county is failing to remove ineligible voters and the county

board failed to use available information to remove such ineligible voters).

> **RESPONSE:** Paragraph 48 contains mere characterizations, legal
> contentions, and conclusions to which no response is required. To the extent
> a response is required, Intervenor denies the allegations in Paragraph 48.

49.     Specifically, Defendant has violated 52 U.S.C. § 20507(a)(4) by

failing to (i) adequately compare the state's voter lists to the change of address

information supplied by the USPS, (ii) send notices to voters who apparently have

moved to a different jurisdiction, and (iii) mark inactive those voters who fail to

respond to the notice within 30 days. Defendant is failing to meet the provisions of

the safe harbor provision of the NVRA. *See* 52 U.S.C. § 20507(c)(1).

> **RESPONSE:** Paragraph 49 contains mere characterizations, legal
> contentions, and conclusions to which no response is required. To the extent
> a response is required, Intervenor denies the allegations in Paragraph 49.

50.     Under O.C.G.A. § 21-2-210, Georgia's violation of 52 U.S.C. §

20507(A)(4)(B) is ultimately the responsibility of Defendant. As the state's chief

election official, Defendant is required to coordinate the state's responsibilities under the NVRA, including Georgia's list maintenance procedures for changes of addresses under O.C.G.A. § 21-2-233. *See* O.C.G.A. § 21-2-210 (designating Defendant, the Secretary of State, as the "chief state election official to coordinate the responsibilities of this state under the [NVRA]").

**RESPONSE:** Paragraph 50 contains mere characterizations, legal contentions, and conclusions to which no response is required. To the extent a response is required, Intervenor denies the allegations.

51. Plaintiffs have been injured as a direct and proximate consequence of Georgia's failure to maintain accurate voter lists. Plaintiffs' confidence in the electoral process has been, is being, and will continue to be undermined. Additionally, Plaintiffs' right to vote has been, is being, and will continue to be burdened. Plaintiffs will continue to be injured unless this Court enjoins or mandates Defendant to investigate the data provided by Plaintiffs, direct county registrars to send notices under O.C.G.A. § 21-2-233(c) to the applicable voters who permanently moved outside of the jurisdiction in which they are currently registered, and if any voter fails to respond to the notice within 30 days after the date of the notice, promptly transfer that voter to Georgia's inactive voter registration list.

**RESPONSE:** Paragraph 51 contains mere characterizations, legal contentions, and conclusions to which no response is required. To the extent a response is required, Intervenor denies the allegations in Paragraph 51.

52. Defendant received notice under 52 U.S.C. § 20510(b) of this ongoing and systemic violation of the NVRA more than 20 days before the filing of the original complaint.

**RESPONSE:** Intervenor is without sufficient information or knowledge with which to form a belief as to the truth or falsity of the allegations in Paragraph 52 and therefore denies the allegations.

## COUNT II -- O.C.G.A. § 21-2-233 DOES NOT SATISFY DEFENDANT'S LIST MAINTENANCE OBLIGATIONS UNDER 52 U.S.C. § 20507(a)(4)(B)

53. Plaintiffs incorporate each of the foregoing paragraphs as though fully set forth herein.

**RESPONSE:** Paragraph 53 is an incorporation of the preceding paragraphs, and no response is required. To the extent that a response is required, Intervenor incorporates its responses to Paragraphs 1–52.

54. The NVRA requires Georgia to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(a)(4).

**RESPONSE:** Paragraph 54 purports to quote from a statute, which speaks for itself. All other assertions in the paragraph are legal conclusions to which no

response is required. To the extent that a response is required, Intervenor admits that the NVRA requires Georgia to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters."

55.     "A State may meet the requirement of subsection (a)(4) by establishing a program under which—(A) change-of-address information supplied by the Postal Service through its licensees is used to identify registrants whose addresses may have changed . . ." and sending notices consistent with Plaintiff's request in Count I. *Id.* § 20507(c)(1).

**RESPONSE:** Paragraph 55 purports to quote from and characterize a statute, which speaks for itself. To the extent a response is required, Intervenor denies the allegations.

56.     Importantly, the NVRA requirements in this regard are mandatory: "Each State *shall* . . . conduct a general program that makes a reasonable effort to remove the names of ineligible voters . . . .". *Id.* § 20507(a)(4)) (emphasis added).

**RESPONSE:** Paragraph 56 purports to quote from a statute, which speaks for itself, and contains mere characterizations, legal contentions, and conclusions to which no response is required. To the extent a response is required, Intervenor denies the allegations.

57.     Defendant has taken the position that he is not required to do that, but merely may do so at his own discretion. *See* Dkt. No. 30-1 ("O.C.G.A. § 21-2-233 vests the decision as to whether and when to perform a comparison of the voter rolls to the NCOA database with the Secretary and within his discretion").

