## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

WILLIAM T. QUINN AND
DAVID CROSS,

        Plaintiffs,

    v.

BRAD RAFFENSPERGER, in his official
capacity as Secretary of State of Georgia,

        Defendant.

C.A. No. 1:24-cv-04364-SCJ

## PLAINTIFFS' RESPONSE TO BLACK VOTERS
## MATTER FUND'S RENEWED MOTION TO INTERVENE

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

FACTS ..................................................................................................................3

ARGUMENT .........................................................................................................5

    I.    Movant Has Not Shown It Has Grounds to Intervene as a Matter of Right ..............................................................................................................5

          A.    Movant Lacks a Direct, Substantial, and Legally Protectable Interest Related to the Subject of This Action ............................6

          B.    Ordering Defendant to Comply with Existing Law Does Not Impair or Impede Movant's Ability to Protect Its Interests......19

          C.    The Present Defendant Already Adequately Represents Movants' Interests....................................................................20

    II.    Movant Has Failed to Demonstrate It is Entitled to Permissive Intervention .........................................................................................24

CONCLUSION ....................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Arcia v. Sec'y of Fla.*,
   772 F.3d 1335 (11th Cir. 2014) ..........................................................17

*Athens Lumber Co, Inc. v. Fed. Election Comm'n*,
   690 F.2d 1364 (11th Cir. 1982) ............................................... 7, 12, 25

*Bellitto v. Snipes*,
   No. 16-61474, 2016 U.S. Dist. LEXIS 128840 (S.D. Fla. Sept. 20, 2016) .. 13, 22

*Berger v. N.C. State Conf. of the NAACP*,
   597 U.S. 179 (2022) .................................................................... 22, 23

*Black Voters Matter Fund v. Raffensperger*,
   508 F. Supp. 3d 1283 (N.D. Ga. 2020) ..............................................16

*Burke v. Ocwen Fin. Corp.*,
   833 F. App'x 288 (11th Cir. 2020) .................................... 6, 11, 19, 25

*Bush v. Viterna*,
   740 F.2d 350 (5th Cir. 1984) ...........................................................25

*Chiles v. Thornburgh*,
   865 F.2d 1197 (11th Cir. 1989) .........................................................6

*Clark v. Putnam Cnty.*,
   168 F.3d 458 (11th Cir. 1999) ...........................................................7

*Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.*,
   51 F. Supp. 972 (D.Mass.1943) ........................................................25

*Daunt v. Benson*,
   No. 1:20-cv-522 (W.D. Mich. Sept. 28, 2020) ...................................13

*Def. Distributed v. United States Dep't of State*,
   No. 1:15-CV-372-RP, 2018 U.S. Dist. LEXIS 126388 (W.D. Tex. July 27, 2018)
   ..........................................................................................................15

*Fair Fight Action, Inc. v. Raffensperger*,
   413 F. Supp. 3d 1251 (N.D. Ga. 2019) ..............................................18

*Federal Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*,
   983 F.2d 211 (11th Cir. 1993) ...............................................................20

*Int'l. Tank Terminals, Ltd. v. M/V Acadia Forest*,
   579 F.2d 964 (5th Cir. 1978).................................................................20

*Jones v. Caddo Parish Sch. Bd.*,
   704 F.2d 206 (5th Cir. 1983).......................................................... 20, 22

*Jud. Watch, Inc. v. Illinois State Bd. of Elections*,
   No. 24 C 1867, 2024 U.S. Dist. LEXIS 126862 (N.D. Ill. July 18, 2024) ... 13, 14

*New Ga. Project v. Raffensperger*,
   484 F. Supp. 3d 1265 (N.D. Ga. 2020) ......................................... 17, 18

*Pub. Int. Legal Found. v. Benson*,
   No. 1:21-cv-929, 2022 U.S. Dist. LEXIS 246223 (W.D. Mich. Aug. 25, 2022) 11

*Pub. Int. Legal Found., Inc. v. Winfrey*,
   463 F. Supp. 3d 795 (E.D. Mich. 2020)......................................... 13, 14

*Sellers v. United States*,
   709 F.2d 1469 (11th Cir. 1983) .............................................................24

*South Carolina v. North Carolina*,
   558 U.S. 256 (2010) ...............................................................................25

*Stansell v. Revolutionary Armed Forces of Colom.*,
   45 F.4th 1340 (11th Cir. 2022) ...............................................................5

*Sw. Ctr. for Biological Diversity v. Berg*,
   268 F.3d 810 (9th Cir. 2001)...................................................................7

*Town of Chester v. Laroe Estates, Inc.*,
   581 U.S. 433 (2017) .................................................................................7

*Trbovich v. UMW*,
   404 U.S. 528 (1972) ...............................................................................22

*United States v. Coffee Cnty. Bd. of Educ.*,
   134 F.R.D. 304 (S.D. Ga. 1990) ................................................... 20, 22

*United States v. United States Steel Corp.*,
  548 F.2d 1232 (5th Cir. 1977) ...........................................................................20

