IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WILLIAM T. QUINN and DAVID CROSS,<br><br>  Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia,<br><br>  Defendant. | Civil Action No. 24-cv-04364-SCJ |

**BLACK VOTERS MATTER FUND'S REPLY IN SUPPORT OF
RENEWED MOTION TO INTERVENE AS DEFENDANT**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 2

I.    BVMF is entitled to intervene as a matter of right. ........................................ 2

      A.    The disposition of this case threatens to impair BVMF's ability to protect its interests. ............................................................................... 3

      B.    BVMF's interests are not adequately represented by the existing parties. ................................................................................................. 9

II.    In the alternative, the Court should grant BVMF permissive intervention under Rule 24(b). ................................................................................... 14

CONCLUSION ......................................................................................................... 15

## INTRODUCTION

In opposing BVMF's motion to intervene, Plaintiffs fight an uphill battle against a chorus of courts that have granted intervention under similar circumstances. They do not dispute that BVMF has an interest in preventing removal of its constituents from the voter rolls; instead they argue, incorrectly, that this case does not involve voter removal. This assertion is false as a matter of law: placing voters on inactive status—as the Amended Complaint demands—is a necessary step towards Plaintiffs' ultimate goal of purging those voters from the rolls altogether. Indeed, the sole function of the inactive voters list is to serve as a waiting room for voters slated for removal from the rolls. Placement on the list starts a statutory countdown, mandating that the voter "shall be removed" from the rolls when it expires, unless they take affirmative steps to reactivate their registration. O.C.G.A. § 21-2-235. Plaintiffs' argument ignores the practical effect—and aim—of the relief that they seek.

Plaintiffs also inappropriately ask this Court to substitute the test for Article III standing for the separate—and different—standards that expressly govern intervention under Rule 24. While a plaintiff intervenor who seeks relief beyond that sought by the named plaintiff may also have to satisfy Article III, BVMF seeks to intervene as a *defendant*, to protect itself and its constituents from harm that is threatened against them by Plaintiffs' action. As a result, BVMF need only

demonstrate a direct, substantial, legally protectible interest in the proceeding to have a right to intervene.

Finally, the Secretary of State, whom BVMF previously sued over Georgia's interpretation of *the very statute at issue here*, does not adequately represent BVMF's interests. Plaintiffs rely on inapposite and nonbinding cases, but binding Eleventh Circuit and Supreme Court precedent makes clear that the burden of showing inadequate representation should be treated as minimal. Indeed, the Eleventh Circuit has reversed denials of motions to intervene where government defendants were required to balance interests likely to diverge from those of the intervenors—as is the case here. The Court should grant intervention.

## ARGUMENT

**I.     BVMF is entitled to intervene as a matter of right.**

Under Rule 24(a)(2), this Court "must allow" intervention as of right if: (1) the motion is timely; (2) movants have a legally protected interest in this action; (3) this action may impair or impede that interest; and (4) no existing party adequately represents movants' interests. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). Plaintiffs do not contest that BVMF's Renewed Motion to Intervene, ECF No. 54 ("Renewed MTI") is timely. Their arguments as to the remaining three factors rely on incorrect interpretations of law and mistaken understandings of BVMF's stated interests.

### A. The disposition of this case threatens to impair BVMF's ability to protect its interests.

Plaintiffs' demand that the Secretary initiate removal processes against voters threatens both BVMF's constituents—who are likely to be swept up in the action—and BVMF's ability to pursue its core mission of increasing participation by voters in communities of color. These facts satisfy both the legally protected interest and impairment prongs of Rule 24(a)(2). BVMF "do[es] not need to establish that [its] interests *will* be impaired . . . only that the disposition of the action 'may' impair or impede [its] ability to protect [its] interests." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014). This inquiry is "flexible" and depends on the circumstances surrounding the action. *Chiles*, 865 F.2d at 1214 (quoting *United States v. Perry County Bd. of Educ.*, 567 F.2d 277, 279 (5th Cir.1978)).