**RESPONSE:** Intervenor denies the allegations in Paragraph 57.

58.     Defendant's interpretation and implementation of O.C.G.A. § 21-2-233 does not comply with the NVRA.

**RESPONSE:** Intervenor denies the allegations in Paragraph 58.

59.     Specifically, this claim of absolute discretion by Defendant on "whether and when to perform a comparison of the voter rolls . . . within [Defendant's] discretion" does not satisfy the safe harbor provision of the NVRA, and it fails to meet the "reasonable effort" standard under the NVRA.

> **RESPONSE:** Paragraph 59 contains mere characterizations, legal contentions, and conclusions to which no response is required. To the extent a response is required, Intervenor denies the allegations.

60.     Under the NVRA, the Defendant is not afforded absolute discretion on "whether and when to perform a comparison of voter rolls." Such unfettered discretion would effectively allow Defendant to take no action with respect to voter list maintenance. But that is not the law. Rather, the NVRA clearly provides that

"[e]ach State *shall* . . . conduct a general program that makes a reasonable effort to remove the names of ineligible voters . . . .". *Id.* § 20507(a)(4)) (emphasis added)

> **RESPONSE:** Paragraph 60 contains mere characterizations, legal contentions, and conclusions to which no response is required. To the extent a response is required, Intervenor denies the allegations.

61. Alternatively, if Defendant's aforementioned interpretation of O.C.G.A. § 21-2-233 is correct, then this Georgia statute itself, as it is written, does not satisfy the requirements of the NVRA.

> **RESPONSE:** Paragraph 61 contains mere characterizations, legal contentions, and conclusions to which no response is required. To the extent a response is required, Intervenor denies the allegations.

62. For these reasons, an actual controversy exists, and Plaintiffs have an interest in the resolution of this controversy.

> **RESPONSE:** Intervenor denies the allegations in Paragraph 62.

63. An adjudication of this matter would be useful because it would help the legislature redraft O.C.G.A. § 21-2-233 to comply with the requirements of the NVRA, help Defendant better understand his responsibilities and that he does not have absolute discretion under the NVRA, and restore Plaintiffs' faith in the election system.

> **RESPONSE:** Intervenor denies the allegations in Paragraph 63.

## PRAYER FOR RELIEF

The remaining Paragraphs of the Complaint consist of Plaintiffs' request for relief, to which no response is required. To the extent that a response is required, Intervenor denies that Plaintiffs are entitled to any relief.

## AFFIRMATIVE DEFENSES

Intervenor asserts the following affirmative defenses without accepting any burdens regarding them.

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs lack Article III standing.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs failed to adequately comply with the National Voter Registration Act's notice requirement. *See* 52 U.S.C. § 20510(b).

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' allegations fail to state ultimate facts sufficient to constitute a claim upon which relief could be granted.

### FOURTH AFFIRMATIVE DEFENSE

The facts and theories alleged in the Complaint fail to demonstrate entitlement to the equitable relief that Plaintiffs demand.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' allegations form a "shotgun pleading" barred by Federal Rule of Civil Procedure 8, requiring denial of relief.

Intervenor reserves the right to assert any further defenses that may become evident during the pendency of this matter.

## INTERVENOR'S REQUEST FOR RELIEF

Having answered Plaintiffs' Complaint, Intervenor requests that this Court:

1. Deny Plaintiffs are entitled to any relief;

2. Dismiss Plaintiffs' Amended Complaint with prejudice;

3. Award Intervenor costs and attorneys' fees incurred defending against Plaintiffs' claims; and

4. Grant such other and further relief as this Court deems just and proper.

Dated: December 9, 2024              Respectfully submitted,

**/s/ Adam M. Sparks**
Adam M. Sparks
Ga. Bar No. 341578
Anré D. Washington
Ga. Bar No. 351623
**KREVOLIN & HORST, LLC**
1201 W. Peachtree St., NW
One Atlantic Center, Suite 3500
Atlanta, GA 30309
Telephone: (404) 888-9700
Facsimile: (404) 888-9577

Email: sparks@khlawfirm.com
Email: washington@khlawfirm.com

Uzoma N. Nkwonta**
Marcos Mocine-McQueen**
Renata M. O'Donnell*
James J. Pinchak*
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue, Suite 400
Washington, D.C. 20001
(202) 968-4490
unkwonta@elias.law
mmcqueen@elias.law
rodonnell@elias.law
jpinchak@elias.law


Tyler L. Bishop**
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
(202) 985-0628
tbishop@elias.law

*Counsel for Proposed Intervenor-
Defendant Black Voters Matter Fund*

*\*Pro Hac Vice Application Forthcoming*
*\*\*Admitted Pro Hac Vice*