*Voter Integrity Proj. NC, Inc. v. Wake Cnty. Bd. of Elections*,
  No. 5:16-cv-683 (E.D.N.C. Dec. 1, 2016) ........................................................13

## **Statutes**

52 U.S.C. § 20507 ...................................................................................... 3, 9, 10, 14

O.C.G.A § 21-2-210.............................................................................................3

O.C.G.A § 21-2-233................................................................................... 3, 9, 10

O.C.G.A § 21-2-235................................................................................... 9, 11

O.C.G.A. § 21-2-234..........................................................................................24

## **Rules**

Fed. R. Civ. P. 24 ........................................................................................ 5, 6, 7, 25

## **Other Authorities**

*Frequently Asked Questions on Voter Status*, ACLU GA.,
  https://www.acluga.org/en/frequently-asked-questions-voter-status ..................10

Press Release, *DeKalb Voter Registration and Elections Urges Residents to Verify
  Voter Status and Plan for Upcoming Election*, DEKALB. CO. (Sept. 5, 2024),
  https://www.dekalbcountyga.gov/news/dekalb-voter-registration-and-elections-
  urges-residents-verify-voter-status-and-plan-upcoming......................................11

**INTRODUCTION**

Plaintiffs William T. Quinn and David Cross ("Plaintiffs") brought this lawsuit to ensure that Georgia Secretary of State Brad Raffensperger ("Defendant") performs his duties under established election laws. Specifically, Plaintiffs seek to have Defendant direct county registrars to mail notices to certain people to confirm whether they still live at their address of record. And if not, the registrars should designate those persons as "inactive" voters, given they have permanently left that jurisdiction. (Dkt. No. 45 (hereinafter "Amend. Compl.") ¶ *prayer for relief*).

This lawsuit does not seek to "remove" anyone from the voter rolls. Nor will it place any burdens on eligible voters. As discussed below, preventing or remedying one's classification as "inactive" is as easy as voting.

Notably, Plaintiffs are not cherry-picking or targeting the voter rolls of any particular jurisdiction. Rather, the relief sought would apply even-handedly across the entire state. Thus, the relief sought is entirely color-blind and treats attributes like race, gender, and religious or political affiliation in a neutral fashion. Plaintiffs merely seek to have Defendant follow and apply Georgia's existing election laws in a neutral and non-discriminatory fashion throughout the state.

Movant's motion fails because Movant bases its request for intervention on the mistaken belief that Plaintiffs are supposedly seeking a "mass purge" of legitimate voters, including members of Movant's organization. (Dkt. No. 54-1

(hereinafter "Movants' Br.") at 2). But this is not so. Again, if the State of Georgia changes a voter's registration status to "inactive" (and that would only happen if the voter fails to respond to the state's notice), that does not mean such voter is removed from the voting rolls. This process adheres to the "procedural safeguards" of the National Voter Registration Act ("NVRA"), which Movant concedes "minimize[s] risks of erroneous deregistration" and disenfranchisement. (Movant's Br. at 5).

Perhaps recognizing this fatal flaw, Movant pivots by then arguing that Defendant somehow does not adequately represent Movant's interests. This too makes no sense. The elected Secretary of the State of Georgia represents all citizens of this state, including Movant's members. And Movant has no legitimate interest that is not already amply represented by Defendant. Movant resorts to a strained interpretation of Plaintiffs' requested relief and points to other irrelevant list maintenance efforts to support its argument that Movant's interests are not adequately represented. But such an improbable, highly speculative hypothetical only confirms that intervention is improper here.

In the end, Movant's intervention would unnecessarily complicate this straight-forward case, result in increased motion practice, thereby burdening the Court, escalate the parties' costs, and prolong the relief requested. Consequently, this Court should deny Movant's request to intervene, and instead, permit Movant to file an *amicus* brief, to which Plaintiffs do not object.

## FACTS

**A.    Federal and State Law Requires Defendant to Maintain Accurate Voter Rolls**

This is a simple case that merely seeks to enforce the election laws that are already on the books. The federal government has enacted multiple statutes that require states to maintain their lists of voters and designate as inactive those registrations which are no longer active. *See* NVRA, 52 U.S.C. § 20507(a)(4)(B). In accordance with the NVRA, Georgia has enacted voter list maintenance laws, which are codified in O.C.G.A § 21-2-210, *et seq.*

O.C.G.A § 21-2-233 details the state's voter list maintenance procedures that apply when voters have moved and changed their address. Specifically, § 21-2-233(a) provides that the Secretary of State may compare the state's voter rolls to the United States Postal Service's ("USPS") change-of-address information to identify voters whose addresses have changed. Section 21-2-233(c) further provides that a voter who has moved to an address outside of the county or municipality in which the voter is presently registered shall be mailed a confirmation notice. If the voter fails to respond to that notice within 30 days, then the voter's registration status is corrected so that that voter is designated as "inactive." Importantly, that voter is not removed from the rolls and would not suffer any harm, as "even those who fail to respond are not barred from voting." (Amend. Compl. ¶ 31) (citing O.C.G.A. § 21-2-235(c), which specifies how a voter marked inactive can still easily vote).