BVMF's interests—ensuring that its constituents remain registered as active voters and protecting the organization's ability to accomplish its core mission—are archetypal examples that this and other courts have recognized as warranting intervention.[1] *See* BVMF's Br. in Supp. of Renewed MTI at 14–15, ECF 54-1 ("MTI

---

[1] Plaintiffs' attempt to discount these interests simply because they did not appear in a declaration badly misunderstands the legal standards for intervention motions. When determining whether a litigant satisfies Rule 24(a)'s requirements, it is well settled that the allegations supporting the intervention motion are taken as true. *See Bradley v. Pinellas Cnty. Sch. Bd.,* 961 F.2d 1554, 1556 (11th Cir. 1992) (noting proposed intervenors' statements "must [be] take[n] as true to the extent they are not refuted by the record"); *see also Cent. States, Se. & Sw. Areas Health & Welfare*

Br.") (citing cases). Plaintiffs' attempt to distinguish those cases overlooks their plain findings. Whether, for example, the intervention motion in *Bellitto* was unopposed, Pls.' Resp. Br. at 13, ECF 59 ("Resp. Br."), is irrelevant to the fact that the court *expressly* found that the intervenor's assertion of an interest in preventing harm to its constituents satisfied the requirements for intervention as of right. *Bellitto v. Snipes*, No. 16-cv-61474, 2016 WL 5118568, at *2–3 (S.D. Fla. Sept. 21, 2016). And while Plaintiffs argue that the courts in *Public Interest Legal Foundation v. Winfrey*, 463 F. Supp. 3d 795 (E.D. Mich. 2020), *Daunt v. Benson*, No. 1:20-cv-522 (W.D. Mich. dismissed Feb. 16, 2021), and *Voter Integrity Project NC, Inc. v. Wake County Board of Elections*, No. 5:16-cv-683 (E.D.N.C. dismissed June 27, 2017) granted permissive intervention, *see* Resp. Br. at 14–15, it does not change the fact that those courts found that the intervenors had asserted legally protectable interests. *See e.g.*, *Winfrey*, 463 F. Supp. 3d at 799 (finding that protecting members from "an elevated risk of removal of legitimate registration" from voter rolls was "a facially

---

*Fund v. Old Sec. Life Ins. Co.*, 600 F.2d 671, 679 (7th Cir. 1979) ("[a]ll nonconclusory allegations supporting a motion to intervene are taken as true, absent sham, frivolity, or other objections"); *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981) (similar); *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001) (similar); *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 543 (1st Cir. 2006) (similar). Furthermore, the Court has previously weighed the interests of BVMF and referenced them in a published decision. *Black Voters Matter Fund v. Raffensperger*, 508 F. Supp. 3d 1283, 1298 (N.D. Ga. 2020) ("BVMF").

legitimate interest and one that is sufficiently distinct from the interests" of election officials to warrant intervention).

Plaintiffs do not contest that removal of BVMF's constituents *would* constitute a cognizable harm, nor that BVMF would have an interest in preventing removal. Instead, they attempt to evade the natural consequences of their actions by claiming that they do not seek the removal of voters "outright." Resp. Br. at 8. The Court should reject such hair-splitting: Plaintiffs ask that voters be sent notice postcards and placed on the list of inactive voters established by O.C.G.A § 21-2-235 which, as this Court has previously observed, sets forth the statutory process by which an "elector *shall be removed*" from the voting rolls. *See also Fair Fight Action, Inc. v. Raffensperger*, No. 1:18-CV-5391, 2021 WL 9553856, at *16 & n.26 (N.D. Ga. Mar. 31, 2021) (emphasis added) (quoting O.C.G.A § 21-2-235(b)); *id.* at *4 (noting that remaining on the inactive list results "in the voter's registration being changed to canceled status, at which point the individual is unable to vote without re-registering"). Plaintiffs have hurled a stone at a plate glass window, but because it has not yet reached its target, they insist they have no intention of breaking the glass.