**B.      Plaintiffs Discover the Voter Rolls Are Inaccurate and Notify Defendant of this Fact, but Defendant Ignores Plaintiffs**

On June 30, 2024, a voter registration list was purchased from the Georgia Secretary of State. (Amend. Compl. ¶ 20). After analyzing this data, Plaintiffs discovered that the rolls contained voters who were designated as "active" at a particular address in Georgia, but who had permanently moved out of the state—or who had permanently moved within the state but outside of the jurisdiction in which they were registered. (*Id*. ¶¶ 21–25). In other words, these voters no longer resided at the address of record contained in the voter rolls.

On September 3, 2024, Plaintiffs presented their findings in this regard to Defendant and reminded Defendant of its obligation to rectify these anomalies under the NVRA and Georgia law. Specifically, in their September 3 letter, Plaintiffs requested that Defendant send the statutorily-required notices to these identified voters and, if any voter failed to respond to this notice, correct that voter registration status by noting the voter is "inactive." (*Id*. ¶¶ 26–34). Defendant never responded to Plaintiffs. (*Id*. ¶ 35). Plaintiffs thus filed the instant suit. (*Id.* ¶ 35).

**C.      The Procedural Posture of this Action**

In October 2024, a number of parties, including Black Voters Matter Fund, filed motions to intervene. (Dkts. 8, 10, 12). On October 21, 2024, Defendant moved to dismiss the complaint. (Dkt. No. 30). On October 25, 2024, Plaintiffs filed an Amended Complaint. (Dkt. No. 45). The Court subsequently denied as moot

Defendant's motion to dismiss and all pending motions to intervene in light of Plaintiffs' Amended Complaint. (Dkt. No. 47).

On November 8, 2024, Defendant moved to dismiss Plaintiffs' Amended Complaint in its entirety. (Dkt. No. 48). That motion is now fully briefed.

On December 9, 2024, Movant filed a Renewed Motion to Intervene (Dkt. No. 54), to which Plaintiffs now respond. Like Defendant, Movant seeks to have Plaintiffs' suit dismissed. To date, no other party who previously sought to intervene (before the Court rendered their motion as moot) has sought to intervene again.

## ARGUMENT

## I. Movant Has Not Shown It Has Grounds to Intervene as a Matter of Right

This Court should deny Movant's attempt to intervene as a matter of right. Absent an unconditional statutory right, a party may only intervene as a matter of right under Rule 24(a)(2) if all four of the following requirements are met: (1) the motion must be timely, (2) the party must "claim[] an interest relating to the . . . subject of the action," (3) the party must be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," and (4) no "existing parties adequately represent that interest." *Stansell v. Revolutionary Armed Forces of Colom.*, 45 F.4th 1340, 1362 (11th Cir. 2022).

Notably, a party seeking to intervene (like Movant) carries the burden of proof of establishing all four requirements. *See Burke v. Ocwen Fin. Corp.*, 833 F. App'x

288, 291 (11th Cir. 2020) (describing that "intervenors . . . bear the burden of proof to establish all four bases for intervention as a matter of right").

If even one requirement is missing, the court should deny intervention. *See Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (requiring the movant to "establish[] each of the four requirements" to allow intervention by right).

Here, Movant has not and cannot satisfy three of the four requirements necessary for intervention under Rule 24(a)(2).[1] First, Movant lacks a legitimate interest in the subject of this action. Second, Movant is not impaired or impeded in its ability to protect what interest, if any, it has. And third, Defendant adequately represents Movant's interests to the extent Movant has any. Consequently, Movant is not entitled to intervene as a matter of right.

### A. Movant Lacks a Direct, Substantial, and Legally Protectable Interest Related to the Subject of This Action

Movant cannot intervene here because it has no substantial interest in the subject of this lawsuit. The Eleventh Circuit has consistently held that an intervenor must be a "real party in interest" in a matter and their "intervention must be supported by a 'direct, substantial, legally protectible interest in the proceeding.'" *Chiles*, 865 F.2d at 1213-1214 (citing *Athens Lumber Co, Inc. v. Fed. Election*

---

[1] Movant also does not claim to have an unconditional right to intervene by federal statute.

*Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982)). In other words, an intervenor must "be substantially affected in a practical sense by the determination made in an action." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (quoting Fed. R. Civ. P. 24 advisory committee's notes).

Further, the intervenor must allege a particular interest and not a generalized grievance common to other organizations or persons. *See Athens Lumber*, 690 F.2d at 1366; *Clark v. Putnam Cnty.*, 168 F.3d 458, 463 (11th Cir. 1999) ("A lack of Article III standing could suggest that the [intervenor-defendant] also lacks the particularized interest that an intervener must have in the litigation."); *see also Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) ("[A]n intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests.").

Here, Movant claims to have (1) an interest in protecting its members' voting rights, and (2) an organizational interest under a diversion of resources theory. (Movant's Br. at 13-15). However, neither of these purported interests is in any way related to Plaintiffs' requested relief.

### 1. Movant Has Not Shown a Particularized Interest on Behalf of Its Individual Members

Movant argues that it has a substantial interest in protecting its members' voting rights. According to Movant, many of its members are registered voters who

are likely to be "wrongfully identified for removal" due to Plaintiffs' requested relief (Movant's Br. at 13). This argument fails for multiple reasons.