Throughout their brief, Plaintiffs wrongly suggest that intervention and Article III standing are one and the same. Resp. Br. at 7, 11–13, 15–16. That is not the law. While BVMF would satisfy the requirements for Article III standing,

Plaintiffs' insistence that it *must* do so is incorrect, as demonstrated by their own cited authorities. *See, e.g.*, *id*. at 7. In *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433 (2017), the Supreme Court considered whether the plaintiffs and intervenors had collectively demonstrated Article III standing. By its plain language, the requirement that an intervenor demonstrate Article III standing applies when the intervenor "seeks additional relief beyond that which the plaintiff requests," in other words, it applies to *plaintiff-intervenors*, not defendants. *Id*. at 439. The Eleventh Circuit cast doubt about whether such a requirement applies to defendant-intervenors and plainly stated that "a lack of Article III standing . . . does not automatically disentitle the [proposed intervenors] to intervene." *Clark v. Putnam Cnty.*, 168 F.3d 458, *463 (11th Cir. 1999). And because BVMF seeks no relief *beyond* that sought by any extant party, Article III requirements would still not apply.

Plaintiffs' attempt to undermine BVMF's organizational interests by arguing it must identify "specific activities" that will be negatively impacted by Plaintiffs' requested relief, Resp. Br. at 15, again incorrectly relies on the standards for Article III standing rather than intervention. All of the cited language from the lone unpublished, out-of-circuit, district court case on which Plaintiffs rely, *see id*., appear where the court was considering whether the proposed intervenors had Article III standing because, unlike this case, "[n]o party to the main action [was] seeking Movants' desired relief." *Def. Distributed v. U.S. Dep't of State*, No. 1:15-

CV-372, 2018 WL 3614221, at *3 (W.D. Tex. July 27, 2018). That court's consideration of the movant's interests for purposes of intervention was contained in an entirely different analysis elsewhere in the decision. *Id.* at *2.[2]

Plaintiffs are not only wrong on the law, but they also misstate the facts. BVMF's motion specifies that it would have to divert resources away from its core activities—such as hosting registration events, launching social media and advertising campaigns, and engaging in direct outreach to encourage registration and turnout, MTI Br. at 9—toward "identifying" and "contacting" those individual voters targeted by Plaintiffs, *id.* at 10–11, 14. While voter registration is necessary to BVMF's goal of developing impassioned voters in communities of color, it is not sufficient. BVMF uses tools such as texting, social media, concerts, and town halls to discuss with citizens the issues impacting their community with an end goal of boosting the power of those communities through increased voting. The threat of deregistering constituents will require BVMF to divert resources from its core goal of communicating with constituents about the issues they care about, and toward remediating the status of those voters.

---

[2] Plaintiffs' argument that BVMF's concern for its constituents is "speculative," Resp. at 11, similarly confuses the standards of Article III with those of intervention, which requires only that the movant demonstrate that resolution of the case "may" harm its interests. *Brumfield*, 749 F.3d at 344.

Plaintiffs' argument that BVMF's interests are "generalized" is also based on a nonexistent admission. According to Plaintiffs, BMVF purportedly "admit[ted] that Plaintiffs' requested relief applies to all 'Georgia voters' in general." Resp. Br. at 12–13. But this alleged admission is nowhere to be found in BVMF's papers,[3] and in fact, BVMF repeatedly numbered the impacted as "thousands of Georgia voters," not "all Georgia voters." MTI Br. at 2, 7–9, 11, 14, 18. Plaintiffs describe this nonexistent admission as "critical[]" to their argument that BVMF's interests are too generalized, Resp. Br. at 12–13; for this reason alone, Plaintiffs' argument fails.

In any event, BVMF's interest in protecting from Plaintiffs' assault "the voters who registered with the help of BVMF's voter registration activities, or even those within [] BVMF's network of supporters, volunteers, and staff who carry out BVMF's core initiatives," MTI Br. at 14, is not shared by all Georgians—as demonstrated by this and other suits seeking to initiate the removal process against Georgia voters. Furthermore, BVMF's stated interest in "increase[ing] voting power *in communities of color*," *id.* at 8, is not even shared by many voting-focused organizations, much less all Georgians.