First, contrary to Movant's assertions, Plaintiffs' requested relief would <u>not</u> result in the removal of persons from the voter rolls. Nor would it impair any of Movant's members' right to vote. Second, Movant merely alleges a generalized grievance and identifies no particularized harm, and thus, Movant has not carried its burden of proving it is entitled to intervention as a matter of right. And on this latter point, Movant relies on non-binding and inapplicable law.

a. **Plaintiffs' Requested Relief Would Not Impair Movant's Members' Voting Rights**

Movant's first argument—that some of its members are registered to vote and their voting rights would be impaired—is premised on a fundamental misunderstanding of the relief Plaintiffs seek. Movant claims Plaintiffs' requested relief would involve "removing" or "purging" voters from Georgia's active voter list. (*See* Movant's Br. at 2-4, 9-10, 14-15). Movant also claims this relief would disenfranchise its members. (*Id.* at 14). But neither of those claims is true.

Plaintiffs' requested relief would not cause any voters to be removed outright from Georgia's voting rolls. Rather, Plaintiffs are merely asking that the State send notices to verify voter addresses, as authorized and required by both federal and Georgia law. If a voter has moved and does not respond to the notice sent to that voter's old address, then that voter would simply be designated as "inactive" under

O.C.G.A § 21-2-233(c). That voter would not be "removed" from the rolls, as Movant tries to claim. In this regard, the Amended Complaint explicitly states:

> To be clear, Plaintiffs are not seeking to remove individuals from the voter rolls. Rather, Plaintiffs only seek to correct the registrations of voters who have moved by having them marked inactive, regardless of their race, gender, political affiliation, or any other potentially prejudicial attribute. Voters who are marked as inactive are not barred from voting, as they can still vote in an election.

(Amend. Compl. ¶ 2).

There is a significant difference between having a voter marked "inactive" versus having that person removed from the voter rolls entirely. As described in the NVRA under 52 U.S.C § 20507(d)(1), the wholesale removal of a voter from the rolls due to a change of address may only occur after an additional condition is met (*i.e.*, if the voter does not make contact with the state by the date of the second general election for federal office occurring after the voter is placed on the inactive list, as specified in O.C.G.A § 21-2-235). But again, Plaintiffs are not seeking the wholesale removal of voters from the rolls here.

Plaintiffs' requested relief would likewise not disenfranchise any voters. Far from harming voters, the U.S. Congress and Georgia Legislature expressly authorized, required, and sanctioned the aforementioned notice process for confirming voter residency, correcting irregularities, and ensuring voter rolls are

accurate. *See* O.C.G.A § 21-2-233(c); 52 U.S.C. § 20507(d)(2).[2] Importantly,

Movant even concedes this fact, admitting that the sending of notices and marking

voters as "inactive" prior to removal are "procedural safeguards" that "minimize

risks of erroneous deregistration" and disenfranchisement. (Movant's Br. at 5).

Additionally, the ACLU, an organization long known for protecting voters,

confirms this fact on its website: "Voters labeled as 'inactive' retain the same rights

as active voters. They can still vote. Any participation in elections will restore their

voting status to 'active.'" *Frequently Asked Questions on Voter Status*, ACLU GA.,

https://www.acluga.org/en/frequently-asked-questions-voter-status (last accessed

Oct. 16, 2024).

In fact, the DeKalb County press release that Movant relies on actually

supports Plaintiffs' position here. (Movant's Br. at 10, n.2). That press release

explicitly states that "'inactive' status does not mean [voters] are ineligible to vote

in this election." Press Release, *DeKalb Voter Registration and Elections Urges*

---

[2] Although Movant faults the reliability of change of address data from the United
States Postal Service, (Movant's Br. at 13-14), this Court held in *Black Voters Matter
Fund v. Raffensperger* that Movant failed to meet its burden of showing a likelihood
of success that Defendant Raffensperger cancelled voter registrations in error based
on this data. 508 F. Supp. 3d at 1298. Plaintiffs reasonably rely on this same data
source in identifying voters who appear to have moved outside the jurisdiction in
which they are currently registered. (Amend. Compl. ¶¶ 20-25). Plaintiffs have also
now obtained new voter registration data confirming that a substantial number of
voters from Plaintiffs' original dataset remain as active on Georgia's voting lists
"despite Defendant's purported list maintenance efforts." (*Id.* at ¶¶ 39-45).

*Residents to Verify Voter Status and Plan for Upcoming Election*, DEKALB. CO. (Sept. 5, 2024), https://www.dekalbcountyga.gov/news/dekalb-voter-registration-and-elections-urges-residents-verify-voter-status-and-plan-upcoming (last accessed Oct. 22, 2024). According to this press release, voters in DeKalb County "can return to an active voter status by visiting the Secretary of State's My Voter Page, contacting DeKalb VRE directly . . . or casting a ballot in the upcoming election." *Id.; see also* O.C.G.A § 21-2-235 (providing three different ways that "[a]n elector whose name is on the inactive list of electors may vote," including when the elector has changed residency). For these reasons, Movant's claim that Plaintiffs seek to disenfranchise voters rings hollow.