---

[3] From the purported admission attributed to BVMF, only the phrase "Georgia voters" appears anywhere on the cited page. MTI Br. at 14. BVMF has reviewed all its filings in this case, not just that cited by Plaintiffs, and finds no statement consistent with the purported admission.

**B.     BVMF's interests are not adequately represented by the existing parties.**

BVMF cannot rely upon the Secretary to protect its interests. Plaintiffs' arguments to the contrary ignore binding Eleventh Circuit precedent, ignore the unique nature of the NVRA and its competing objectives, and overlook that BVMF—unlike the Secretary—seeks to advance just *one* of those objectives. BVMF has shown "a sufficient divergence of interest" with the Secretary to entitle it to intervention as a matter of right. *See Clark*, 168 F.3d at 461.

Plaintiffs' brief misunderstands the law in this Circuit. Though it is true that as a general matter, a presumption of adequate representation exists when the same "ultimate objective[s]" are pursued by defendants and intervenors, *see* Resp. Br. at 20, Plaintiffs overlook the Eleventh Circuit's admonition that this presumption is a "weak" one. *Clark*, 168 F.3d at 461. Indeed, the presumption "merely imposes upon the proposed interveners the burden of coming forward with *some evidence* to the contrary," and once the presumption is "rebut[ted]," proposed intervenors need only satisfy the "general rule[s]" for intervention, which "is not difficult" to do. *Id.* (emphasis added).[4]

---

[4] Indeed, Plaintiffs cite the Eleventh Circuit's decision in *Federal Savings & Loan Insurance Corporation v. Falls Chase Special Taxing District*, but there, the Eleventh Circuit *reversed* the district court's denial of intervention, noting that the "burden to show that [] interests *may be* inadequately represented" is "minimal." 983 F.2d 211, 215 (11th Cir. 1993) (emphasis in original).

Plaintiffs similarly misunderstand the significance of government officials as named defendants. *See* Resp. Br. at 20. Take *Clark* and *Meek*—Eleventh Circuit cases that Plaintiffs do not address. *See Clark*, 168 F.3d at 461; *Meek v. Metropolitan Dade County*, 985 F.2d 1471, 1478 (11th Cir. 1993), *abrogated on other grounds by Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007). Both involved motions to intervene where named defendants were government officials. Both motions were denied by the district courts, and the Eleventh Circuit reversed on both occasions. Though county officials were named defendants in *Meek*, the Eleventh Circuit found that they were not "adequate representatives of the intervenors" because "[t]he intervenors sought to advance their own interests in achieving the greatest possible participation in the political process," while the government defendants "w[ere] required to balance a range of interests likely to diverge from those of the intervenors," including "consider[ing] the overall fairness of the election system to be employed in the future, the expense of litigation to defend the existing system, and the social and political divisiveness of the election issue." 985 F.2d at 1478. And in *Clark,* the Eleventh Circuit reasoned that the presence of elected officials actually *undermined* a finding of adequate representation: The "pledge to represent all citizens" indicated "that the commissioners represent[ed] interests *adverse* to the proposed interveners; after all, both the plaintiffs and the proposed

defendant-interveners [were] . . . County citizens." *Clark*, 168 F.3d at 461 (emphasis added).[5] So too here.

And for all the ink Plaintiffs spill attempting to characterize BVMF's "interest[s]," Resp. Br. at 20, and "ultimate objective[s]," *id.* at 21, they conspicuously leave out any mention of the unique nature of the NVRA itself, which advances "twin objectives." *Bellitto v. Snipes*, 935 F.3d 1192, 1198 (11th Cir. 2019). That is a glaring omission because under the NVRA's own terms, the Secretary is expressly required to balance the competing goals of "easing barriers to registration and voting, while at the same time protecting electoral integrity and the maintenance of accurate voter rolls." *Id.* But it provides the Secretary with no formula for how to achieve that balance. As such, there is a high likelihood of conflict between governmental defendants and organizations like BVMF on the proper weight to give each of the NVRA's goals.