In a similar vein, Movant's motion fails because Movant's claim of potential voter disenfranchisement is entirely speculative. *See Burke*, 833 F. App'x at 292 (noting that interests "cannot be speculative"); *Pub. Int. Legal Found. v. Benson*, No. 1:21-cv-929, 2022 U.S. Dist. LEXIS 246223, at *32 (W.D. Mich. Aug. 25, 2022) (rejecting "increased risk of future disenfranchisement" as a sufficient interest and noting "interests cannot be speculative").

Here, Movant improperly assumes the following parade of horribles will supposedly result, thereby leading to the disenfranchisement of its members: (i) that the State of Georgia will incorrectly send Movant's members notices when those members had never moved or changed address, (ii) that Movant's members will fail

to respond to these notices, and (iii) that even if those members fail to respond to such notices and are designated as "inactive," those members could not and would not otherwise be able to correct their voter registration. But assuming this Court grants Plaintiffs' requested relief, there is absolutely no evidence that such an extremely far-fetched and hypothetical scenario leading to voter disenfranchisement would occur. Consequently, Movant's claimed interest is far too speculative and removed from Plaintiffs' requested relief to justify intervention.

### b. Movant Alleges Only Generalized Grievances

Movant's claim of hypothetical voter disenfranchisement also does not warrant intervention. That is because it is nothing more than a generalized grievance that is insufficient to support intervention.

In *Athens Lumber*, a proposed intervenor claimed it had an interest in that case because its organizational resources would be stretched too thin and it would be "financially overwhelmed in federal elections" if FECA restrictions were lifted. 690 F.2d at 1366. The Eleventh Circuit affirmed that this was not a sufficient interest because that interest "is shared with all unions and citizens." *Id.*

Here, Movant's alleged interest is likewise based on the same type of improper generalized harm. Movant claims that because many of its members are registered voters and plan to vote in future elections, the disenfranchisement of some citizens may also affect their members. (Movant's Br. at 13-14). But critically,

Movant admits that Plaintiffs' requested relief applies to all "Georgia voters" in general. (*Id.* at 14). Thus, Movant has not alleged any particularized harm or differentiated its interest from that of any other citizens or organizations in general. This is exactly the type of generalized grievance that the Eleventh Circuit has found is insufficient to support intervention.

### c. Movant Relies on Inapplicable Law

Movant relies upon the following five cases, all of which are distinguishable and none of which apply to the instant lawsuit—*Bellitto v. Snipes*, No. 16-61474, 2016 U.S. Dist. LEXIS 128840 (S.D. Fla. Sept. 20, 2016) (unpublished), *Jud. Watch, Inc. v. Illinois State Bd. of Elections*, No. 24 C 1867, 2024 U.S. Dist. LEXIS 126862 (N.D. Ill. July 18, 2024) (unpublished); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795 (E.D. Mich. 2020); Order, *Daunt v. Benson*, No. 1:20-cv-522 (W.D. Mich. Sept. 28, 2020), ECF No. 30 (unpublished); and Order, *Voter Integrity Proj. NC, Inc. v. Wake Cnty. Bd. of Elections*, No. 5:16-cv-683 (E.D.N.C. Dec. 1, 2016), ECF No. 26 (unpublished).

- In *Bellitto v. Snipes*, an unpublished non-binding case from Florida, the plaintiffs and the defendant did not oppose the motion to intervene. 2016 U.S. Dist. LEXIS 128840 at *1–2. But here, the motion is opposed.

- In *Jud. Watch, Inc. v. Illinois State Bd. of Elections*, another unpublished non-binding case from Illinois, the plaintiffs were seeking the outright removal of voters in accordance with 52 U.S.C. § 20507(d)(1). No. 24 C 1867, 2024 U.S. Dist. LEXIS 126862, at *2. But here, Plaintiffs do not seek to have any voter registrations removed outright. Rather, as discussed, Plaintiffs merely request that the State correct certain voter registrations to accurately reflect their "inactive" status.

- *Pub. Int. Legal Found., Inc. v. Winfrey* and *Daunt v. Benson*, two non-binding cases from Michigan, and *Voter Integrity Proj. NC, Inc. v. Wake Cnty. Bd. of Elections*, a case from North Carolina, are likewise distinguishable. While the courts granted leave to intervene on a permissive basis in those cases, the courts explicitly stated that they did not consider intervention as a matter of right. *Winfrey*, 463 F. Supp. 3d at 799; Order, *Daunt*, 1:20-cv-522, (W.D. Mich. Sept. 28, 2020), ECF No. 30 at 2; *Voter Integrity Proj. NC*, No. 5:16-cv-683 (E.D.N.C. Dec. 1, 2016), ECF No. 26 at 5. As explained below, permissive intervention is not appropriate here either.

In short, Movant's reliance on inapposite case law from other jurisdictions does not support its request to intervene here as a matter of right.