---

[5] Plaintiffs accuse BVMF of "conveniently ignor[ing]" two cases that use the phrase "very compelling showing" in describing the applicable standard. *See* Resp. Br. at 22. These cases are not binding and do not involve the NVRA at all. They are also inapposite and were decided pre-*Meek* and *Clark*. In *United States v. Coffee County Board of Education*, 134 F.R.D. 304, 310 (S.D. Ga. 1990), the government and proposed intervenors shared "the same ultimate objective" beyond just seeking the same relief: they both sought "a unitary school system." And in *Jones v. Caddo Parish School Board*, 704 F.2d 206 (5th Cir. 1983), the Fifth Circuit affirmed the denial of intervention only on timeliness grounds, and its brief discussion of adequate representation—which it addressed only in the "school desegregation context"—was dicta. *See id*. at 221 n.25.

Plaintiffs' assertion that competing goals must be "mutually exclusive" to justify intervention, Resp. Br. at 21, has no basis in law: As several courts have recognized, the obligation to *balance* competing objectives is enough to show that state officials may not adequately represent the interests of civic organizations like BVMF. *See, e.g.*, *Meek*, 985 F.2d at 1478; *Bellitto*, 2016 WL 5118568, at *3; *Winfrey*, 463 F. Supp. 3d at 801. These kinds of competing statutory objectives were simply not at issue in the inapposite cases relied on by Plaintiffs.

Moreover, Plaintiffs misunderstand what it means for parties to share the "same ultimate objective." Resp. Br. at 21–22 (characterizing objective as "dismissing the present case"). It does not mean merely that the parties seek the same outcome. If seeking the same relief were "all it takes to defeat intervention, then intervention as of right w[ould] almost always fail," because a party must necessarily intervene "on one side of the 'v.' or the other." *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 748 (7th Cir. 2020). Here, BVMF and the Secretary do not share the same ultimate objective. On one hand, BVMF's ultimate objective is to protect both the fundamental voting rights of its constituents—who are among the voters most at risk of having their registrations purged by the aggressive relief sought—and its own organizational interests. *See* MTI Br. at 2. On the other hand, the Secretary's ultimate objective is to balance the competing goals of "easing barriers to registration and voting, while at the same time protecting electoral

integrity and the maintenance of accurate voter rolls," *Bellitto*, 935 F.3d at 1198, "consider the overall fairness of the election system to be employed in the future, the expense of litigation to defend the existing system, and the social and political divisiveness of the election issue." *Meek*, 985 F.2d at 1478.

This divergence is more than just academic: BVMF once sued the Secretary over the very program the Secretary cites in defense of his voter-maintenance efforts. *See BVMF*, 508 F. Supp. 3d at 1298. There, BVMF alleged that the Secretary "unlawfully cancelled thousands of voters from Georgia's voter rolls," "violated the NVRA's requirement to have accurate and current voter lists," and violated the Fourteenth Amendment by implementing a "Use it or Lose It" process to remove voters from the voting roll. *See id.* at 1289. BVMF has every reason to fear similar threats here. Indeed, when state defendants settle NVRA cases, they often agree to identify additional "ineligible" voters and cancel registrations more aggressively. *See, e.g.*, Stip. of Dismissal, *Daunt v. Benson*, No. 1:20-cv-522-RJJ-RSK (W.D. Mich. Feb. 16, 2021), ECF No. 58; *see also Clark*, 168 F.3d at 462 ("A greater willingness to compromise can impede a party from adequately representing the interests of a nonparty."). Furthermore, a resolution that implied an obligation on the part of the Secretary to act when a private citizen so demanded would further threaten BVMF's vulnerable constituents and the organization itself by opening the

door to other flawed challenges by unaccountable private individuals. The Secretary does not represent BVMF's interests.

## II. In the alternative, the Court should grant BVMF permissive intervention under Rule 24(b).

Plaintiffs do not argue that BVMF fails to satisfy Rule 24(b)'s minimal requirements for permissive intervention. *See* Fed. R. Civ. P. 24(b); *Chiles*, 865 F.2d at 1213. Instead, Plaintiffs vaguely suggest that the Court should exercise its discretion to deny BVMF intervention because adding the group to the case as a defendant would not add "value," and would unnecessarily delay and complicate the litigation. Resp. Br. at 24–25. This argument also comes up short.