### 2. Movant Does Not Allege a Specific Organizational Harm

Movant also claims it has an organizational interest under a diversion of resources theory, which justifies intervention as a matter of right here. (Movant's Br. at 14-15). This argument too is without merit.

A valid interest may be shown if an organization is forced to "divert resources to activities outside of its typical business activities." *Def. Distributed v. United States Dep't of State*, No. 1:15-CV-372-RP, 2018 U.S. Dist. LEXIS 126388, *10-11 (W.D. Tex. July 27, 2018). An organization must also identify specific activities that it would have to put on hold or otherwise curtail. *See id.* at *11 (finding averment that movant "would have been able to use more resources to work on 'strengthening gun laws,' 'fighting in the courts to defend gun laws,' and 'providing direct legal advocacy on behalf of victims and communities affected by gun violence'" not sufficiently specific and denying motion to intervene).

Here, Movant has no basis for intervening under a diversion of resources theory. That is because Movant has wholly failed to identify any specific activities that Movant would have to put on hold or otherwise curtail. Movant admits that its typical business activities include conducting "voter registration, education, and turnout activities, as well as direct assistance during the registration and voting process." (Movant's Br. at 8). Movant, however, argues it would have to divert its resources from these activities if the Court grants Plaintiffs' request relief.

Specifically, Movant claims it would have to spend time "identifying and contacting" members who are hypothetically designated as "inactive" after failing to respond to the State's notices sent in error.

But Movant fails to explain how such work differs from that which Movant already typically does—that is, assist with "voter registration, education, and [provide] direct assistance during the registration and voting process." In other words, the activities Movant claims it would have to engage in if this Court grants Plaintiff's requested relief fit squarely within Movant's typical business activities. And even though this is now the second time Movant has sought to intervene, Movant still has not provided this Court with any affidavit identifying any specific activities Movant would have to put on hold or otherwise curtail. Consequently, intervention is not proper here.

Additionally, none of the cases Movant cites carry any weight here:

- In *Black Voters Matter Fund v. Raffensperger*, thousands of voters were allegedly removed from the rolls in error (rather than designated as "inactive"). 508 F. Supp. 3d 1283, 1291 (N.D. Ga. 2020). In that particular case, the movant was able to articulate how it had to divert resources by spending thousands of dollars to send postcards to individuals erroneously removed from Georgia voter rolls. *Id.* But here, Plaintiffs do not seek to have any voters removed. Movant has also not

identified (by affidavit or otherwise) any specific resources Movant has or will have to divert. And unlike the facts present in *Black Voters Matters Fund v. Raffensperger*, Movant has not offered any evidence here that it has spent thousands of dollars in connection with Plaintiffs' present complaint. Rather, Movant merely speculates it might have to divert resources from some generalized election activities that are already part of its typical business activities.

- In *Arcia v. Sec'y of Fla.*, the State of Florida implemented a new program to identify and remove (again not simply make "inactive") non-citizens from its voter rolls. 772 F.3d 1335, 1339 (11th Cir. 2014). The organizational plaintiffs in that case demonstrated they had in fact diverted resources to ensure that their members who were mistakenly identified as non-citizens were able to vote. *Id.* at 1341. Here, again, Plaintiffs do not seek to have any voter registrations removed. Plaintiffs merely request that the state follow existing law. Movant also has not identified any specific resources that it has or will have to divert.

- In *New Ga. Project v. Raffensperger*, the plaintiffs filed suit over absentee ballot procedures in light of the COVID-19 pandemic. 484 F. Supp. 3d 1265, 1279 (N.D. Ga. 2020). The court held that an organizational plaintiff had standing because it provided declarations

that "specifically" explained how its resources would be diverted. *Id.* at 1286-87. But here, Movant has not provided any declarations specifically identifying any resources it has or will have to divert—even though Movant has now had a second opportunity to do so with its present motion.

- In *Fair Fight Action, Inc. v. Raffensperger*, the plaintiff organizations filed suit over alleged unconstitutional and unlawful legislation and policies, as well as gross election mismanagement. 413 F. Supp. 3d 1251, 1262 (N.D. Ga. 2019). Several of the organizations alleged that they had in fact diverted resources to counter voter suppression efforts. *Id.* at 1263-64. Several of the plaintiff organizations were religious organizations whose core activities were well outside of educational programs designed to address voter suppression. *Id*. But here, the complained-of activities are reasonably within the scope of Movant's core activities, and Movant has not specifically identified any resources it has or will have to divert.

For these reasons, Movant lacks a direct, substantial, and legally protected interest related to this case, both on behalf of its members and on behalf of its organization. Thus, intervention as a matter of right is not proper.

**B.    Ordering Defendant to Comply with Existing Law Does Not Impair or Impede Movant's Ability to Protect Its Interests**

This Court should also deny Movant's motion because Movant has not satisfied another element of the four-part test necessary to intervene as a matter of right. Specifically, Movant has failed to demonstrate that it is impaired or impeded in its ability to protect what interest, if any, it has.