First, Plaintiffs' contention that BVMF adds no value ignores that BVMF, unlike Plaintiffs or the Secretary, is solely focused on representing the interests of voters who stand to be affected by the aggressive relief sought. *See* MTI Br. at 2, 17–18. Thus, BVMF is uniquely positioned to provide critical arguments and context about the adverse impact of the requested relief on voters themselves as well as registration conducted by voter advocacy groups like BVMF, *see id.* at 9–10, something the Court must ultimately consider in this case, *see, e.g.*, *Winfrey*, 463 F. Supp. 3d at 801 (granting permissive intervention to advocacy group in part because consideration of "competing interests, vigorously advocated by appropriately interested parties . . . unquestionably will be helpful to the Court").

Nor does *Athens Lumber Co. v. FEC*, 690 F.2d 1364 (11th Cir. 1982) support Plaintiffs' view that adding BVMF would unduly delay this case. There, the court of appeals found that a district court had not abused its discretion in denying permissive intervention where the claims asserted by the proposed intervenor were "remote[]," and the plaintiff had filed suit under a unique provision of the Federal Election Campaign Act that is expressly "designed to expedite constitutional challenges to th[at] Act." *Id.* at 1367. Here, in contrast, "[w]hatever additional burdens adding" BVMF may pose, they "fall well within the bounds of everyday case management." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 200 (2022); *accord Winfrey*, 463 F. Supp. 3d at 801 ("[P]laintiff has not cited any authority for the proposition that any incremental increase in costs incurred by fully addressing legitimate third-party interests is a proper basis for denying intervention."). Intervenors have also agreed to abide by any schedule this court sets, MTI Br. at 20, further undermining Plaintiffs' unsupported claim that BVMF will cause delay. Plaintiffs thus provide no good reason to deny permissive intervention in this case.

## CONCLUSION

For these reasons, BVMF respectfully requests that the Court grant its renewed motion to intervene as a matter of right, or in the alternative, to intervene permissively.

Dated: January 6, 2025                                Respectfully submitted,

Adam M. Sparks                                        /s/ *Uzoma N. Nkwonta*
Ga. Bar No. 341578                                    Uzoma N. Nkwonta*
Anré D. Washington                                    Marcos Mocine-McQueen*
Ga. Bar No. 351623                                    James J. Pinchak*
**KREVOLIN & HORST, LLC**                             Renata O'Donnell*
1201 W. Peachtree St., NW                             **ELIAS LAW GROUP LLP**
One Atlantic Center, Suite 3500                       250 Massachusetts Avenue, Suite 400
Atlanta, GA 30309                                     Washington, D.C. 20001
Telephone: (404) 888-9700                             (202) 968-4490
Facsimile: (404) 888-9577                             unkwonta@elias.law
Email: sparks@khlawfirm.com                           mmcqueen@elias.law
Email: washington@khlawfirm.com                       jpinchak@elias.law
                                                      rodonnell@elias.law

                                                      Tyler L. Bishop*
                                                      **ELIAS LAW GROUP LLP**
                                                      1700 Seventh Avenue, Suite 2100
                                                      Seattle, Washington 98101
                                                      (202) 985-0628
                                                      tbishop@elias.law


                                                      *Counsel for Proposed Intervenor-Defendant Black Voters Matter Fund*

                                                      **Admitted Pro Hac Vice*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D, NDGa, the undersigned counsel hereby certifies that the foregoing document complies with the font and point selections approved by the Court in Local Rule 5.1C, NDGa. This document was prepared on a computer using Times New Roman font (14 point).

This 6th day of January, 2025.

/s/ Uzoma N. Nkwonta
Uzoma N. Nkwonta
*Counsel for Proposed*
*Intervenor-Defendant Black*
*Voters Matter Fund*