Even assuming *arguendo* that Movant has a sufficient interest related to this action (Movant does not), Plaintiffs' effort here to require state election agencies to follow the law will not impair Movant's ability to protect its interest. As described above, in the event a voter's registration is corrected so that the voter is designated as "inactive," that voter would still be permitted to vote by showing proof of residency. Movant also has not alleged any specific new training or efforts that Movant would need to undertake if the Court grants Plaintiffs' requested relief. Rather, Movant merely offers a threadbare, conclusory assertion in support of its position, arguing that its interests will be impaired simply because Movant claims to have interests that are at risk of being harmed. (Movant's Br. at 13-15). As the party with the burden of proof to establish each of the four requirements for intervention as of right, that is grossly insufficient. *See Burke*, 833 F. App'x at 291 (describing that "intervenors . . . bear the burden of proof to establish all four bases for intervention as a matter of right").

## C. The Present Defendant Already Adequately Represents Movants' Interests

This Court should further deny intervention because the present Defendant, Georgia's elected Secretary of State, already more than adequately represents Movant's interest. The Eleventh Circuit "presume[s] that a proposed intervenor's interest is adequately represented when an existing party [like Defendant here] pursues the same ultimate objective as the party seeking intervention." *Federal Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 215 (11th Cir. 1993). That "representation is adequate 'if no collusion is shown between the representative and an opposing party, if the representative does not have or represent an interest adverse to the proposed intervenor, and if the representative does not fail in fulfillment of his duty.'" *Id.* (quotation omitted); *see also Int'l. Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir. 1978) (holding that a moving party with the same ultimate objective as the original party "must demonstrate adversity of interest, collusion, or nonfeasance" to overcome the presumption).

While the burden of showing inadequate representation is typically minimal, a "very compelling showing" is required where, as is the case here, the government is a party. *United States v. Coffee Cnty. Bd. of Educ.*, 134 F.R.D. 304, 310 (S.D. Ga. 1990), citing *Jones v. Caddo Par. Sch. Bd.*, 704 F.2d 206, 221 n.25 (5th Cir. 1983). In short, Movant must make a "very compelling showing" that Defendant does not already adequately represent its interest before Movant can intervene here.

For example, in *Athens Lumber*, the Eleventh Circuit affirmed dismissal of a union's motion to intervene as a matter of right in a case between a company and the Federal Election Commission ("FEC"). 690 F.2d at 1367. The company made a political expenditure that was allegedly in violation of federal campaign finance law and sought declaratory judgment that the law was unconstitutional. *Id.* at 1364-65. The union contended that this threatened its political interests, which the FEC "lack[ed] the incentive to represent vigorously." *Id.* The Eleventh Circuit rejected the union's position that a government "agency charged with protecting the public interest cannot represent adequately private interests." *Id.* at 1366-67. That is because, according to the Eleventh Circuit, the FEC and the union had the same ultimate objective of upholding the constitutionality of the law at issue. *Id.*

Here, Movant and Defendant share the same ultimate objective of having the Court deny Plaintiffs' requested relief. (Dkt. No. 48-1). Movant also has not demonstrated it has any interest that is mutually exclusive from that of the Defendant. Thus, intervention is improper here.

Movant also applies the wrong "minimal" burden standard, claiming that it only needs to minimally show its interest is not aligned with that of the Defendant. As support, Movant cites several non-binding cases from other jurisdictions for the proposition that only a minimal burden should apply because government parties' views are influenced by public policy. (*See* Movant's Br. at 15-17). Movant,

however, conveniently ignores both *Coffee Cnty. Bd. of Educ.* and *Jones v. Caddo Par. Sch. Bd.*, which, as discussed, mandate a "very compelling showing" instead.

Movant's reliance on *Bellitto* and *Winfrey* are likewise unavailing. (Movant's Br. at 17). Unlike the present action, those cases involved the actual removal of persons from the voter rolls. And as described above, the motion in *Bellitto* was unopposed, and the court in *Winfrey* explicitly did not consider intervention as a matter of right.

Movant's citations to *Trbovich v. UMW*, 404 U.S. 528 (1972), and *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179 (2022), fare no better. (Movant's Br. at 16). *Trbovich* involved a situation where a union member seeking to intervene in a government enforcement proceeding against the union was the one who initiated the enforcement proceeding. 404 U.S. at 538-39. The union member had a different ultimate objective in seeking "specific safeguards with respect to any new election that may be ordered," whereas the government only sought to order a new election. *Id.* at 529-30.

But here, Movant did not initiate the instant lawsuit. And, unlike the facts present in *Trobovich*, both the Movant and Defendant share the same objective here in dismissing the present case.

In *Berger*, the U.S. Supreme Court explicitly stated that it "need not decide whether a presumption of adequate representation might sometimes be appropriate

when a private litigant seeks to defend a law alongside the government." *Berger*, 597 U.S. at 197. The Supreme Court only "acknowledge[d] that a presumption of adequate representation is inappropriate when a duly authorized state agent seeks to intervene to defend a state law." *Id.*

*Berger* is clearly inapplicable. That is because, unlike the facts present in *Berger*, Movant is not an authorized state agent seeking to intervene to defend a state law.

Movant argues it has a right to intervene because its interests may diverge from those of Defendant, given that Defendant is "charged with facilitating" list maintenance practices that Movant opposes. (Movant's Br. at 17). This argument too is without merit.

As an initial matter, just because Movant does not agree with the law as it is written does not provide Movant with the right to intervene here. This is not the forum or case for that. If Movant has a problem with the law, Movant has other venues in which it can seek to correct what it believes is allegedly unjust.

The fact that Movant previously sued Defendant over the state's list maintenance practices does not have any bearing on whether Movant's interests are adequately represented in this case—as this is a case in which Movant and Defendant both seek the identical ultimate objective. In short, Movant has failed to demonstrate

that its interests are not adequately represented by Defendant, regardless of whether a "minimal" burden or "very compelling showing" standard applies.

Movant further attempts to argue that Defendant's reference to other types of list maintenance efforts shows a "stark contradiction" between Movant's interests and those of the Defendant. (Movant's Br. at 18-19). Movant points to Defendant's references to (1) the state's procedure for removing voters who have had "no contact" with the state in the last five years under O.C.G.A. § 21-2-234(a)(2), and (2) the state's challenge procedure under O.C.G.A. § 21-2-230, allowing for Georgia voters to challenge the eligibility of other voters. (Movants' Br. at 17-18, citing Dkt. No. 48-1 at 7-8). However, these other list maintenance efforts are not at issue here.

Because Movant has failed to demonstrate it has any legitimate interest that is not adequately represented by Defendant, Movant is not entitled to intervention as a matter of right.

## II. Movant Has Failed to Demonstrate It is Entitled to Permissive Intervention

There is no value in adding Movant as a party to this case. Instead, considerable harm will result. A party seeking permissive intervention under Rule 24(b) must show that: (1) its application to intervene is timely; and (2) its claim or defense and the main action have a question of law or fact in common. The district court has discretion to deny intervention even if both of these requirements are met. *See Sellers v. United States*, 709 F.2d 1469, 1471 (11th Cir. 1983).

In *Athens Lumber*, the Eleventh Circuit affirmed a denial of permissive intervention on the basis that "the introduction of additional parties inevitably delays proceedings" and because of the "remoteness and general claims" of the intervenor's claims. 690 F.2d at 1367. Instead, "[w]hen he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention." *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984) (citing *Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.*, 51 F. Supp. 972, 973 (D. Mass. 1943)); *South Carolina v. North Carolina*, 558 U.S. 256, 288 (2010) (Roberts, C.J., dissenting) (same).

Allowing Movant to intervene here would only serve to complicate this litigation, increase costs, and prejudice or delay this case, which is effectively a denial of timely relief to Plaintiffs. There is no need to add additional parties and complicate this matter, particular where, as is the case here, Movant's claimed interests are already appropriately and more than adequately represented by the Defendant. Filing an *amicus* brief would accomplish Movant's goals while ensuring judicial economy in this case. And Plaintiffs do not object to such a filing.

## CONCLUSION

For the reasons described above, this Court should deny Movant's motion to intervene and instead permit Movant to file an *amicus* brief.

Dated: December 23, 2024

Respectfully submitted,

*/s/ David Ludwig*

David Ludwig (Bar No. 425787)
DUNLAP BENNETT & LUDWIG
PLLC
211 Church St. SE
Leesburg, VA 20175
Tel: (703) 777-7319
dludwig@dbllawyers.com

Cortland C. Putbrese (*pro hac vice*)
DUNLAP BENNETT & LUDWIG
PLLC
6802 Paragon Place Ste. 410
Richmond, VA 23230
Tel: (804) 977-2688
cputbrese@dbllawyers.com

William W. Flachsbart (*pro hac vice*)
Mark A. Magas (*pro hac vice*)
DUNLAP BENNETT & LUDWIG
PLLC
333 N Michigan Ave. 27th Floor
Chicago, IL 60601
Tel: (312) 551-9500
wflachsbart@dbllawyers.com
mmagas@dbllawyers.com

*Counsel for Plaintiffs William T. Quinn
and David Cross*

## CERTIFICATE OF FONT AND POINT SELECTION

I hereby certify under Local Rule 7.1(D), that the foregoing Response was prepared in Times New Roman, 14-point font, which is one of the font and point selections approved in Local Rule 5.1.

Dated: December 23, 2024

*/s/ David Ludwig*
David Ludwig (Bar No. 425787)
DUNLAP BENNETT & LUDWIG PLLC
211 Church St. SE
Leesburg, VA 20175
Tel: (703) 777-7319
dludwig@dbllawyers.com

*Counsel for Plaintiffs William T. Quinn and David Cross*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused to be served copies of this Response upon counsel of record in this case by filing a copy using the Court's electronic CM/ECF filing system, which will automatically cause copies of the same to be delivered.


Dated: December 23, 2024         */s/ David Ludwig*

David Ludwig (Bar No. 425787)
DUNLAP BENNETT & LUDWIG PLLC
211 Church St. SE
Leesburg, VA 20175
Tel: (703) 777-7319
dludwig@dbllawyers.com

*Counsel for Plaintiffs William T. Quinn and David Cross*